## 20-cv-5624 KMK

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

———————·••◦◉◦••·———————

IN RE,

BRUCE J. PASWALL,

*Debtor,*

——————————

MARK S. TULIS, AS CHAPTER 7 TRUSTEE OF THE
ESTATE OF BRUCE J. PASWALL,

*Plaintiff-Appellee,*

-against-

GRANT PASWALL AND REID PASWALL,

*Defendants-Appellants.*

*On appeal from Order and Judgment of the U.S.
Bankruptcy Court for the Southern District of New York*

## APPELLANT'S APPENDIX

**LOWELL B. DAVIS, ESQ.**
18 Jeffrey Lane
Great Neck, New York 11020
(516) 320-0221
LBD7479@cs.com
*Attorney for Defendants-Appellants*

**PART ONE- PAGES A1 TO A161**

TABLE OF CONTENTS – APPENDIX

*Page*

Table of Contents.................................................................................A.i

U.S.B.C. S.D.N.Y. Adversary Proceeding Docket Sheet, #19-08713-rdd1)................................................................................................A.1

DE1, Complaint (Nov. 22, 2019)........................................................A.6

      DE1-1, Deed (Oct. 3, 2014).....................................................A.24

DE2, Summons with Notice of Pretrial Conf. (Dec. 5, 2019) ..............A.27

DE3, Affidavit of Service, Summons (Dec. 16, 2019) .........................A.28

DE4, Affirmation in Support of Default, David A. Blansky, Esq. (Feb. 12, 2020) ...........................................................................................A.30

DE5, Entry of Default, Grant Paswall (Feb. 13, 2020)........................A.33

DE6, Entry of Default, Reid Paswall (Feb. 13, 2020) .........................A.35

DE7, Certificate of Notice of Entry of Default, Grant Paswall (Feb. 15, 2020) ...........................................................................................A.37

DE8, Certificate of Notice of Entry of Default, Reid Paswall (Feb. 15, 2020) ...........................................................................................A.39

DE9, Notice of Hearing and Motion for Entry of Default Judgment (Mar. 24, 2020) ....................................................................................A.41

      DE9-2, Exh. 2 to Motion-- Excerpts from Debtor's Examination (Oct. 30, 2019) .....................................................A.64

      DE9-11, Exh. 11 to Motion-- Stipulation of Settlement, Matrimonial Action (Oct. 28, 2014) ...........................................A.93

DE10, Affidavit of Service, Motion (Apr. 23, 2020) .........................A.105

DE11, Declaration in Opposition, Lowell B. Davis, Esq. (Jun. 12, 2020) ................................................................................. A.106

DE11-1, Opp. Exh. A -- Proposed Answer (Jun. 11, 2020) ................... A.121

DE11-2, Opp. Exh. B -- Complaint (Nov. 22, 2019)............................. A.131

DE11-3, Opp. Exh. C -- Summons, Westchester Action (Sep. 16, 2019) ................................................................................ A.150

DE11-4, Opp. Exh. D -- Affidavit of Service, Summons (Dec. 5, 2019) ................................................................................. A.164

DE11-5, Opp. Exh. E -- Adversary Proceeding Complaint (Dec. 10, 2019) ...................................................................... A.167

DE11-6, Opp. Exh. F -- Correspondence from Davis to Monica Herbst & Maniscalco LLP (May 23, 2020) ............................. A.177

DE12, Reply to Opposition (Jun. 16, 2020) ....................................... A.182

DE12-1, Affirmation in Support of Motion to Cancel Lis Pendens, Westchester Action, Lowell B. Davis, Esq. (Dec. 9, 2019) ................................................................................. A.192

DE12-2, Affirmation in Partial Opposition, Westchester Action, Scott A. Lucas, Esq. (Dec. 10, 2019)......................... A.195

DE13, Affidavit of Service, Reply (Jun. 16, 2020) ........................... A.200

DE14, Counter Judgment Against Debtor's Estate (Jun. 22, 2020)................... A.202

DE15, Order Granting Motion for Default Judgment (Jun. 29, 2020) .............. A.204

DE16, Judgment by Default (Jun. 29, 2020) ..................................... A.207

DE17, Transcript of Proceedings, Hon. Robert D. Drain, U.S.B.J. (Jun. 19, 2020) ................................................................... A.209

DE18, Affidavit of Service, Order Granting Motion (Jul. 2 2020) .................. A.271

DE19, Notice of Appeal and Statement of Election (Jul. 6, 2020).....................A.273

DE20, Affidavit of Service, Order Granting Motion for Default
Judgment and Judgment (Jul. 9, 2020) ...............................................................A.280

DE21, Designation of Record Items, Appellant (Jul. 13, 2020).........................A.282

DE22, Preliminary Statement of Issues on Appeal (Jul. 13, 2020) ....................A.284

DE23, Counter-Designation of Record Items, Appellee (Jul. 14, 2020)............A.285

DE24, Affidavit of Service, Counter-Designation of Additional Items
(Jul. 15, 2020) ....................................................................................................A.287

DE25, Affidavit of Service, Counter-Designation of Additional Items
(Jul. 14, 2020) ....................................................................................................A.289

DE26, Civil Cover Sheet (Jul. 21, 2020) ...........................................................A.291

Decision and Order, Westchester Supreme [Duffy, J.] (Jun. 17, 2013) .............A.292

Order to Show Cause, Westchester Supreme Court  (Aug. 31, 2015)................A.306

**U.S.B.C. S.D.N.Y. Adversary Proceeding Docket Sheet, #19-08713-rdd**    **FeeDueAP, PENAP, APPEAL**
**[A.1-5]**

## U.S. Bankruptcy Court
### Southern District of New York (White Plains)
### Adversary Proceeding #: 19-08713-rdd

*Assigned to:* Judge Robert D. Drain             *Date Filed:* 11/22/19
*Lead BK Case:* <u>19-23623</u>
*Lead BK Title:* Bruce J Paswall
*Lead BK Chapter:* 7
*Demand:* $650000

*Nature[s] of Suit:*  11  Recovery of money/property - 542 turnover of property
                 13  Recovery of money/property - 548 fraudulent transfer
                 14  Recovery of money/property - other
                 91  Declaratory judgment

### Plaintiff
------------------------

**Mark S. Tulis,** *as Chapter 7 Trustee of the*    represented by **David A. Blansky**
***Estate of Bruce J. Paswall***                          LaMonica Herbst & Maniscalco, LLP
                                       3305 Jerusalem Avenue
                                       Suite 201
                                       Wantagh, NY 11793
                                       (516) 826-6500
                                       Fax : (516) 826-0222
                                       Email: <u>dab@lhmlawfirm.com</u>
                                       *LEAD ATTORNEY*

                                       **Salvatore LaMonica**
                                       LaMonica Herbst & Maniscalco
                                       3305 Jerusalem Avenue
                                       Wantagh, NY 11793
                                       (516) 826-6500
                                       Fax : (516) 826-0222
                                       Email: <u>sl@lhmlawfirm.com</u>

V.

### Defendant
------------------------

**Grant Paswall**                             represented by **Lowell B Davis**
                                             Lowell B. Davis, Esq.
                                             18 Jeffrey Lane

A.1

Great Neck, NY 11020-1608
516-320-0221
Fax : 516-746-7474
Email: lbd7479@cs.com

**Defendant**

------------------------

**Reid Paswall**                                   represented by **Lowell B Davis**
                                                              (See above for address)

| Filing Date | # | Docket Text |
|---|---|---|
| 11/22/2019 | 1<br>(21 pgs; 2 docs) | Adversary case 19-08713. Complaint against Grant Paswall, Reid Paswall (Fee Amount $ 350.). Nature(s) of Suit: (11 (Recovery of money/property - 542 turnover of property)), (13 (Recovery of money/property - 548 fraudulent transfer)), (14 (Recovery of money/property - other)), (91 (Declaratory judgment)) Filed by David A. Blansky, Salvatore LaMonica on behalf of Mark S. Tulis. (Attachments: # 1 Exhibit A - Deed) (Blansky, David) (Entered: 11/22/2019) |
| 11/22/2019 | | Receipt of Complaint( 19-08713-rdd) [cmp,cmp] ( 350.00) Filing Fee. Receipt number 635. Fee amount 350.00. (Re: Doc # 1) (Correa) (Entered: 11/22/2019) |
| 12/05/2019 | 2<br>(1 pg) | Summons with Notice of Pre-Trial Conference issued by Clerk's Office with Pre-Trial Conference set for 2/4/2020 at 10:00 AM at Courtroom 118, White Plains Courthouse, Answer due by 1/6/2020. (Correa, Mimi) (Entered: 12/05/2019) |
| 12/06/2019 | 3<br>(2 pgs) | Affidavit of Service (related document(s)2, 1) Filed by David A. Blansky on behalf of Mark S. Tulis. (Blansky, David) (Entered: 12/06/2019) |
| 02/12/2020 | 4<br>(31 pgs; 3 docs) | Request for Clerk's Entry of Default *against Defendants* filed by David A. Blansky on behalf of Mark S. Tulis. (Attachments: # 1 Exhibit A - Summons, Complaint and Proof of Service # 2 Exhibit Docket Sheet)(Blansky, David) (Entered: 02/12/2020) |
| 02/13/2020 | 5<br>(2 pgs; 2 docs) | Clerk's Entry of Default against GRANT PASWALL (related document(s)4) (McCaffrey, Dawn) (Entered: 02/13/2020) |
| 02/13/2020 | 6<br>(2 pgs; 2 docs) | Clerk's Entry of Default against REID PASWALL (related document(s)4) (McCaffrey, Dawn) (Entered: 02/13/2020) |
| 02/15/2020 | 7<br>(2 pgs) | Certificate of Mailing Re: Clerk's Entry of Default (related document(s) (Related Doc # 5)) . Notice Date 02/15/2020. (Admin.) (Entered: 02/16/2020) |

A.2

| 02/15/2020 | 8<br>(2 pgs) | Certificate of Mailing Re: Clerk's Entry of Default (related document(s) (Related Doc # 6)) . Notice Date 02/15/2020. (Admin.) (Entered: 02/16/2020) |
| --- | --- | --- |
| 03/24/2020 | 9<br>(205 pgs; 19 docs) | Motion for Default Judgment (related document(s)6, 5) filed by David A. Blansky on behalf of Mark S. Tulis. with hearing to be held on 6/19/2020 at 10:00 AM at Courtroom TBA, White Plains Courthouse (RDD) Responses due by 6/12/2020, (Attachments: # 1 Exhibit 1 - Summons, Complaint with Exhibit and AOS # 2 Exhibit 2 - Excerpts of Debtor's Examination # 3 Exhibit 3 - Restraining Order Hearing Transcript # 4 Exhibit 4 - Court Ordered Stipulation # 5 Exhibit 5 - Civil Contempt Order # 6 Exhibit 6 - Santana Judgment # 7 Exhibit 7 - TCF Summons and Complaint # 8 Exhibit 8 - TCF Judgment # 9 Exhibit 9 - Judgment of Divorce (redacted) # 10 Exhibit 10 - Matrimonial Order # 11 Exhibit 11 - Matrimonial Stipulation # 12 Exhibit 12 - 2014 Deed from Brenda Paswall to Debtor # 13 Exhibit 13 - January 2015 Mortgage # 14 Exhibit 14 - Mortgage Modification # 15 Exhibit 15 - Brenda Paswall Obituary # 16 Exhibit 16 - September 2015 E-Mail # 17 Exhibit 17 - Proposed Order for Default Judgment # 18 Exhibit 18 - Proposed Judgment) (Blansky, David) (Entered: 03/24/2020) |
| 04/23/2020 | 10<br>(2 pgs) | Affidavit of Service (related document(s)9) Filed by David A. Blansky on behalf of Mark S. Tulis. (Blansky, David) (Entered: 04/23/2020) |
| 06/12/2020 | 11<br>(76 pgs; 7 docs) | Motion to Dismiss Adversary Proceeding (related document(s)9) filed by Lowell B Davis on behalf of Grant Paswall, Reid Paswall. with hearing to be held on 6/19/2020 at 09:30 AM at Courtroom TBA, White Plains Courthouse (RDD) (Attachments: # 1 Exhibit PROPOSED ANSWER # 2 Exhibit Trustee Adversary Complaint # 3 Exhibit Westchester Action # 4 Exhibit Affidavits Service # 5 Exhibit ist Trustee Adversary Proceeding # 6 Exhibit Letter) (Davis, Lowell) (Entered: 06/12/2020) |
| 06/16/2020 | 12<br>(18 pgs; 3 docs) | Reply to Motion (related document(s)11, 9) filed by David A. Blansky on behalf of Mark S. Tulis. (Attachments: # 1 Exhibit 1 - Affirmation # 2 Exhibit 2 - Affirmation) (Blansky, David) (Entered: 06/16/2020) |
| 06/16/2020 | 13<br>(2 pgs) | Affidavit of Service (related document(s)12) Filed by David A. Blansky on behalf of Mark S. Tulis. (Blansky, David) (Entered: 06/16/2020) |
| 06/22/2020 | 14<br>(2 pgs) | Opposition filed by Lowell B Davis on behalf of Grant Paswall, Reid Paswall. (Davis, Lowell) (Entered: 06/22/2020) |
| 06/29/2020 | 15<br>(3 pgs) | Order signed on 6/29/2020 Granting Motion for Default Judgment (Related Doc # 9) . (Walker, Justin) (Entered: |

A.3

| | | |
|---|---|---|
| | | 06/29/2020) |
| 06/29/2020 | 16<br>(2 pgs) | Judgment by Default signed on 6/29/2020. (Walker, Justin) (Entered: 06/29/2020) |
| 06/29/2020 | 17<br>(62 pgs) | Transcript regarding Hearing Held on 06/19/2020 at 11:30 am RE: Motion for Default Judgment (related documents 6, 5); Motion to Dismiss Adversary Proceeding (related document 9). Remote electronic access to the transcript is restricted until 9/28/2020. The transcript may be viewed at the Bankruptcy Court Clerks Office. [Transcription Service Agency: eScribers, LLC.]. (See the Courts Website for contact information for the Transcription Service Agency.) (RE: related document(s) 6, 9, 5). Notice of Intent to Request Redaction Deadline Due By 7/6/2020. Statement of Redaction Request Due By 7/20/2020. Redacted Transcript Submission Due By 7/30/2020. Transcript access will be restricted through 9/28/2020. (Lewis, Tenille) (Entered: 06/30/2020) |
| 07/02/2020 | 18<br>(2 pgs) | Affidavit of Service *via E-Mail to Lowell Davis, Esq., attorney for Defendants* (related document(s)16, 15) Filed by David A. Blansky on behalf of Mark S. Tulis. (Blansky, David) (Entered: 07/02/2020) |
| 07/06/2020 | 19<br>(7 pgs) | Notice of Appeal filed by Lowell B Davis on behalf of Grant Paswall, Reid Paswall. (Davis, Lowell) (Entered: 07/06/2020) |
| 07/07/2020 | | Receipt of Notice of Appeal( 19-08713-rdd) [appeal,97] ( 298.00) Filing Fee. Receipt number A14118154. Fee amount 298.00. (Re: Doc # 19) (U.S. Treasury) (Entered: 07/07/2020) |
| 07/09/2020 | 20<br>(2 pgs) | Affidavit of Service *via FIRST CLASS MAIL* (related document(s)16, 15) Filed by David A. Blansky on behalf of Mark S. Tulis. (Blansky, David) (Entered: 07/09/2020) |
| 07/13/2020 | 21<br>(2 pgs) | Designation of Contents (appellant). filed by Lowell B Davis on behalf of Grant Paswall, Reid Paswall. Record transmission due by 7/20/2020, (Davis, Lowell) (Entered: 07/13/2020) |
| 07/13/2020 | 22<br>(1 pg) | Statement of Issues (related document(s)21, 19) filed by Lowell B Davis on behalf of Grant Paswall, Reid Paswall. (Davis, Lowell) (Entered: 07/13/2020) |
| 07/14/2020 | 23<br>(2 pgs) | Counter Designation (appellee) (related document(s)21) filed by David A. Blansky on behalf of Mark S. Tulis. (Blansky, David) (Entered: 07/14/2020) |
| 07/14/2020 | 24<br>(2 pgs) | [Incorrect pdf attachnment--to be refiled] Affidavit of Service (related document(s)23) Filed by David A. Blansky on behalf of Mark S. Tulis. (Blansky, David) Modified on 7/15/2020 (Correa, Mimi). (Entered: 07/14/2020) |

A.4

| 07/15/2020 | [25](#) (2 pgs) | Affidavit of Service (related document(s)23) Filed by David A. Blansky on behalf of Mark S. Tulis. (Blansky, David) (Entered: 07/15/2020) |
| --- | --- | --- |
| 07/21/2020 | [26](#) (1 pg) | Civil Cover Sheet from U.S. District Court, Case Number: 20-cv-5624 Judge Kenneth M. Karas (related document(s)19) (Rouzeau, Anatin). (Entered: 07/21/2020) |
| 07/24/2020 | [27](#) (2 pgs; 2 docs) | Notice of Transmittal of Record of Appeal. All documents have been filed with the United States District Court for the Southern District of New York. Record of Appeal is Complete and Available Electronically under Civil Case Number 20-cv-5624 assigned to the Honorable Kenneth M. Karas. Check the District Court Docket Sheet for the Briefing Schedule. (related document(s)19) (Rouzeau, Anatin). (Entered: 07/24/2020) |

| **PACER Service Center** | | | |
| --- | --- | --- | --- |
| **Transaction Receipt** | | | |
| 11/15/2020 19:51:08 | | | |
| **PACER Login:** | ld000006 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 19-08713-rdd Fil or Ent: filed Doc From: 0 Doc To: 99999999 Format: html Page counts for documents: included |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

A.5

**DE1, Complaint (Nov. 22, 2019) [A.6-23]**

**LaMONICA HERBST & MANISCALCO, LLP**
3305 Jerusalem Avenue
Wantagh, New York 11793
Telephone: (516) 826-6500
David A. Blansky, Esq.
Salvatore LaMonica, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:                                                Chapter 7

BRUCE J. PASWALL,                                     Case No. 19-23623 (RDD)

        Debtor.
-----------------------------------------------------------x
MARK S. TULIS, as Chapter 7
Trustee of the Estate of Bruce J. Paswall,

                                  Adv. Pro. No.

        Plaintiff,

    -against-

GRANT PASWALL and REID PASWALL,                       **COMPLAINT**

        Defendants.
-----------------------------------------------------------x

Plaintiff Mark S. Tulis, as Chapter 7 Trustee (the "Plaintiff") of the estate of Bruce J.

Paswall (the "Debtor"), by his attorneys, LaMonica Herbst & Maniscalco, LLP, as and for his

complaint against defendants Grant Paswall ("Grant") and Reid Paswall ("Reid") (collectively,

the "Defendants"), alleges as follows:

**JURISDICTION AND VENUE**

1.      Since this action arises under the Debtor's pending Chapter 7 bankruptcy case, the

United States Bankruptcy Court for the Southern District of New York (the "Court") has

jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334 and Rules 6009 and 7001 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2.      The statutory predicates for the claims asserted herein are sections 541, 542, 544, 550, and 551 of Title 11 of the United States Code (the "Bankruptcy Code"), sections 273, 273-a, 274, 275, 276, and 276-a of New York Debtor and Creditor Law (the "DCL"), Bankruptcy Rules 6009 and 7001, and New York common law.

3.      This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H), and (O).

4.      Pursuant to 28 U.S.C. § 1409(a), this Court is the proper venue for this proceeding.

5.      In accordance with Bankruptcy Rule 7008, Plaintiff consents to the entry of final orders and judgment by this Court if it is determined that this Court, absent the consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## BACKGROUND

### A.      Procedural Background

6.      On September 11, 2019, the Debtor filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code in this Court.

7.      Plaintiff was appointed as the Chapter 7 Trustee of this estate and, by operation of law, Plaintiff is the permanent Chapter 7 Trustee of this estate.

### B.      The Parties

8.      Grant is the adult son of the Debtor and the Debtor's former spouse, Debra Paswall ("Debra"), and an individual residing in Mahopac, New York.

9.      Reid is the adult son of the Debtor and Debra and an individual residing at the Real Property (as defined below).

A.7

10.     Plaintiff is authorized to file this action pursuant to Bankruptcy Code § 323 and Bankruptcy Rule 6009.

**C.      The Santana Lawsuit, Restraining Order and Judgment**

11.     In 2008, Marlena Santana, Yasminda Davis and Melissa Rodriguez (the "Santana Parties") commenced an action in the Supreme Court of the State of New York, County of Bronx (the "State Court"), under Index No. 305261/2008 against G.E.B. Medical Management, Inc. ("G.E.B.") and the Debtor arising from claims for pregnancy discrimination (the "Santana Lawsuit").

12.     On September 15, 2015, a jury rendered a verdict in favor of the Santana Parties awarding $1.5 million in compensatory/emotional distress damages, $1.5 million in punitive damages, and certain lost wages.

13.     Pending the entry of judgment following the jury verdict, pursuant to CPLR § 5229, on September 15, 2015, the State Court entered an order imposing restraints on the Debtor and G.E.B. intended to have the same effect as if a restraining notice had been served on them (the "Restraining Order").

14.     The Restraining Order was expressly continued by the State Court by stipulation so-ordered by the Court on January 11, 2016.

15.     The So-Ordered Stipulation (the "So-Ordered Stipulation") required the Debtor and G.E.B. to produce documents and information to the Santana Parties by February 7, 2016, and to appear for examinations under CPLR § 5229 no later than March 7, 2016.

16.     The Debtor and G.E.B. failed to comply with their obligations under the So-Ordered Stipulation.

17.     On September 16, 2016, the Santana Parties moved to hold the Debtor and G.E.B. in contempt.

A.8

18. While the motion for contempt was pending, the Deed (defined below) was recorded.

19. On October 18, 2017, the State Court issued an order adjudicating the Debtor and G.E.B. to be in contempt for failure to comply with the So-Ordered Stipulation.

20. On January 24, 2018, a judgment was entered in favor of the Santana Parties and against the Debtor and G.E.B. in a sum of $4,223,242.65 (the "Judgment").

**D.** **The TCF Lawsuit**

21. On February 5, 2016, TCF Equipment Finance, a division of TCF National Bank f/k/a TCF Equipment Finance, Inc. ("TCF") commenced an action against the Debtor and G.E.B. in the Supreme Court of the State of New York, County of New York, under Index No. 650611/2016, in which it sought money damages arising from G.E.B.'s default under a certain equipment lease and the Debtor's unconditional personal guaranty of that lease (the "TCF Lawsuit").

22. On December 24, 2018, judgment was granted in favor of TCF and against the Debtor and G.E.B. in the total sum of $301,746.91 (the "TCF Judgment").

**E.** **The Matrimonial Action**

23. While the Santana Lawsuit was pending, Debra commenced an action for divorce against the Debtor in the Supreme Court of the State of New York, County of Westchester (the "Matrimonial Action").

24. A judgment of divorce was entered on June 12, 2012, which incorporated by reference a certain stipulation placed on the record on December 12, 2011.

25. In January 2014, the equitable distribution provisions of that stipulation were vacated and the judgment of divorce was modified.

A.9

26.     Subsequently, the Debtor and Debra reached a settlement intended to resolve all of the issues emanating from the Matrimonial Action, which settlement was executed by each of them before a notary in October 2014 (the "Matrimonial Stipulation").

27.     The Matrimonial Stipulation provided, among other things, that Debra would convey all of her right, title and interest in the real property known as, and located at, 13 Logging Road, Katonah, New York 10536, designated Section 59.5 Block 2 Lot 2 on the Tax Map of the Town of Somers, County of Westchester (the "Real Property") to the Debtor.

28.     Upon information and belief, the Debtor and Debra had resided at the Real Property from its purchase in 1992 until sometime in 2012.

29.     Upon information and belief, Debra ceased to reside at the Real Property in 2012.

30.     The Debtor continued to reside at the Real Property, to the exclusion of Debra, subsequent to her departure in 2012.

31.     Upon information and belief, the Debtor's girlfriend subsequently moved in with him at the Real Property and continues to reside there.

32.     By deed recorded December 19, 2014, Debra conveyed all of her right, title and interest in the Real Property to the Debtor.

33.     At that time, Debra had not resided at the Real Property for several years and the Debtor was residing there with his girlfriend and one or more of Defendants.

34.     The Debtor took Debra's right, title and interest in the Real Property subject to a first mortgage lien granted in favor of GE Capital Mortgage Services, Inc. in 1992, which mortgage has since been assigned to Wells Fargo Home Mortgage (the "First Mortgage").

35.     Upon information and belief, the Debtor has been the sole source of the payments of the First Mortgage since Debra left the Real Property.

A.10

36.     As of the Filing Date, $97,447.00 was owed to Wells Fargo Home Mortgage on the First Mortgage.

37.     Under the Matrimonial Stipulation, the Debtor was to pay Debra $300,000.00 in two installments of $150,000.00.

38.     As security for the performance by the Debtor, the Debtor was to execute a bargain and sale deed transferring and conveying his right, title and interest in the Real Property to Debra (defined therein as the "Return Deed"), which deed was to be held in escrow.

39.     The first installment was to be paid from proceeds of a mortgage to be sought by the Debtor within ten (10) days of his closing on the loan.

40.     The second installment was to be paid within six (6) months of the date of the closing on the initial financing.

41.     The Matrimonial Stipulation provided, among other things, that in the event of a default in making either of the $150,000.00 payments within the time provided for each therein or satisfying an order awarding counsel fees within thirty (30) days of entry, the Debtor would be in default.

42.     The Matrimonial Stipulation provided that in the event of an uncured default the Real Property would immediately be marketed for sale with the unpaid funds due Debra being paid from the net proceeds of sale, together with an additional $25,000.00, representing her legal fees, costs and expenses associated with the default, and the remaining net proceeds would be paid to the Debtor.

43.     The Matrimonial Stipulation provided that if the initial payment of $150,000.00 was made by the Debtor, the release of the Return Deed to Debra would be conditioned upon either Debra's repayment to the Debtor of $150,000.00 or her demonstration that she had

A.11

satisfied the Debtor's obligations arising from the initial financing obtained to fund the first $150,000.00 payment.

44.     Rather than execute the Return Deed in the form provided by the Matrimonial Stipulation, the Debtor executed a deed by which all of his right, title and interest in the Real Property would be conveyed to Debra and Defendants as joint tenants, with right of survivorship, by which the Debtor also preserved a life estate for himself (the "Deed"). A fair and accurate copy of the Deed is annexed as Exhibit "A".

45.     Upon information and belief, the Deed was delivered to counsel for one of the litigants to the Matrimonial Action to hold in escrow.

46.     The Matrimonial Stipulation neither provided for the conveyance of title to Defendants nor the Debtor's preservation of a life estate.

47.     On or about January 16, 2015, the Debtor entered into a home equity line of credit loan secured by a mortgage against the Real Property by which he borrowed $195,000.00 (the "Initial Financing Loan").

48.     The Debtor was the sole borrower for the Initial Financing Loan.

49.     That mortgage was recorded against the Real Property on February 17, 2015.

50.     Upon information and belief, the Debtor paid Debra the initial $150,000.00 from the proceeds of the Initial Financing Loan in or about late January 2015.

51.     Upon information and belief, the Debtor used the balance of the proceeds of the Initial Financing Loan to make improvements to the Real Property.

52.     Subsequent to the issuance of the Restraining Order by the State Court, the Debtor sought a modification of the Initial Financing Loan to increase the principal amount borrowed by $155,000.00 to a total principal sum of $350,000.00 (the "Modification Loan").

53. In or about December 2015, subsequent to the deadline for the second installment of $150,000.00 and while the Restraining Order was in effect, the Debtor was granted the Modification Loan and closed on the Modification Loan.

54. In connection with the Modification loan, the Debtor executed a mortgage modification agreement on December 5, 2015 by which the indebtedness secured against the Real Property owed to the lender under the Initial Financing Loan was increased to the principal sum of $350,000.00.

55. As of the Filing Date, the balance of $348,479.00 was owed to KeyBank NA in connection with the Modification Loan.

56. The Debtor did not pay Debra the second $150,000.00 installment from the proceeds of the Modification Loan.

57. The Debtor primarily used the proceeds of the Modification Loan to renovate and improve the Real Property.

58. Upon information and belief, the Debtor subsequently made additional monthly payments of $5,000.00 to Debra, totaling approximately $80,000.00.

59. Upon information and belief, the Real Property was never listed for sale as a consequence of the Debtor's default in paying the second installment of $150,000.00.

60. Debra neither repaid the initial $150,000.00 paid by the Debtor in January 2015 nor satisfied the Initial Financing Loan.

61. Upon information and belief, the conditions precedent to the release of the Return Deed were never satisfied.

62. Upon information and belief, between 2012 and early 2017, the Debtor demolished, renovated and improved nearly the entire interior of the Real Property, with the exception of the basement.

A.13

63.     In the process he, among other things, gutted and renovated the kitchen and bathrooms and installed high-end cabinets, fixtures and custom closets.

64.     The Debtor also replaced the roof and HVAC systems and installed new flooring throughout the house, which included radiant heat.

65.     Upon information and belief, the Debtor expended between $200,000.00 and $400,000.00 over time to renovate and improve the Real Property.

66.     The Debtor continued to exercise control over, improve and utilize the Real Property as if it were his own subsequent to the delivery of the Deed into escrow and the recording of the Deed.

**F.**     **The Transfer of the Real Property**

67.     On January 27, 2017 the Deed was recorded.  <u>See</u> Exhibit "A".

68.     Upon information and belief, the Deed was released from escrow in violation of the terms of the Matrimonial Stipulation.

69.     The recording and endorsement page for the Deed reflects that no transfer tax was paid in connection with the transfer of title from the Debtor.  <u>See</u> Exhibit "A".

70.     The recording and enforcement page reflects that the Deed was to be recorded and returned to the Debtor at the Real Property.  <u>See</u> Exhibit "A".

71.     Upon information and belief, the Deed was returned to the Debtor following its recording.

72.     The Debtor failed to receive fair consideration in exchange for conveying title to Debra and Defendants.

73.     Debra passed away on April 17, 2019.

74.     As joint tenants with a right of survivorship, Defendants equally acquired Debra's one-third interest in the Real Property conveyed by the Deed upon Debra's passing.

A.14

75.     The Deed effectuated a transfer of an interest in the Real Property for less than fair consideration or reasonably equivalent value.

76.     At the time of the recording of the Deed, the jury had already rendered a verdict against the Debtor and in favor of the Santana Parties for more than $3 million.

77.     At the time of the recording of the Deed, the Debtor and G.E.B. were subject to a restraining order issued by the State Court and a motion to hold them in contempt for failure to comply with their discovery obligations under the So-Ordered Stipulation pending before the State Court.

78.     Upon information and belief, the Real Property is comprised of a 1.58-acre lot.

79.     Upon information and belief, a 4,170 sq. ft. single-family residence was constructed on the Real Property in 1992.

80.     Upon information and belief, the house contains four (4) bedrooms and four (4) bathrooms.

81.     Upon information and belief, at all times relevant, the Town of Somers Tax Assessor has estimated the fair market value of the Real Property to be no less than $1.1 million.

82.     The Real Property had substantial equity estimated to be no less than $600,000.00 at the time of the recording of the Deed.

83.     Upon information and belief, there existed $650,000.00 in equity in the Real Property on the Filing Date.

84.     Upon information and belief, the Debtor has continued to pay the First Mortgage and Modification Loan post-petition.

85.     The Debtor had at least one (1) creditor at the time of recording of the Deed who was unpaid as of the Filing Date.

A.15

86.     The Debtor had creditors holding unsecured claims against him at the time of the recording of the Deed, including, but were not limited to, the Santana Parties and TCF.

87.     The Debtor has testified that the Deed was prepared with the intent to "leave the house" to Defendants.

88.     In an e-mail authored by the Debtor and transmitted to Debra on September 29, 2015, shortly after the adverse jury verdict in favor of the Santana Parties, the Debtor stated his desire to "protect what only asset there is to leave to the children."

89.     The Debtor recorded the Deed with the intent to hinder, delay, and defraud his creditors.

90.     Defendants received the Deed with actual intent to hinder, delay or defraud the Debtor's creditors.

91.     Defendants accepted the Deed with knowledge of its avoidability and lacked good faith.

92.     Upon information and belief, the Debtor was insolvent at the time of the recording of the Deed or was rendered insolvent by the recording of the Deed.

93.     At the time of the recording of the Deed, the Debtor intended to incur, or believed that he would incur debts that would be beyond his ability to pay as such debts matured.

94.     Upon information and belief, the equity in the Real Property exceeds all liens, claims, or encumbrances on the Real Property.

## FIRST CLAIM FOR RELIEF
### (Fraudulent Conveyance Pursuant to DCL § 273)

95.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "94" as if set forth fully herein.

96.     At the time of recording of the Deed, the Debtor was insolvent or were rendered insolvent as a result of recording of the Deed.

A.16

97.     The Debtor did not receive fair consideration in exchange for the Deed.

98.     The recording of the Deed constitutes a fraudulent conveyance in violation of DCL § 273.

99.     Pursuant to Bankruptcy Code §§ 544(b), 550, and 551, and DCL § 273, Plaintiff may avoid the Deed and preserve it for the benefit of the Debtor's estate.

100.    Accordingly, Plaintiff is entitled to judgment against Defendants: (a) avoiding and setting aside the Deed pursuant to DCL § 273; (b) preserving the Deed for the benefit of the estate; (c) directing the Clerk of Westchester County to strike the Deed from the public record; and (d) awarding an amount to be determined by the Court, but not less than $650,000.00, plus interest thereon, attorney's fees and costs.

## SECOND CLAIM FOR RELIEF
### (Fraudulent Conveyance Pursuant to DCL § 273-a)

101.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "100" as if set forth fully herein.

102.    The Debtor did not receive fair consideration from Defendants in exchange for the Deed.

103.    At the time the Deed was recorded, the Debtor was the subject of a claim for money damages no less than two lawsuits, including the Santana Lawsuit and the TCF Lawsuit.

104.    As reflected in Schedule F to the Debtor's Petition, the Debtor's creditors are owed more than $4 million arising from debts incurred prior to the Filing Date.

105.    The Santana Judgment was entered against the Debtor and Q.E.B. on January 24, 2018.

106.    The TCF Judgment was entered December 24, 2018.

107.    The Santana Judgment and TCF Judgment remained unsatisfied as of the Filing Date.

108.    The recording of the Deed constitutes a fraudulent conveyance in violation of New York State Debtor and Creditor Law § 273-a.

109.    Under Bankruptcy Code §§ 544(b), and 550, and New York State Debtor and Creditor Law § 273-a, Plaintiff may avoid the Deed.

110.    Accordingly, Plaintiff is entitled to judgment against Defendants: (a) avoiding and setting aside the Deed pursuant to DCL § 273-a; (b) preserving the Deed for the benefit of the estate; (c) directing the Clerk of the County of Westchester to record the order of this Court striking the Deed from the public record; and (d) in an amount to be determined by the Court, but no less than $650,000.00, plus interest thereon, attorney's fees and costs.

### THIRD CLAIM FOR RELIEF
**(Fraudulent Conveyance Pursuant to DCL § 274)**

111.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "110" as if set forth fully herein.

112.    The Deed was recorded during the six (6) years preceding the Filing Date.

113.    The Debtor did not receive fair consideration in exchange for the Deed.

114.    Upon information and belief, at the time the Deed was recorded, the Debtor was engaged or was about to engage in a business or transaction for which the property remaining in his possession after the recording of the Deed constituted unreasonably small capital.

115.    The recording of the Deed constitutes a fraudulent conveyance in violation of DCL § 274.

116.    Pursuant to Bankruptcy Code §§ 544(b), 550, and 551, and DCL § 274, Plaintiff may avoid the Deed and preserve it for the benefit of the Debtor's estate.

117.    Accordingly, Plaintiff is entitled to judgment against Defendants: (a) avoiding and setting aside the Deed pursuant to DCL § 274; (b) preserving the Deed for the benefit of the estate; (c) directing the Clerk of the County of Westchester to record the order of this Court

A.18

striking the Deed from the public record; and (d) in an amount to be determined by the Court, but no less than $650,000.00, plus interest thereon, attorney's fees and costs.

## FOURTH CLAIM FOR RELIEF
### (Fraudulent Conveyance Pursuant to DCL § 275)

118.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "117" as if set forth fully herein.

119.    At the time of the recording of the Deed, the Debtor had incurred, or was intending to incur, debts beyond his ability to pay them as they became due.

120.    The Debtor did not receive fair consideration in exchange for the Deed.

121.    The recording of the Deed constitutes a fraudulent conveyance of the Debtor's assets in violation of DCL § 275.

122.    Pursuant to Bankruptcy Code §§ 544(b), 550, and 551, and DCL § 275, Plaintiff may avoid the Deed and preserve it for the benefit of the Debtor's estate.

123.    Accordingly, Plaintiff is entitled to judgment against Defendants: (a) avoiding and setting aside the Deed pursuant to DCL § 275; (b) preserving the Deed for the benefit of the estate; (c) directing the Clerk of the County of Westchester to record the order of this Court striking the Deed from the public record; and (d) in an amount to be determined by the Court, but no less than $650,000.00, plus interest thereon, attorney's fees and costs.

## FIFTH CLAIM FOR RELIEF
### (Fraudulent Conveyance pursuant to New York Debtor and Creditor Law § 276)

124.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "123" as if set forth fully herein.

125.    The Deed was recorded for the benefit of Defendants with the actual intent to hinder, delay, or defraud present or future creditors of the Debtor.

A.19

126.     Defendants are insiders of the Debtor within the meaning of § 101(31)(A)(i) of the Bankruptcy Code, as they are his sons.

127.     The Debtor's entry into the Modification Loan and withdrawal of $155,000.00 of the equity in the Real Property constituted a knowing and willful violation of the Restraining Order.

128.     The recording of the Deed constituted a knowing and willful violation of the Restraining Order.

129.     The Debtor used the funds to improve the Real Property rather than pay his creditors.

130.     The Debtor retained possession and use of the Real Property following the recording of the Deed.

131.     The Debtor failed to receive fair consideration for the Deed.

132.     The recording of the Deed effectuated an intra-family transfer for which the Debtor failed to receiver any tangible consideration.

133.     Upon information and belief, the Deed was recorded following the jury verdict in favor of the Santana Parties, while the Restraining Order was in effect, and during the pendency of the TCF Lawsuit for the purpose of removing the Real Property from the immediate reach of the Santana Parties, TCF and other creditors, while creating a means of allowing the Debtor to remain in possession.

134.     Pursuant to Bankruptcy Code §§ 544(b), 550, and 551, and DCL § 276, Plaintiff may avoid the Deed and preserve it for the benefit of the Debtor's estate.

135.     Accordingly, Plaintiff is entitled to judgment against Defendants: (a) avoiding and setting aside the Deed pursuant to DCL § 276; (b) preserving the Deed for the benefit of the estate; (c) directing the Clerk of the County of Westchester to record the order of this Court

A.20

striking the Deed from the public record; and (d) in an amount to be determined by the Court, but no less than $650,000.00, plus interest thereon, attorney's fees and costs.

## SIXTH CLAIM FOR RELIEF
### (Attorneys' Fees Pursuant to DCL § 276-a)

136.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "135" as if set forth fully herein.

137.     The Deed was recorded by, or on behalf of the Debtor and/or Defendants, with the actual intent to hinder, delay, or defraud present or future creditors of the Debtor.

138.     The Deed was received Defendants with the actual intent to hinder, delay, or defraud present or future creditors of the Debtor.

139.     Upon information and belief, Defendants knew of the pendency of the action commenced by the Santana Parties against the Debtor and G.E.B. and/or the jury verdict at the time the Deed was recorded.

140.     Upon information and belief, Defendants were aware of their parents' plan to convey title to the Real Property to them.

141.     Upon information and belief, Defendants were aware that they provided no consideration in exchange for the Deed.

142.     The recording of the Deed constitutes a fraudulent conveyance under DCL § 276-a.

143.     Accordingly, Plaintiff is entitled to judgment against Defendants, pursuant to DCL § 276-a, for reasonable attorneys' fees in an amount to be determined by the Court in connection with the prosecution of this action.

## SEVENTH CLAIM FOR RELIEF
### (Unjust Enrichment)

144.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "143" as if set forth fully herein.

A.21

145.     Defendants were enriched as a result of the recording of the Deed.

146.     The enrichment of Defendants was at the expense of the Debtor and the Debtor's bankruptcy estate.

147.     The circumstances relating to the recording of the Deed are such that equity and good conscience require that the Deed be avoided.

148.     Accordingly, judgment should be entered in favor of Plaintiff avoiding and setting aside the Deed.

**WHEREFORE**, Plaintiff demands judgment on her claims for relief against Defendant as follows:

1.     On the first claim for relief, a judgment, pursuant to DCL § 273, avoiding and setting aside the Deed, preserving the Deed for the benefit of the estate and directing the Westchester County Clerk to strike the Deed from the public record; and

2.     On the second claim for relief, a judgment, pursuant to DCL § 273-a, avoiding and setting aside the Deed, preserving the Deed for the benefit of the estate and directing the Westchester County Clerk to strike the Deed from the public record;

3.     On the third claim for relief, a judgment, pursuant to DCL § 274, avoiding and setting aside the Deed, preserving the Deed for the benefit of the estate and directing the Westchester County Clerk to strike the Deed from the public record;

4.     On the fourth claim for relief, a judgment, pursuant to DCL § 275, avoiding and setting aside the Deed, preserving the Deed for the benefit of the estate and directing the Westchester County Clerk to strike the Deed from the public record;

5.     On the fifth claim for relief, a judgment, pursuant to DCL § 276, avoiding and setting aside the Deed, preserving the Deed for the benefit of the estate and directing the Westchester County Clerk to strike the Deed from the public record;

A.22

6. On the sixth claim for relief, a judgment, pursuant to DCL § 276-a, for reasonable attorneys' fees in an amount to be determined by the Court in connection with the prosecution of this action;

7. On the seventh claim for relief, a judgment avoiding and setting aside the Deed;

8. For such other, further, and different relief as the Court may deem just and proper.

Dated: November 22, 2019
   Wantagh, New York

       **LAMONICA HERBST & MANISCALCO, LLP**
       Counsel to Plaintiff Mark S. Tulis, Chapter 7
       Trustee

   By:  ___***s/ David A. Blansky***___
       David A. Blansky, Esq.
       Salvatore LaMonica, Esq.
       3305 Jerusalem Avenue
       Wantagh, New York 11793
       Telephone: (516) 826-6500

m:\documents\company\cases\paswall, bruce j\adv pro\complaint re logging road.docx

A.23

The Office of the Westchester County Clerk: This page is part of the instrument; this County Clerk will rely on the information provided on this page for purposes of indexing this instrument. To the best of submitter's knowledge, the information contained on this Recording and Endorsement Cover Page is consistent with the information contained in the attached document.

*563643600DED004X*

## Westchester County Recording & Endorsement Page

### Submitter Information

| | | | |
|---|---|---|---|
| Name: | Premier Abstract, Ltd. | Phone: | 9142763040 |
| Address 1: | 352 Route 202 | Fax: | 9142763045 |
| Address 2: | | Email: | GMB@PremierAbstractLTD.com |
| City/State/Zip: | Somers NY 10589 | Reference for Submitter: | PASWALL 914-384-1722 |

### Document Details

| | | | |
|---|---|---|---|
| Control Number: | 563643600 | Document Type: | **Deed (DED)** |
| Package ID: | 2016122900282001002 | Document Page Count: | **2** | Total Page Count: | **4** |

### Parties

☑ Additional Parties on Continuation page

| 1st PARTY | | 2nd PARTY | |
|---|---|---|---|
| 1: PASWALL BRUCE | - Individual | 1: PASWALL BRENDA | - Individual |
| 2: | | 2: PASWALL REID | - Individual |

### Property

☐ Additional Properties on Continuation page

| | | |
|---|---|---|
| Street Address: | 13 LOGGING RD | Tax Designation: 59.5-2-2 |
| City/Town: | SOMERS | Village: |

### Cross- References

☐ Additional Cross-Refs on Continuation page

| 1: | 2: | 3: | 4: |
|---|---|---|---|

### Supporting Documents

1: RP-5217   2: TP-584

| Recording Fees | | Mortgage Taxes | |
|---|---|---|---|
| Statutory Recording Fee: | $40.00 | Document Date: | |
| Page Fee: | $15.00 | Mortgage Amount: | |
| Cross-Reference Fee: | $0.00 | | |
| Mortgage Affidavit Filing Fee: | $0.00 | Basic: | $0.00 |
| RP-5217 Filing Fee: | $125.00 | Westchester: | $0.00 |
| TP-584 Filing Fee: | $5.00 | Additional: | $0.00 |
| | | MTA: | $0.00 |
| Total Recording Fees Paid: | **$185.00** | Special: | $0.00 |

| Transfer Taxes | | | Yonkers: | $0.00 |
|---|---|---|---|---|
| Consideration: | $0.00 | | Total Mortgage Tax: | **$0.00** |
| Transfer Tax: | $0.00 | | | |
| Mansion Tax: | $0.00 | | Dwelling Type: | 1-2 Family | Exempt: ☐ |
| Transfer Tax Number: | 6819 | | Serial #: | |

| RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK | Record and Return To |
|---|---|
| Recorded: 01/27/2017 at 12:24 PM | ☐ Pick-up at County Clerk's office |
| Control Number: **563643600** | |
| Witness my hand and official seal | |
| | BRUCE PASWALL |
| | 13 LOGGING RD |
| STATE OF NEW YORK, COUNTY OF WESTCHESTER | |
| Timothy C. Idoni, Westchester County Clerk | KATONAH, NY 10536 |
| I, TIMOTHY C. IDONI, COUNTY CLERK AND CLERK OF THE SUPREME AND COUNTY COURTS, WESTCHESTER COUNTY DO HEREBY CERTIFY THAT I HAVE COMPARED THIS COPY WITH THE ORIGINAL THEREOF RECORDED IN MY OFFICE ON 1/27/17 AND THAT THE SAME IS A CORRECT TRANSCRIPT THEREFROM AND OF THE WHOLE OF SUCH ORIGINAL. IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND AND AFFIXED MY OFFICIAL SEAL. | |
| COUNTY CLERK AND CLERK OF THE SUPREME AND COUNTY COURTS, WESTCHESTER COUNTY, FEE PAID | |
| 4-13-18 | |

A.24

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

**THIS INDENTURE,** made the 3rd day of October in the year 2014

**BETWEEN**

BRUCE PASWALL, currently residing at 13 Logging Road, Katonah, New York 10536

10536

party of the first part, and BRENDA PASWALL, currently residing at 13 Logging Road, Katonah, New York 10536, REID PASWALL, residing at 13 Logging Road, Katonah, New York and Grant Paswall, residing at 13 Logging Road, Katonah, New York, as joint tenants with a right of survivorship,

10536                                          10536

party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of ten dollars and other valuable consideration paid by the party of the second part, does hereby remise, release and quitclaim unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Somers, County of Westchester and State of New York, known and designated as Lot No. 9M-2 on a certain sub-division map entitled "The Wood Lot, Section II", and filed in the Office of the Clerk of Westchester County, Division of Land Records on 11/21/89 as Map No. 23992.

THIS CONVEYANCE IS MADE IN THE ORDIANARY COURSE OF BUSINESS OF THE PARTY OF THE FIRST PART.

TITLE TO THE STREETS, ROADS AND AVENUES SHOWN ON THE AFORESAID MAP IS NOT CONVEYED HEREUNDER, BUT IS RESERVED FOR THE PURPOSES OF DEDICATION TO THE TOWN OF SOMERS.  EGRESS AND INGRESS OVER THE SAID STREETS, ROADS, AND AVENUES TO THE NEAREST PUBLIC HIGHWAY IS HEREBY GRANTED.

Said premises are known as Section 59.5- Block 2- Lot 2 on the Tax Assessment Map of the Town of Somers.

Being the same premises conveyed to the Grantor herein by Deed dated October 28, 2014, recorded in the County Clerk's office of Westchester County on 12|19|14 in Liber ———— page ———— of Deeds.
542953582

SUBJECT to a life estate in and to the subject property granted herein to Bruce Paswall, currently residing at 13 Logging Road, Katonah, New York 10536

**TOGETHER** with all right, title and interest, if any, of the party of the first part of, in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

**AND** the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

IN PRESENCE OF:

BRUCE PASWALL



A.25

## TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE IN NEW YORK STATE

State of New York, County of New York,  ss:

On the 30th day of October in the year 2014,
before me, the undersigned, personally appeared
       Bruce Paswall,

personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

State of New York, County of                                    ss:

On the         day of               in the year
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

LOUIS I. NEWMAN
Notary Public, State of New York
No. 02NE8133935
Qualified in New York County          2018
TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE OUTSIDE NEW YORK STATE

State (or District of Columbia, Territory, or Foreign Country) of                                    ss:

On the         day of               in the year               before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)  is (are)
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and
that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument, and that such individual made such appearance before the undersigned in the

_____ in _____
(insert the City or other political subdivision)            (and insert the State or Country or other place the acknowledgment was taken)

_____
(signature and office of individual taking acknowledgment)

**QUITCLAIM DEED**

Title No. _____

SECTION: 59.5

BLOCK: 2

LOT: 2

COUNTY OR TOWN: Town of Somers, Westchester County

BRUCE PASWALL
TO
BRENDA PASWALL

Recorded at Request of
New York Title Research Corp

RETURN BY MAIL TO:

HIRSHFELD & HIRSHFELD, ESQS
Attorneys At Law
301 North Main Street
Suite #4
New City, New York 10956

STANDARD FORM OF NEW YORK BOARD OF TITLE UNDERWRITERS

Distributed by

**New York Title Research Corp**
**www.nytitle.com**



A.26

**DE2, Summons with Notice of Pretrial Conf. (Dec. 5, 2019)**
**[A.27]**

## UNITED STATES BANKRUPTCY COURT
### Southern District of New York

In re: Bruce J Paswall                                                    Bankruptcy Case No.: 19–23623–rdd

Mark S. Tulis as Chapter 7 Trustee of the Estate of Bruce J. Paswall
                                    Plaintiff(s),

–against–                                                        Adversary Proceeding No. 19–08713–rdd
Grant Paswall
Reid Paswall

                                    Defendant(s)

## SUMMONS AND NOTICE OF PRETRIAL CONFERENCE
## IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons to the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days, to:

| Address of Clerk: |
|---|
| **Clerk of the Court** <br> **United States Bankruptcy Court** <br> **Southern District of New York** <br> **300 Quarropas Street** <br> **White Plains, NY 10601** |

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and Address of Plaintiff's Attorney: |
|---|
| **David A. Blansky** <br> **LaMonica Herbst & Maniscalco, LLP** <br> **3305 Jerusalem Avenue** <br> **Suite 201** <br> **Wantagh, NY 11793** |

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

YOU ARE NOTIFIED that a pretrial conference of the proceeding commenced by the filing of the complaint will be held at the following time and place:

| United States Bankruptcy Court <br> Southern District of New York <br> 300 Quarropas Street <br> White Plains, NY 10601 | Room: Courtroom 118, White Plains Courthouse, 300 Quarropas Street, White Plains, NY 10601 <br><br> Date and Time: 2/4/20 at 10:00 AM |
|---|---|

IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

Dated: 12/5/19                                        Vito Genna
                                    _____

                                    *Clerk of the Court*

                                    By: /s/  Mimi Correa
                                    _____

                                    *Deputy Clerk*

A.27

**DE3, Affidavit of Service, Summons (Dec. 16, 2019)**
**[A.28-29]**

LaMONICA HERBST & MANISCALCO, LLP
3305 Jerusalem Avenue
Wantagh, New York 11793
Telephone: (516) 826-6500
David A. Blansky, Esq.
Salvatore LaMonica, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re:                                              Chapter 7

BRUCE J. PASWALL,                                   Case No. 19-23623 (RDD)

           Debtor.
----------------------------------------------------------x

MARK S. TULIS, as Chapter 7
Trustee of the Estate of Bruce J. Paswall,
                                 Adv. Pro. No. 19-08713-RDD

           Plaintiff,

      -against-

GRANT PASWALL and REID PASWALL,

           Defendants.
----------------------------------------------------------x

## **AFFIDAVIT OF SERVICE**

STATE OF NEW YORK    )
                            ) ss.:
COUNTY OF NASSAU     )

      ROSA R. LELLA, being duly sworn, deposes and says:

      Deponent is not a party to the action, is over 18 years of age and resides in Suffolk County, NY.

      On December 5, 2019, deponent served the following documents by First-Class Mail upon the attorneys/parties listed below at the addresses listed, said addresses designated for that purpose, by depositing a true copy of same enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York:

           (1) ***Summons and Notice of Pretrial Conference in an Adversary Proceeding with Complaint; and***

           (2) ***Notice of Pendency***.

1

A.28

TO:   Grant Paswall
9 Summit Drive
Mahopac, New York 10541

Grant Paswall
13 Logging Road
Katonah, New York 10536
*Defendant*

Reid Paswall
13 Logging Road
Katonah, New York 10536
*Defendant*

***Courtesy copy to:***   Gary R. Gjertsen Esq
**CLAIR & GJERTSEN, ESQS.**
4 New King Street, Suite 140
West Harrison, NY 10604

*s/Rosa R. Lella*
ROSA R. LELLA

Sworn to before me
this 6th day of December 2019

*s/ Angela Colucci*
Angela Colucci
Notary Public, State of New York
No. 01CO4674875
Qualified in Nassau County
Commission Expires July 31, 2022

m:\documents\company\cases\paswall, bruce j\adv pro\aos - s&c, filed notice of pendency.docx

2

A.29

**DE4, Affirmation in Support of Default, David A. Blansky, Esq. (Feb. 12, 2020)**
**[A.30-32]**

**LaMONICA HERBST & MANISCALCO, LLP**
3305 Jerusalem Avenue
Wantagh, New York 11793
Telephone: (516) 826-6500
David A. Blansky, Esq.
Salvatore LaMonica, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                                                    Chapter 7

BRUCE J. PASWALL,                                           Case No. 19-23623 (RDD)

          Debtor.
------------------------------------------------------------x

MARK S. TULIS, as Chapter 7
Trustee of the Estate of Bruce J. Paswall,
                                                                         Adv. Pro. No. 19-08713-RDD
          Plaintiff,

    -against-

GRANT PASWALL and REID PASWALL,

          Defendants.
------------------------------------------------------------x

**AFFIRMATION IN SUPPORT OF REQUEST FOR A CERTIFICATE OF DEFAULT**
**AGAINST DEFENDANTS GRANT PASWALL AND REID PASWALL**

DAVID A. BLANSKY affirms, under penalties of perjury, the following:

    1.    I am an attorney at law licensed by the State of New York and admitted to practice

before this Court. I am a partner of LaMonica Herbst & Maniscalco, LLP, 3305 Jerusalem Avenue,

Wantagh, New York 11793, counsel to plaintiff Mark S. Tulis, as Chapter 7 Trustee ("Plaintiff")

of the estate of Bruce J. Paswall ("Debtor").

    2.    I submit this affirmation in support of Plaintiff's request for the issuance of a

certificate of default from the Clerk ("Clerk") of the Bankruptcy Court for the Southern District of

New York ("Court") against defendants Grant Paswall and Reid Paswall ("Defendants") in

accordance with Rule 7055(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules")

A.30

and Local Bankruptcy Rule 7055-1 of the Local Bankruptcy Rules for the Southern District of New York ("Local Rules").

3. On November 22, 2019, Plaintiff commenced this adversary proceeding by filing a complaint against Defendants ("Complaint"). See ECF No. 1.

4. On December 5, 2019, the Clerk issued a Summons and Notice of Pretrial Conference ("Summons"). See ECF No. 2.

5. On December 5, 2019, Plaintiff effectuated service on Defendants by serving copies of the Summons and Complaint by First Class Mail to, inter alia, both Defendants at 13 Logging Road, Katonah, New York 10536, and also serving Grant Paswall at 9 Summit Drive, Mahopac, New York 10541. True and correct copies of the Summons, Complaint and related Affidavit of Service are annexed as **Exhibit A**. The Debtor testified at the consensual Rule 2004 examination conducted on October 30, 2019 that his son, Grant Paswall, resided at 8 Summit Avenue, Mahopac, New York and that his son Reid Paswall resides with him at 13 Logging Road, Katonah, New York. Service of the Summons and Complaint was not returned as undeliverable.

6. Pursuant to the Summons, Defendants' deadline to respond to the Complaint was January 6, 2020. To date, Defendants have failed to respond to the Complaint. A copy of the docket maintained by the Clerk evidencing this fact is annexed as **Exhibit B**.

7. On February 4, 2020, the Court conducted an initial pre-trial conference in this action. Defendants failed to appear at the pre-trial conference.

8. Based on the foregoing, Plaintiff requests that the Clerk enter a certificate of default, pursuant to Bankruptcy Rule 7055(a) and Local Rule 7055-1, against Defendants.

9.     Rule 55(a) of the Federal Rules of Civil Procedure ("<u>Federal Rules</u>"), made applicable herein by Bankruptcy Rule 7055, provides that a default judgment is warranted "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."

10.     Here, entry of the certificate of default is warranted because Plaintiff has satisfied all of the criteria of Federal Rule 55. Specifically, the copies of the Summons, Complaint and Affidavit of Service, annexed as **<u>Exhibit A</u>**, establish that proper notice of this adversary proceeding was provided to Defendants and that Defendants' deadline to respond to the Complaint was January 6, 2020. Notwithstanding this, the docket confirms that Defendants have not responded to the Complaint. See **<u>Exhibit B</u>**.

11.     According to The Service Members Civil Relief Act website, Defendants were not in active duty status on the date of service of the Summons and Complaint.

12.     Accordingly, Plaintiff requests the Clerk enter a certificate of default against Defendants pursuant to Bankruptcy Rule 7055(a) and Local Bankruptcy Rule 7055-1.

Dated: February 12, 2020
        Wantagh, New York

**LAMONICA HERBST & MANISCALCO, LLP**
*Counsel to Plaintiff Mark S. Tulis, Chapter 7 Trustee*

By:     **<u>s/ David A. Blansky</u>**
        David A. Blansky, Esq.
        Salvatore LaMonica, Esq.
        3305 Jerusalem Avenue
        Wantagh, New York 11793
        Telephone: (516) 826-6500

m:\documents\company\cases\paswall, bruce j\adv pro\default judgment\affirm in support of req for certificate of default.docx

A.32

# UNITED STATES BANKRUPTCY COURT
## Southern District of New York

**DE5, Entry of Default, Grant Paswall (Feb. 13, 2020)**
**[A.33-34]**

In re: Bruce J Paswall                                    Bankruptcy Case No.: 19–23623–rdd

Mark S. Tulis as Chapter 7 Trustee of the Estate of Bruce J. Paswall
                              Plaintiff(s),

–against–                                                Adversary Proceeding No. 19–08713–rdd

Grant Paswall
Reid Paswall

                              Defendant(s)


### ENTRY OF DEFAULT

It appears from the record that the following defendant failed to plead or otherwise defend in this case as required by law.

| Name: | GRANT PASWALL |
|-------|---------------|

Therefore, default is entered against the defendant as authorized by Bankruptcy Rule 7055.


Dated: 2/13/20                                    Vito Genna
                                                 _____
                                                 *Clerk of the Court*

                                                 By: /s/  Dawn McCaffrey
                                                 _____
                                                 *Deputy Clerk*


A.33

**Notice Recipients**

| | | |
|---|---|---|
| District/Off: 0208–7 | User: | Date Created: 2/13/2020 |
| Case: 19–08713–rdd | Form ID: clkdflt | Total: 5 |

**Recipients submitted to the BNC (Bankruptcy Noticing Center) without an address:**

| | |
|---|---|
| pla | Mark S. Tulis |
| dft | Grant Paswall |
| dft | Reid Paswall |

TOTAL: 3

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| aty | David A. Blansky | dab@lhmlawfirm.com |
| aty | Salvatore LaMonica | sl@lhmlawfirm.com |

TOTAL: 2

A.34

# UNITED STATES BANKRUPTCY COURT
## Southern District of New York

**DE6, Entry of Default, Reid Paswall (Feb. 13, 2020)**
**[A.35-36]**

| | |
|---|---|
| In re: Bruce J Paswall | Bankruptcy Case No.: 19–23623–rdd |

Mark S. Tulis as Chapter 7 Trustee of the Estate of Bruce J. Paswall

Plaintiff(s),

–against–

Adversary Proceeding No. 19–08713–rdd

Grant Paswall
Reid Paswall

Defendant(s)

### ENTRY OF DEFAULT

It appears from the record that the following defendant failed to plead or otherwise defend in this case as required by law.

| Name: | REID PASWALL |
|---|---|

Therefore, default is entered against the defendant as authorized by Bankruptcy Rule 7055.

Dated: 2/13/20

Vito Genna
_____
*Clerk of the Court*

By: /s/ Dawn McCaffrey
_____
*Deputy Clerk*

A.35

# Notice Recipients

| | |
|---|---|
| District/Off: 0208−7 | User: | Date Created: 2/13/2020 |
| Case: 19−08713−rdd | Form ID: clkdflt | Total: 5 |

**Recipients submitted to the BNC (Bankruptcy Noticing Center) without an address:**

| | |
|---|---|
| pla | Mark S. Tulis |
| dft | Grant Paswall |
| dft | Reid Paswall |

TOTAL: 3

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| aty | David A. Blansky | dab@lhmlawfirm.com |
| aty | Salvatore LaMonica | sl@lhmlawfirm.com |

TOTAL: 2

A.36

# UNITED STATES BANKRUPTCY COURT
## Southern District of New York

**DE7, Certificate of Notice of Entry of Default, Grant Paswall (Feb. 15, 2020)**
**[A.37-38]**

In re: Bruce J Paswall                                                  Bankruptcy Case No.: 19–23623–rdd

Mark S. Tulis as Chapter 7 Trustee of the Estate of Bruce J. Paswall
                                        Plaintiff(s),

–against–                                                               Adversary Proceeding No. 19–08713–rdd
Grant Paswall
Reid Paswall

                                        Defendant(s)

### ENTRY OF DEFAULT

It appears from the record that the following defendant failed to plead or otherwise defend in this case as required by law.

| Name: | GRANT PASWALL |
|-------|---------------|

Therefore, default is entered against the defendant as authorized by Bankruptcy Rule 7055.

Dated: 2/13/20                                                          Vito Genna
                                                                        _____

                                                                        *Clerk of the Court*

                                                                        By: /s/  Dawn McCaffrey
                                                                        _____

                                                                        *Deputy Clerk*

A.37

United States Bankruptcy Court
Southern District of New York

Tulis,
        Plaintiff                                              Adv. Proc. No. 19-08713-rdd

Paswall,
        Defendant

## CERTIFICATE OF NOTICE

District/off: 0208-7        User:              Page 1 of 1              Date Rcvd: Feb 13, 2020
                           Form ID: clkdflt    Total Noticed: 0

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Feb 15, 2020.
    NO NOTICES MAILED.

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                   TOTAL: 0

          ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
dft           Grant Paswall
pla           Mark S. Tulis
dft           Reid Paswall
                                                                   TOTALS: 3, * 0, ## 0

Transmission times for electronic delivery are Eastern Time zone.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Feb 15, 2020                        Signature:  /s/Joseph Speetjens

---

## CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on February 13, 2020 at the address(es) listed below:
          David A. Blansky    on behalf of Plaintiff Mark S. Tulis dab@lhmlawfirm.com
          Salvatore  LaMonica   on behalf of Plaintiff Mark S. Tulis sl@lhmlawfirm.com
                                                                   TOTAL: 2

A.38

# UNITED STATES BANKRUPTCY COURT
## Southern District of New York

**DE8, Certificate of Notice of Entry of Default, Reid Paswall (Feb. 15, 2020)**
**[A.39-40]**

In re: Bruce J Paswall                                          Bankruptcy Case No.: 19–23623–rdd

Mark S. Tulis as Chapter 7 Trustee of the Estate of Bruce J. Paswall
                                          Plaintiff(s),

–against–                                                     Adversary Proceeding No. 19–08713–rdd
Grant Paswall
Reid Paswall

                                          Defendant(s)

### ENTRY OF DEFAULT

It appears from the record that the following defendant failed to plead or otherwise defend in this case as required by law.

| Name: | REID PASWALL |
|-------|--------------|

Therefore, default is entered against the defendant as authorized by Bankruptcy Rule 7055.

Dated: 2/13/20                                                Vito Genna
                                                             _____

                                                             *Clerk of the Court*

                                                             By: /s/  Dawn McCaffrey
                                                             _____

                                                             *Deputy Clerk*

A.39

United States Bankruptcy Court
Southern District of New York

Tulis,
    Plaintiff                                                     Adv. Proc. No. 19-08713-rdd

Paswall,
    Defendant

# CERTIFICATE OF NOTICE

District/off: 0208-7        User:                  Page 1 of 1              Date Rcvd: Feb 13, 2020
                           Form ID: clkdflt        Total Noticed: 0

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Feb 15, 2020.
  NO NOTICES MAILED.

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                               TOTAL: 0

        ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
dft          Grant Paswall
pla          Mark S. Tulis
dft          Reid Paswall
                                                                        TOTALS: 3, * 0, ## 0

Transmission times for electronic delivery are Eastern Time zone.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Feb 15, 2020                          Signature:  /s/Joseph Speetjens

---

## CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on February 13, 2020 at the address(es) listed below:
      David A. Blansky    on behalf of Plaintiff Mark S. Tulis dab@lhmlawfirm.com
      Salvatore  LaMonica    on behalf of Plaintiff Mark S. Tulis sl@lhmlawfirm.com
                                                                        TOTAL: 2

**DE9, Notice of Hearing and Motion for Entry of Default Judgment (Mar. 24, 2020)
[A.41-63]**

**LaMonica Herbst & Maniscalco, LLP**
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Tel. (516) 826-6500
David A. Blansky, Esq.
*Attorneys for Mark S. Tulis, as Chapter 7 Trustee
Of the Estate of Bruce J. Paswall*

Hearing Date: June 19, 2020 at 10:00 a.m.
Objections Due by: June 12, 2020 at 5:00 p.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

In re:                                          Chapter 7

BRUCE J. PASWALL,                               Case No. 19-23623 (RDD)

        Debtor.
-----------------------------------------------------------x

MARK S. TULIS, as Chapter 7
Trustee of the Estate of Bruce J. Paswall,

                              Adv. Pro. No. 19-08713 (RDD)

        Plaintiff,

    -against-

GRANT PASWALL and REID PASWALL,

        Defendants.
------------------------------------------------------------------x

### NOTICE OF HEARING AND MOTION FOR THE ENTRY OF AN ORDER FOR DEFAULT JUDGMENT AND DEFAULT JUDGMENT <u>AGAINST THE DEFENDANTS</u>

**PLEASE TAKE NOTICE** that, on <u>**June 19, 2020 at 10:00 a.m.**</u>, a hearing (the "<u>Hearing</u>") will be conducted before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, on the *Chapter 7 Trustee's Motion For the Entry of an Order for Default Judgment and Default Judgment Against Defendants* (the "Motion").

1

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Motion must be in writing and be filed, on or before **June 12, 2020 by 5:00 p.m.** as follows: (i) through the Court's NextGen system, which may be accessed through the internet at the Court's website at www.nysb.uscourts.gov and in portable document format (PDF) using Adobe Exchange Software for conversion; or (ii) if a party is unavailable to file electronically, such party shall submit the objection in PDF format on portable media in an envelope with the case name, case number, type and title of document, document number to which the objection refers and the file name on the outside of the envelope to the Clerk of the United States Bankruptcy Court, Southern District of New York, 300 Quarropas Street, White Plains, New York 10601. A courtesy copy should be simultaneously sent to the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601.

Dated: March 24, 2020
      Wantagh, New York

                        **LaMonica Herbst & Maniscalco, LLP**
                        Attorneys for Mark S. Tulis, solely as Chapter 7
                        Trustee of the Estate of Bruce J. Paswall

            By:      *s/ David A. Blansky*
                     David A. Blansky, Esq.
                     A Partner of the Firm
                     3305 Jerusalem Avenue
                     Wantagh, New York 11793
                     (516) 826-6500

A.42

**LaMonica Herbst & Maniscalco, LLP**
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Tel. (516) 826-6500
David A. Blansky, Esq.
*Attorneys for Mark S. Tulis, as Chapter 7 Trustee*
*Of the Estate of Bruce J. Paswall*

Hearing Date: June 19, 2020 at 10:00 a.m.
Objections Due by: June 12, 2020 at 5:00 p.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

In re:                                                Chapter 7

BRUCE J. PASWALL,                                     Case No. 19-23623 (RDD)

        Debtor.
----------------------------------------------------------x
MARK S. TULIS, as Chapter 7
Trustee of the Estate of Bruce J. Paswall,

                                    Adv. Pro. No. 19-08713-RDD

        Plaintiff,

        -against-

GRANT PASWALL and REID PASWALL,

        Defendants.
-------------------------------------------------------------------x

**DECLARATION IN SUPPORT OF MOTION FOR THE ENTRY OF**
**AN ORDER FOR DEFAULT JUDGMENT AND DEFAULT JUDGMENT**
**AGAINST THE DEFENDANTS**

      David A. Blansky, an attorney admitted to practice before the Courts of this State and this

Federal judicial district, declares, pursuant to 28 U.S.C. § 1746 that:

      1.      I am a partner of LaMonica Herbst & Maniscalco, LLP, attorneys for Plaintiff,

Mark S. Tulis, solely as the Chapter 7 Trustee ("Plaintiff") of the estate of Bruce J. Paswall (the

"Debtor"). Based upon my review of the records produced by the Debtor and certain of his

creditors, the examination of the Debtor conducted under Rule 2004 of the Federal Rules of

A.43

Bankruptcy Procedure on October 30, 2019, the files maintained by LH&M and my personal knowledge, I am familiar with the facts set forth herein.

2.       This affirmation is submitted in support of Plaintiff's motion (the "<u>Motion</u>") seeking the entry of: (a) an order under Bankruptcy Rule 7055 granting Plaintiff's motion for default; and (b) a judgment under Bankruptcy Rule 7055 against Defendants for their failure to answer, or otherwise respond to Plaintiff's complaint, avoiding and setting aside the Debtor's transfer of his interest in certain real property to Defendants.

3.       For the reasons set forth below, the relief sought in the motion is appropriate.

## <u>INTRODUCTION</u>

4.       In this case, Plaintiff seeks to avoid and recover the transfer of his interest in the real property known as, and located at, 13 Logging Road, Katonah, New York 10536, Section 59.5 Block 2 Lot 2 on the Tax Map of the Town of Somers, County of Westchester (the "<u>Real Property</u>"), made to Defendants by the Debtor by deed (the "<u>2017 Deed</u>") recorded January 27, 2017 (the "<u>Transfer</u>"), as both constructively and actually fraudulent conveyances and on other grounds.  A copy of the 2017 Deed is annexed as Exhibit "A" to the Complaint included in Exhibit "1" hereto.

5.       As demonstrated above and evidenced by the 2017 Deed annexed as Exhibit "A" to the Complaint, Defendants were the recipients of the Transfer and said Transfer was made without the Debtor receiving any consideration from Defendants.  <u>See</u> Exhibit "1".  Moreover, at the time of the Transfer, Debtor was a defendant in one or more actions for money damages that subsequently resulted in several multi-million-dollar judgments against him, which judgments remained unsatisfied on the Filing Date.

A.44

## BACKGROUND

6.        On September 11, 2019 (the "<u>Filing Date</u>"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court.

7.        Plaintiff was appointed as the Chapter 7 Trustee of this estate and, by operation of law, Plaintiff is the permanent Chapter 7 Trustee of this estate.

8.        Grant Paswall ("<u>Grant</u>") is the adult son of the Debtor and the Debtor's former spouse, Brenda Paswall ("<u>Brenda</u>"), and an individual residing in Mahopac, New York.

9.        Reid Paswall ("<u>Reid</u>") is the adult son of the Debtor and Brenda and an individual residing at the Real Property with the Debtor (as defined below).

## PROCEDURAL HISTORY OF THE ADVERSARY PROCEEDING

10.        This adversary proceeding (the "<u>Adversary Proceeding</u>") was commenced under 11 U.S.C. §§ 105, 541, 542, 544, 550 and 551, New York State Debtor and Creditor Law § 272, et seq., and Rules 6009 and 7001 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") by filing a complaint (the "<u>Complaint</u>") [ECF No. 1] seeking a judgment against Defendants.   A copy of the Complaint is annexed as part of Exhibit "1".

11.        Thereafter, the Clerk of the Court issued a Summons (the "<u>Summons</u>") on December 5, 2019. [ECF No. 2] A copy of the Summons is annexed as part of Exhibit "1".

12.        The Summons and Complaint were timely served upon Defendants in accordance with Bankruptcy Rule 7004 and Plaintiff electronically filed an affidavit of service evidencing timely service of the Summons and Complaint. [ECF No. 3] A copy of the affidavit of service is annexed as part of Exhibit "1".

A.45

13. Plaintiff served Defendants at their last known places of residence, which addresses were furnished by the Debtor under oath on October 30, 2019 at his examination under Rule 2004. Excerpts of the Debtor's testimony are annexed as Exhibit "2". <u>See</u> Exhibit "2", p. 25.

14. The Summons scheduled an initial pretrial conference on February 4, 2020. <u>See</u> Exhibit "1".

15. Defendants neither answered the Complaint nor appeared.

16. Plaintiff has performed his diligence and it does not appear either of Defendants was deployed in military service on the date of service of the Summons and Complaint.

## **DEFENDANTS' DEFAULT**

17. Pursuant to the Summons and Bankruptcy Rule 7004(e), the Defendants were required to file and serve a responsive pleading on or before January 6, 2020 (the "<u>Answer Deadline</u>"). <u>See</u> Exhibit "1".

18. Defendants failed to file or serve a responsive pleading by the Answer Deadline.

19. Defendants failed to appear at the February 4, 2020 pretrial conference.

20. Upon application of Plaintiff [ECF No. 4], the Clerk of the Court entered defaults against Defendants. [ECF Nos. 5 and 6]

21. To date, no attorney has filed a notice of appearance on the Defendants' behalf.

22. Insofar as Defendants have failed to defend against the Complaint, Plaintiff respectfully requests that this Court grant the Motion and enter the proposed order granting Plaintiff's motion for a default judgment and enter a judgment against Defendants.

A.46

## FACTS APPLICABLE TO CLAIMS FOR RELIEF

A.    *The Santana Lawsuit, Restraining Order and Judgment*

23.    In 2008, Marlena Santana, Yasminda Davis and Melissa Rodriguez (the "Santana Parties") commenced an action in the Supreme Court of the State of New York, County of Bronx (the "State Court"), under Index No. 305261/2008 against G.E.B. Medical Management, Inc. ("G.E.B.") and the Debtor arising from claims for pregnancy discrimination (the "Santana Lawsuit").

24.    On September 15, 2015, a jury rendered a verdict in favor of the Santana Parties awarding $1.5 million in compensatory/emotional distress damages, $1.5 million in punitive damages, and certain lost wages.

25.    Pending the entry of judgment following the jury verdict, pursuant to CPLR § 5229, on September 15, 2015, the State Court entered an order imposing restraint on the Debtor and G.E.B. intended to have the same effect as if a restraining notice had been served on them (the "Restraining Order"). The transcript of the proceeding before the State Court reflecting the entry of the Restraining Order is annexed as Exhibit "3".

26.    The Restraining Order was expressly continued by the State Court by stipulation so-ordered by the Court on January 11, 2016 (the "So-Ordered Stipulation").    A copy of the So-Ordered Stipulation is annexed as Exhibit "4".

27.    The So-Ordered Stipulation required the Debtor and G.E.B. to produce documents and information to the Santana Parties by February 7, 2016, and to appear for examinations under CPLR § 5229 no later than March 7, 2016. Id.

7

A.47

28.     The Debtor and G.E.B. failed to comply with their obligations under the So-Ordered Stipulation.

29.     On September 16, 2016, the Santana Parties moved to hold the Debtor and G.E.B. in contempt.

30.     While the motion for contempt was pending, the 2017 Deed was recorded.

31.     On October 18, 2017, the State Court issued an order adjudicating the Debtor and G.E.B. to be in contempt for failure to comply with the So-Ordered Stipulation. A copy of the order is annexed as Exhibit "5".

32.     On January 24, 2018, a judgment was entered in favor of the Santana Parties and against the Debtor and G.E.B. in a sum of $4,223,242.65 (the "Santana Judgment"). A copy of the Santana Judgment is annexed as Exhibit "6".

33.     The Santana Judgment continued to be outstanding on the Filing Date.  See Schedule A/B to the Debtor's Petition, pp. 13-14 and 20.

**B.     *The TCF Lawsuit***

34.     On February 5, 2016, TCF Equipment Finance, a division of TCF National Bank f/k/a TCF Equipment Finance, Inc. ("TCF") commenced an action against the Debtor and G.E.B. in the Supreme Court of the State of New York, County of New York, under Index No. 650611/2016, in which it sought money damages arising from G.E.B.'s default under a certain equipment lease and the Debtor's unconditional personal guaranty of that lease (the "TCF Lawsuit"). A copy of the summons and complaint in the TCF Lawsuit are annexed as Exhibit "7".

A.48

35.     On December 24, 2018, judgment was granted in favor of TCF and against the Debtor and G.E.B. in the total sum of $301,746.91 (the "TCF Judgment"). A copy of the TCF Judgment is annexed as Exhibit "8".

36.     The TCF Judgment continued to be outstanding on the Filing Date.   See Schedule A/B to the Debtor's Petition, p. 18.

**C.     The Matrimonial Action**

37.     While the Santana Lawsuit was pending, in or about 2012, Brenda commenced an action for divorce against the Debtor in the Supreme Court of the State of New York, County of Westchester (the "Matrimonial Action"). See Exhibit "2", p. 27.

38.     A judgment of divorce was entered on June 12, 2012, which incorporated by reference a certain stipulation placed on the record on December 12, 2011.  A copy of the judgment of divorce and stipulation are annexed as Exhibit "9".

39.     In January 2014, an order was entered by which the equitable distribution provisions of that stipulation were vacated and the judgment of divorce was modified. A copy of the January 2014 order is annexed as Exhibit "10".

40.     Subsequently, the Debtor and Brenda reached a settlement intended to resolve all of the issues emanating from the Matrimonial Action, which settlement was executed by each of them before a notary in October 2014 (the "Matrimonial Stipulation").   A fair and accurate copy of the Matrimonial Stipulation provided by the Debtor to Plaintiff is annexed as Exhibit "11".

41.     The Matrimonial Stipulation provided, among other things, that Brenda would convey all of her right, title and interest in the Real Property to the Debtor.   See Exhibit "11", p. 2, ¶ "1".

9

A.49

42.     The Debtor and Brenda had resided at the Real Property from its purchase in 1992 until sometime in 2012. See Exhibit "2", p. 22.

43.     Brenda ceased to reside at the Real Property in 2012. Id., p. 23.

44.     The Debtor continued to reside at the Real Property, to the exclusion of Brenda, subsequent to her departure in 2012.

45.     The Debtor's girlfriend subsequently moved in with him at the Real Property and continues to reside there. See Exhibit "2", p. 38.

46.     Pursuant to the Matrimonial Stipulation, by deed recorded December 19, 2014, Brenda conveyed all of her right, title and interest in the Real Property to the Debtor (the "2014 Deed").   A copy of 2014 Deed is annexed as Exhibit "12".   As a result, as of that date the Debtor became the sole fee owner of the Real Property.

47.     At that time, Brenda had not resided at the Real Property for several years and the Debtor was residing there with his girlfriend and one or more of Defendants. See Exhibit "2", p. 38.

48.     The Debtor took Brenda's right, title and interest in the Real Property subject to a first mortgage lien granted in favor of GE Capital Mortgage Services, Inc. in 1992, which mortgage has since been assigned to Wells Fargo Home Mortgage (the "First Mortgage"). See Exhibit "2", pp. 46-47; Schedule A/B to the Debtor's Petition, p. 20.

49.     The Debtor has been the sole source of the payments of the First Mortgage since Brenda left the Real Property. Id., pp. 47-48.

50.     As of the Filing Date, $97,447.00 was owed to Wells Fargo Home Mortgage on the First Mortgage. See Schedule A/B to the Debtor's Petition, p. 20.

A.50

51.     Under the Matrimonial Stipulation, the Debtor was to pay Brenda $300,000.00 in two installments of $150,000.00.   See Exhibit "11".

52.     As security for the performance by the Debtor, the Debtor was to execute a bargain and sale deed transferring and conveying his right, title and interest in the Real Property to Brenda (defined therein as the "Return Deed"), which deed was to be held in escrow.   Id.

53.     The first installment was to be paid from proceeds of a mortgage to be sought by the Debtor within ten (10) days of his closing on the loan.   Id.

54.     The second installment was to be paid within six (6) months of the date of the closing on the initial financing.   Id.

55.     The Matrimonial Stipulation provided, among other things, that in the event of a default in making either of the $150,000.00 payments within the time provided for each therein or satisfying an order awarding counsel fees within thirty (30) days of entry, the Debtor would be in default.   Id.

56.     The Matrimonial Stipulation provided that in the event of an uncured default the Real Property would immediately be marketed for sale with the unpaid funds due Brenda being paid from the net proceeds of sale, together with an additional $25,000.00, representing her legal fees, costs and expenses associated with the default, and the remaining net proceeds would be paid to the Debtor.   Id.

57.     The Matrimonial Stipulation provided that if the initial payment of $150,000.00 was made by the Debtor, the release of the Return Deed to Brenda would be conditioned upon either Brenda's repayment to the Debtor of $150,000.00 or her demonstration that she had satisfied

11

A.51

the Debtor's obligations arising from the initial financing obtained to fund the first $150,000.00 payment. Id.

58. Rather than execute a Return Deed in the form provided by the Matrimonial Stipulation, on October 3, 2014 the Debtor executed the 2017 Deed[1] by which all of his right, title and interest in the Real Property would be conveyed to Brenda and Defendants as joint tenants, with right of survivorship, by which the Debtor also preserved a life estate for himself. See Exhibit "1".

59. Upon information and belief, the Deed was delivered to counsel for one of the litigants to the Matrimonial Action to hold in escrow.

60. The Matrimonial Stipulation neither provided for the conveyance of title to Defendants nor the Debtor's preservation of a life estate. See Exhibit "11".

61. On or about January 16, 2015, the Debtor entered into a home equity line of credit loan secured by a mortgage against the Real Property by which he borrowed $195,000.00 (the "Initial Financing Loan"). A copy of the recorded mortgage relating to the Initial Financing Loan is annexed as Exhibit "13".

62. The Debtor was the sole borrower for the Initial Financing Loan. Id.

63. That mortgage was recorded against the Real Property on February 17, 2015. Id.

64. The Debtor paid Brenda the initial $150,000.00 from the proceeds of the Initial Financing Loan in or about late January 2015. See Exhibit "2", p. 65.

65. The Debtor used the balance of the proceeds of the Initial Financing Loan to make improvements to the Real Property. Id.

---

1 This deed has been designated the "2017 Deed" as it was not recorded until 2017.

66.     Subsequent to the issuance of the Restraining Order by the State Court, the Debtor sought a modification of the Initial Financing Loan to increase the principal amount borrowed by $155,000.00 to a total principal sum of $350,000.00 (the "Modification Loan"). A copy of the recorded mortgage relating to the Modification Loan is annexed as Exhibit "14".

67.     In or about December 2015, subsequent to the deadline for the second installment of $150,000.00 and while the Restraining Order was in effect, the Debtor was granted the Modification Loan and closed on the Modification Loan.

68.     In connection with the Modification loan, the Debtor executed a mortgage modification agreement on December 5, 2015 by which the indebtedness secured against the Real Property owed to the lender under the Initial Financing Loan was increased to the principal sum of $350,000.00.

69.     As of the Filing Date, the balance of $348,479.00 was owed to KeyBank NA in connection with the Modification Loan.   See Schedule A/B to the Debtor's Petition, p. 12.

70.     The Debtor did not pay Brenda the second $150,000.00 installment from the proceeds of the Modification Loan. See Exhibit "2", pp. 33, 48, 66-68.

71.     The Debtor primarily used the proceeds of the Modification Loan to renovate and improve the Real Property. Id.

72.     Upon information and belief, the Debtor subsequently made additional monthly payments of $5,000.00 to Brenda, totaling approximately $80,000.00. Id., p. 34.

73.     The Real Property was never listed for sale as a consequence of the Debtor's default in paying the second installment of $150,000.00.

74.     Brenda neither repaid the initial $150,000.00 paid by the Debtor in January 2015 nor satisfied the Initial Financing Loan.

75.     The conditions precedent to the release of the Return Deed were never satisfied.

76.     Between 2012 and early 2017, the Debtor demolished, renovated and improved nearly the entire interior of the Real Property, with the exception of the basement. See Exhibit "2", pp. 35-38.

77.     In the process he, among other things, gutted and renovated the kitchen and bathrooms and installed high-end cabinets, fixtures and custom closets. Id.

78.     The Debtor also replaced the roof and HVAC systems and installed new flooring throughout the house, which included radiant heat. Id.

79.     Upon information and belief, the Debtor expended between $200,000.00 and $400,000.00 over time to renovate and improve the Real Property. Id., at p. 37.

80.     The Debtor continued to exercise control over, improve and utilize the Real Property as if it were his own subsequent to the delivery of the 2017 Deed into escrow and the recording of the 2017 Deed.

### D. The Transfer of the Real Property

81.     The 2017 Deed was recorded on January 27, 2017 notwithstanding that it was purportedly executed in October 2014.   See Exhibit "1".

82.     As the foregoing demonstrates, the conveyance of title provided for in the 2017 Deed is inconsistent with the Matrimonial Stipulation.

83.     Moreover, the 2017 Deed was released from escrow in violation of the terms of the Matrimonial Stipulation.

A.54

84.     The recording and endorsement page for the Deed reflects that no transfer tax was paid in connection with the transfer of title from the Debtor.   See Exhibit "1".

85.     The recording and enforcement page reflect that the Deed was to be recorded and returned to the Debtor at the Real Property.   See Exhibit "1".

86.     Upon information and belief, the Deed was returned to the Debtor following its recording.

87.     The Debtor testified that Defendants did not provide him with any consideration for the Transfer. See Exhibit "2", p. 62.

88.     The Debtor failed to receive fair consideration in exchange for conveying title to Brenda and Defendants.

89.     Brenda passed away on April 17, 2019.   A copy of her obituary is annexed as Exhibit "15".

90.     As joint tenants with a right of survivorship, Defendants equally acquired Brenda's one-third interest in the Real Property conveyed by the 2017 Deed upon Brenda's passing.

91.     The 2017 Deed effectuated a transfer of an interest in the Real Property for less than fair consideration or reasonably equivalent value.

92.     At the time of the recording of the 2017 Deed, the jury had already rendered a verdict against the Debtor and in favor of the Santana Parties for more than $3 million.

93.     At the time of the recording of the Deed, the Debtor and G.E.B. were subject to a restraining order issued by the State Court and a motion to hold them in contempt for failure to comply with their discovery obligations under the So-Ordered Stipulation pending before the State Court.

A.55

94. Upon information and belief, the Real Property is comprised of a 1.58-acre lot.

95. Upon information and belief, a 4,170 sq. ft. single-family residence is situated on the Real Property.

96. Upon information and belief, the house contains four (4) bedrooms and four (4) bathrooms.

97. Upon information and belief, at all times relevant, the Town of Somers Tax Assessor has estimated the fair market value of the Real Property to be no less than $1.1 million.

98. The Real Property had substantial equity estimated to be no less than $600,000.00 at the time of the recording of the 2017 Deed.

99. Upon information and belief, there existed $650,000.00 in equity in the Real Property on the Filing Date.

100. The Debtor has continued to pay the First Mortgage and Modification Loan post-petition.

101. The Debtor had at least one (1) creditor at the time of recording of the 2017 Deed who was unpaid as of the Filing Date.

102. The Debtor had creditors holding unsecured claims against him at the time of the recording of the Deed, including, but were not limited to, the Santana Parties and TCF.

103. The Debtor has testified that the 2017 Deed was prepared with the intent to "leave the house" to Defendants. See Exhibit "2", p. 62.

104. In an e-mail authored by the Debtor and transmitted to Brenda on September 29, 2015, shortly after the adverse jury verdict in favor of the Santana Parties, the Debtor stated his

16

A.56

desire to "protect what only asset there is to leave to the children."  A copy of the e-mail is annexed as Exhibit "16".

105.    The Debtor recorded the 2017 Deed with the intent to hinder, delay, and defraud his creditors.

106.    Defendants received the 2017 Deed with actual intent to hinder, delay or defraud the Debtor's creditors.

107.    Defendants accepted the 2017 Deed with knowledge of its avoidability and lacked good faith.

108.    The Debtor was insolvent at the time of the recording of the 2017 Deed or was rendered insolvent by the recording of the 2017 Deed.

109.    At the time of the recording of the 2017 Deed, the Debtor intended to incur, or believed that he would incur debts that would be beyond his ability to pay as such debts matured.

110.    Upon information and belief, the equity in the Real Property exceeds all liens, claims, or encumbrances on the Real Property.

## BASIS FOR RELIEF AND ARGUMENT

111.    A court may enter a default judgment against a party when that party has failed to plead or otherwise defend their side of the case. That principle is governed by Rule 55 of the Federal Rules of Civil Procedure, made applicable here by Rule 7055 of the Federal Rules of Bankruptcy Procedure. Fed. R Civ. P. Rule 55 states, in pertinent part:

> (a) *Entry*. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

> (b) *Judgment*.  Judgment by default may be entered as follows:

(1) *By the Clerk.* When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or incompetent persons.

(2) *By the Court.* In all other cases the party entitled to a judgment by default shall apply to the court therefore; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action. the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application....

112. A default occurs if the defendant does not respond to the complaint within thirty days after the issuance of the summons. See Fed. R Bankr. P. 7012(a). See also, In re Macias, 324 B.R 181 (Bankr. E.D.N.Y. 2004).

113. In determining whether a default judgment is appropriate, "the court must accept as true all of the factual allegations of the complaint, except those relating to damages." Id at 3 186, citing, Au Bon Pain Corp., v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). Moreover, the clerk may enter a judgment when the claim is one for a sum certain, if furnished with an affidavit of the amount due and provided that defendant has been defaulted for failure to appear. Enron Oil Corp., v. Diakuhara, 10 F.3d 90, 94 (2d Cir. 1993).

114. Here, notwithstanding that Defendants were duly served with the Summons and Complaint, they have failed to appear and answer the Complaint. Consequently, they are in default.

115. "It is well settled under New York Debtor and Creditor Law § 273, that a

conveyance made by a grantor without consideration at the time when debts are outstanding raises

a presumption of insolvency." <u>Pereira v. Goldberger (In re Stephen Douglas, Ltd.)</u>, 174 B.R. 16, 21

(Bankr. E.D.N.Y. 1994) (citing <u>Feist v. Druckerman</u>, 70 F.2d 333, 334–35 (2d Cir. 1934)

("[T]here is a rule long standing in New York courts that a voluntary conveyance [without

consideration] made when the grantor is indebted is presumptively fraudulent. We think this

means that, if one indebted makes such a transfer, it is presumed, in the absence of some proof to

the contrary, that he was then insolvent.")). The District Court for the Eastern District has further

explained that

> While the burden of proving insolvency and lack of fair
> consideration is generally on the party challenging the
> conveyance, "where a transfer occurs without
> consideration, the defendant is presumed to have been
> insolvent at the time of the transfer and may only rebut the
> presumption by proving its continued solvency after the
> date of the transfer."

<u>Gasser v. Infanti Int'l, Inc.</u>, 353 F. Supp. 2d 342, 354 (E.D.N.Y. 2005) (quoting <u>In re Flutie New</u>

<u>York Corp.</u>, 310 B.R. 31, 54 (Bankr. S.D.N.Y. 2004)).

116.     As evidenced by the recording and endorsement page for the 2017 Deed, the 2017

Deed was a zero-consideration transfer made between family relations. <u>See</u> Exhibit "1". The

Debtor failed to receive any consideration from Defendants in exchange for the transfer of his

interest in the Real Property giving rise to the presumption of insolvency. <u>Id.</u>, <u>See</u> <u>also</u> Exhibit

"2", p. 62. As a result, Plaintiff is entitled to judgment against Defendants on his Debtor and

Creditor Law § 273 claim.

117.     Even if Defendants had provided the Debtor with dollar for dollar consideration –

which they did not – while that consideration would satisfy the "fair value" component of fair

19

consideration under Debtor and Creditor Law § 272, the Transfer would still be subject to avoidance due to the lack of good faith.

118.    The same result is required under Section 548(a)(1)(B) of the Bankruptcy Code in that the Debtor failed to receive reasonably equivalent value in exchange for the Transfer.   Even if the presumption of insolvency is inapplicable to Plaintiff's constructive fraudulent conveyance claim under the Bankruptcy Code, by virtue of the Transfer the Debtor divested himself of his valuable interest in the Real Property at the time when his liabilities were in the millions of dollars, as evidenced by the Santana Judgment and the TCF Judgment.   Accordingly, the Debtor was either insolvent on the date of the Transfer or thereby rendered insolvent.

119.    Furthermore, most of the classical badges of fraud evidence that the Transfer was made with actual intent to hinder, delay and defraud the Debtor's creditors are also present. While fraudulent intent is "rarely susceptible to direct proof" such proof is available in cases where the Court finds that the transaction was planned and executed with knowing and active participation by the parties. Numerous courts have held that "actual intent may be proven by circumstantial evidence." See In re Kaiser, 722 F.2d 1574, 1582 (2d Cir. 1983); Dixie Yarns, Inc. v. Forman, 906 F. Supp. 929 (S.D.N.Y. 1996).

120.    As a result, the courts have developed "badges of fraud" to establish the requisite actual intent to defraud.   These badges of fraud include, but are not limited to: a) the lack or inadequacy of consideration; b) the family, friendship or close associate relationship between the parties; c) the retention of possession, benefit or use of the property in question; d) the financial condition of the party sought to be charged both before and after the transaction in question; e) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the

20

A.60

incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and f) the general chronology of the events and transactions under inquiry. See In re Kaiser, 722 F.2d at 1582 (internal citation omitted).

121.    Intrafamily transfers are subject to greater scrutiny and give rise to an inference of fraud. Mendelsohn v. Jacobowitz (In re Jacobs), 394 B.R. 646, 660-1 (Bankr. E.D.N.Y. 2008); Apple Bank for Savings v. Contaratas, 204 Ad 2d 375, 376, 612 N.Y.S. 2d 51, 52 (2d Dept. 1994); Marine Midland v. Murkoff, 120 Ad 2d 122, 508 N.Y.S. 2d 17 (2d Dept. 1986).

122.    The courts have also recognized "a questionable transfer not in the ordinary course of business . . . the transferors knowledge of the creditors claim and his inability to pay it; and retention of control of the property by the transferor after the conveyance" as badges of fraud. See Wall Street Associates v. Brodsky, 257 A.D.2d 526, 529, 684 N.Y.S.2d 244, 248 (1st Dept. 1999).

123.    Here, the Transfer constitutes a no consideration conveyance of the Debtor's interest in the Real Property to his former spouse and children.  There existed a confidential relationship between the transferor and transferee.

124.    Defendants' financial condition was enhanced by the transaction in view of the equity then existing in the Real Property. The Transfer resulted in the Debtor's disposition of his most valuable asset that may have been available to satisfy the claims of its creditors while allowing him to retain control of the Real Property as a consequence of his retention of a life estate.

125.    Moreover, as evidenced by the September 29, 2015 e-mail, the Transfer was undertaken to protect the property for Defendants from Debtor's creditors and thereby hinder his creditors.  See Exhibit "16".

126.    The course of conduct and chronology as relating to the lawsuits commenced and

A.61

judgments entered against Defendant, the execution and delayed recording of the 2017 Deed, the refinance of the mortgage in the interim, and the retention of control over the assets all evidence the Debtor's intent to hinder, delay and defraud his creditors.

127.    As a result of the foregoing facts and badges of fraud, Plaintiff is alternatively entitled to avoid the Transfer and recover title to the Real Property from Defendants under Debtor and Creditor Law § 276 and Bankruptcy Code § 548(a)(1)(A).

128.    Plaintiff reserves his right to seek attorneys' fees under Debtor and Creditor Law § 276-a.

129.    For the foregoing reasons, Plaintiff submits that he is entitled to entry of an order for a default judgment setting aside the 2017 Deed due to Defendants' failure to answer or appear and predicated upon proof submitted in support of the Motion.

130.    Upon information and belief, Defendants are not infants or incompetent persons. Neither of Defendants appear presently on active duty in any branch of military service.

131.    No prior application for the relief requested herein has been made to this or any other Court.

## CONCLUSION

132.    It is respectfully requested that the Court enter (a) an order for default judgment under Bankruptcy Rule 7055; and (b) a judgment against Defendants setting aside the Deed, directing the Clerk of the County of Westchester to record the judgment of this Court striking the 2017 Deed from the public record, and granting such other and further relief as the Court deems just and proper.   Copies of the proposed order and judgment are annexed as Exhibits "17" and "18".

133.     I declare this under penalty of perjury that the foregoing is true and correct, except as to those statements disclosed as being made upon information and belief.

Executed on March 24, 2020
        Wantagh, New York

                    *s/ David A. Blansky*
                    David A. Blansky

*M:\Documents\Company\Cases\Paswall, Bruce J\Adv Pro\Default Judgment\Default Motion\Motion for default judgment.docx*

**DE9-2, Exh. 2 to Motion-- Excerpts from Debtor's Examination (Oct. 30, 2019)**
**[A.64-92]**

# Exhibit "2"

- - - - - - - - - - - - - - - x

In Re:   US Bankruptcy Court

Southern District of New York


BRUCE J. PASWALL,

Debtor.

Index No:  19-23623-rdd

- - - - - - - - - - - - - - - x


220 White Plains Road

Tarrytown, New York

October 30, 2019

1:08 p.m.


DEPOSITION of BRUCE J. PASWALL, Debtor, in
the above-entitled action, held at the
above-stated time and place, taken before
Tamara Snayd, a Shorthand Reporter and Notary
Public within and for the State of New York.



2

```
1
2    A P P E A R A N C E S:
3
4    LAMONICA, HERBST & MANISCALCO, LLP
          Attorneys for Trustee
5         3305 Jerusalem Avenue
          Wantagh, New York 11793
6
     BY:  DAVID A. BLANSKY, ESQ.
7         dab@lhmlawfirm.com
8
9    GARY R. GJERSTEN, ESQ.
          Attorney for Debtor
10        BRUCE J. PASWALL
          4 New King Street
11        White Plains, New York 10604
12        gg@clairgjersten.com
13
14   LAW OFFCES OF SCOTT A. LUCAS
          Attorney for Creditors
15        MARLENA SANTANA, YASMINDA DAVIS and
          MELISSA RODRIGUEZ
16        250 Park Avenue, Suite 2020
          New York, New York 10177
17
          BY:  SCOTT A. LUCAS, ESQ.
18        scott@lucasemploymentlaw.com
19               -AND-
20        BY:  MITCHELL SACK, ESQ., of Counsel
          BY:  ANDREW ROSS, ESQ., of Counsel
21
22
23   ALSO PRESENT:
24   MARK S. TULIS, Trustee
25
```

Reporter's Ink, Corp.    Phone : 646.395.7535    Fax : 212.374.1236    www.reporters-ink.com

A66



3

```
 1
 2              MR. TULIS:  My name is Mark
 3         Tulis.  I'm a bankruptcy Trustee in
 4         this case.  The purpose of this was a
 5         contextual 2004 Examination of the
 6         Debtor.
 7              My counsel is sitting to my
 8         left.  At this point we'll take
 9         appearances.  I will be available, if
10         necessary, next door reading my
11         briefs.
12    B R U C E    J.    P A S W A L L ,
13    the witness herein, having been first duly
14    sworn by a Notary Public of the State of New
15    York, was examined and testified as follows:
16    EXAMINATION BY
17    MR. BLANSKY:
18      Q.  Good afternoon, Dr. Paswall.  My
19     name is Davis Blansky.  As you know, my firm
20     represents Mr. Tulis, the Bankruptcy Trustee
21     appointed in your case.  I'm going to be
22     asking you some questions today in connection
23     with this investigation of your financial
24     affairs.
25              Before I begin I want to outline
```

Reporter's Ink, Corp.    Phone : 646.395.2500  Fax : 212.374.1236    www.reporters-ink.com

A-67



1

2    certain ground rules so that we can

3    communicate effectively and clearly this

4    afternoon during our time together.

5        Okay?

6    **A.   Okay.**

7    Q.   The first is, as you can see, there

8    is a court reporter sitting between us.  She

9    is going to take down everything that I say

10    and everything that you say and anything that

11    anybody else around the table has to say.  I

12    please ask that you wait until I finish my

13    question before you answer.  And I'll try to

14    wait until you finish your answer before I

15    ask my next question so we so we verbally

16    don't step over one another.

17        Okay?

18    **A.   (Nodding.)**

19    Q.   The second thing is as natural as it

20    might be to nod your head yes or no or to

21    scowl or use some other body language, she's

22    not permitted to interpreter your body

23    language; so one of us will prompt you to

24    verbalize your response.

25        All right?

Reporter's Ink, Corp.    Phone : 646.39.A.50.59   Fax : 212.374.1236   www.reporters-ink.com

A.68


```
 1

 2        A.  Yes.

 3        Q.  Third, to the extent you need a

 4   break for any reason, as long as we finish

 5   the question and answer we're discussing,

 6   I'll be happy to accommodate you.

 7            Okay?

 8        A.  Thank you.

 9        Q.  Do you understand my instructions so

10   far?

11        A.  I do.

12        Q.  Good.

13            If, for some reason, I ask a

14   question and you didn't hear it correctly or

15   you need me to rephrase it, do let me know.

16   I want to make sure you understand the

17   question so you can answer to the best of

18   your ability.

19            All right?

20        A.  All right.

21        Q.  Have you taken any alcohol or drugs

22   in the last twenty-four hours that might

23   impact your ability to testify today?

24        A.  I have not.

25        Q.  Okay.  Other than any discussion you
```

Reporter's Ink, Corp.    Phone : 646.397.3580   Fax : 212.374.1236   www.reporters-ink.com

A.69

1

2      may have had with your counsel, have you

3      discussed with anyone the testimony you

4      expected to give today?

5          A.  No.

6          Q.  Did you look at any documents to

7      prepare for today's examination?

8          A.  I did.

9          Q.  What kinds of documents did you look

10     at?

11         A.  **My divorce decree, and counsel**

12     **advised me that I was to prepare invoices for**

13     **the renovation of my home.**

14         Q.  At some point in the recent days,

15     did you provide copies of the documents

16     relating to the improvements of the home to

17     your counsel?

18         A.  **I have them with me.**

19         Q.  Do you know if you provided copies

20     to your counsel previously?

21         A.  **I -- electronically.**

22         Q.  You have a hard copy set with you?

23         A.  **Correct.**

24         Q.  I presume that they're for Mr. Tulis?

25         A.  **Indeed.**

Reporter's Ink, Corp.    Phone : 646.395.5470 | Fax : 212.374.1236    www.reporters-ink.com

A-70



19-08347-20-cv-05642KNFFiledDocument 3Entered-Filed03/24/2023:59:4775Exhibit 2 -
Excerpts of Debtors Examination    Pg 8 of 29

7

1

2          Q.   I will take them from you.

3               MR. BLANSKY:   Counsel, I

4          presume that it's your understanding

5          that the documents that were shared

6          electronically by your staff are,

7          likely, the scanned copies of the

8          physical documents that Dr. Paswall

9          has with him today.

10              Is that your understanding?

11              MR. GJERTSEN:   That was my

12         understanding.   When I forwarded the

13         electronic documents to Mr. Tulis, he

14         asked they be printed out.   I asked

15         Bruce to print them out and,

16         apparently, he has them here today.

17              MR. BLANSKY:   I'll take the

18         set, and I can reconcile them against

19         the ones I received electronically to

20         make sure there's no gaps.

21              Given the late time of day,

22         we're going to get as far as we can.

23         I suspect that we may keep today

24         open.   So we'll make ample progress

25         today with the inquiries that I have

Reporter's Ink, Corp.    Phone : 646.394.3524 | Fax : 212.374.1236    www.reporters-ink.com

A-71


19-08347-20-cv-D5592-KNFiledDC3/24/20 3Entered 03/24/2023:59:47 76 Exhibit 2 -
Excerpts of Debtors Examination    Pg 9 of 29

8

```
 1
 2        and then we'll figure out how to
 3        proceed from there, but I want to
 4        manage everyone's time appropriately.
 5     Q.  Given we're starting at one o'clock,
 6  I don't want to create an artificial deadline
 7  for me to ask questions and for you to give
 8  complete answers to the questions.
 9        Okay?
10     A.  (Nodding.)
11     Q.  State your highest level of
12  education.
13     A.  Chiropractic college.
14     Q.  When did you receive your degree?
15     A.  1985, January.
16     Q.  Where did you go to school?
17     A.  Cleveland Chiropractic College.
18     Q.  Have you been a practicing physician
19  in the field of chiropractics since then?
20     A.  Since 1985.
21     Q.  Are you required to maintain any
22  type of certification in order to keep that
23  license?
24     A.  Yes.  Continuing education credits.
25     Q.  Has your continuing education ever
```

Reporter's Ink, Corp.    Phone : 646.394.5472 | Fax : 212.374.1236    www.reporters-ink.com

A-72



1

2          A.   Since 1992, approximately.

3          Q.   At the time that you first moved to

4      the location, who were the title owners of

5      the property?

6          A.   I think it was joint between my wife

7      and myself.

8          Q.   For purposes of the record.

9               When you say your "wife," who are

10     you referring to?

11         A.   Brenda Paswall.

12         Q.   Are you and Ms. Paswall,

13     Mrs. Paswall, still married today?

14         A.   We're divorced.  She's deceased.

15         Q.   I'm sorry to hear that.

16              When did Mrs. Paswall pass?

17         A.   December of 2018.

18         Q.   Did there come a time when you and

19     she became separated?

20         A.   There was a restraining order I took

21     out on her, because she was an active

22     alcoholic and abusive.  That occurred

23     approximately 2009.

24         Q.   As a product of the restraining

25     order, did she leave the residence?

Reporter's Ink, Corp.    Phone : 646.394.5374   Fax : 212.374.1236    www.reporters-ink.com

A-73


1

2      A.   She violated the restraining order

3   one Christmas and she was escorted out by

4   state troopers.

5      Q.   Did there come a time when she

6   ceased to regularly reside with you at the

7   Katonah address?

8      A.   It was at that point in time where

9   she exited the home in question and never

10   came back, short of retrieving personal items.

11      Q.   In what year are we talking about,

12   approximately?

13      A.   About 2012.

14      Q.   Did you and Mrs. Paswall have any

15   children together?

16      A.   We did.

17      Q.   What are their genders and names?

18      A.   Two boys.  Grant and Reid, R-E-I-D.

19      Q.   What are the ages of Grant and Reid

20   today?

21      A.   Grant is thirty.  Reid is

22   twenty-five.

23      Q.   Are Grant and Reid engaged in any

24   employment?

25      A.   Employment?

Reporter's Ink, Corp.    Phone : 646.397.5642 | Fax : 212.374.1236    www.reporters-ink.com

A-74



1

2         Q.   I think what you said is at the time

3    it was your understanding that took place

4    after you filed the bankruptcy case?

5         **A.   Correct.**

6         Q.   Okay.  Where do Grant and Reid

7    reside today?

8         **A.   Reid lives at 13 Logging Road.  And**

9    **Grant lives in Mahopac.**

10        Q.   Do you know the address?

11        **A.   9 Summit Drive.**

12        Q.   When is the last time Grant resided

13   at the Katonah address?

14        **A.   2017, '18; somewhere around there.**

15        Q.   Do you know whether Grant or Reid

16   were served with whatever documents were

17   prepared by Mr. Lucas' firm?

18        **A.   Grant was.  He wasn't very happy**

19   **with me.**

20        Q.   Prior to Grant receiving that

21   service, was he aware that he was on the deed

22   for the house?

23        **A.   Yes.**

24        Q.   How did he become aware that he was

25   on the deed?

Reporter's Ink, Corp.   Phone : 646.395.5542   Fax : 212.374.1236   www.reporters-ink.com

A-75



```
 1

 2        made.

 3             MR. GJERTSEN:  I don't believe

 4        it was, but we can find it.

 5   ***REQUEST NOTED:

 6             MR. BLANSKY:  I'd ask for the

 7        production of those documents.  If

 8        it's within your possession, I ask

 9        you provide a copy of the deed.

10      Q.  Dr. Paswall, did there come a time

11   when a matrimonial action was commenced by

12   you or your former spouse?

13      A.  Yes.

14      Q.  Do you know where that action was

15   commenced?

16      A.  I was served by Brenda 2012.

17      Q.  Do you know in what county that

18   action was brought?

19      A.  Westchester.

20      Q.  At some juncture did you and

21   Mrs. Paswall reach a matrimonial settlement?

22      A.  We did.

23      Q.  I understand that there were

24   different permutations of the settlement.

25           Is that fair to say?
```

Reporter's Ink, Corp.   Phone : 646.39.4524   Fax : 212.374.1236   www.reporters-ink.com

A-76



1

2    instrument and provided the fund to her?

3        **A.   So the method of payment to Brenda,**

4    **because there were attorney liens that were**

5    **filed to the Court, had to go through counsel**

6    **to his IOLA account, to which he disbursed**

7    **the funds to her two attorneys and then the**

8    **balance was paid to her.**

9        Q.   Was your understanding whatever

10   charging liens the attorneys had against the

11   funds that those were satisfied from the

12   initial one-fifty?

13       **A.   To the best of my knowledge.**

14       Q.   Okay.  To your recollection, was

15   there a deadline for the payment of the

16   second installment of $150,000?

17       **A.   There was.**

18       Q.   When was that, if you recall?

19       **A.   Six, eight months after the first.**

20       Q.   At the time that the $150,000 second

21   payment became due, was it made?

22       **A.   No.**

23       Q.   Was it made at some subsequent time?

24       **A.   No.**

25       Q.   As of the date you filed your



1

2     bankruptcy case, had the balance of the

3     $150,000 ever been paid to Brenda?

4          **A.   The full balance, no.**

5          Q.   Was any part of it paid to her?

6          **A.   Yes.**

7          Q.   How much?

8          **A.   I continued paying her $5,000 a**

9     **month, which is what I was able to afford.**

10    **And she was willing to accept that off of the**

11    **one-fifty.   I could estimate only that -- I**

12    **can't estimate how much I paid of that**

13    **one-fifty in monthly increments to her.**

14         Q.   Did there come a time in

15    approximately 2005 when you made an

16    application to expand the line of credit to

17    draw additional equity from the real property?

18         **A.   To the --**

19              MR. GJERTSEN:   I'm sorry.   Just

20          for clarification.

21              Was that 2015 or 2005?   You

22          said, "2005."

23              MR. BLANSKY:   I'm sorry.

24    Q.   2015.

25    **A.   To the best of my knowledge, yes.**

Reporter's Ink, Corp.    Phone : 646.391.7576   |   Fax : 212.374.1236   www.reporters-ink.com

A-78



```
 1
 2          Q.  At some juncture was the maximum
 3     amount of the line about $350,000?
 4          A.  Based on my revenue stream and what
 5     they were willing to leverage on the equity
 6     of the home and my ability to pay back, yes.
 7          Q.  What did you do with the difference
 8     between the initial loan and the additional
 9     sums that you took out?
10          A.  Renovated the house.
11          Q.  With respect to the renovations to
12     the house that you described, at some earlier
13     point were plans drawn and the process begun
14     to make renovations to the property?
15          A.  Correct.
16          Q.  How far back did that plan begin?
17          A.  2012.
18          Q.  At the time that you first began to
19     renovate the property, was Brenda still
20     residing with you or was this after she
21     departed the residence?
22          A.  After she departed.
23          Q.  Prior to drawing down on the equity
24     of the real estate, what was the source of
25     the funds used to make the renovations to the
```

Reporter's Ink, Corp.    Phone : 646.397.5724 | Fax : 212.374.1236    www.reporters-ink.com

A-79

19-08343-20-cv-D569-2 KNR led 03/24/20 36 ntered 03/24/2023:59:47 84 Exhibit 2 -
Excerpts of Debtors Examination    Pg 17 of 29

36

1

2     real estate?

3          **A.  A HELOC loan.**

4          Q.  Before the HELOC loan was taken out

5     in either late 2014 or early 2015, had

6     renovations been made to the property?

7          **A.  Yes.**

8          Q.  Between 2012 and sometime in 2014,

9     what was the source of the funds to make --

10         **A.  I was financing that.**

11         Q.  Do you know how much you put into

12    improving the property before taking out the

13    HEL loan?

14         **A.  I can't -- I can't recall that.**

15         Q.  Do you know if it was more than

16    $50,000?

17         **A.  Sounds reasonable.**

18         Q.  Do you know if it was more than a

19    hundred thousand dollars?

20         **A.  I don't think so.**

21         Q.  Okay.  Are improvements still

22    ongoing today?

23         **A.  No.**

24         Q.  When did the renovation conclude?

25         **A.  2016, maybe 2017.**

Reporter's Ink, Corp.    Phone : 646.39. A-50 Fax : 212.374.1236    www.reporters-ink.com

A-80



```
 1

 2        Q.   Do you know how much in total was

 3   spent to do the complete renovation?

 4        A.   I have the invoices here.  I never

 5   added it up.

 6        Q.   Okay.  Are we talking about a few

 7   hundred thousand dollars worth of

 8   improvements?

 9        A.   Sure.

10        Q.   Are we talking about a half million

11   dollars worth of improvements?

12        A.   No.

13        Q.   Somewhere between $200- and $400,000?

14        A.   Sounds reasonable.

15        Q.   What were the type of improvements

16   that were made to the property between 2012

17   and 2016 or '17 when you think that it was

18   completed?

19        A.   I know it was demoed; repairing the

20   roof; new boiler; new air handler, A/C unit;

21   flooring; radiant heat; architectural and

22   design services.

23        Q.   Was a kitchen or any bathrooms

24   renovated?

25        A.   Later on.
```

1

2      Q.  Between 2012 and 2017 was there any

3  part of the home that was not renovated in

4  some fashion?

5      **A.  Basement.**

6      Q.  How many square feet is the house?

7      **A.  Including the basement 6,000,**

8  **approximately.**

9      Q.  Besides Reid and yourself, does

10  anyone else reside with you in the house

11  today?

12      **A.  My girlfriend.**

13      Q.  What's her name?

14      **A.  Donna.**

15      Q.  What's Donna's last name?

16      **A.  Fusht, F-U-S-H-T.**

17      Q.  How long has Ms. Fusht resided at

18  the Katonah house with you?

19      **A.  Since the renovations were complete;**

20  **maybe two years.**

21      Q.  As part of the consideration for you

22  agreeing to pay the $300,000 or so to Brenda,

23  was part of that agreement that you would

24  take title to the real estate?

25      **A.  I had to -- to obtain the HELOC.**

Reporter's Ink, Corp.    Phone : 646.391.... | Fax : 212.374.1236    www.reporters-ink.com

A-82



19-08347-20-cv-D5694-2KNFiledDoc324-20t 36nteredFeb03/24/20.23:59.47 87Exh1b52 -
Excerpts of Debtors Examination    Pg 20 of 29

46

1

2  **A. Correct.**

3  Q. Paragraph 2 on page 2 references the

4 $300,000 number we've talked about, right?

5  **A. Yes.**

6  Q. Then at paragraph 2a there's

7 reference to $150,000 being paid within ten

8 days of the initial financing.

9    Do you see the reference?

10  **A. Yes.**

11  Q. I think you mentioned to me earlier

12 that you took title to the real property and

13 then you applied for a line of credit secured

14 against the house; is that correct?

15  **A. Yes.**

16  Q. Setting that aside for a moment.

17    Was there a mortgage in the security

18 against the house before you took out the

19 line of credit?

20  **A. First mortgage.**

21  Q. First mortgage.

22    Do you know who the lender was on

23 the first mortgage?

24  **A. Originally, to the best of my**

25 **recollection, it was called GE Capital.**



1

2      Q.  At the time that you filed for

3   bankruptcy, was there still a first mortgage

4   ahead of the line of credit?

5      **A.  Yes.**

6      Q.  Was it current as of the date of the

7   filing of the bankruptcy case?

8      **A.  Yes.**

9      Q.  Do you know how much was owed at the

10   time that you filed for bankruptcy?

11      **A.  About a hundred thousand.**

12   **\*\*\*REQUEST NOTED:**

13      Q.  I'd ask you to produce a current

14   mortgage statement for the property, please.

15         Who was on the obligated for the

16   mortgage, if you recall?

17      **A.  My deceased ex-wife and myself.**

18      Q.  Is the mortgage current through

19   today?

20      **A.  Yes.**

21      Q.  Who's been making the payments on

22   the mortgage?

23      **A.  I have.**

24      Q.  Have you been paying continually

25   yourself since your former spouse stopped

Reporter's Ink, Corp.    Phone : 646.393.2550  | Fax : 212.374.1236    www.reporters-ink.com

A-84



1

2    residing at the property?

3        **A.  Yes.**

4        Q.  Turning back to the stipulations,

5    Exhibit 1, paragraph 2b, there's a reference

6    to additional $150,000 being paid to Brenda.

7        Do you see the reference?

8        **A.  Yes.**

9        Q.  I think you told me earlier that you

10   were unable to make that payment; is that

11   correct?

12       **A.  Correct.**

13       Q.  I think you said that she sought

14   certain relief from the matrimonial court due

15   to your failure to make that payment; is that

16   right?

17       **A.  Correct.**

18       Q.  At paragraph 3 there's a reference

19   to you being the defendant executing a deed.

20       Do you see that?

21       **A.  Yes.**

22       Q.  Okay.  It says the, quote, bargain

23   and sale deed with covenants, quote,

24   transferring and conveying his right title

25   and interest in the residence to the

Reporter's Ink, Corp.    Phone : 646.394.5000    Fax : 212.374.1236    www.reporters-ink.com

A-85


```
 1
 2        A.  Yes.
 3        Q.  Ultimately, Mr. Lucas and his
 4    clients were awarded judgment against you and
 5    G.E.B., right?
 6        A.  Yes.
 7        Q.  As of the date you filed for
 8    bankruptcy, that judgment had not yet been
 9    satisfied yet, right?
10        A.  Correct.
11        Q.  Your sons, they didn't provide any
12    payment or consideration to you or Brenda to
13    be on the title, did they?
14        A.  Not to my knowledge, no.
15        Q.  To your understanding, it was your
16    intention and Brenda's to protect the real
17    estate so the children could have the benefit
18    of it down the line.
19            That was, sort of, your gift to them
20    down the line?
21        A.  Absolutely.
22        Q.  Do you have a sense today of what
23    the value of the real estate is?
24        A.  I think it was appraised at nine
25    hundred and change.
```

Reporter's Ink, Corp.    Phone : 646.394.5384 | Fax : 212.374.1236    www.reporters-ink.com

A.86



1

2    accurate copy of the mortgage recorded

3    against the Katonah house by which you

4    secured the initial financing to make that

5    first payment to Brenda?

6        **A.  Yes.**

7        Q.  Is that your signature on the fifth

8    page of this, of the mortgage instrument?

9        **A.  Yes.**

10       Q.  According to the recording page and

11   the mortgage itself, it said the initial loan

12   amount was for a principal sum of $195,000.

13           Do you see the reference?

14       **A.  Yes.**

15       Q.  Okay.  The initial payment to your

16   wife, was that $150,000?

17       **A.  Yes.**

18       Q.  What did you do with the difference

19   between the one-fifty you paid her and the

20   one ninety-five?

21       **A.  It went into the renovations.**

22       Q.  Do you know if any of those funds

23   were given to either of your sons?

24       **A.  I don't.**

25       Q.  You don't know or you don't think



1

2    any of the funds were given to your sons?

3        **A.   I don't think any of it because it**

4    **was paid to counsel who disbursed them,**

5    **because there were charging liens.**

6        Q.   We have the one-fifty that went to

7    counsel --

8        **A.   Oh, okay.**

9        Q.   -- which you described that earlier,

10   the charging liens you think trickled down to

11   her.  Then the other forty-five that did not

12   get paid to Brenda or counsel, you said went

13   to renovations?

14       **A.   Correct.**

15       Q.   Do you know if any of the forty-five

16   or so went to either of your sons?

17       **A.   I don't think so.**

18            MR. BLANSKY:  I'm marking as

19       Exhibit 5, a copy of a mortgage

20       modification document dated December

21       5, 2015, recorded December 30, 2015.

22            (Whereupon, December 2015 mortgage

23       was marked as Trustee's Exhibit 5, for

24       identification, as of this date.)

25       Q.   Please take a look at that document.



1

2      A.  (Witness complied.)

3      Q.  Do you recognize your signature on

4  the line where it says "borrower" on page 2

5  of the exhibit?

6      A.  Yes.

7      Q.  Is it fair to say that is your

8  signature?

9      A.  Yeah.

10      Q.  Did you sign this before a notary on

11  the date it's dated?

12      A.  Yes.

13      Q.  Would it be fair to say in December

14  of 2015 you borrowed an additional $155,000

15  from this bank, bringing the total line of

16  credit to $350,000?

17      A.  Correct.

18      Q.  Okay.  What did you do with the

19  additional $155,000?

20      A.  It had to go to renovations.

21      Q.  Is it fair to say that no part of

22  the money was used to pay the obligation to

23  Brenda?

24      A.  I can't recall that.  I'm -- I'm

25  believing that I took $25,000 from the one



19-08347-20-cv-05692-KNF Filed 03/24/20 36-1 Entered 03/24/20 23:59:47 94 of 165 Exhibit 2 -
Excerpts of Debtors Examination    Pg 27 of 29

68

1

2    fifty-five and paid her the 25,000, as memory

3    serves me, and used the balance towards the

4    renovations.

5        Q.  Okay.  Do you know if any part of

6    the additional 155,000 borrowed in December

7    2015 was given to either of your sons?

8        **A.  I don't think so.**

9        Q.  When did you become involved with

10   Donna?

11       **A.  Maybe seven years ago.**

12       Q.  Do you know if any of the proceeds

13   from the line of credit were ever given to

14   Donna?

15       **A.  I do know.**

16       Q.  What's the answer to that?

17       **A.  None.**

18       Q.  None.  Okay.

19           Do you know if any of her personal

20   obligations were paid from funds you derived

21   from the line of credit?

22       **A.  None.**

23       Q.  Earlier you mentioned that

24   Mr. Lucas' law firm had commenced a lawsuit

25   naming you and your sons as defendants.

Reporter's Ink, Corp.    Phone : 646.391.7595  Fax : 212.374.1236    www.reporters-ink.com

A.90



```
 1
 2                    I N D E X
 3
 4   WITNESS               EXAMINATION BY    PAGE
 5   BRUCE J. PASWALL      MR. BLANSKY       3
 6
 7
 8
                         EXHIBITS
 9
     TRUSTEE'S   DESCRIPTION               PAGE
10
     Exhibit 1   stipulation               44
11   Exhibit 2   November 2014 deed        54
     Exhibit 3   October 2014 deed         55
12   Exhibit 4   January 2015 mortgage     64
     Exhibit 5   December 2015 mortgage    66
13   Exhibit 6   summons with notice       69
     Exhibit 7   petition and schedules    75
14   Exhibit 8   interrogatories          108
15
16              REQUESTS FOR PRODUCTION
17   DESCRIPTION                           PAGE
18   Deed                                  27
     Mortgage statement                    47
19   Life estate documents                 50
     Appraisal                             63
20   Complete applications                 73
     Lawsuit                               87
21   Mortgage and line of credit           97
22
23
24
25
```

Reporter's Ink, Corp.    Phone : 646.302.3529    Fax : 212.374.1236    www.reporters-ink.com

A-91



```
1

2                    C E R T I F I C A T E

3

4              I, Tamara Snayd, a shorthand reporter

5     and Notary Public within and for the State of

6     New York, do hereby certify:

7              That the witness(es) whose testimony

8     is hereinbefore set forth was duly sworn by

9     me, and the foregoing transcript is a true

10    record of the testimony given by such

11    witness(es).

12             I further certify that I am not

13    related to any of the parties to this action

14    by blood or marriage, and that I am in no way

15    interested in the outcome of this matter.

16

17

18

19

20

21

22    _____

23             TAMARA SNAYD

24

25
```



Reporter's Ink, Corp.    Phone : 646.395.5039 | Fax : 212.374.1236    www.reporters-ink.com

A-92

**DE9-11, Exh. 11 to Motion-- Stipulation of Settlement , Matrimonial Action(Oct. 28, 2014) [A.93-104]**

# <u>Exhibit "11"</u>



EXHIBIT
Trustee's
1
10/30/19
PENGAD 800-631-6989

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------x
BRENDA PASWALL,                                              Index No.: 3999/2012

                                          Plaintiff,        **STIPULATION OF**
       -against-                                            **SETTLEMENT**

BRUCE PASWALL,

                                          Defendant.
-----------------------------------------------------------x

THIS STIPULATION OF SETTLEMENT, made and entered into this 30th day of October,

2014, by and between Brenda Paswall, residing at                  (the "Plaintiff") and Bruce

Paswall, residing at 13 Logging Road, Somers, New York (the "Defendant").

WHEREAS, a Judgment of Divorce was entered in the above captioned action on June

12, 2012 (the "Judgment") which incorporated by reference a Stipulation placed on the Record

before the Hon. Robert M. Berliner, on December 12, 2011, and which Stipulation did not

merge therein, but survived the Judgment; and

WHEREAS, an Order (Duffy, J.), entered January 6, 2014 (the "Order"), vacated the

equitable distribution provisions of the Stipulation and modified the Judgment accordingly; and

WHEREAS, both the Plaintiff and the Defendant filed their respective Notice and Cross-

Notice of Appeal from the Order (collectively the "Appeal") and which Appeal is pending

before the Appellate Division, Second Department, and

WHEREAS, three charging liens have been granted by the Court with regard to fees

claimed to have been earned by plaintiff's former and current counsel; and

1

A.94

WHEREAS, the parties desire to memorialize the terms of the settlement resolving all of the issues emanating from the underlying divorce action, the Judgment, the Order and the Appeal.

IT IS HEREBY STIPULATED AND AGREED by and among the parties to the above captioned action and their respective attorneys as follows: ·

1.      Simultaneous with the execution hereof, Plaintiff shall execute and deliver to Defendant a Bargain and Sale Deed with Covenants transferring and conveying all of her right, title and interest in and to the former marital residence located at 13 Logging Road, Somers, New York (the "Residence"), to the Defendant.

2.      The Defendant shall pay to the Plaintiff the sum of Three Hundred Thousand (300,000) Dollars payable as follows:

      a.      The Defendant has made application for interim financing, to be secured by a lien against the Residence as collateral, for an amount of not less than $150,000 (the "Initial Financing") from which financing the sum of $150,000 shall be paid to Plaintiff within ten (10) days of the closing of the Initial Financing;

      b.      On or before July 1, 2015 an additional $150,000 shall be paid to Plaintiff.

      c.      Defendant shall be responsible for the costs associated with the financing contemplated herein.

3.      As security for the performance by the Defendant of his obligations hereunder, simultaneous with the execution hereof, Defendant shall execute a Bargain and Sale Deed with Covenants, transferring and conveying his right, title and interest in the Residence to the Plaintiff (the "Return Deed"), which shall be held in escrow by Newman & Denney P.C. subject to the terms hereof. A copy of the original Return Deed shall be delivered to Plaintiff's counsel.

2

A.95

4.     The Defendant shall be in default of the terms of this Stipulation upon the first to occur of the following which remains uncured after fifteen (15) days written notice (an "Event of Default"):

        a.    Failure to pay the Plaintiff $150,000 within the time set forth in paragraph 2 (a) hereof;

        b.    Failure to pay the Plaintiff $150,000 within six (6) months from the date of the closing of the Initial Financing, or

        c.    Failure to pay any Court Order counsel fee within thirty (30) days of the date of a Court Order pursuant to paragraph 8 hereof.

5.     Upon the occurrence of an Event of Default the Residence shall be immediately placed on the market for sale with any unpaid funds owing to the Plaintiff pursuant to the terms hereof to be paid to Plaintiff from the net proceeds generated by the sale together with an additional sum of $25,000 representing Plaintiff's legal fees, costs and expenses in connection with the default. The remaining balance of the net sale proceeds shall be paid to the Defendant and upon presentation of Plaintiff's affidavit confirming said default, the Return Deed shall be delivered to Plaintiff's counsel provided, however, that if the $150,000 payment required in paragraph 2 (a) has been made, as a condition precedent to the release of the Return Deed from escrow is either (a) Plaintiff's repayment to Defendant the sum the $150,000 or (b) Plaintiff's delivery to Defendant proof of satisfaction of the Defendant's obligations emanating from the Initial Financing.

6.     The Plaintiff expressly acknowledges the existence of three charging liens; two in favor of her present counsel Hirshfeld & Hirshfeld and one in favor of her former counsel Mitchell Lieberman, Esq. (collectively the "Liens"). As the payments required by the terms of

3

A.96

this Stipulation are subject to the Liens, absent an Order of the above named Court or written agreement between Plaintiff and the holders of the Liens to the contrary, the Defendant shall first make payment against the Liens in the sequence in which they were served on Defendant or his counsel. Payment of the Liens shall constitute compliance with the payment obligations of the Defendant.

7.      Simultaneous with the execution hereof, the parties shall each withdraw his/her Appeal with prejudice.

8.      Plaintiff's pending motion, which has been fully submitted to the above named Court, shall be determinative as to Defendant's obligation, if any, to make any contribution to Plaintiff's counsel fees. Any counsel fees Ordered by the Court pursuant to a Decision on the pending motion, or as otherwise agreed to by the parties, shall be paid within thirty (30) days of the Order or agreement of the parties.

9.      The parties accept the terms of this Stipulation as being in full and final settlement and satisfaction of each parties' rights and obligation to the other for equitable distribution pursuant to DRL § 239 Part B.

10.     The parties acknowledge that they have agreed to divide and settle their rights to real and personal property in full satisfaction of their respective marital rights, including the right to an equitable distribution of marital property as defined by DRL § 236B, or a distributive award in lieu thereof, as required by DRL § 236B, and in full satisfaction of the laws in any other jurisdiction that may claim to have an interest in the marital property, as fully set forth in this Article.

11.     This Agreement constitutes an agreement pursuant to DRL § 236(B)(3).

4

A.97

15.    The parties intend that their real, mixed and personal property division, tangible and intangible, as provided in this Agreement, shall be full, final and irrevocable. Except as otherwise expressly provided for in this Agreement, the Husband's property, now or hereafter acquired, shall forever remain his, and the Wife's property, now or hereafter acquired, shall forever remain hers, notwithstanding the reconciliation of the parties or the remarriage of the parties to each other.

16.    The parties acknowledge that they have had the opportunity to secure additional financial disclosure from each other and have been advised by their respective attorneys of their rights to (i) compel discovery and inspection of the other's books and records, business and personal, and (ii) have accountants, appraisers or others investigate, appraise or evaluate the other's personal and business property. The parties acknowledge that any further discovery has and is hereby waived. The parties further acknowledge that they have been advised of their rights to trial before the Court and waive the same.

17.    Except as otherwise provided herein, subsequent to the execution of this Agreement, each party shall be solely responsible for all obligations of ownership of her or his property. The parties agree to cooperate with each other in providing any documents or other information that may be necessary in order to ascertain, address, or resolve any tax liability or other obligation associated with the property distributed hereunder.

18.    The Husband had a full opportunity to consult and has consulted at length with his attorneys regarding all aspects of the negotiation and execution of this Agreement. The Husband represents that this Agreement was not the result of any fraud, duress or undue influence exercised by the Wife or any other person or persons upon him. The Husband represents that this Agreement has been achieved with competent legal representation and honest

6

negotiations. The Husband represents that he read and understands each and every term and provision of this Agreement. The Husband further represents that the terms and provisions of this Agreement are fair and reasonable.

19.     The Wife had a full opportunity to consult and has consulted at length with her attorneys regarding all aspects of the negotiation and execution of this Agreement. The Wife represents that this Agreement was not the result of any fraud, duress or undue influence exercised by the Husband or any other person or persons upon her. The Wife represents that this Agreement has been achieved with competent legal representation and honest negotiations. The Wife represents that she read and understands each and every term and provision of this Agreement. The Wife further represents that the terms and provisions of this Agreement are fair and reasonable.

20.     Notices required by this Agreement to be sent by the Husband shall be sufficient if in writing and sent by the Husband (or on his behalf) to the Wife by either (a) overnight delivery service (such as Federal Express) to her present address, (b) by hand delivery, or (c) by email to _____. *If notice is made by email a copy shall also be sent by first class mail.*

21.     Notices required by this Agreement to be sent by the Wife shall be sufficient if sent by the Wife (or on her behalf) to the Husband by (a) overnight delivery service (such as Federal Express) to the Husband's present address, (b) by hand delivery, or (c) by email to _____. *If notice is made by email a copy shall also be sent by first class mail.* Notices shall be deemed given the next business day after the delivery to the overnight carrier, and the same day if sent by email or hand delivery.

7

A.99

22.    Article Headings:  The paragraph or Article headings in this Agreement are for convenience and definitional purpose only, and do not reflect any intent or agreement of the parties.

23.    Merger:  This Agreement and its provisions merge any prior agreements, if any, of the parties and is the complete and entire agreement of the parties.

24.    Governing Law/Jurisdiction:  This Agreement shall be governed by the laws of the State of New York, without regard to its choice of law rules and without regard to where either party hereafter resides.  The parties agree to submit themselves to the continuing and exclusive jurisdiction of the New York State Courts, for all issues arising out of this Agreement, or a judgment of divorce between the parties, without regard to where the parties may hereafter reside, provided one party is a resident of this State.

25.    Implementation:  Each of the parties hereto agrees upon behalf of themselves and their respective estates, without cost to each other, to hereafter execute and deliver any and all further instruments and assurances, and perform any acts that the other party may reasonably request for the purpose of giving full force and effect to the provisions of this Agreement.

26.    Modification, Amendment and Waiver:  Except as provided herein, no provision of this Agreement shall be amended or modified unless by agreement in writing duly subscribed and acknowledged with the same formality as this Agreement.  Any waiver by either party of any provision of this Agreement or any right hereunder shall not be deemed a continuing waiver and shall not prevent or stop such party from thereafter enforcing such right, and the failure of either party to insist in any one or more instance upon the strict performance of any of the provisions of this Agreement by the other party shall not be construed as a waiver or relinquishment for the future of such provision, and the same shall continue in full force and

8

A.100

documents shall be binding upon the parties' respective estates in the event of their death prior to full performance.

32. No Third Party Rights: The parties may at any time amend, modify or annul this Agreement without the consent of any third person and no third person shall be deemed to have been given any interest or right hereunder.

33. Drafting: This Agreement is entered into after negotiation and comments by each party. The fact that the initial draft of this Agreement has been completed by Newman & Denney P.C. shall not be a consideration in the interpretation of this Agreement and no adverse inference may be drawn from such fact.

3. WHEREAS Clauses: The WHEREAS clauses contained in this Agreement shall be deemed to be a part of this Agreement.

35. EACH PARTY ACKNOWLEDGES THAT HE OR SHE HAS READ THIS AGREEMENT; THAT HE OR SHE UNDERSTANDS THE TERMS OF THIS AGREEMENT; THAT HE OR SHE UNDERSTANDS THAT THIS AGREEMENT WILL BE BINDING ON HIM OR HER IN ALL CIRCUMSTANCES INCLUDING A DIVORCE OR THE DEATH OF THE PARTIES; AND THAT HE OR SHE ACKNOWLEDGES THAT HE OR SHE HAS HAD A FULL OPPORTUNITY TO CONSULT WITH COUNSEL OF HIS OR HER OWN SELECTION BEFORE EXECUTING THIS AGREEMENT.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and date first above written.

10

BRENDA PASWALL                              BRUCE PASWALL

**ACKNOWLEDGMENT**

STATE OF *Missouri* )
                    ) SS.:
COUNTY OF *Clay*    )

On this 2nd day of October, 2014 before me, the undersigned a Notary Public in and for the State of New York personally came BRENDA PASWALL personally known to me or proved to me on the basis of satisfactory evidence to be the individual described whose name is subscribed to the within instrument, and he duly acknowledged to me that he executed the same in his own capacity and that by his signature on the instrument, the individual executed the instrument.

11

MICHAEL W BOORD
Notary Public - Notary Seal
State of Missouri
Commissioned for Clay County
My Commission Expires: Jan. 09, 2018
14412397

A.102

Notary Public

STATE OF NEW YORK            )
                             ) SS.:
COUNTY OF NEW YORK  )

On this 31 day of October , 2014 before me, the undersigned a Notary Public in and for
the State of New York personally came BRUCE PASWALL personally known to me or proved
to me on the basis of satisfactory evidence to be the individual described whose name is
subscribed to the within instrument, and she duly acknowledged to me that she executed the
same in her own capacity and that by her signature on the instrument, the individual executed the
instrument.

Notary Public

LOUIS L NEWMAN
Notary Public, State of New York
No. 02NE8133935
Qualified in New York County
Commission Expires April 30, 20__

12

A.103

the attorneys/parties listed below at the addresses listed, said addresses designated for that purpose, by depositing a true copy of same enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

TO:    Grant Paswall
        9 Summit Drive
        Mahopac, New York 10541

        Grant Paswall
        13 Logging Road
        Katonah, New York 10536
        *Defendant*

        Reid Paswall
        13 Logging Road
        Katonah, New York 10536
        *Defendant*

**Courtesy copy to**:    Mark S. Tulis, Chapter 7 Trustee of the Estate of Bruce J. Paswall

*s/Rosa R. Lella*
ROSA R. LELLA

Sworn to before me
this 23rd day of April 2020

*s/ David A. Blansky*
David A. Blansky
Notary Public, State of New York
No. 02BL6008775
Qualified in Nassau County
Commission Expires June 15, 2022

*M:\Documents\Company\Cases\Paswall, Bruce J\Adv Pro\Default Judgment\Default Motion\AOS - Motion for default judgment.docx*

2

A.104

**DE10, Affidavit of Service, Motion (Apr. 23, 2020)**
**[A.105]**

**LAMONICA HERBST & MANISCALCO, LLP**
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Tel. (516) 826-6500
David A. Blansky, Esq.
*Attorneys for Mark S. Tulis, as Chapter 7 Trustee*
*Of the Estate of Bruce J. Paswall*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

In re:                                              Chapter 7

BRUCE J. PASWALL,                                   Case No. 19-23623 (RDD)

        Debtor.
----------------------------------------------------------x

MARK S. TULIS, as Chapter 7
Trustee of the Estate of Bruce J. Paswall,

                                     Adv. Pro. No. 19-08713 (RDD)

        Plaintiff,

    -against-

GRANT PASWALL and REID PASWALL,

        Defendants.
--------------------------------------------------------------------x

<u>**AFFIDAVIT OF SERVICE**</u>

STATE OF NEW YORK    )
                           ) ss.:
COUNTY OF NASSAU    )

        ROSA R. LELLA, being duly sworn, deposes and says:

        Deponent is not a party to the action, is over 18 years of age and resides in Suffolk County, NY.

        On April 23, 2020, deponent served the **Notice of Hearing and Motion for the Entry of an Order For Default Judgment and Default Judgment Against the Defendants and Declaration in Support of Motion for the Entry of an Order for Default Judgment and Default Judgment Against the Defendants with Exhibits [Dkt. No. 9]** by First-Class Mail upon

1

A.105

**DE11, Declaration in Opposition, Lowell B. Davis, Esq. (Jun. 12, 2020)**
**[A.106-120]**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X   Case No. 19-23623-RDD

In Re Bruce Paswall

                        *Debtor*

DECLARATION IN OPPOSITION
TO  PLAINTIFF'S MOTION FOR
ENTRY OF A DEFAULT
JUDGMENT

-----------------------------------------------------------------x

MARK   S. TULIS, as Chapter 7
Trustee of The Estate of Bruce J. Paswall

                        *Plaintiff,*

Adv. Pro. *19 - 08713 - Rdd*

                -against-

GRANT  PASWALL and  REID PASWALL

                Defendants

-----------------------------------------------------------------

    1. This declaration is respectfully submitted in opposition to plaintiff's  motion for an order directing the entry of a default judgment against defendants  Reid Paswall and Grant Paswall and for a further order directing the plaintiff-trustee to accept defendants' answer a copy of which is annexed hereto as exhibit "A".

    2. The Plaintiff-Trustee, commenced this action for a judgment, " avoiding and setting side the Deed, preserving the Deed for the benefit of the estate and directing the Westchester County Clerk to Strike the Deed from the public record". The deed referenced in the wherefore clause is the one to Loggins  Road Katonah N.Y., The aforementioned premises was the marital residence of the debtor Bruce Paswall and his then wife Brenda Paswall. It was  acquired in 1992, during the marriage.  A copy of the Trustee-plaintiff's complaint dated November 22, 2019, is annexed hereto as exhibit "B".

    3. The instant proceeding is the third proceeding related to the transfer of title to  the

1

A.106

debtor's former marital residence shared with Brenda Paswall.[1]

4. The first proceeding was commenced by Scott Lucas, Esq., in the Supreme Court, Westchester County by summons with Notice and Special notice against Reid Paswall and Grant Paswall, dated September 19, 2019. That action was dismissed by the Court on April 28, 2020. Copies of the Westchester County proceeding, including the Summons, Special Notice and decision/order dismissing the action are annexed hereto as exhibit "C" . (Hereinafter referred to as Action #1) The relief sought therein is identical to the relief sought in the present action. Both actions involve title to the debtor's former marital residence. Neither action names Brenda Paswall deceased or her estate as a party to either action.

5. In the present action, Plaintiff-Trustee' devotes paragraphs 23 through 66 paragraphs to the debtor's matrimonial proceedings. Paragraphs "67" through "94", relate to the transfer of the deed to the marital residence. The debtor and his wife Brenda Paswall, deceased, entered into a stipulation dated December 12, 2011 which was incorporated by reference into the Divorce Judgment dated June 12, 2012. Clearly, the debtor's deceased spouse's, estate is an essential party to this action as the marital residence was the parties marital property subject to equitable distribution. Yet, the plaintiff has not seen fit to make the deceased spouse's estate a party to this action. This omission is likely to divest this honorable court of subject matter jurisdiction making the Westchester Surrogate's court the proper venue. See Fed. R. Civ. Pro 12(b)(6)(1) & (7)

6. The relief sought in this action is pursuant to DCL §§'s 273, 273(a), 275, 275 & 276.

---

[1] Brenda Paswall passed away April of 2019. Her estate is not a party to these proceedings. Instead the Trustee refers to Brenda Paswall as Deborah a fictitious person. The failure to include Brenda Paswall's estate to these proceedings is fatal. See F.R. Civ. Pro 12(b)(7)

2

Jurisdiction is alleged to be based upon 541, 542, 544, 550 and 551 of Title 11 of the Bankruptcy Code. The relief sought in the Wherefore clause by the Trustee-Plaintiff appears to seeks the transfer the title of the former marital residence from transferee Grant Paswall and transferee, Reid Paswall to the Debtor's estate. Notwithstanding these defendants are also direct heirs to the interest of their deceased mother's interest in the former marital residence.

7. The trustee has alleged, that the debtor , " . . . caused at least two conflicting versions of deed to the 13 Logging Road Property to be executed". Neither of the alleged two executed deeds were attached to the complaint nor incorporated by reference herein and made a part hereof. The foregoing makes it impossible to determine whether or this Court has subject matter jurisdiction or the Surrogate Court of the State of New York County of Westchester. See Fed. R. Civ. Pro 12(b)(6)(1) or is otherwise subject to dismissal for failing to join the Estate of Brenda Paswall as a party to this lawsuit pursuant to Fed. R. Civ. Pro. 19.

8. It is respectfully submitted that the relief herein sought by Plaintiff- trustee ought to be denied and the trustee ordered to accept defendants' proposed answer annexed hereto as exhibit "A", supra., with leave to amend. In the alternative, given the proposed affirmative defenses the Court ought to consider dismissing the action, sua sponte.

9. Briefly stated , defendants have met their burden in opposing plaintiff's motion for the entry of a judgment, pursuant to Fed. R. Civ. P. 60(b). Defendant's conduct leading to default judgment was not willful. Defendants also have many adequate defenses that, if proven, constituted a complete defense. Finally plaintiff will not be prejudiced by inherent delay in vacating the judgment. The adjudication of the discharge ability of Paswall's debt still needs to be adjudicated. Defendants have met their burden in opposing plaintiff's motion for the entry

3

A.108

of a judgment, pursuant to Fed. R. Civ. P. 60(b). See *Scient, Inc. v. AFCO (In re Scient, Inc.),*
*2007 Bankr. LEXIS 634, 2007 WL 594906*

10. Defendants' default is excusable. The manner of service was inadequate based upon
the affidavit of service. It shows that a copy of this complaint was sent to each defendant by first
class mail, pursuant to 7004. A courtesy copy was also delivered to debtor's counsel, a courtesy
denied defendants' counsel. See exhibit "D". Given the fact that the Plaintiff-trustee, was
aware that these same defendants had representation in an action pending in the New York State
Supreme Court Westchester County, at the same time as the commencement of the instant action
a nagging question hangs in the air why the same courtesy was not afforded defendant's
counsel. Furthermore the affidavit of service is indefinite as it is better suited for delivery papers
to an attorney in an existing action than to individuals who are receiving them at the time of the
commencement of an action. The affidavit of service also fails to comply with the mailing
requirements of CPLR 308(4), which requires that any mailing be in an envelope bearing the
legend "personal and confidential" and not indicating on the outside thereof, by return address or
otherwise, that the communication is from an attorney or concerns an action against the person to
be served.

Action #1

11. The first adversary action commenced in this Court , was commenced December 18,
2019. It was brought by attorney Scott Lucas, Esq., on behalf of Marlena Santana, Yasminda
Davis and Melissa Rodriguez. It is redundant of the action commenced in the Westchester
Supreme Court against the same defendants in this action. See exhibit "E", In this action the
relief is limited to a judgment declaring that, "Paswall's judgment liability to the plaintiff's is

4

A.109

non-discharge able.  This action should be read together with the first action commenced by Mr.

Lucas, Esq, on behalf of the same Santana plaintiffs. A copy of those pleadings are annexed

hereto as exhibit "C", for the purpose of consideration of "transactional

collateral estoppel", as it may apply to the instant action.

12. In addition to an excusable default, Defendants' have numerous meritorious defenses

as more particularly set forth in its  proposed answer, to wit:

1. Fed. R. Civ. Pro 12(b)(1)  Lack of Subject matter jurisdiction;

2. Fed. R. Civ. Pro. 12(b) (4 & 5) Insufficient service of process

3. Fed. R. Civ Pro.  12(b) (6) failure to state a cause of action upon which any relief may be granted. Plaintiff has named a responsible party to this lawsuit that does not exist.

4. Fed. R. Civ Pro. 12(b)  failure to join an indispensable party, to wit: the Estate of Brenda Paswall, deceased.

5. Plaintiff's claim is barred by the applicable Statute of Limitations.

STATEMENT OF FACTS  RELEVANT TO THE
DETERMINATION OF THE  RELIEF HEREIN
SOUGHT

13. The present action is the third in a series of lawsuits. Action #1 and Action #3 the

present one, allege a fraudulent conveyance of the former marital residence between the marital

parties. However the suit seeks  relief against the present the transferees of said title. It is not

disputed that the transferees, succeeded to the entirety of Brenda Paswall's 100% interest in the

subject property upon her death by operation of law.  Any claims against these defendants belong

in the Westchester County Surrogate's Court.  This Court does not have subject matter

jurisdiction over estate matters. Under New York State Debtor Creditor Law, the Trustees

5

A.110

complaint fails to state a cause of action . No liability exist against transferees under New York State's debtor Creditor law. A copy of summons and complaint in the instant action is annexed hereto as exhibit "B", supra.

14. The subject property was marital property and subject to equitable distribution pursuant to D.R.L. 236(b) , something which the Plaintiff-Trustee has chosen to ignore. Also ignored are the facts that these defendants are mere transferees and distributees. To the extent at paragraph 24 of the complaint the Trustee alleges a violation of a divorce judgement dated June 12, 2012, and an earlier stipulation placed on the record on December 12, 2011, it is clear that the facts as presented require that Brenda Paswall's, estate representative be joined as a party to this proceeding.

15. Prior to seeking this relief, counsel for the defendant's by letter dated May 2020, to Plaintiff' attorney sought an amicable resolution. Defendants' counsel requested that Plaintiff allow defendants to serve an answer, pointing out that the complaint was defective in failing to properly name debtor's deceased spouse Brenda and to join the deceased spouses, lawful representative as a party to the lawsuit See exhibit "F". The request was denied and counsel contacted the trustee directly and left a message. The message was returned by the trustee who refused to discuss the matter and hung up abruptly. Subsequently plaintiff's counsel sent a letter to defendants' counsel threatening to report counsel to the court. Such a letter was unnecessarily threatening and taken as an admission as to the truth of counsel's arguments.

## A. THE FIRST ACTION

16. The first action was commenced against Reid Paswall & Grant Paswall in the New York State Supreme Court , Westchester County, by Summons and Notice under Index No.:

6

A.111

64395/2019. It was brought by attorney Scott Lucas, Esq., on behalf of Marlena Santana, Yasminda Davis and Melissa Rodriguez, (Hereinafter referred to as the Santana defendants) Copies of the Summons with Notice, Special Notice, Lis Pendens and decision of the Hon. William J Giacomo, J.S.C. dated April 28, 2010, dismissing the action are all annexed hereto as exhibit "C". The First Action is (hereinafter referred to as Action # 1) named Reid Paswall and Grant Paswall, as defendants. It listed the debtor in the caption for no legitimate purpose, except to be used as a foil to file a lis pendens on the debtor's former marital residence. The Special Notice accompanying the Summons with Notice, made it clear that Bruce Paswall was not a party to the action See exhibit "C", supra.

17. It is respectfully submitted that the "Notice Provision", includes, warning that , "if you fail to Appear, Judgment will be taken Against You", section as follows: ". . . the Court will order such relief as is determined to be appropriate at an inquest including the, to the extent found to be appropriate, *an order setting aside any actually or constructively fraudulent conveyance, money damages, an award of attorney's fees, and such other and further relief legal and equitable relief as may be appropriate",* **(Emphasis supplied")**

18. The filing of a lis Pendens, in that action, inferring that the Santana plaintiffs are claiming a superior right to title to the former marital evidence, coupled with a request for a judgment setting aside the deed, thus placing title in the name of the debtor as opposed to the defendant transferees and Brenda Paswall's sole heirs, might just deprive this Court of subject matter jurisdiction or bar the claim pursuant to transactional collateral estoppel. The instant action, with the exception of the absence of Brenda Paswell's estate have an identity of issues and parties. The Westchester action should not have been discontinued. Nor should the Trustee

7

A.112

be able to accomplish by default what could not be accomplished in the Westchester County

Court. Also, the trustee should not have brought the instant adversary proceeding while the

Westchester County proceeding was still pending. See *Reilly v. Reid*, 45 N.Y.2d 24, 379 N.E.2d

172, 407 N.Y.S.2d 645, 1978 N.Y. LEXIS 2067

19. It is further respectfully submitted, that the allegations contained in the Summons

with Notice clearly prepared by Scott Lucas, Esq., an attorney, were made on information and

belief. Neither where they sworn or affirmed.

20. The primary allegations in the Notice portion of the summons had to do with non-

party Bruce Paswall alone and not the defendants. There it was alleged as follows:

"Defendant Bruce Paswall caused *inter alia,* the names of certain family
members (including his sons Grant Paswall) to be placed on the deed to his was
home and 13 Logging Rd., Katonah, NY 105 36, for no consideration or grossly
inadequate consideration. In an attempt to sow confusion Bruce Paswall also
caused at least two conflicting versions of the deed to the 13 Logging Rd.
property to be executed . The above conduct was undertaken with the purpose
and effect of impeding frustrating and impairing Plaintiff's ability to collect on
their judgment in violation of the above referenced statutes.

21. It is parenthetically noted that the "unnamed family member was the debtor's wife,

Brenda Paswall, who had previously commenced a divorce action and who had a equitable if not

actual interest in the aforementioned premises as the marital residence and therefore marital

property, subject to equitable jurisdiction, the laws of intestacy and the jurisdiction of the

Surrogate's Court. The allegations in Action 1# cannot be changed.

22. On the other hand the allegations with regard to these defendants, Grant Paswall and

Reid Paswall, were made upon information and believe and stated as follows:

" . . . Upon information and belief, Grant Paswall, Reid Paswall and most or all
of the "Doe", Defendants are united in interest with Bruce Paswall and have

8

A.113

aided and abetted Bruce Paswall's efforts to keep 13 Logging Road Property from being used to satisfy, plaintiffs' judgment, including *inter alia,* by allowing themselves from being use as instrumentalities of Bruce Paswall, thereby benefitting from Bruce Paswall's actual and constructive fraud and frustrating and impeding Plaintiffs' ability to enforce their judgment".

23. As herein above shown, none of the Notice provisions, allege any actual conduct on behalf of either Grant or Reid Paswall. All of the Notice provisions, that allege any acts, are alleged against non-party Bruce Paswall alone or upon information and belief against Grant Paswall or Reid Paswall. It is conceded by Mr. Lucas, Esq., attorney for the Santana Plaintiffs, that the named defendants were not involved in adding their names to the deed, along with their mother, as Joint tenants with rights of survivorship. It is also admitted that none of the Santana defendants ever alleged to have a claim to title to the property either.

24. The aforementioned allegations against these defendants, hardly amount to a claim under New York State's Debtor Creditor Law. The failure to do so certainly qualifies, as a meritorious defense, pursuant to F.R. .P. 12(b)(6), failure to state a cause of action..

25. The reason given by Lucas for discontinuing that lawsuit was that the Debtor Bruce Paswall filed a Chapter 7 Bankruptcy proceeding on September 11, 2019. The automatic stay afforded Bruce Paswall, had no bearing on the proceedings then pending. Such an argument has no merit or if it does it was not explained.

26. The distillate from the allegations in Action #1 and the present action, (hereinafter referred to as action #3) is simply the absence of any fraudulent conduct on the part of Brenda Paswall or by Reid Paswall or Grant Paswall. None of the foregoing are alleged to have undertaken any action with regard to the transfer of the deed to 13 Loggins Road Katonah, N.Y. 10536. At the time of the transfer Brenda Paswall had an interest in the marital property of which

9

A.114

13 Loggins Road Katonah New York was included. These defendants, are the sole heirs of Brenda Paswall's estate independent of any deed, but by operation of law.

27. As such the present action is subject to dismissal on the grounds of failing to state a cause of action upon which any relief may be afforded, pursuant to Fed R. Civ. Pro 12(b)(6). It is also subject to dismissal the Trustee alleges that Deborah not Brenda acquired title to the subject premises. Additionally if the plaintiff's wish to deprive Brenda Paswall's estate of her marital rights in marital property then the present action is subject to dismissal pursuant to Fed. R. Civ Pro 12(b)(7) for failing to join Brenda Paswall's estate. If the aforementioned requires the appointment of a fiduciary this can only be done in the Surrogates's Court, meaning that the action is subject to dismissal Pursuant to Fed. R. Civ Pro. 12(b)(1), lack of subject matter jurisdiction. The aforementioned allegations remain as admission to the detriment of the trustee. It is again noted that trustee was made are that the person named in the complaint likely intended to be Brenda is referred to as Deborah. Now is the time to amend the complaint to property identify a party

B       The Second (Action # 2) Marlene Santana,
        Yasminda Davis and Melissa Rodriguez v Bruce Paswall

28. The same attorney, Scott Lucas, Esq., who brought the incoherent action #1 against Reid Paswall and Grant Paswall now brings the identical action as previously brought but omitted Reid Paswall and Grant Paswall as parties. Essential the only difference is the identity of parties and the wherefore clause. Here the wherefore clause is limited to relief pursuant to Section 523(a)(6) of the bankruptcy Code, to wit: declaring that , "Paswall's judgment liability to Plaintiffs is nondischargeable". A copy of the adversary complaint vs Paswall is annexed hereto

10

A.115

as exhibit "E"

B      The Third (Action # 3) Mark S. Tullis as Chapter 7
Trustee of the estate of Bruce J. Paswall v Grant
Paswall & Reid Paswall

29. In this proceeding the Trustee, like Scott Lucas, Esq., in action #1 accompanied the
filing of his summons and complaint dated November 22, 2019, with a lis pendens . It should not
go unnoticed that the present action was filed during the pendency of action #1, wherein the
undersigned was counsel for both Grant Paswall & Reid Paswall. Yet the trustee felt it was
unnecessary, to provide a copy of the instant lawsuit to Grant Paswall and Reid Paswall's counsel
at the time as it had done to the debtor's counsel. See exhibit "D "

30. Apparently, to put it politely, the trustee was not aware that there was another
pending lawsuit brought by Scott Lucas, Esq., against Grant and Reid Paswall for the same
relief and upon the same facts as is the present action. Presumably had the trustee known,
common courtesy and practice would have required the trustee to send a courtesy copy of action
# 3 to the undersigned. Clearly he did not. Yet, we know that he hd given Paswall's lawyer such
a courtesy. This is so as the affidavit of service of action #3 , the one for which a default
judgment is sought, shows that a courtesy copy of the lawsuit was sent the debtor's attorney. See
exhibit "D ", supra.

31. Had the trustee commenced these proceedings with knowledge that another action
was already pending for the same relief upon the same facts and that the defendants in that action
had representation, he clearly would have extended the same courtesy to the undersigned as he
did to the debtor's attorney when he commenced the action and when he filed his motion for a
default judgment, See exhibit "D", supra. Does this not make the defendants, failure to time

11

interpose an answer excusable, in the eyes of the Court.

32  Perhaps that the reason that neither Proceeding #2 or Proceeding  # 3, were not linked to the underlying chapter 7 proceeding was to impede the timely discovery of these two identical proceedings.

33. There is no question that action #1, the Westchester County proceeding,  and the present action, proceeding #3,  were pending at the same time. It is clear that the trustee herein new or should have known that these defendants were previously represented by counsel. This means that the affidavits of service upon them by first-class mail only, pursuant to BFP section 7004 is clearly suspect.

34.  The particulars of the specific relief sought in proceeding, in action #3, the instant action  are contained at  paragraphs 1 through 95. Simply stated nowhere in the 18 page complaint nor in 148 paragraphs  does the trustee alleged that these defendants committed any act or that they were anything but transferees and subsequently distributees. Nor is it alleged that these defendants were subject to any prior restraint relating to their conduct as was apparently the debtor. The sole allegations against these defendants are contained in paragraph 139 through 141. See exhibit "E". Even then those allegations are made upon information and belief and limited to allegedly having knowledge of the conduct of other persons, one who, their mother, who passed away on April 17, 2019.  See exhibit  "B ", supra.,  paragraph 73.

35.  It is respectfully submitted that should the relief here be  granted the trustee will suffer no prejudice. Brenda Paswall always had an equitable interest in the subject premises. Nothing alleged in either of these proceedings takes that reality away from her.

12

A.117

THE RELIEF HEREIN SOUGHT BY THE PLAINTIFF
TRUSTEE FAILS TO STATE A CAUSE OF ACTION.

36. In ***Commodity Futures Trading Comm v Walsh,*** 17 N.Y. 3d. 162, 951 N.E. 369.

927 N.Y.S 2d.  821, the following questions were certified by the New York Court of Appeals:

(1) Does marital property within the meaning of New York Domestic Relations
Law §236 include the proceeds of fraud? (2) does a spouse pay 'fair
consideration' according to the terms of New York Debtor Creditor Law §272
when she relinquishes in good faith a claim to the proceeds of the fraud?

37. In  ***Commodity Futures Trading Comm v Walsh,*** the second Circuit Court of

Appeals, went on to hold that

" New York's Equitable Distribution Law permits the parties to contract
out of the elaborate statutory scheme and instead agree to a division or distribution
of property, provided financial disclosure and the statutory requirements for a
valid separation agreement are satisfied §236(b).

38.  Also, it was held in ***Commodity Futures Trading Comm., supra.***

"according to the N.Y. Court of Appeals Debtor Creditor law provides that a
creditor **whose claim has matured** (emphasis supplied) may have a fraudulent
conveyance set aside against any person **other than a good faith purchaser for
value,  defines a purchaser for fair consideration without knowledge of the
fraud. §278(1)** (emphasis supplied.) Fair consideration is given for property
when in exchange for such property as a fair equivalent therefor, and I n good fith,
property is conveyed or an antecedent debt is satisfied Debtor Creditor Law § 272.

39. The Court in ***Commodity Futures Trading Comm., supra.***  ,goes on to concluded that,

In assessing whether a spouse pays fair consideration within the meaning of
Debtor Creditor Law §272, in connection with a property distribution made
pursuant to a separation agreement incorporated into a judgment of divorce a
court needs to look beyond the tangible marital property at issue, because New
York recognizes other forms of legitimate consideration. For example New York
Courts have found fair consideration where a spouse releases a claim for
maintenance, or where consideration is predicated on legal cognizable aspects of
aspects of the transferors child support obligation. Similarly, the waiver of
inheritance rights and the relinquishment of other rights and remedies otherwise
conferred by law are also relevant to the determination of fair consideration. It is

13

A.118

also possible that child custody or visitation concessions could be viewed as a valuable form of consideration. Based upon the myriad types of consideration that arise in the unique context of marital dissolution, <u>transfers made pursuant to a valid separation agreement incorporated into a divorce decree are presumed to have been made for fair consideration</u>" (emphasis supplied).

40. Finally, it was held that,

"An innocent spouse who received possession of tainted property in good faith and gave fair consideration for it should prevail over the claims of the original owners or owners consistent with New York's State's strong public policy of ensuring finality of divorce proceedings."
including.

41. Clearly the Santana plaintiff's never owned the subject property and therefore cannot seek that title to the subject party be transferred to them outright. After overcoming the presumption of fair consideration, Brenda Paswall, deceased is still entitled to be reimbursed for the claims she relinquished to date.

42. Dismissal of the lawsuit under Fed. R. Civ. Pro 12(b)(6)(1)(2) is nevertheless required. Standing lies in the Westchester Supreme Court and Surrogate's Court respectively.

43. Even then these defendants as innocent transferees still have a valid claim which needs to be adjudicated.

44. First and foremost. The Court cannot allow this action to be maintained in its present form. At a minimum the complaint needs to be amended to name Brenda Paswall deceased in lieu of Deborah. The proposed answer sets forth sufficient numerous affirmative defenses which also need to be adjudicated.

Wherefore it is respectfully requested that the Plaintiff's motion for a default judgment be denied together with such other and further relief as to this Court is deemed just and proper, including a further order directing plaintiff to amend it complaint,

14

A.119

Dated: Great Neck, N.Y.
June 12, 2020

                                                _____

                                                Lowell B. Davis, Esq
                                                One Old Country Rd
                                                Carle Place, N.Y. 11514
                                                516 746 7474
                                                516 320-0221

To: David A. Lansky, Esq
    Lamonica Herbst & Maniscalco, LLP
    3305 Jerusalem Avenue
    Wantagh, N.Y. 11793

A.120

**DE11-1, Opp. Exh. A -- Proposed Answer (Jun. 11, 2020)**
**[A.121-130]**

EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X    Case No. 19-23623-RED
In Re:

Bruce J. Paswall
                              *Debtor*                    ANSWER TO ADVERSARY
                                                          COMPLAINT
-----------------------------------------------------------------X
MARK S. CULLIS, as Chapter 7
Trustee of the Estate of Bruce J. Paswall

                              *Plaintiff,*

                       -against-

GRANT  PASWALL and  REID  PASWALL

                        Defendants
-----------------------------------------------------------------------

    1.     Admits the allegations in paragraph 1.

    2.     Denies the allegations in paragraph 2.

    3.     Denies  the allegations in paragraph 3.

    4.     Admits  the allegations in paragraph 4.

    5.     Admits, the allegations contained in paragraph  5.

    6.     Admits, the allegations contained in paragraph 6.

    7.     Admits  the allegations in paragraph 7.

    8.     Denies the allegations in paragraph 8.

    9.     Denies  the allegations in paragraph 9.

    10.     Denies the allegations in paragraph 10.

    11.     Admits the allegations in paragraph 11.

    12.     Admits the allegations in paragraph 12.

A.122

13.  Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 13.

14.  Admits the allegations contained in paragraph 14.

15.  Admits the allegations contained in paragraph 15, except denies that the parties were to appear for examination under CLR 5229 no later than March 7, 2016.

16.  Denies the allegations contained in paragraph 16.

17.  Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 17.

18.  Denies the allegations in paragraph 18.

19.  Admit the allegations contained in paragraph 19.

20.  Admit the truth of the allegations contained in paragraph 20.

21.  Admit the truth of the allegations in paragraph 21.

22.  Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 22.

23.  Denies the truth of the allegations in paragraph 23.

24   Admits the truth of the allegations in paragraph 24.

25.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25.

26.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26.

27.  Admits the truth of the allegations in paragraph 27.

28.  Denies the truth of the allegations in paragraph 28.

29.  Denies the truth of the allegations in paragraph 29.

30.  Denies the truth of the allegations in paragraph 30.

2

A.123

31.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31.

32.  Denies the truth of the allegations in paragraph 32.

33.   Denies the truth of the allegations in paragraph 33.

34.   Denies the truth of the allegations in paragraph 34.

35.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35.

36.  Admits the allegations in paragraph 36.

37.  Denies  the truth of the allegations in paragraph 37.

38. Denies  the truth of the allegations in paragraph 38.

39.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39.

40.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40.

41.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41.

42.  Denies the allegations in paragraph 42.

43. Denies the allegations in paragraph 43.

44.  Denies the allegations in paragraph 44.

45.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45.

46.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph  46.

47.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47.

48.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48.

3

A.124

49. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49.

50. Denies the allegations in paragraph 50

51. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51.

52. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52.

53. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53.

54. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47.

55. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55.

56. Denies the truth of the allegations in paragraph 56.

57. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 57.

58. Denies the allegations in paragraph 58.

59. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59.

60. Denies the allegations in paragraph 60.

61. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61.

62. Denies the allegations in paragraph 62.

63. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63.

64. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64.

65. Denies the allegations in paragraph 65.

4

66. Denies the allegations in paragraph 66.

67. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67.

68. Denies the allegations in paragraph 68.

69. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 69.

70. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70.

71. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 71.

72. Denies the allegations in paragraph 72.

73. Denies the truth of the allegations in paragraph 73.

74. Denies the truth of the allegations in paragraph 74.

75. Denies the allegations in paragraph 75.

76. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76.

77.  Denies the allegations in paragraph 77.

78. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 78.

79. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79.

80. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 80.

81. Denies the allegations in paragraph 81.

82. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 82.

83. Denies the truth of the allegations in paragraph 83.

5

A.126

84. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 84.

85. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 85.

86. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 86.

87. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 87.

88. Denies the allegations in paragraph 88.

89. Denies the allegations in paragraph 89.

90. Denies the allegations in paragraph 90.

91. Denies the allegations in paragraph 91.

92. Denies the allegations in paragraph 92.

93. Denies the allegations in paragraph 93.

94. Denies the allegations in paragraph 95

95. Defendants, repeat, re-allege, each and every admission, denial, and denial upon information and belief herein before asserted as if more fully set forth at length herein

96. Denies the truth of the allegation in paragraph 96.

97. Denies the truth of allegations in paragraph 97.

98. Denies the truth of the allegations in paragraph 98

99. Denies the allegations in paragraph 99.

100. Denies the allegations in paragraph 100.

101. Defendants, repeat, re-allege, each and every admission, denial, and denial upon information and belief herein before asserted as if more fully set forth at length herein

6

A.127

102.  Denies the allegations in paragraph 102.

103.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 103.

104.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 104.

105.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 105.

106.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 106.

107.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 107.

108.   Denies the allegations in paragraph 108.

109.   Denies the allegations in paragraph 109

110.   Denies the allegations in paragraph 110.

111.   Defendants, repeat, re-allege, each and every admission, denial, and denial upon information and belief herein before asserted as if more fully set forth at length herein

112.   Defendants, deny knowledge or information and sufficient to form a belief as to the truth of the allegations contained in paragraph 112.

113.   Denies the allegations in paragraph 113.

114.   Denies the allegations in paragraph 114

115.   Denies the allegations in paragraph 115.

116.   Denies the allegations in paragraph 116.

117.   Denies the allegations in paragraph 117

118.   Defendants, deny knowledge or information and sufficient to form a belief as to the truth of the allegations contained in paragraph 118.

119.   Denies the allegations in paragraph 115.

7

A.128

120. Denies the allegations in paragraph 113.

121. Denies the allegations in paragraph 114

122. Denies the allegations in paragraph 115.

123. Denies the allegations in paragraph 116.

124. Defendants, repeat, re-allege, each and every admission, denial, and denial upon information and belief herein before asserted as if more fully set forth at length herein

125. Denies the allegations in paragraph 125.

126. Denies the allegations in paragraph 126

127. Denies the allegations in paragraph 127.

128. Denies the allegations in paragraph 128.

129. Denies the allegations in paragraph 129.

130. Denies the allegations in paragraph 130.

131. Denies the allegations in paragraph 131.

132. Denies the allegations in paragraph 132.

133. Denies the allegations in paragraph 133.

134. Denies the allegations in paragraph 134.

135. Denies the allegations in paragraph 135

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

136. This honorable Court lacks subject matter over this action pursuant to Fed. R. Civ. Pro 12(b)(1)

### SECOND AFFIRMATIVE DEFENSE

137. Plaintiff's complaint fails to state a claim upon which relief may be granted

8

A.129

pursuant to Fed. R. Civ Pro 12(b)(6)

### THIRD  AFFIRMATIVE DEFENSE

138.  Plaintiff has failed to join the debtor's deceased spouse under Fed. R, Civ Pro. 19.

### FOURTH AFFIRMATIVE DEFENSE

139.   Plaintiff has failed to effect proper service of process upon defendants join the debtor's deceased spouse under Fed. R, Civ Pro. 12(b)(5)

140.   Plaintiff's claims are barred by the applicable Statute of Limitations

Dated: June 11, 2020
    Carle Place, N.Y. 11514

                        Lowell B. Davis, Esq.
                        One Old Country Rd Ste 385
                        Carle Place, New York 11514
                        516 746 7474
                        516 320-0221

A.130

DE11-2, Opp. Exh. B -- Complaint (Nov. 22, 2019)
[A.131-149]

# EXHIBIT "B"

**LaMONICA HERBST & MANISCALCO, LLP**
3305 Jerusalem Avenue
Wantagh, New York 11793
Telephone: (516) 826-6500
David A. Blansky, Esq.
Salvatore LaMonica, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In re:                                                      Chapter 7

BRUCE J. PASWALL,                                           Case No. 19-23623 (RDD)

        Debtor.
-----------------------------------------------------------------x

MARK S. TULIS, as Chapter 7
Trustee of the Estate of Bruce J. Paswall,

                                                            Adv. Pro. No.

        Plaintiff,

    -against-

GRANT PASWALL and REID PASWALL,              **COMPLAINT**

        Defendants.
-----------------------------------------------------------------x

Plaintiff Mark S. Tulis, as Chapter 7 Trustee (the "Plaintiff") of the estate of Bruce J.

Paswall (the "Debtor"), by his attorneys, LaMonica Herbst & Maniscalco, LLP, as and for his

complaint against defendants Grant Paswall ("Grant") and Reid Paswall ("Reid") (collectively,

the "Defendants"), alleges as follows:

### JURISDICTION AND VENUE

1.      Since this action arises under the Debtor's pending Chapter 7 bankruptcy case, the

United States Bankruptcy Court for the Southern District of New York (the "Court") has

jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334 and Rules 6009 and 7001 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

A.132

2.       The statutory predicates for the claims asserted herein are sections 541, 542, 544,

550, and 551 of Title 11 of the United States Code (the "Bankruptcy Code"), sections 273, 273-a,

274, 275, 276, and 276-a of New York Debtor and Creditor Law (the "DCL"), Bankruptcy Rules

6009 and 7001, and New York common law.

3.       This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H),

and (O).

4.       Pursuant to 28 U.S.C. § 1409(a), this Court is the proper venue for this

proceeding.

5.       In accordance with Bankruptcy Rule 7008, Plaintiff consents to the entry of final

orders and judgment by this Court if it is determined that this Court, absent the consent of the

parties, cannot enter final orders or judgment consistent with Article III of the United States

Constitution.

## BACKGROUND

### A.      Procedural Background

6.       On September 11, 2019, the Debtor filed a voluntary petition for relief pursuant to

Chapter 7 of the Bankruptcy Code in this Court.

7.       Plaintiff was appointed as the Chapter 7 Trustee of this estate and, by operation of

law, Plaintiff is the permanent Chapter 7 Trustee of this estate.

### B.      The Parties

8.       Grant is the adult son of the Debtor and the Debtor's former spouse, Debra

Paswall ("Debra"), and an individual residing in Mahopac, New York.

9.       Reid is the adult son of the Debtor and Debra and an individual residing at the

Real Property (as defined below).

2

A.133

10.     Plaintiff is authorized to file this action pursuant to Bankruptcy Code § 323 and Bankruptcy Rule 6009.

## C.     The Santana Lawsuit, Restraining Order and Judgment

11.     In 2008, Marlena Santana, Yasminda Davis and Melissa Rodriguez (the "Santana Parties") commenced an action in the Supreme Court of the State of New York, County of Bronx (the "State Court"), under Index No. 305261/2008 against G.E.B. Medical Management, Inc. ("G.E.B.") and the Debtor arising from claims for pregnancy discrimination (the "Santana Lawsuit").

12.     On September 15, 2015, a jury rendered a verdict in favor of the Santana Parties awarding $1.5 million in compensatory/emotional distress damages, $1.5 million in punitive damages, and certain lost wages.

13.     Pending the entry of judgment following the jury verdict, pursuant to CPLR § 5229, on September 15, 2015, the State Court entered an order imposing restraints on the Debtor and G.E.B. intended to have the same effect as if a restraining notice had been served on them (the "Restraining Order").

14.     The Restraining Order was expressly continued by the State Court by stipulation so-ordered by the Court on January 11, 2016.

15.     The So-Ordered Stipulation (the "So-Ordered Stipulation") required the Debtor and G.E.B. to produce documents and information to the Santana Parties by February 7, 2016, and to appear for examinations under CPLR § 5229 no later than March 7, 2016.

16.     The Debtor and G.E.B. failed to comply with their obligations under the So-Ordered Stipulation.

17.     On September 16, 2016, the Santana Parties moved to hold the Debtor and G.E.B. in contempt.

3

A.134

18. While the motion for contempt was pending, the Deed (defined below) was recorded.

19. On October 18, 2017, the State Court issued an order adjudicating the Debtor and G.E.B. to be in contempt for failure to comply with the So-Ordered Stipulation.

20. On January 24, 2018, a judgment was entered in favor of the Santana Parties and against the Debtor and G.E.B. in a sum of $4,223,242.65 (the "Judgment").

## D. The TCF Lawsuit

21. On February 5, 2016, TCF Equipment Finance, a division of TCF National Bank f/k/a TCF Equipment Finance, Inc. ("TCF") commenced an action against the Debtor and G.E.B. in the Supreme Court of the State of New York, County of New York, under Index No. 650611/2016, in which it sought money damages arising from G.E.B.'s default under a certain equipment lease and the Debtor's unconditional personal guaranty of that lease (the "TCF Lawsuit").

22. On December 24, 2018, judgment was granted in favor of TCF and against the Debtor and G.E.B. in the total sum of $301,746.91 (the "TCF Judgment").

## E. The Matrimonial Action

23. While the Santana Lawsuit was pending, Debra commenced an action for divorce against the Debtor in the Supreme Court of the State of New York, County of Westchester (the "Matrimonial Action").

24. A judgment of divorce was entered on June 12, 2012, which incorporated by reference a certain stipulation placed on the record on December 12, 2011.

25. In January 2014, the equitable distribution provisions of that stipulation were vacated and the judgment of divorce was modified.

4

A.135

26.     Subsequently, the Debtor and Debra reached a settlement intended to resolve all of the issues emanating from the Matrimonial Action, which settlement was executed by each of them before a notary in October 2014 (the "Matrimonial Stipulation").

27.     The Matrimonial Stipulation provided, among other things, that Debra would convey all of her right, title and interest in the real property known as, and located at, 13 Logging Road, Katonah, New York 10536, designated Section 59.5 Block 2 Lot 2 on the Tax Map of the Town of Somers, County of Westchester (the "Real Property") to the Debtor.

28.     Upon information and belief, the Debtor and Debra had resided at the Real Property from its purchase in 1992 until sometime in 2012.

29.     Upon information and belief, Debra ceased to reside at the Real Property in 2012.

30.     The Debtor continued to reside at the Real Property, to the exclusion of Debra, subsequent to her departure in 2012.

31.     Upon information and belief, the Debtor's girlfriend subsequently moved in with him at the Real Property and continues to reside there.

32.     By deed recorded December 19, 2014, Debra conveyed all of her right, title and interest in the Real Property to the Debtor.

33.     At that time, Debra had not resided at the Real Property for several years and the Debtor was residing there with his girlfriend and one or more of Defendants.

34.     The Debtor took Debra's right, title and interest in the Real Property subject to a first mortgage lien granted in favor of GE Capital Mortgage Services, Inc. in 1992, which mortgage has since been assigned to Wells Fargo Home Mortgage (the "First Mortgage").

35.     Upon information and belief, the Debtor has been the sole source of the payments of the First Mortgage since Debra left the Real Property.

5

A.136

36.     As of the Filing Date, $97,447.00 was owed to Wells Fargo Home Mortgage on
the First Mortgage.

37.     Under the Matrimonial Stipulation, the Debtor was to pay Debra $300,000.00 in
two installments of $150,000.00.

38.     As security for the performance by the Debtor, the Debtor was to execute a
bargain and sale deed transferring and conveying his right, title and interest in the Real Property
to Debra (defined therein as the "Return Deed"), which deed was to be held in escrow.

39.     The first installment was to be paid from proceeds of a mortgage to be sought by
the Debtor within ten (10) days of his closing on the loan.

40.     The second installment was to be paid within six (6) months of the date of the
closing on the initial financing.

41.     The Matrimonial Stipulation provided, among other things, that in the event of a
default in making either of the $150,000.00 payments within the time provided for each therein
or satisfying an order awarding counsel fees within thirty (30) days of entry, the Debtor would be
in default.

42.     The Matrimonial Stipulation provided that in the event of an uncured default the
Real Property would immediately be marketed for sale with the unpaid funds due Debra being
paid from the net proceeds of sale, together with an additional $25,000.00, representing her legal
fees, costs and expenses associated with the default, and the remaining net proceeds would be
paid to the Debtor.

43.     The Matrimonial Stipulation provided that if the initial payment of $150,000.00
was made by the Debtor, the release of the Return Deed to Debra would be conditioned upon
either Debra's repayment to the Debtor of $150,000.00 or her demonstration that she had

6

A.137

satisfied the Debtor's obligations arising from the initial financing obtained to fund the first $150,000.00 payment.

44.    Rather than execute the Return Deed in the form provided by the Matrimonial Stipulation, the Debtor executed a deed by which all of his right, title and interest in the Real Property would be conveyed to Debra and Defendants as joint tenants, with right of survivorship, by which the Debtor also preserved a life estate for himself (the "Deed"). A fair and accurate copy of the Deed is annexed as Exhibit "A".

45.    Upon information and belief, the Deed was delivered to counsel for one of the litigants to the Matrimonial Action to hold in escrow.

46.    The Matrimonial Stipulation neither provided for the conveyance of title to Defendants nor the Debtor's preservation of a life estate.

47.    On or about January 16, 2015, the Debtor entered into a home equity line of credit loan secured by a mortgage against the Real Property by which he borrowed $195,000.00 (the "Initial Financing Loan").

48.    The Debtor was the sole borrower for the Initial Financing Loan.

49.    That mortgage was recorded against the Real Property on February 17, 2015.

50.    Upon information and belief, the Debtor paid Debra the initial $150,000.00 from the proceeds of the Initial Financing Loan in or about late January 2015.

51.    Upon information and belief, the Debtor used the balance of the proceeds of the Initial Financing Loan to make improvements to the Real Property.

52.    Subsequent to the issuance of the Restraining Order by the State Court, the Debtor sought a modification of the Initial Financing Loan to increase the principal amount borrowed by $155,000.00 to a total principal sum of $350,000.00 (the "Modification Loan").

7

A.138

53.    In or about December 2015, subsequent to the deadline for the second installment of $150,000.00 and while the Restraining Order was in effect, the Debtor was granted the Modification Loan and closed on the Modification Loan.

54.    In connection with the Modification loan, the Debtor executed a mortgage modification agreement on December 5, 2015 by which the indebtedness secured against the Real Property owed to the lender under the Initial Financing Loan was increased to the principal sum of $350,000.00.

55.    As of the Filing Date, the balance of $348,479.00 was owed to KeyBank NA in connection with the Modification Loan.

56.    The Debtor did not pay Debra the second $150,000.00 installment from the proceeds of the Modification Loan.

57.    The Debtor primarily used the proceeds of the Modification Loan to renovate and improve the Real Property.

58.    Upon information and belief, the Debtor subsequently made additional monthly payments of $5,000.00 to Debra, totaling approximately $80,000.00.

59.    Upon information and belief, the Real Property was never listed for sale as a consequence of the Debtor's default in paying the second installment of $150,000.00.

60.    Debra neither repaid the initial $150,000.00 paid by the Debtor in January 2015 nor satisfied the Initial Financing Loan.

61.    Upon information and belief, the conditions precedent to the release of the Return Deed were never satisfied.

62.    Upon information and belief, between 2012 and early 2017, the Debtor demolished, renovated and improved nearly the entire interior of the Real Property, with the exception of the basement.

8

A.139

63. In the process he, among other things, gutted and renovated the kitchen and bathrooms and installed high-end cabinets, fixtures and custom closets.

64. The Debtor also replaced the roof and HVAC systems and installed new flooring throughout the house, which included radiant heat.

65. Upon information and belief, the Debtor expended between $200,000.00 and $400,000.00 over time to renovate and improve the Real Property.

66. The Debtor continued to exercise control over, improve and utilize the Real Property as if it were his own subsequent to the delivery of the Deed into escrow and the recording of the Deed.

## F. The Transfer of the Real Property

67. On January 27, 2017 the Deed was recorded. See Exhibit "A".

68. Upon information and belief, the Deed was released from escrow in violation of the terms of the Matrimonial Stipulation.

69. The recording and endorsement page for the Deed reflects that no transfer tax was paid in connection with the transfer of title from the Debtor. See Exhibit "A".

70. The recording and enforcement page reflects that the Deed was to be recorded and returned to the Debtor at the Real Property. See Exhibit "A".

71. Upon information and belief, the Deed was returned to the Debtor following its recording.

72. The Debtor failed to receive fair consideration in exchange for conveying title to Debra and Defendants.

73. Debra passed away on April 17, 2019.

74. As joint tenants with a right of survivorship, Defendants equally acquired Debra's one-third interest in the Real Property conveyed by the Deed upon Debra's passing.

9

A.140

75.    The Deed effectuated a transfer of an interest in the Real Property for less than fair consideration or reasonably equivalent value.

76.    At the time of the recording of the Deed, the jury had already rendered a verdict against the Debtor and in favor of the Santana Parties for more than $3 million.

77.    At the time of the recording of the Deed, the Debtor and G.E.B. were subject to a restraining order issued by the State Court and a motion to hold them in contempt for failure to comply with their discovery obligations under the So-Ordered Stipulation pending before the State Court.

78.    Upon information and belief, the Real Property is comprised of a 1.58-acre lot.

79.    Upon information and belief, a 4,170 sq. ft. single-family residence was constructed on the Real Property in 1992.

80.    Upon information and belief, the house contains four (4) bedrooms and four (4) bathrooms.

81.    Upon information and belief, at all times relevant, the Town of Somers Tax Assessor has estimated the fair market value of the Real Property to be no less than $1.1 million.

82.    The Real Property had substantial equity estimated to be no less than $600,000.00 at the time of the recording of the Deed.

83.    Upon information and belief, there existed $650,000.00 in equity in the Real Property on the Filing Date.

84.    Upon information and belief, the Debtor has continued to pay the First Mortgage and Modification Loan post-petition.

85.    The Debtor had at least one (1) creditor at the time of recording of the Deed who was unpaid as of the Filing Date.

10

A.141

86. The Debtor had creditors holding unsecured claims against him at the time of the recording of the Deed, including, but were not limited to, the Santana Parties and TCF.

87. The Debtor has testified that the Deed was prepared with the intent to "leave the house" to Defendants.

88. In an e-mail authored by the Debtor and transmitted to Debra on September 29, 2015, shortly after the adverse jury verdict in favor of the Santana Parties, the Debtor stated his desire to "protect what only asset there is to leave to the children."

89. The Debtor recorded the Deed with the intent to hinder, delay, and defraud his creditors.

90. Defendants received the Deed with actual intent to hinder, delay or defraud the Debtor's creditors.

91. Defendants accepted the Deed with knowledge of its avoidability and lacked good faith.

92. Upon information and belief, the Debtor was insolvent at the time of the recording of the Deed or was rendered insolvent by the recording of the Deed.

93. At the time of the recording of the Deed, the Debtor intended to incur, or believed that he would incur debts that would be beyond his ability to pay as such debts matured.

94. Upon information and belief, the equity in the Real Property exceeds all liens, claims, or encumbrances on the Real Property.

### FIRST CLAIM FOR RELIEF
### (Fraudulent Conveyance Pursuant to DCL § 273)

95. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "94" as if set forth fully herein.

96. At the time of recording of the Deed, the Debtor was insolvent or were rendered insolvent as a result of recording of the Deed.

11

A.142

97.    The Debtor did not receive fair consideration in exchange for the Deed.

98.    The recording of the Deed constitutes a fraudulent conveyance in violation of DCL § 273.

99.    Pursuant to Bankruptcy Code §§ 544(b), 550, and 551, and DCL § 273, Plaintiff may avoid the Deed and preserve it for the benefit of the Debtor's estate.

100.    Accordingly, Plaintiff is entitled to judgment against Defendants: (a) avoiding and setting aside the Deed pursuant to DCL § 273; (b) preserving the Deed for the benefit of the estate; (c) directing the Clerk of Westchester County to strike the Deed from the public record; and (d) awarding an amount to be determined by the Court, but not less than $650,000.00, plus interest thereon, attorney's fees and costs.

## SECOND CLAIM FOR RELIEF
### (Fraudulent Conveyance Pursuant to DCL § 273-a)

101.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "100" as if set forth fully herein.

102.    The Debtor did not receive fair consideration from Defendants in exchange for the Deed.

103.    At the time the Deed was recorded, the Debtor was the subject of a claim for money damages no less than two lawsuits, including the Santana Lawsuit and the TCF Lawsuit.

104.    As reflected in Schedule F to the Debtor's Petition, the Debtor's creditors are owed more than $4 million arising from debts incurred prior to the Filing Date.

105.    The Santana Judgment was entered against the Debtor and Q.E.B. on January 24, 2018.

106.    The TCF Judgment was entered December 24, 2018.

107.    The Santana Judgment and TCF Judgment remained unsatisfied as of the Filing Date.

A.143

108.   The recording of the Deed constitutes a fraudulent conveyance in violation of New York State Debtor and Creditor Law § 273-a.

109.   Under Bankruptcy Code §§ 544(b), and 550, and New York State Debtor and Creditor Law § 273-a, Plaintiff may avoid the Deed.

110.   Accordingly, Plaintiff is entitled to judgment against Defendants: (a) avoiding and setting aside the Deed pursuant to DCL § 273-a; (b) preserving the Deed for the benefit of the estate; (c) directing the Clerk of the County of Westchester to record the order of this Court striking the Deed from the public record; and (d) in an amount to be determined by the Court, but no less than $650,000.00, plus interest thereon, attorney's fees and costs.

## THIRD CLAIM FOR RELIEF
### (Fraudulent Conveyance Pursuant to DCL § 274)

111.   Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "110" as if set forth fully herein.

112.   The Deed was recorded during the six (6) years preceding the Filing Date.

113.   The Debtor did not receive fair consideration in exchange for the Deed.

114.   Upon information and belief, at the time the Deed was recorded, the Debtor was engaged or was about to engage in a business or transaction for which the property remaining in his possession after the recording of the Deed constituted unreasonably small capital.

115.   The recording of the Deed constitutes a fraudulent conveyance in violation of DCL § 274.

116.   Pursuant to Bankruptcy Code §§ 544(b), 550, and 551, and DCL § 274, Plaintiff may avoid the Deed and preserve it for the benefit of the Debtor's estate.

117.   Accordingly, Plaintiff is entitled to judgment against Defendants: (a) avoiding and setting aside the Deed pursuant to DCL § 274; (b) preserving the Deed for the benefit of the estate; (c) directing the Clerk of the County of Westchester to record the order of this Court

13

A.144

striking the Deed from the public record; and (d) in an amount to be determined by the Court, but no less than $650,000.00, plus interest thereon, attorney's fees and costs.

## FOURTH CLAIM FOR RELIEF
### (Fraudulent Conveyance Pursuant to DCL § 275)

118. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "117" as if set forth fully herein.

119. At the time of the recording of the Deed, the Debtor had incurred, or was intending to incur, debts beyond his ability to pay them as they became due.

120. The Debtor did not receive fair consideration in exchange for the Deed.

121. The recording of the Deed constitutes a fraudulent conveyance of the Debtor's assets in violation of DCL § 275.

122. Pursuant to Bankruptcy Code §§ 544(b), 550, and 551, and DCL § 275, Plaintiff may avoid the Deed and preserve it for the benefit of the Debtor's estate.

123. Accordingly, Plaintiff is entitled to judgment against Defendants: (a) avoiding and setting aside the Deed pursuant to DCL § 275; (b) preserving the Deed for the benefit of the estate; (c) directing the Clerk of the County of Westchester to record the order of this Court striking the Deed from the public record; and (d) in an amount to be determined by the Court, but no less than $650,000.00, plus interest thereon, attorney's fees and costs.

## FIFTH CLAIM FOR RELIEF
### (Fraudulent Conveyance pursuant to New York Debtor and Creditor Law § 276)

124. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "123" as if set forth fully herein.

125. The Deed was recorded for the benefit of Defendants with the actual intent to hinder, delay, or defraud present or future creditors of the Debtor.

14

A.145

126.    Defendants are insiders of the Debtor within the meaning of § 101(31)(A)(i) of
the Bankruptcy Code, as they are his sons.

127.    The Debtor's entry into the Modification Loan and withdrawal of $155,000.00 of
the equity in the Real Property constituted a knowing and willful violation of the Restraining
Order.

128.    The recording of the Deed constituted a knowing and willful violation of the
Restraining Order.

129.    The Debtor used the funds to improve the Real Property rather than pay his
creditors.

130.    The Debtor retained possession and use of the Real Property following the
recording of the Deed.

131.    The Debtor failed to receive fair consideration for the Deed.

132.    The recording of the Deed effectuated an intra-family transfer for which the
Debtor failed to receiver any tangible consideration.

133.    Upon information and belief, the Deed was recorded following the jury verdict in
favor of the Santana Parties, while the Restraining Order was in effect, and during the pendency
of the TCF Lawsuit for the purpose of removing the Real Property from the immediate reach of
the Santana Parties, TCF and other creditors, while creating a means of allowing the Debtor to
remain in possession.

134.    Pursuant to Bankruptcy Code §§ 544(b), 550, and 551, and DCL § 276, Plaintiff
may avoid the Deed and preserve it for the benefit of the Debtor's estate.

135.    Accordingly, Plaintiff is entitled to judgment against Defendants: (a) avoiding and
setting aside the Deed pursuant to DCL § 276; (b) preserving the Deed for the benefit of the
estate; (c) directing the Clerk of the County of Westchester to record the order of this Court

15

A.146

striking the Deed from the public record; and (d) in an amount to be determined by the Court, but no less than $650,000.00, plus interest thereon, attorney's fees and costs.

## SIXTH CLAIM FOR RELIEF
### (Attorneys' Fees Pursuant to DCL § 276-a)

136.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "135" as if set forth fully herein.

137.     The Deed was recorded by, or on behalf of the Debtor and/or Defendants, with the actual intent to hinder, delay, or defraud present or future creditors of the Debtor.

138.     The Deed was received Defendants with the actual intent to hinder, delay, or defraud present or future creditors of the Debtor.

139.     Upon information and belief, Defendants knew of the pendency of the action commenced by the Santana Parties against the Debtor and G.E.B. and/or the jury verdict at the time the Deed was recorded.

140.     Upon information and belief, Defendants were aware of their parents' plan to convey title to the Real Property to them.

141.     Upon information and belief, Defendants were aware that they provided no consideration in exchange for the Deed.

142.     The recording of the Deed constitutes a fraudulent conveyance under DCL §276-a.

143.     Accordingly, Plaintiff is entitled to judgment against Defendants, pursuant to DCL § 276-a, for reasonable attorneys' fees in an amount to be determined by the Court in connection with the prosecution of this action.

## SEVENTH CLAIM FOR RELIEF
### (Unjust Enrichment)

144.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "143" as if set forth fully herein.

16

A.147

145.   Defendants were enriched as a result of the recording of the Deed.

146.   The enrichment of Defendants was at the expense of the Debtor and the Debtor's

bankruptcy estate.

147.   The circumstances relating to the recording of the Deed are such that equity and

good conscience require that the Deed be avoided.

148.   Accordingly, judgment should be entered in favor of Plaintiff avoiding and setting

aside the Deed.

**WHEREFORE**, Plaintiff demands judgment on her claims for relief against Defendant

as follows:

1.   On the first claim for relief, a judgment, pursuant to DCL § 273, avoiding and setting aside the Deed, preserving the Deed for the benefit of the estate and directing the Westchester County Clerk to strike the Deed from the public record; and

2.   On the second claim for relief, a judgment, pursuant to DCL § 273-a, avoiding and setting aside the Deed, preserving the Deed for the benefit of the estate and directing the Westchester County Clerk to strike the Deed from the public record;

3.   On the third claim for relief, a judgment, pursuant to DCL § 274, avoiding and setting aside the Deed, preserving the Deed for the benefit of the estate and directing the Westchester County Clerk to strike the Deed from the public record;

4.   On the fourth claim for relief, a judgment, pursuant to DCL § 275, avoiding and setting aside the Deed, preserving the Deed for the benefit of the estate and directing the Westchester County Clerk to strike the Deed from the public record;

5.   On the fifth claim for relief, a judgment, pursuant to DCL § 276, avoiding and setting aside the Deed, preserving the Deed for the benefit of the estate and directing the Westchester County Clerk to strike the Deed from the public record;

A.148

6. On the sixth claim for relief, a judgment, pursuant to DCL § 276-a, for reasonable attorneys' fees in an amount to be determined by the Court in connection with the prosecution of this action;

7. On the seventh claim for relief, a judgment avoiding and setting aside the Deed;

8. For such other, further, and different relief as the Court may deem just and proper.

Dated: November 22, 2019
Wantagh, New York

**LAMONICA HERBST & MANISCALCO, LLP**
Counsel to Plaintiff Mark S. Tulis, Chapter 7
Trustee

By:     *s/ David A. Blansky*
David A. Blansky, Esq.
Salvatore LaMonica, Esq.
3305 Jerusalem Avenue
Wantagh, New York 11793
Telephone: (516) 826-6500

m:\documents\company\cases\paswall. bruce j\adv pro\complaint re logging road.docx

18

A.149

**DE11-3, Opp. Exh. C -- Summons, Westchester Action (Sep. 16, 2019)**
**[A.150-163]**

# EXHIBIT "C"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
---------------------------------------------------------------------X
MARLENA SANTANA, YASMINDA DAVIS and
MELISSA RODRIGUEZ,

                                         Index No.

                   *Plaintiff,*

       -against-

                             **SUMMONS**
BRUCE PASWALL, REID PASWALL,           **WITH**
GRANT PASWALL, and "Doe" Defendants one   **NOTICE**
through ten, fictitious names used to designate
additional persons whose identities are not
known to Plaintiffs,

                 *Defendants,*
---------------------------------------------------------------------X

## TO THE ABOVE-NAMED DEFENDANTS:

     **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance on Plaintiffs' attorneys within 20 days after the service (or within 30 days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

     Plaintiffs designate Westchester as the place of trial. The basis of venue is New York Civil Practice Law and Rules §§ 507 (based on the situs of the subject property) and 503(a) (based on where the named Defendants reside).

Defendants' Addresses:          Plaintiffs' Attorneys:

Bruce Paswall                 Law Offices of Scott A. Lucas
13 Logging Road              250 Park Avenue, Suite 2020
Katonah, New York 10536      New York, New York 10177
                                 (212) 983-6000

*β*

Reid Paswall
13 Logging Road
Katonah, New York 10536

Grant Paswall
13 Logging Road
Katonah, New York 10536

## NOTICE

**Nature of the Action:** This action is to set aside the actually and
constructively fraudulent conveyances and encumbrances of the property
known as 13 Logging Road, Katonah, New York 10536, and for such other
legal and equitable relief as may be appropriate (including damages and
declaratory relief), for, *inter alia*, violations of New York Debtor & Creditor
Law ("DCL) article 10, DCL § 270, *et seq.*, including, *inter alia*, DCL §§
273-a, 273, 275, 276, 278 and 279.

Beginning in October 2014 (after the case entitled *Santana, et al. v.
G.E.B. Medical Management, Inc., Bruce Paswall, et ano.*, Index No.
305261/08 [Bronx Co. 2008] was originally scheduled for trial), and
continuing thereafter, Defendant Bruce Paswall caused, *inter alia*, the names
of certain family members (including his sons, Grant Paswall and Reid
Paswall), to be placed on the deed to his home at 13 Logging Road,
Katonah, New York 10536 for no consideration or grossly inadequate
consideration. In an attempt to sow confusion, Bruce Paswall also caused at
least two conflicting versions of the deed to the 13 Logging Road property to
be executed. The above conduct was undertaken with the purpose and effect
of impeding, frustrating and impairing Plaintiffs' ability to collect on their
judgment, in violation of the above-referenced statutes.

Further evidencing his intent to impede, frustrate and impair
Plaintiffs' ability to collect on their judgment, Bruce Paswall: (a)
deliberately violated a restraining order by taking out an additional mortgage
on the 13 Logging Road property on or about December 5, 2015; and (b)
deliberately violated, and has continued to deliberately violate for over three
years, his legal and court-ordered obligation to provide truthful information
and documents concerning his finances, a course of conduct for which he
has been held in civil contempt, and for which he remains in contempt.

2

A.152

Upon information and belief, Grant Paswall, Reid Paswall and most or all of the Doe Defendants are united in interest with Bruce Paswall and have aided and abetted Bruce Paswall's efforts to keep the 13 Logging Road property from being used to satisfy Plaintiffs' judgment, including, *inter alia*, by allowing themselves to be used as instrumentalities of Bruce Paswall, thereby benefitting from Bruce Paswall's actual and constructive fraud and frustrating and impeding Plaintiffs' ability to enforce their judgment.

**If You Fail to Appear, Judgment Will Be Taken Against You By Default:** If you fail to appear in this action, judgment will be taken against you by default, and the Court will order such relief as is determined to be appropriate at an inquest, including, to the extent found to be appropriate, an order setting aside any actually or constructively fraudulent conveyance, money damages, an award of attorney's fees, and such other legal and equitable relief as may be appropriate.

Dated:     New York, New York
           September 16, 2019

Signed pursuant to 22 NYCRR 130-1.1.

> Law Offices of Scott A. Lucas
> 250 Park Avenue, Suite 2020
> New York, NY 10177
> (212) 983-6000
> *Attorneys for Plaintiffs*
>
> By _____
>     Scott A. Lucas

A.153

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-------------------------------------------------------------------X

MARLENA SANTANA, YASMINDA DAVIS and
MELISSA RODRIGUEZ,

Index No.
64395/2019

*Plaintiff,*

-against-

**Affidavit of Service**

BRUCE PASWALL, REID PASWALL,
GRANT PASWALL, and "Doe" Defendants one
through ten, fictitious names used to designate
additional persons whose identities are not
known to Plaintiffs,

*Defendants,*

-------------------------------------------------------------------X

STATE OF NEW YORK )
                          : ss:
COUNTY OF WESTCHESTER )

        Edward Siller, Jr., being duly sworn, deposes and says:

- Deponent is not a party to the action, is over the age of 18 years, and resides in
the State of New York.

- DELIVERY: On 9/18/19 at 7:16 p.m. at 13 Logging Road, Katonah, NY
10536 I served the e-filed Summons With Notice and Notice of Pendency in
this case, together with the required e-filing notice and the "Important Notice"
which is the first attachment to this Affidavit of Service (and which was
placed at the top so that it would be seen first) on REID PASWALL by
delivering a true copy of each to a person of suitable age and discretion (a
white male with brown/grey hair who was approximately 60 years old, 6' 2"
tall, and 175 lbs., with a mustache, beard and glasses) who refused to give his
name and identified himself as a co-tenant, and who is almost certainly the
same man shown in the photograph that is the second attachment to this
affidavit.

- MAILING: I also enclosed a copy of same in a postpaid sealed wrapper
(marked Personal & Confidential) properly addressed to the above defendant
at 13 Logging Road, Katonah, NY 10536 and deposited said wrapper in (a
post office) official depository under exclusive care and custody of the United

1

A.154

States Postal Service within New York State.

- MILITARY SERVICE: The person spoken to was asked if the defendant was in the military service of the State of New York or the United States and a negative reply was received. Upon information and belief based upon that conversation and observation deponent avers that the referenced defendant is not in the military service of the State of New York or the United States as that term is defined in the statutes of the State of New York or the Federal Soldiers and Sailors Civil Relief Act. At the time of such service deponent knew the person so served as aforesaid to be the same person mentioned and described as the defendant in this action.

- Except for the attached "Important Notice," the above papers were endorsed with the index number and the date of filing (9/16/19).

Edward Siller, Jr.

Sworn to before me on September 19th, 2019

Notary

GERI L. FRAGETTE
Notary Public, State of New York
NO. 01AL5047399
Qualified in Westchester County
Commission Expires July 31, 20 21

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-------------------------------------------------------------------X
MARLENA SANTANA, YASMINDA DAVIS and
MELISSA RODRIGUEZ,

                                                    Index No.
                                                    64395/2019

                        *Plaintiff,*

            -against-                               **Affidavit of Service**

BRUCE PASWALL, REID PASWALL,
GRANT PASWALL, and "Doe" Defendants one
through ten, fictitious names used to designate
additional persons whose identities are not
known to Plaintiffs,

                        *Defendants,*
-------------------------------------------------------------------X

STATE OF NEW YORK        )
                         : ss:
COUNTY OF WESTCHESTER    )

    Edward Siller, Jr., being duly sworn, deposes and says:

- Deponent is not a party to the action, is over the age of 18 years, and resides in the State of New York.

- DELIVERY: On 9/18/19 at 7:16 p.m. at 13 Logging Road, Katonah, NY 10536 I served the e-filed Summons With Notice and Notice of Pendency in this case, together with the required e-filing notice and the "Important Notice" which is the first attachment to this Affidavit of Service (and which was placed at the top so that it would be seen first) on GRANT PASWALL by delivering a true copy of each to a person of suitable age and discretion (a white male with brown/grey hair who was approximately 60 years old, 6' 2" tall, and 175 lbs., with a mustache, beard and glasses) who refused to give his name and identified himself as a co-tenant, and who is almost certainly the same man shown in the photograph that is the second attachment to this affidavit.

- MAILING: I also enclosed a copy of same in a postpaid sealed wrapper (marked Personal & Confidential) properly addressed to the above defendant at 13 Logging Road, Katonah, NY 10536 and deposited said wrapper in (a post office) official depository under exclusive care and custody of the United

1

A.156

States Postal Service within New York State.

- MILITARY SERVICE: The person spoken to was asked if the defendant was in the military service of the State of New York or the United States and a negative reply was received. Upon information and belief based upon that conversation and observation deponent avers that the referenced defendant is not in the military service of the State of New York or the United States as that term is defined in the statutes of the State of New York or the Federal Soldiers and Sailors Civil Relief Act. At the time of such service deponent knew the person so served as aforesaid to be the same person mentioned and described as the defendant in this action.

- Except for the attached "Important Notice," the above papers were endorsed with the index number and the date of filing (9/16/19).

_____
Edward Siller, Jr.

Sworn to before me on September 15th, 2019

_____
Notary

GERI L. FRAGETTE
Notary Public, State of New York
NO. 01AL5047399
Qualified in Westchester County
Commission Expires July 31, 20 21

2

A.157

To commence the statutory time
period for appeals as of right
(CPLR 5513 [a]), you are advised
to serve a copy of this order, with
notice of entry, upon all parties.

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF WESTCHESTER
## PRESENT: HON. WILLIAM J. GIACOMO, J.S.C.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARLENA SANTANA, YASMINDA DAVIS and MELISSA
RODRIGUEZ,

                     Plaintiffs,

                                       Index No. 64395/2019

                – against –

                                       Seq. No. 1, 2, & 3

BRUCE PASWALL, REID PASWALL, GRANT
PASWALL, and "Doe" Defendants one through ten,      **DECISION AND ORDER**
fictitious names used to designate additional persons
whose identities are not known to Plaintiffs,
                     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      In an action to set aside an alleged fraudulent conveyance of real property (1) the
plaintiffs move for a 90-day extension of time to serve the complaint (motion sequence
#1); (2) the defendants move to cancel the lis pendens (motion sequence #2); and (3)
the plaintiffs move to discontinue this action without prejudice:

**Papers Considered**

      1. Notice of Motion/Affirmation of Scott A. Lucas, Esq.;
      2. Notice of Motion/Affirmation of Lowell B. Davis, Esq.;
      3. Notice of Motion/Affirmation of Scott A. Lucas, Esq.
      4. Reply Affirmation of Lowell B. Davis, Esq.

**Discussion**

      Plaintiffs commenced this action against the defendants seeking to set aside an
alleged fraudulent conveyance of real property by Bruce Paswall to his children Reid
Paswall and Grant Paswall.

      Plaintiffs commenced an underlying action in Supreme Court, Bronx County,
against Bruce Paswall for discrimination based upon pregnancy (Index No.
305261/2008). A jury verdict was rendered in favor of plaintiffs in the amount of $6.18M
and a restraining order was issued prohibiting Paswall from transferring assets.

      In September 2019, Paswall filed a Bankruptcy Chapter 7 petition. Plaintiffs were
unaware of the bankruptcy filing and commenced this action with the filing of a
summons with notice and also filed a notice of pendency.

A.158

19-08713-rdd-v-13624-1-MK Filed 06/18/20 Entered 06/10/20 13:44:44 of 165 Exhibit

Santana v. Paswall, Index No. 64395/2019

Initially, plaintiffs moved to extend their time to serve the complaint for 90 days to provide time for the bankruptcy trustee to determine if the transfer was fraudulent and defendants moved to cancel the notice of pendency. Plaintiffs then moved to discontinue this action without prejudice as the bankruptcy trustee has commenced an adversary proceeding against the defendants to set aside the conveyance of real property and the trustee has exclusive standing to prosecute such claims during the pendency of a bankruptcy case.

Based up the foregoing, it is

**ORDERED** that the plaintiffs' motion to discontinue this action is GRANTED and the action is discontinued without prejudice (motion sequence #3); and it is further

**ORDERED** that the lis pendens filed on September 16, 2019, is canceled pursuant to CPLR 6514(a); and it is further

**ORDERED** the plaintiffs' motion to extend the time to serve the complaint is DENIED as academic (motion sequence #1); and it is further

**ORDERED** that the defendants' motion to cancel the lis pendens is DENIED as academic (motion sequence #2).

Dated: White Plains, New York
April 28, 2020

_____
HON. WILLIAM J. GIACOMO, J.S.C.

H: ALPHABETICAL MASTER LIST – WESTCHESTER/Santana v. Paswall

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

--------------------------------------------------------------------X

MARLENA SANTANA, YASMINDA DAVIS and
MELISSA RODRIGUEZ,

                                                    Index No. 64395/2019

                        *Plaintiff,*

            -against-

                                                    **NOTICE OF PENDENCY**

BRUCE PASWALL, REID PASWALL,
GRANT PASWALL, and "Doe" Defendants one
through ten, fictitious names used to designate
additional persons whose identities are not
known to Plaintiffs,

                        *Defendants,*
--------------------------------------------------------------------X

    **NOTICE IS HEREBY GIVEN** pursuant to CPLR § 6501 *et seq.* that an action

has been commenced and is pending in this Court upon the Summons with Notice of

the above named Plaintiffs against the above named Defendants in which the Plaintiffs

claim an interest in and to the subject premises more fully described hereunder.

    **AND NOTICE IS FURTHER GIVEN** that the subject premises affected by

the said action, and at the time of the filing of this notice is known as 13 Logging

Road, Katonah, New York 10536 and is situated in the Town of Somers, Section 59.5,

Block 2, and Lot 2 on the land and tax map of Town of Somers, County of

Westchester in the State of New York, and is more fully described as follows:

    **ALL** that certain plot, piece or parcel of land, with the buildings and
    improvements thereon erected, situate, lying and being in the Town of Somers,
    County of Westchester and State of New York, known and designated as Lot
    No. 9M-2 on a certain sub-division map entitled"The Wood Lot, Section II"

A.160

(FILED: WESTCHESTER COUNTY CLERK 09/16/2019 03:20 PM)

NYSCEF DOC. NO. 087 73-cv-05624-KMK Filed 06/02/20-1 Entered 06/02/20 23:44:45 Exhibit 16/2019
Westchester Action    Pg 12 of 14

and filed in the Office of the Clerk of Westchester County, Division of Land Records on 11/21/89 as Map No. 23992 (as defined in the Deed dated October 3, 2014 and the Quitclaim deed dated November 3, 2014).

The coordinates of the subject premises are described with greater specificity in the attached survey, which is incorporated herein by reference.

TOGETHER with all right, title and interest of the Defendants in and to the land lying in the streets and roads in front of and adjoining said premises.

### TO THE CLERK OF THE COUNTY OF WESTCHESTER:

You are hereby directed to index the within Notice of Pendency of Action against the property that is the subject of this Notice and against all named Defendants (i.e., all Defendants other than the "Doe" Defendants).

Dated:     September 16, 2019
           New York, New York

Signed pursuant to 22 NYCRR 130-1.1.

Scott A. Lucas, Esq.
The Law Offices of Scott A. Lucas
250 Park Avenue, Suite 2020
New York, New York 10177
(212) 983-6000
*Attorneys for Plaintiffs*

2

A.161