No. 20-CV-5624 (KMK)

**In the**
**United States District Court**
**For the Southern District of New York**

---

BRUCE J. PASWALL,

*Debtor.*

---

GRANT PASWALL and REID PASWALL,

*Appellants.*

MARK S. TULIS, as Chapter 7 Trustee of the Estate of Bruce J. Paswall,

*Appellee.*

---

On Appeal from the United States Bankruptcy Court
for the Southern District of New York

---

**APPELLEE'S APPENDIX**

---

**LAMONICA HERBST & MANISCALCO, LLP**
*Attorneys for Appellee Mark S. Tulis, as Chapter 7 Trustee*
*of the Estate of Bruce J. Paswall*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: 516.826.6500
David A. Blansky, Esq.
Wendy J. Rothstein, Esq.

# TABLE OF CONTENTS

| Docket No. | | Title | TA |
|---|---|---|---|
| 9 | | Notice of Motion/Motion for Default Judgment………………………………000001-000023 | |
| 9-1 | Exhibit 1: | Summons, Complaint, Deed and Affidavit of Service……………………………………………000024-000048 | |
| 9-2 | Exhibit 2: | Excerpts from Transcript of 2004 Examination of Debtor…………………………………………000049-000077 | |
| 9-3 | Exhibit 3: | Transcript of State Court Hearing of September 15, 2015……………………..……...000078-000086 | |
| 9-4 | Exhibit 4: | Stipulation So Ordered January 11, 2016………000087-000089 | |
| 9-5 | Exhibit 5: | Stamped Notice of Entry of Order filed on December 1, 2017………………………………000090-000099 | |
| 9-6 | Exhibit 6: | Judgment dated January 24, 2018……...………000100-000110 | |
| 9-7 | Exhibit 7: | Summons and Complaint in the TCF Equipment Finance v. G.E.B. ………...…………………000111-000125 | |
| 9-8 | Exhibit 8: | Judgment Entered in Favor of TCF Equipment Finance…………………...…………………000126-000129 | |
| 9-9 | Exhibit 9: | Notice of Settlement of Judgment of Divorce Judgment of Divorce, Exhibit A – Transcript of Inquest, and Affidavit of Service of Notice of Settlement with Judgment of Divorce...………000130-000163 | |
| 9-10 | Exhibit 10: | Order Entered January 6, 2014 Modifying the Judgment of Divorce………...………………000164-000167 | |
| 9-11 | Exhibit 11: | October 2014 Matrimonial Stipulation of Settlement………..………………………000168-000178 | |

| Docket No. | | Title | TA |
|---|---|---|---|
| 9-12 | Exhibit 12: | Recording and Endorsement Page and Deed Recorded December 19, 2014 ………………….. | 000179-000182 |
| 9-13 | Exhibit 13: | Recording and Endorsement Page and Mortgage Recorded on February 17, 2015………….…… | 000183-000190 |
| 9-14 | Exhibit 14: | Recording and Endorsement Page and Mortgage Modification Agreement Recorded on December 30, 2015………......…………….. | 000191-000195 |
| 9-15 | Exhibit 15: | Brenda J. Paswall Obituary….………………… | 000196-000197 |
| 9-16 | Exhibit 16: | September 29, 2015 E-Mail from the Debtor to Brenda Paswall ………...………………… | 000198-000199 |
| 9-17 | Exhibit 17: | Proposed Order for Default Judgment…………. | 000200-000202 |
| 9-18 | Exhibit 18: | Proposed Judgment by Default………..………. | 000203-000205 |

**LaMonica Herbst & Maniscalco, LLP**
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Tel. (516) 826-6500
David A. Blansky, Esq.
*Attorneys for Mark S. Tulis, as Chapter 7 Trustee*
*Of the Estate of Bruce J. Paswall*

Hearing Date: June 19, 2020 at 10:00 a.m.
Objections Due by: June 12, 2020 at 5:00 p.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

In re:                                                      Chapter 7

BRUCE J. PASWALL,                                           Case No. 19-23623 (RDD)

        Debtor.
----------------------------------------------------------x
MARK S. TULIS, as Chapter 7
Trustee of the Estate of Bruce J. Paswall,

            Plaintiff,                               Adv. Pro. No. 19-08713 (RDD)

    -against-

GRANT PASWALL and REID PASWALL,

          Defendants.
-------------------------------------------------------------------x

### NOTICE OF HEARING AND MOTION FOR THE ENTRY OF AN ORDER FOR DEFAULT JUDGMENT AND DEFAULT JUDGMENT AGAINST THE DEFENDANTS

**PLEASE TAKE NOTICE** that, on **June 19, 2020 at 10:00 a.m.**, a hearing (the "Hearing") will be conducted before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, on the *Chapter 7 Trustee's Motion For the Entry of an Order for Default Judgment and Default Judgment Against Defendants* (the "Motion").

1

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Motion must be in writing and be filed, on or before **June 12, 2020 by 5:00 p.m.** as follows: (i) through the Court's NextGen system, which may be accessed through the internet at the Court's website at www.nysb.uscourts.gov and in portable document format (PDF) using Adobe Exchange Software for conversion; or (ii) if a party is unavailable to file electronically, such party shall submit the objection in PDF format on portable media in an envelope with the case name, case number, type and title of document, document number to which the objection refers and the file name on the outside of the envelope to the Clerk of the United States Bankruptcy Court, Southern District of New York, 300 Quarropas Street, White Plains, New York 10601. A courtesy copy should be simultaneously sent to the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601.

Dated: March 24, 2020
      Wantagh, New York

                              **LaMonica Herbst & Maniscalco, LLP**
                              Attorneys for Mark S. Tulis, solely as Chapter 7
                              Trustee of the Estate of Bruce J. Paswall

            By:     *s/ David A. Blansky*
                     David A. Blansky, Esq.
                     A Partner of the Firm
                     3305 Jerusalem Avenue
                     Wantagh, New York 11793
                     (516) 826-6500

2

**LaMonica Herbst & Maniscalco, LLP**
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Tel. (516) 826-6500
David A. Blansky, Esq.
*Attorneys for Mark S. Tulis, as Chapter 7 Trustee*
*Of the Estate of Bruce J. Paswall*

Hearing Date: June 19, 2020 at 10:00 a.m.
Objections Due by: June 12, 2020 at 5:00 p.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
In re:                                                      Chapter 7

BRUCE J. PASWALL,                                           Case No. 19-23623 (RDD)

        Debtor.
------------------------------------------------------------x
MARK S. TULIS, as Chapter 7
Trustee of the Estate of Bruce J. Paswall,

                           Adv. Pro. No. 19-08713-RDD

        Plaintiff,

    -against-

GRANT PASWALL and REID PASWALL,

        Defendants.
--------------------------------------------------------------------x

### DECLARATION IN SUPPORT OF MOTION FOR THE ENTRY OF AN ORDER FOR DEFAULT JUDGMENT AND DEFAULT JUDGMENT <u>AGAINST THE DEFENDANTS</u>

David A. Blansky, an attorney admitted to practice before the Courts of this State and this Federal judicial district, declares, pursuant to 28 U.S.C. § 1746 that:

1.      I am a partner of LaMonica Herbst & Maniscalco, LLP, attorneys for Plaintiff, Mark S. Tulis, solely as the Chapter 7 Trustee ("<u>Plaintiff</u>") of the estate of Bruce J. Paswall (the "<u>Debtor</u>"). Based upon my review of the records produced by the Debtor and certain of his creditors, the examination of the Debtor conducted under Rule 2004 of the Federal Rules of

TA000003

Bankruptcy Procedure on October 30, 2019, the files maintained by LH&M and my personal knowledge, I am familiar with the facts set forth herein.

2.     This affirmation is submitted in support of Plaintiff's motion (the "<u>Motion</u>") seeking the entry of: (a) an order under Bankruptcy Rule 7055 granting Plaintiff's motion for default; and (b) a judgment under Bankruptcy Rule 7055 against Defendants for their failure to answer, or otherwise respond to Plaintiff's complaint, avoiding and setting aside the Debtor's transfer of his interest in certain real property to Defendants.

3.     For the reasons set forth below, the relief sought in the motion is appropriate.

## <u>INTRODUCTION</u>

4.     In this case, Plaintiff seeks to avoid and recover the transfer of his interest in the real property known as, and located at, 13 Logging Road, Katonah, New York 10536, Section 59.5 Block 2 Lot 2 on the Tax Map of the Town of Somers, County of Westchester (the "<u>Real Property</u>"), made to Defendants by the Debtor by deed (the "<u>2017 Deed</u>") recorded January 27, 2017 (the "<u>Transfer</u>"), as both constructively and actually fraudulent conveyances and on other grounds.  A copy of the 2017 Deed is annexed as Exhibit "A" to the Complaint included in Exhibit "1" hereto.

5.     As demonstrated above and evidenced by the 2017 Deed annexed as Exhibit "A" to the Complaint, Defendants were the recipients of the Transfer and said Transfer was made without the Debtor receiving any consideration from Defendants.  <u>See</u> Exhibit "1".  Moreover, at the time of the Transfer, Debtor was a defendant in one or more actions for money damages that subsequently resulted in several multi-million-dollar judgments against him, which judgments remained unsatisfied on the Filing Date.

4

## BACKGROUND

6.      On September 11, 2019 (the "Filing Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court.

7.      Plaintiff was appointed as the Chapter 7 Trustee of this estate and, by operation of law, Plaintiff is the permanent Chapter 7 Trustee of this estate.

8.      Grant Paswall ("Grant") is the adult son of the Debtor and the Debtor's former spouse, Brenda Paswall ("Brenda"), and an individual residing in Mahopac, New York.

9.      Reid Paswall ("Reid") is the adult son of the Debtor and Brenda and an individual residing at the Real Property with the Debtor (as defined below).

## PROCEDURAL HISTORY OF THE ADVERSARY PROCEEDING

10.      This adversary proceeding (the "Adversary Proceeding") was commenced under 11 U.S.C. §§ 105, 541, 542, 544, 550 and 551, New York State Debtor and Creditor Law § 272, et seq., and Rules 6009 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") by filing a complaint (the "Complaint") [ECF No. 1] seeking a judgment against Defendants.   A copy of the Complaint is annexed as part of Exhibit "1".

11.      Thereafter, the Clerk of the Court issued a Summons (the "Summons") on December 5, 2019. [ECF No. 2] A copy of the Summons is annexed as part of Exhibit "1".

12.      The Summons and Complaint were timely served upon Defendants in accordance with Bankruptcy Rule 7004 and Plaintiff electronically filed an affidavit of service evidencing timely service of the Summons and Complaint. [ECF No. 3] A copy of the affidavit of service is annexed as part of Exhibit "1".

TA000005

13.    Plaintiff served Defendants at their last known places of residence, which addresses were furnished by the Debtor under oath on October 30, 2019 at his examination under Rule 2004. Excerpts of the Debtor's testimony are annexed as Exhibit "2". <u>See</u> Exhibit "2", p. 25.

14.    The Summons scheduled an initial pretrial conference on February 4, 2020. <u>See</u> Exhibit "1".

15.    Defendants neither answered the Complaint nor appeared.

16.    Plaintiff has performed his diligence and it does not appear either of Defendants was deployed in military service on the date of service of the Summons and Complaint.

## <u>DEFENDANTS' DEFAULT</u>

17.    Pursuant to the Summons and Bankruptcy Rule 7004(e), the Defendants were required to file and serve a responsive pleading on or before January 6, 2020 (the "<u>Answer Deadline</u>"). <u>See</u> Exhibit "1".

18.    Defendants failed to file or serve a responsive pleading by the Answer Deadline.

19.    Defendants failed to appear at the February 4, 2020 pretrial conference.

20.    Upon application of Plaintiff [ECF No. 4], the Clerk of the Court entered defaults against Defendants. [ECF Nos. 5 and 6]

21.    To date, no attorney has filed a notice of appearance on the Defendants' behalf.

22.    Insofar as Defendants have failed to defend against the Complaint, Plaintiff respectfully requests that this Court grant the Motion and enter the proposed order granting Plaintiff's motion for a default judgment and enter a judgment against Defendants.

TA000006

## FACTS APPLICABLE TO CLAIMS FOR RELIEF

**A.** *The Santana Lawsuit, Restraining Order and Judgment*

23.     In 2008, Marlena Santana, Yasminda Davis and Melissa Rodriguez (the "Santana Parties") commenced an action in the Supreme Court of the State of New York, County of Bronx (the "State Court"), under Index No. 305261/2008 against G.E.B. Medical Management, Inc. ("G.E.B.") and the Debtor arising from claims for pregnancy discrimination (the "Santana Lawsuit").

24.     On September 15, 2015, a jury rendered a verdict in favor of the Santana Parties awarding $1.5 million in compensatory/emotional distress damages, $1.5 million in punitive damages, and certain lost wages.

25.     Pending the entry of judgment following the jury verdict, pursuant to CPLR § 5229, on September 15, 2015, the State Court entered an order imposing restraint on the Debtor and G.E.B. intended to have the same effect as if a restraining notice had been served on them (the "Restraining Order"). The transcript of the proceeding before the State Court reflecting the entry of the Restraining Order is annexed as Exhibit "3".

26.     The Restraining Order was expressly continued by the State Court by stipulation so-ordered by the Court on January 11, 2016 (the "So-Ordered Stipulation").  A copy of the So-Ordered Stipulation is annexed as Exhibit "4".

27.     The So-Ordered Stipulation required the Debtor and G.E.B. to produce documents and information to the Santana Parties by February 7, 2016, and to appear for examinations under CPLR § 5229 no later than March 7, 2016. Id.

TA000007

28.     The Debtor and G.E.B. failed to comply with their obligations under the So-Ordered Stipulation.

29.     On September 16, 2016, the Santana Parties moved to hold the Debtor and G.E.B. in contempt.

30.     While the motion for contempt was pending, the 2017 Deed was recorded.

31.     On October 18, 2017, the State Court issued an order adjudicating the Debtor and G.E.B. to be in contempt for failure to comply with the So-Ordered Stipulation. A copy of the order is annexed as Exhibit "5".

32.     On January 24, 2018, a judgment was entered in favor of the Santana Parties and against the Debtor and G.E.B. in a sum of $4,223,242.65 (the "Santana Judgment"). A copy of the Santana Judgment is annexed as Exhibit "6".

33.     The Santana Judgment continued to be outstanding on the Filing Date.  See Schedule A/B to the Debtor's Petition, pp. 13-14 and 20.

**B.     *The TCF Lawsuit***

34.     On February 5, 2016, TCF Equipment Finance, a division of TCF National Bank f/k/a TCF Equipment Finance, Inc. ("TCF") commenced an action against the Debtor and G.E.B. in the Supreme Court of the State of New York, County of New York, under Index No. 650611/2016, in which it sought money damages arising from G.E.B.'s default under a certain equipment lease and the Debtor's unconditional personal guaranty of that lease (the "TCF Lawsuit"). A copy of the summons and complaint in the TCF Lawsuit are annexed as Exhibit "7".

8

35.     On December 24, 2018, judgment was granted in favor of TCF and against the Debtor and G.E.B. in the total sum of $301,746.91 (the "TCF Judgment"). A copy of the TCF Judgment is annexed as Exhibit "8".

36.     The TCF Judgment continued to be outstanding on the Filing Date.   See Schedule A/B to the Debtor's Petition, p. 18.

**C.     The Matrimonial Action**

37.     While the Santana Lawsuit was pending, in or about 2012, Brenda commenced an action for divorce against the Debtor in the Supreme Court of the State of New York, County of Westchester (the "Matrimonial Action"). See Exhibit "2", p. 27.

38.     A judgment of divorce was entered on June 12, 2012, which incorporated by reference a certain stipulation placed on the record on December 12, 2011.  A copy of the judgment of divorce and stipulation are annexed as Exhibit "9".

39.     In January 2014, an order was entered by which the equitable distribution provisions of that stipulation were vacated and the judgment of divorce was modified. A copy of the January 2014 order is annexed as Exhibit "10".

40.     Subsequently, the Debtor and Brenda reached a settlement intended to resolve all of the issues emanating from the Matrimonial Action, which settlement was executed by each of them before a notary in October 2014 (the "Matrimonial Stipulation").   A fair and accurate copy of the Matrimonial Stipulation provided by the Debtor to Plaintiff is annexed as Exhibit "11".

41.     The Matrimonial Stipulation provided, among other things, that Brenda would convey all of her right, title and interest in the Real Property to the Debtor.   See Exhibit "11", p. 2, ¶ "1".

9

TA000009

42.     The Debtor and Brenda had resided at the Real Property from its purchase in 1992 until sometime in 2012. See Exhibit "2", p. 22.

43.     Brenda ceased to reside at the Real Property in 2012. Id., p. 23.

44.     The Debtor continued to reside at the Real Property, to the exclusion of Brenda, subsequent to her departure in 2012.

45.     The Debtor's girlfriend subsequently moved in with him at the Real Property and continues to reside there. See Exhibit "2", p. 38.

46.     Pursuant to the Matrimonial Stipulation, by deed recorded December 19, 2014, Brenda conveyed all of her right, title and interest in the Real Property to the Debtor (the "2014 Deed").   A copy of 2014 Deed is annexed as Exhibit "12".   As a result, as of that date the Debtor became the sole fee owner of the Real Property.

47.     At that time, Brenda had not resided at the Real Property for several years and the Debtor was residing there with his girlfriend and one or more of Defendants. See Exhibit "2", p. 38.

48.     The Debtor took Brenda's right, title and interest in the Real Property subject to a first mortgage lien granted in favor of GE Capital Mortgage Services, Inc. in 1992, which mortgage has since been assigned to Wells Fargo Home Mortgage (the "First Mortgage"). See Exhibit "2", pp. 46-47; Schedule A/B to the Debtor's Petition, p. 20.

49.     The Debtor has been the sole source of the payments of the First Mortgage since Brenda left the Real Property. Id., pp. 47-48.

50.     As of the Filing Date, $97,447.00 was owed to Wells Fargo Home Mortgage on the First Mortgage. See Schedule A/B to the Debtor's Petition, p. 20.

TA000010

51.     Under the Matrimonial Stipulation, the Debtor was to pay Brenda $300,000.00 in two installments of $150,000.00.   See Exhibit "11".

52.     As security for the performance by the Debtor, the Debtor was to execute a bargain and sale deed transferring and conveying his right, title and interest in the Real Property to Brenda (defined therein as the "Return Deed"), which deed was to be held in escrow.   Id.

53.     The first installment was to be paid from proceeds of a mortgage to be sought by the Debtor within ten (10) days of his closing on the loan.   Id.

54.     The second installment was to be paid within six (6) months of the date of the closing on the initial financing.   Id.

55.     The Matrimonial Stipulation provided, among other things, that in the event of a default in making either of the $150,000.00 payments within the time provided for each therein or satisfying an order awarding counsel fees within thirty (30) days of entry, the Debtor would be in default.   Id.

56.     The Matrimonial Stipulation provided that in the event of an uncured default the Real Property would immediately be marketed for sale with the unpaid funds due Brenda being paid from the net proceeds of sale, together with an additional $25,000.00, representing her legal fees, costs and expenses associated with the default, and the remaining net proceeds would be paid to the Debtor.   Id.

57.     The Matrimonial Stipulation provided that if the initial payment of $150,000.00 was made by the Debtor, the release of the Return Deed to Brenda would be conditioned upon either Brenda's repayment to the Debtor of $150,000.00 or her demonstration that she had satisfied

11

TA000011

the Debtor's obligations arising from the initial financing obtained to fund the first $150,000.00 payment.  Id.

58.    Rather than execute a Return Deed in the form provided by the Matrimonial Stipulation, on October 3, 2014 the Debtor executed the 2017 Deed[1] by which all of his right, title and interest in the Real Property would be conveyed to Brenda and Defendants as joint tenants, with right of survivorship, by which the Debtor also preserved a life estate for himself.  See Exhibit "1".

59.    Upon information and belief, the Deed was delivered to counsel for one of the litigants to the Matrimonial Action to hold in escrow.

60.    The Matrimonial Stipulation neither provided for the conveyance of title to Defendants nor the Debtor's preservation of a life estate.   See Exhibit "11".

61.    On or about January 16, 2015, the Debtor entered into a home equity line of credit loan secured by a mortgage against the Real Property by which he borrowed $195,000.00 (the "Initial Financing Loan"). A copy of the recorded mortgage relating to the Initial Financing Loan is annexed as Exhibit "13".

62.    The Debtor was the sole borrower for the Initial Financing Loan. Id.

63.    That mortgage was recorded against the Real Property on February 17, 2015. Id.

64.    The Debtor paid Brenda the initial $150,000.00 from the proceeds of the Initial Financing Loan in or about late January 2015. See Exhibit "2", p. 65.

65.    The Debtor used the balance of the proceeds of the Initial Financing Loan to make improvements to the Real Property. Id.

---

1  This deed has been designated the "2017 Deed" as it was not recorded until 2017.

TA000012

66.     Subsequent to the issuance of the Restraining Order by the State Court, the Debtor sought a modification of the Initial Financing Loan to increase the principal amount borrowed by $155,000.00 to a total principal sum of $350,000.00 (the "Modification Loan"). A copy of the recorded mortgage relating to the Modification Loan is annexed as Exhibit "14".

67.     In or about December 2015, subsequent to the deadline for the second installment of $150,000.00 and while the Restraining Order was in effect, the Debtor was granted the Modification Loan and closed on the Modification Loan.

68.     In connection with the Modification loan, the Debtor executed a mortgage modification agreement on December 5, 2015 by which the indebtedness secured against the Real Property owed to the lender under the Initial Financing Loan was increased to the principal sum of $350,000.00.

69.     As of the Filing Date, the balance of $348,479.00 was owed to KeyBank NA in connection with the Modification Loan.   See Schedule A/B to the Debtor's Petition, p. 12.

70.     The Debtor did not pay Brenda the second $150,000.00 installment from the proceeds of the Modification Loan. See Exhibit "2", pp. 33, 48, 66-68.

71.     The Debtor primarily used the proceeds of the Modification Loan to renovate and improve the Real Property. Id.

72.     Upon information and belief, the Debtor subsequently made additional monthly payments of $5,000.00 to Brenda, totaling approximately $80,000.00. Id., p. 34.

73.     The Real Property was never listed for sale as a consequence of the Debtor's default in paying the second installment of $150,000.00.

13

74.     Brenda neither repaid the initial $150,000.00 paid by the Debtor in January 2015 nor satisfied the Initial Financing Loan.

75.     The conditions precedent to the release of the Return Deed were never satisfied.

76.     Between 2012 and early 2017, the Debtor demolished, renovated and improved nearly the entire interior of the Real Property, with the exception of the basement. See Exhibit "2", pp. 35-38.

77.     In the process he, among other things, gutted and renovated the kitchen and bathrooms and installed high-end cabinets, fixtures and custom closets. Id.

78.     The Debtor also replaced the roof and HVAC systems and installed new flooring throughout the house, which included radiant heat. Id.

79.     Upon information and belief, the Debtor expended between $200,000.00 and $400,000.00 over time to renovate and improve the Real Property. Id., at p. 37.

80.     The Debtor continued to exercise control over, improve and utilize the Real Property as if it were his own subsequent to the delivery of the 2017 Deed into escrow and the recording of the 2017 Deed.

### D. The Transfer of the Real Property

81.     The 2017 Deed was recorded on January 27, 2017 notwithstanding that it was purportedly executed in October 2014.   See Exhibit "1".

82.     As the foregoing demonstrates, the conveyance of title provided for in the 2017 Deed is inconsistent with the Matrimonial Stipulation.

83.     Moreover, the 2017 Deed was released from escrow in violation of the terms of the Matrimonial Stipulation.

14

84. The recording and endorsement page for the Deed reflects that no transfer tax was paid in connection with the transfer of title from the Debtor.   See Exhibit "1".

85. The recording and enforcement page reflect that the Deed was to be recorded and returned to the Debtor at the Real Property.   See Exhibit "1".

86. Upon information and belief, the Deed was returned to the Debtor following its recording.

87. The Debtor testified that Defendants did not provide him with any consideration for the Transfer. See Exhibit "2", p. 62.

88. The Debtor failed to receive fair consideration in exchange for conveying title to Brenda and Defendants.

89. Brenda passed away on April 17, 2019.  A copy of her obituary is annexed as Exhibit "15".

90. As joint tenants with a right of survivorship, Defendants equally acquired Brenda's one-third interest in the Real Property conveyed by the 2017 Deed upon Brenda's passing.

91. The 2017 Deed effectuated a transfer of an interest in the Real Property for less than fair consideration or reasonably equivalent value.

92. At the time of the recording of the 2017 Deed, the jury had already rendered a verdict against the Debtor and in favor of the Santana Parties for more than $3 million.

93. At the time of the recording of the Deed, the Debtor and G.E.B. were subject to a restraining order issued by the State Court and a motion to hold them in contempt for failure to comply with their discovery obligations under the So-Ordered Stipulation pending before the State Court.

TA000015

94.    Upon information and belief, the Real Property is comprised of a 1.58-acre lot.

95.    Upon information and belief, a 4,170 sq. ft. single-family residence is situated on the Real Property.

96.    Upon information and belief, the house contains four (4) bedrooms and four (4) bathrooms.

97.    Upon information and belief, at all times relevant, the Town of Somers Tax Assessor has estimated the fair market value of the Real Property to be no less than $1.1 million.

98.    The Real Property had substantial equity estimated to be no less than $600,000.00 at the time of the recording of the 2017 Deed.

99.    Upon information and belief, there existed $650,000.00 in equity in the Real Property on the Filing Date.

100.    The Debtor has continued to pay the First Mortgage and Modification Loan post-petition.

101.    The Debtor had at least one (1) creditor at the time of recording of the 2017 Deed who was unpaid as of the Filing Date.

102.    The Debtor had creditors holding unsecured claims against him at the time of the recording of the Deed, including, but were not limited to, the Santana Parties and TCF.

103.    The Debtor has testified that the 2017 Deed was prepared with the intent to "leave the house" to Defendants.   See Exhibit "2", p. 62.

104.    In an e-mail authored by the Debtor and transmitted to Brenda on September 29, 2015, shortly after the adverse jury verdict in favor of the Santana Parties, the Debtor stated his

TA000016

desire to "protect what only asset there is to leave to the children." A copy of the e-mail is annexed as Exhibit "16".

105.    The Debtor recorded the 2017 Deed with the intent to hinder, delay, and defraud his creditors.

106.    Defendants received the 2017 Deed with actual intent to hinder, delay or defraud the Debtor's creditors.

107.    Defendants accepted the 2017 Deed with knowledge of its avoidability and lacked good faith.

108.    The Debtor was insolvent at the time of the recording of the 2017 Deed or was rendered insolvent by the recording of the 2017 Deed.

109.    At the time of the recording of the 2017 Deed, the Debtor intended to incur, or believed that he would incur debts that would be beyond his ability to pay as such debts matured.

110.    Upon information and belief, the equity in the Real Property exceeds all liens, claims, or encumbrances on the Real Property.

## BASIS FOR RELIEF AND ARGUMENT

111.    A court may enter a default judgment against a party when that party has failed to plead or otherwise defend their side of the case. That principle is governed by Rule 55 of the Federal Rules of Civil Procedure, made applicable here by Rule 7055 of the Federal Rules of Bankruptcy Procedure. Fed. R Civ. P. Rule 55 states, in pertinent part:

> (a) *Entry*. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

> (b) *Judgment*.   Judgment by default may be entered as follows:

TA000017

(1) *By the Clerk.*    When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or incompetent persons.

(2) *By the Court.*    In all other cases the party entitled to a judgment by default shall apply to the court therefore; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action. the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application....

112.    A default occurs if the defendant does not respond to the complaint within thirty days after the issuance of the summons. See Fed. R Bankr. P. 7012(a). See also, In re Macias, 324 B.R 181 (Bankr. E.D.N.Y. 2004).

113.    In determining whether a default judgment is appropriate, "the court must accept as true all of the factual allegations of the complaint, except those relating to damages." Id at 3 186, citing, Au Bon Pain Corp., v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). Moreover, the clerk may enter a judgment when the claim is one for a sum certain, if furnished with an affidavit of the amount due and provided that defendant has been defaulted for failure to appear. Enron Oil Corp., v. Diakuhara, 10 F.3d 90, 94 (2d Cir. 1993).

114.    Here, notwithstanding that Defendants were duly served with the Summons and Complaint, they have failed to appear and answer the Complaint.  Consequently, they are in default.

115.    "It is well settled under New York Debtor and Creditor Law § 273, that a

18

TA000018

conveyance made by a grantor without consideration at the time when debts are outstanding raises a presumption of insolvency." Pereira v. Goldberger (In re Stephen Douglas, Ltd.), 174 B.R. 16, 21 (Bankr. E.D.N.Y. 1994) (citing Feist v. Druckerman, 70 F.2d 333, 334–35 (2d Cir. 1934) ("[T]here is a rule long standing in New York courts that a voluntary conveyance [without consideration] made when the grantor is indebted is presumptively fraudulent. We think this means that, if one indebted makes such a transfer, it is presumed, in the absence of some proof to the contrary, that he was then insolvent.")). The District Court for the Eastern District has further explained that

> While the burden of proving insolvency and lack of fair consideration is generally on the party challenging the conveyance, "where a transfer occurs without consideration, the defendant is presumed to have been insolvent at the time of the transfer and may only rebut the presumption by proving its continued solvency after the date of the transfer."

Gasser v. Infanti Int'l, Inc., 353 F. Supp. 2d 342, 354 (E.D.N.Y. 2005) (quoting In re Flutie New York Corp., 310 B.R. 31, 54 (Bankr. S.D.N.Y. 2004)).

116.     As evidenced by the recording and endorsement page for the 2017 Deed, the 2017 Deed was a zero-consideration transfer made between family relations. See Exhibit "1". The Debtor failed to receive any consideration from Defendants in exchange for the transfer of his interest in the Real Property giving rise to the presumption of insolvency. Id., See also Exhibit "2", p. 62. As a result, Plaintiff is entitled to judgment against Defendants on his Debtor and Creditor Law § 273 claim.

117.     Even if Defendants had provided the Debtor with dollar for dollar consideration – which they did not – while that consideration would satisfy the "fair value" component of fair

19

TA000019

consideration under Debtor and Creditor Law § 272, the Transfer would still be subject to avoidance due to the lack of good faith.

118.    The same result is required under Section 548(a)(1)(B) of the Bankruptcy Code in that the Debtor failed to receive reasonably equivalent value in exchange for the Transfer.   Even if the presumption of insolvency is inapplicable to Plaintiff's constructive fraudulent conveyance claim under the Bankruptcy Code, by virtue of the Transfer the Debtor divested himself of his valuable interest in the Real Property at the time when his liabilities were in the millions of dollars, as evidenced by the Santana Judgment and the TCF Judgment.   Accordingly, the Debtor was either insolvent on the date of the Transfer or thereby rendered insolvent.

119.    Furthermore, most of the classical badges of fraud evidence that the Transfer was made with actual intent to hinder, delay and defraud the Debtor's creditors are also present. While fraudulent intent is "rarely susceptible to direct proof" such proof is available in cases where the Court finds that the transaction was planned and executed with knowing and active participation by the parties. Numerous courts have held that "actual intent may be proven by circumstantial evidence." See In re Kaiser, 722 F.2d 1574, 1582 (2d Cir. 1983); Dixie Yarns, Inc. v. Forman, 906 F. Supp. 929 (S.D.N.Y. 1996).

120.    As a result, the courts have developed "badges of fraud" to establish the requisite actual intent to defraud.  These badges of fraud include, but are not limited to: a) the lack or inadequacy of consideration; b) the family, friendship or close associate relationship between the parties; c) the retention of possession, benefit or use of the property in question; d) the financial condition of the party sought to be charged both before and after the transaction in question; e) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the

20

incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and f) the general chronology of the events and transactions under inquiry. See In re Kaiser, 722 F.2d at 1582 (internal citation omitted).

121.    Intrafamily transfers are subject to greater scrutiny and give rise to an inference of fraud. Mendelsohn v. Jacobowitz (In re Jacobs), 394 B.R. 646, 660-1 (Bankr. E.D.N.Y. 2008); Apple Bank for Savings v. Contaratas, 204 Ad 2d 375, 376, 612 N.Y.S. 2d 51, 52 (2d Dept. 1994); Marine Midland v. Murkoff, 120 Ad 2d 122, 508 N.Y.S. 2d 17 (2d Dept. 1986).

122.    The courts have also recognized "a questionable transfer not in the ordinary course of business . . . the transferors knowledge of the creditors claim and his inability to pay it; and retention of control of the property by the transferor after the conveyance" as badges of fraud. See Wall Street Associates v. Brodsky, 257 A.D.2d 526, 529, 684 N.Y.S.2d 244, 248 (1st Dept. 1999).

123.    Here, the Transfer constitutes a no consideration conveyance of the Debtor's interest in the Real Property to his former spouse and children.  There existed a confidential relationship between the transferor and transferee.

124.    Defendants' financial condition was enhanced by the transaction in view of the equity then existing in the Real Property. The Transfer resulted in the Debtor's disposition of his most valuable asset that may have been available to satisfy the claims of its creditors while allowing him to retain control of the Real Property as a consequence of his retention of a life estate.

125.    Moreover, as evidenced by the September 29, 2015 e-mail, the Transfer was undertaken to protect the property for Defendants from Debtor's creditors and thereby hinder his creditors.  See Exhibit "16".

126.    The course of conduct and chronology as relating to the lawsuits commenced and

21

judgments entered against Defendant, the execution and delayed recording of the 2017 Deed, the refinance of the mortgage in the interim, and the retention of control over the assets all evidence the Debtor's intent to hinder, delay and defraud his creditors.

127.    As a result of the foregoing facts and badges of fraud, Plaintiff is alternatively entitled to avoid the Transfer and recover title to the Real Property from Defendants under Debtor and Creditor Law § 276 and Bankruptcy Code § 548(a)(1)(A).

128.    Plaintiff reserves his right to seek attorneys' fees under Debtor and Creditor Law § 276-a.

129.    For the foregoing reasons, Plaintiff submits that he is entitled to entry of an order for a default judgment setting aside the 2017 Deed due to Defendants' failure to answer or appear and predicated upon proof submitted in support of the Motion.

130.    Upon information and belief, Defendants are not infants or incompetent persons. Neither of Defendants appear presently on active duty in any branch of military service.

131.    No prior application for the relief requested herein has been made to this or any other Court.

## CONCLUSION

132.    It is respectfully requested that the Court enter (a) an order for default judgment under Bankruptcy Rule 7055; and (b) a judgment against Defendants setting aside the Deed, directing the Clerk of the County of Westchester to record the judgment of this Court striking the 2017 Deed from the public record, and granting such other and further relief as the Court deems just and proper.  Copies of the proposed order and judgment are annexed as Exhibits "17" and "18".

22

133.    I declare this under penalty of perjury that the foregoing is true and correct, except as to those statements disclosed as being made upon information and belief.

Executed on March 24, 2020
        Wantagh, New York

                        *s/ David A. Blansky*
                        David A. Blansky

*M:\Documents\Company\Cases\Paswall, Bruce J\Adv Pro\Default Judgment\Default Motion\Motion for default judgment.docx*

23

# Exhibit "1"

# UNITED STATES BANKRUPTCY COURT
## Southern District of New York

In re: Bruce J Paswall

Bankruptcy Case No.: 19–23623–rdd

Mark S. Tulis as Chapter 7 Trustee of the Estate of Bruce J. Paswall

Plaintiff(s),

–against–

Adversary Proceeding No. 19–08713–rdd

Grant Paswall
Reid Paswall

Defendant(s)

# SUMMONS AND NOTICE OF PRETRIAL CONFERENCE
# IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons to the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days, to:

| Address of Clerk: | |
|---|---|
| | **Clerk of the Court** |
| | **United States Bankruptcy Court** |
| | **Southern District of New York** |
| | **300 Quarropas Street** |
| | **White Plains, NY 10601** |

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and Address of Plaintiff's Attorney: | |
|---|---|
| | **David A. Blansky** |
| | **LaMonica Herbst & Maniscalco, LLP** |
| | **3305 Jerusalem Avenue** |
| | **Suite 201** |
| | **Wantagh, NY 11793** |

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

YOU ARE NOTIFIED that a pretrial conference of the proceeding commenced by the filing of the complaint will be held at the following time and place:

| United States Bankruptcy Court Southern District of New York 300 Quarropas Street White Plains, NY 10601 | Room: Courtroom 118, White Plains Courthouse, 300 Quarropas Street, White Plains, NY 10601 |
|---|---|
| | Date and Time: 2/4/20 at 10:00 AM |

IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

Dated: 12/5/19

Vito Genna
_____
*Clerk of the Court*

By: /s/  Mimi Correa
_____
*Deputy Clerk*

TA000025

**LaMONICA HERBST & MANISCALCO, LLP**
3305 Jerusalem Avenue
Wantagh, New York 11793
Telephone: (516) 826-6500
David A. Blansky, Esq.
Salvatore LaMonica, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:                                                    Chapter 7

BRUCE J. PASWALL,                                         Case No. 19-23623 (RDD)

         Debtor.

------------------------------------------------------------x

MARK S. TULIS, as Chapter 7
Trustee of the Estate of Bruce J. Paswall,

         Plaintiff,                               Adv. Pro. No.

    -against-

GRANT PASWALL and REID PASWALL,                          **COMPLAINT**

         Defendants.

------------------------------------------------------------x

Plaintiff Mark S. Tulis, as Chapter 7 Trustee (the "Plaintiff") of the estate of Bruce J.

Paswall (the "Debtor"), by his attorneys, LaMonica Herbst & Maniscalco, LLP, as and for his

complaint against defendants Grant Paswall ("Grant") and Reid Paswall ("Reid") (collectively,

the "Defendants"), alleges as follows:

**JURISDICTION AND VENUE**

1.    Since this action arises under the Debtor's pending Chapter 7 bankruptcy case, the

United States Bankruptcy Court for the Southern District of New York (the "Court") has

jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334 and Rules 6009 and 7001 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

TA000026

2.     The statutory predicates for the claims asserted herein are sections 541, 542, 544, 550, and 551 of Title 11 of the United States Code (the "Bankruptcy Code"), sections 273, 273-a, 274, 275, 276, and 276-a of New York Debtor and Creditor Law (the "DCL"), Bankruptcy Rules 6009 and 7001, and New York common law.

3.     This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H), and (O).

4.     Pursuant to 28 U.S.C. § 1409(a), this Court is the proper venue for this proceeding.

5.     In accordance with Bankruptcy Rule 7008, Plaintiff consents to the entry of final orders and judgment by this Court if it is determined that this Court, absent the consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## BACKGROUND

### A.     Procedural Background

6.     On September 11, 2019, the Debtor filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code in this Court.

7.     Plaintiff was appointed as the Chapter 7 Trustee of this estate and, by operation of law, Plaintiff is the permanent Chapter 7 Trustee of this estate.

### B.     The Parties

8.     Grant is the adult son of the Debtor and the Debtor's former spouse, Debra Paswall ("Debra"), and an individual residing in Mahopac, New York.

9.     Reid is the adult son of the Debtor and Debra and an individual residing at the Real Property (as defined below).

10.     Plaintiff is authorized to file this action pursuant to Bankruptcy Code § 323 and Bankruptcy Rule 6009.

**C.      The Santana Lawsuit, Restraining Order and Judgment**

11.     In 2008, Marlena Santana, Yasminda Davis and Melissa Rodriguez (the "Santana Parties") commenced an action in the Supreme Court of the State of New York, County of Bronx (the "State Court"), under Index No. 305261/2008 against G.E.B. Medical Management, Inc. ("G.E.B.") and the Debtor arising from claims for pregnancy discrimination (the "Santana Lawsuit").

12.     On September 15, 2015, a jury rendered a verdict in favor of the Santana Parties awarding $1.5 million in compensatory/emotional distress damages, $1.5 million in punitive damages, and certain lost wages.

13.     Pending the entry of judgment following the jury verdict, pursuant to CPLR § 5229, on September 15, 2015, the State Court entered an order imposing restraints on the Debtor and G.E.B. intended to have the same effect as if a restraining notice had been served on them (the "Restraining Order").

14.     The Restraining Order was expressly continued by the State Court by stipulation so-ordered by the Court on January 11, 2016.

15.     The So-Ordered Stipulation (the "So-Ordered Stipulation") required the Debtor and G.E.B. to produce documents and information to the Santana Parties by February 7, 2016, and to appear for examinations under CPLR § 5229 no later than March 7, 2016.

16.     The Debtor and G.E.B. failed to comply with their obligations under the So-Ordered Stipulation.

17.     On September 16, 2016, the Santana Parties moved to hold the Debtor and G.E.B. in contempt.

18.     While the motion for contempt was pending, the Deed (defined below) was recorded.

19.     On October 18, 2017, the State Court issued an order adjudicating the Debtor and G.E.B. to be in contempt for failure to comply with the So-Ordered Stipulation.

20.     On January 24, 2018, a judgment was entered in favor of the Santana Parties and against the Debtor and G.E.B. in a sum of $4,223,242.65 (the "Judgment").

**D.     The TCF Lawsuit**

21.     On February 5, 2016, TCF Equipment Finance, a division of TCF National Bank f/k/a TCF Equipment Finance, Inc. ("TCF") commenced an action against the Debtor and G.E.B. in the Supreme Court of the State of New York, County of New York, under Index No. 650611/2016, in which it sought money damages arising from G.E.B.'s default under a certain equipment lease and the Debtor's unconditional personal guaranty of that lease (the "TCF Lawsuit").

22.     On December 24, 2018, judgment was granted in favor of TCF and against the Debtor and G.E.B. in the total sum of $301,746.91 (the "TCF Judgment").

**E.     The Matrimonial Action**

23.     While the Santana Lawsuit was pending, Debra commenced an action for divorce against the Debtor in the Supreme Court of the State of New York, County of Westchester (the "Matrimonial Action").

24.     A judgment of divorce was entered on June 12, 2012, which incorporated by reference a certain stipulation placed on the record on December 12, 2011.

25.     In January 2014, the equitable distribution provisions of that stipulation were vacated and the judgment of divorce was modified.

TA000029

26.     Subsequently, the Debtor and Debra reached a settlement intended to resolve all of the issues emanating from the Matrimonial Action, which settlement was executed by each of them before a notary in October 2014 (the "Matrimonial Stipulation").

27.     The Matrimonial Stipulation provided, among other things, that Debra would convey all of her right, title and interest in the real property known as, and located at, 13 Logging Road, Katonah, New York 10536, designated Section 59.5 Block 2 Lot 2 on the Tax Map of the Town of Somers, County of Westchester (the "Real Property") to the Debtor.

28.     Upon information and belief, the Debtor and Debra had resided at the Real Property from its purchase in 1992 until sometime in 2012.

29.     Upon information and belief, Debra ceased to reside at the Real Property in 2012.

30.     The Debtor continued to reside at the Real Property, to the exclusion of Debra, subsequent to her departure in 2012.

31.     Upon information and belief, the Debtor's girlfriend subsequently moved in with him at the Real Property and continues to reside there.

32.     By deed recorded December 19, 2014, Debra conveyed all of her right, title and interest in the Real Property to the Debtor.

33.     At that time, Debra had not resided at the Real Property for several years and the Debtor was residing there with his girlfriend and one or more of Defendants.

34.     The Debtor took Debra's right, title and interest in the Real Property subject to a first mortgage lien granted in favor of GE Capital Mortgage Services, Inc. in 1992, which mortgage has since been assigned to Wells Fargo Home Mortgage (the "First Mortgage").

35.     Upon information and belief, the Debtor has been the sole source of the payments of the First Mortgage since Debra left the Real Property.

TA000030

36.    As of the Filing Date, $97,447.00 was owed to Wells Fargo Home Mortgage on the First Mortgage.

37.    Under the Matrimonial Stipulation, the Debtor was to pay Debra $300,000.00 in two installments of $150,000.00.

38.    As security for the performance by the Debtor, the Debtor was to execute a bargain and sale deed transferring and conveying his right, title and interest in the Real Property to Debra (defined therein as the "Return Deed"), which deed was to be held in escrow.

39.    The first installment was to be paid from proceeds of a mortgage to be sought by the Debtor within ten (10) days of his closing on the loan.

40.    The second installment was to be paid within six (6) months of the date of the closing on the initial financing.

41.    The Matrimonial Stipulation provided, among other things, that in the event of a default in making either of the $150,000.00 payments within the time provided for each therein or satisfying an order awarding counsel fees within thirty (30) days of entry, the Debtor would be in default.

42.    The Matrimonial Stipulation provided that in the event of an uncured default the Real Property would immediately be marketed for sale with the unpaid funds due Debra being paid from the net proceeds of sale, together with an additional $25,000.00, representing her legal fees, costs and expenses associated with the default, and the remaining net proceeds would be paid to the Debtor.

43.    The Matrimonial Stipulation provided that if the initial payment of $150,000.00 was made by the Debtor, the release of the Return Deed to Debra would be conditioned upon either Debra's repayment to the Debtor of $150,000.00 or her demonstration that she had

TA000031

satisfied the Debtor's obligations arising from the initial financing obtained to fund the first $150,000.00 payment.

44.     Rather than execute the Return Deed in the form provided by the Matrimonial Stipulation, the Debtor executed a deed by which all of his right, title and interest in the Real Property would be conveyed to Debra and Defendants as joint tenants, with right of survivorship, by which the Debtor also preserved a life estate for himself (the "Deed"). A fair and accurate copy of the Deed is annexed as Exhibit "A".

45.     Upon information and belief, the Deed was delivered to counsel for one of the litigants to the Matrimonial Action to hold in escrow.

46.     The Matrimonial Stipulation neither provided for the conveyance of title to Defendants nor the Debtor's preservation of a life estate.

47.     On or about January 16, 2015, the Debtor entered into a home equity line of credit loan secured by a mortgage against the Real Property by which he borrowed $195,000.00 (the "Initial Financing Loan").

48.     The Debtor was the sole borrower for the Initial Financing Loan.

49.     That mortgage was recorded against the Real Property on February 17, 2015.

50.     Upon information and belief, the Debtor paid Debra the initial $150,000.00 from the proceeds of the Initial Financing Loan in or about late January 2015.

51.     Upon information and belief, the Debtor used the balance of the proceeds of the Initial Financing Loan to make improvements to the Real Property.

52.     Subsequent to the issuance of the Restraining Order by the State Court, the Debtor sought a modification of the Initial Financing Loan to increase the principal amount borrowed by $155,000.00 to a total principal sum of $350,000.00 (the "Modification Loan").

TA000032

53.     In or about December 2015, subsequent to the deadline for the second installment of $150,000.00 and while the Restraining Order was in effect, the Debtor was granted the Modification Loan and closed on the Modification Loan.

54.     In connection with the Modification loan, the Debtor executed a mortgage modification agreement on December 5, 2015 by which the indebtedness secured against the Real Property owed to the lender under the Initial Financing Loan was increased to the principal sum of $350,000.00.

55.     As of the Filing Date, the balance of $348,479.00 was owed to KeyBank NA in connection with the Modification Loan.

56.     The Debtor did not pay Debra the second $150,000.00 installment from the proceeds of the Modification Loan.

57.     The Debtor primarily used the proceeds of the Modification Loan to renovate and improve the Real Property.

58.     Upon information and belief, the Debtor subsequently made additional monthly payments of $5,000.00 to Debra, totaling approximately $80,000.00.

59.     Upon information and belief, the Real Property was never listed for sale as a consequence of the Debtor's default in paying the second installment of $150,000.00.

60.     Debra neither repaid the initial $150,000.00 paid by the Debtor in January 2015 nor satisfied the Initial Financing Loan.

61.     Upon information and belief, the conditions precedent to the release of the Return Deed were never satisfied.

62.     Upon information and belief, between 2012 and early 2017, the Debtor demolished, renovated and improved nearly the entire interior of the Real Property, with the exception of the basement.

63.     In the process he, among other things, gutted and renovated the kitchen and bathrooms and installed high-end cabinets, fixtures and custom closets.

64.     The Debtor also replaced the roof and HVAC systems and installed new flooring throughout the house, which included radiant heat.

65.     Upon information and belief, the Debtor expended between $200,000.00 and $400,000.00 over time to renovate and improve the Real Property.

66.     The Debtor continued to exercise control over, improve and utilize the Real Property as if it were his own subsequent to the delivery of the Deed into escrow and the recording of the Deed.

**F.     The Transfer of the Real Property**

67.     On January 27, 2017 the Deed was recorded.  See Exhibit "A".

68.     Upon information and belief, the Deed was released from escrow in violation of the terms of the Matrimonial Stipulation.

69.     The recording and endorsement page for the Deed reflects that no transfer tax was paid in connection with the transfer of title from the Debtor.  See Exhibit "A".

70.     The recording and enforcement page reflects that the Deed was to be recorded and returned to the Debtor at the Real Property.  See Exhibit "A".

71.     Upon information and belief, the Deed was returned to the Debtor following its recording.

72.     The Debtor failed to receive fair consideration in exchange for conveying title to Debra and Defendants.

73.     Debra passed away on April 17, 2019.

74.     As joint tenants with a right of survivorship, Defendants equally acquired Debra's one-third interest in the Real Property conveyed by the Deed upon Debra's passing.

75.    The Deed effectuated a transfer of an interest in the Real Property for less than fair consideration or reasonably equivalent value.

76.    At the time of the recording of the Deed, the jury had already rendered a verdict against the Debtor and in favor of the Santana Parties for more than $3 million.

77.    At the time of the recording of the Deed, the Debtor and G.E.B. were subject to a restraining order issued by the State Court and a motion to hold them in contempt for failure to comply with their discovery obligations under the So-Ordered Stipulation pending before the State Court.

78.    Upon information and belief, the Real Property is comprised of a 1.58-acre lot.

79.    Upon information and belief, a 4,170 sq. ft. single-family residence was constructed on the Real Property in 1992.

80.    Upon information and belief, the house contains four (4) bedrooms and four (4) bathrooms.

81.    Upon information and belief, at all times relevant, the Town of Somers Tax Assessor has estimated the fair market value of the Real Property to be no less than $1.1 million.

82.    The Real Property had substantial equity estimated to be no less than $600,000.00 at the time of the recording of the Deed.

83.    Upon information and belief, there existed $650,000.00 in equity in the Real Property on the Filing Date.

84.    Upon information and belief, the Debtor has continued to pay the First Mortgage and Modification Loan post-petition.

85.    The Debtor had at least one (1) creditor at the time of recording of the Deed who was unpaid as of the Filing Date.

TA000035

86.     The Debtor had creditors holding unsecured claims against him at the time of the recording of the Deed, including, but were not limited to, the Santana Parties and TCF.

87.     The Debtor has testified that the Deed was prepared with the intent to "leave the house" to Defendants.

88.     In an e-mail authored by the Debtor and transmitted to Debra on September 29, 2015, shortly after the adverse jury verdict in favor of the Santana Parties, the Debtor stated his desire to "protect what only asset there is to leave to the children."

89.     The Debtor recorded the Deed with the intent to hinder, delay, and defraud his creditors.

90.     Defendants received the Deed with actual intent to hinder, delay or defraud the Debtor's creditors.

91.     Defendants accepted the Deed with knowledge of its avoidability and lacked good faith.

92.     Upon information and belief, the Debtor was insolvent at the time of the recording of the Deed or was rendered insolvent by the recording of the Deed.

93.     At the time of the recording of the Deed, the Debtor intended to incur, or believed that he would incur debts that would be beyond his ability to pay as such debts matured.

94.     Upon information and belief, the equity in the Real Property exceeds all liens, claims, or encumbrances on the Real Property.

**FIRST CLAIM FOR RELIEF**
**(Fraudulent Conveyance Pursuant to DCL § 273)**

95.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "94" as if set forth fully herein.

96.     At the time of recording of the Deed, the Debtor was insolvent or were rendered insolvent as a result of recording of the Deed.

TA000036

97.     The Debtor did not receive fair consideration in exchange for the Deed.

98.     The recording of the Deed constitutes a fraudulent conveyance in violation of DCL § 273.

99.     Pursuant to Bankruptcy Code §§ 544(b), 550, and 551, and DCL § 273, Plaintiff may avoid the Deed and preserve it for the benefit of the Debtor's estate.

100.    Accordingly, Plaintiff is entitled to judgment against Defendants: (a) avoiding and setting aside the Deed pursuant to DCL § 273; (b) preserving the Deed for the benefit of the estate; (c) directing the Clerk of Westchester County to strike the Deed from the public record; and (d) awarding an amount to be determined by the Court, but not less than $650,000.00, plus interest thereon, attorney's fees and costs.

## SECOND CLAIM FOR RELIEF
### (Fraudulent Conveyance Pursuant to DCL § 273-a)

101.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "100" as if set forth fully herein.

102.    The Debtor did not receive fair consideration from Defendants in exchange for the Deed.

103.    At the time the Deed was recorded, the Debtor was the subject of a claim for money damages no less than two lawsuits, including the Santana Lawsuit and the TCF Lawsuit.

104.    As reflected in Schedule F to the Debtor's Petition, the Debtor's creditors are owed more than $4 million arising from debts incurred prior to the Filing Date.

105.    The Santana Judgment was entered against the Debtor and Q.E.B. on January 24, 2018.

106.    The TCF Judgment was entered December 24, 2018.

107.    The Santana Judgment and TCF Judgment remained unsatisfied as of the Filing Date.

TA000037

108.   The recording of the Deed constitutes a fraudulent conveyance in violation of New York State Debtor and Creditor Law § 273-a.

109.   Under Bankruptcy Code §§ 544(b), and 550, and New York State Debtor and Creditor Law § 273-a, Plaintiff may avoid the Deed.

110.   Accordingly, Plaintiff is entitled to judgment against Defendants: (a) avoiding and setting aside the Deed pursuant to DCL § 273-a; (b) preserving the Deed for the benefit of the estate; (c) directing the Clerk of the County of Westchester to record the order of this Court striking the Deed from the public record; and (d) in an amount to be determined by the Court, but no less than $650,000.00, plus interest thereon, attorney's fees and costs.

## THIRD CLAIM FOR RELIEF
### (Fraudulent Conveyance Pursuant to DCL § 274)

111.   Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "110" as if set forth fully herein.

112.   The Deed was recorded during the six (6) years preceding the Filing Date.

113.   The Debtor did not receive fair consideration in exchange for the Deed.

114.   Upon information and belief, at the time the Deed was recorded, the Debtor was engaged or was about to engage in a business or transaction for which the property remaining in his possession after the recording of the Deed constituted unreasonably small capital.

115.   The recording of the Deed constitutes a fraudulent conveyance in violation of DCL § 274.

116.   Pursuant to Bankruptcy Code §§ 544(b), 550, and 551, and DCL § 274, Plaintiff may avoid the Deed and preserve it for the benefit of the Debtor's estate.

117.   Accordingly, Plaintiff is entitled to judgment against Defendants: (a) avoiding and setting aside the Deed pursuant to DCL § 274; (b) preserving the Deed for the benefit of the estate; (c) directing the Clerk of the County of Westchester to record the order of this Court

striking the Deed from the public record; and (d) in an amount to be determined by the Court, but no less than $650,000.00, plus interest thereon, attorney's fees and costs.

## FOURTH CLAIM FOR RELIEF
### (Fraudulent Conveyance Pursuant to DCL § 275)

118. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "117" as if set forth fully herein.

119. At the time of the recording of the Deed, the Debtor had incurred, or was intending to incur, debts beyond his ability to pay them as they became due.

120. The Debtor did not receive fair consideration in exchange for the Deed.

121. The recording of the Deed constitutes a fraudulent conveyance of the Debtor's assets in violation of DCL § 275.

122. Pursuant to Bankruptcy Code §§ 544(b), 550, and 551, and DCL § 275, Plaintiff may avoid the Deed and preserve it for the benefit of the Debtor's estate.

123. Accordingly, Plaintiff is entitled to judgment against Defendants: (a) avoiding and setting aside the Deed pursuant to DCL § 275; (b) preserving the Deed for the benefit of the estate; (c) directing the Clerk of the County of Westchester to record the order of this Court striking the Deed from the public record; and (d) in an amount to be determined by the Court, but no less than $650,000.00, plus interest thereon, attorney's fees and costs.

## FIFTH CLAIM FOR RELIEF
### (Fraudulent Conveyance pursuant to New York Debtor and Creditor Law § 276)

124. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "123" as if set forth fully herein.

125. The Deed was recorded for the benefit of Defendants with the actual intent to hinder, delay, or defraud present or future creditors of the Debtor.

TA000039

126.    Defendants are insiders of the Debtor within the meaning of § 101(31)(A)(i) of the Bankruptcy Code, as they are his sons.

127.    The Debtor's entry into the Modification Loan and withdrawal of $155,000.00 of the equity in the Real Property constituted a knowing and willful violation of the Restraining Order.

128.    The recording of the Deed constituted a knowing and willful violation of the Restraining Order.

129.    The Debtor used the funds to improve the Real Property rather than pay his creditors.

130.    The Debtor retained possession and use of the Real Property following the recording of the Deed.

131.    The Debtor failed to receive fair consideration for the Deed.

132.    The recording of the Deed effectuated an intra-family transfer for which the Debtor failed to receiver any tangible consideration.

133.    Upon information and belief, the Deed was recorded following the jury verdict in favor of the Santana Parties, while the Restraining Order was in effect, and during the pendency of the TCF Lawsuit for the purpose of removing the Real Property from the immediate reach of the Santana Parties, TCF and other creditors, while creating a means of allowing the Debtor to remain in possession.

134.    Pursuant to Bankruptcy Code §§ 544(b), 550, and 551, and DCL § 276, Plaintiff may avoid the Deed and preserve it for the benefit of the Debtor's estate.

135.    Accordingly, Plaintiff is entitled to judgment against Defendants: (a) avoiding and setting aside the Deed pursuant to DCL § 276; (b) preserving the Deed for the benefit of the estate; (c) directing the Clerk of the County of Westchester to record the order of this Court

striking the Deed from the public record; and (d) in an amount to be determined by the Court, but no less than $650,000.00, plus interest thereon, attorney's fees and costs.

**SIXTH CLAIM FOR RELIEF**
**(Attorneys' Fees Pursuant to DCL § 276-a)**

136.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "135" as if set forth fully herein.

137.    The Deed was recorded by, or on behalf of the Debtor and/or Defendants, with the actual intent to hinder, delay, or defraud present or future creditors of the Debtor.

138.    The Deed was received Defendants with the actual intent to hinder, delay, or defraud present or future creditors of the Debtor.

139.    Upon information and belief, Defendants knew of the pendency of the action commenced by the Santana Parties against the Debtor and G.E.B. and/or the jury verdict at the time the Deed was recorded.

140.    Upon information and belief, Defendants were aware of their parents' plan to convey title to the Real Property to them.

141.    Upon information and belief, Defendants were aware that they provided no consideration in exchange for the Deed.

142.    The recording of the Deed constitutes a fraudulent conveyance under DCL § 276-a.

143.    Accordingly, Plaintiff is entitled to judgment against Defendants, pursuant to DCL § 276-a, for reasonable attorneys' fees in an amount to be determined by the Court in connection with the prosecution of this action.

**SEVENTH CLAIM FOR RELIEF**
**(Unjust Enrichment)**

144.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "143" as if set forth fully herein.

16
TA000041

145.    Defendants were enriched as a result of the recording of the Deed.

146.    The enrichment of Defendants was at the expense of the Debtor and the Debtor's
bankruptcy estate.

147.    The circumstances relating to the recording of the Deed are such that equity and
good conscience require that the Deed be avoided.

148.    Accordingly, judgment should be entered in favor of Plaintiff avoiding and setting
aside the Deed.

**WHEREFORE**, Plaintiff demands judgment on her claims for relief against Defendant
as follows:

1.    On the first claim for relief, a judgment, pursuant to DCL § 273, avoiding and
setting aside the Deed, preserving the Deed for the benefit of the estate and
directing the Westchester County Clerk to strike the Deed from the public record;
and

2.    On the second claim for relief, a judgment, pursuant to DCL § 273-a, avoiding
and setting aside the Deed, preserving the Deed for the benefit of the estate and
directing the Westchester County Clerk to strike the Deed from the public record;

3.    On the third claim for relief, a judgment, pursuant to DCL § 274, avoiding and
setting aside the Deed, preserving the Deed for the benefit of the estate and
directing the Westchester County Clerk to strike the Deed from the public record;

4.    On the fourth claim for relief, a judgment, pursuant to DCL § 275, avoiding and
setting aside the Deed, preserving the Deed for the benefit of the estate and
directing the Westchester County Clerk to strike the Deed from the public record;

5.    On the fifth claim for relief, a judgment, pursuant to DCL § 276, avoiding and
setting aside the Deed, preserving the Deed for the benefit of the estate and
directing the Westchester County Clerk to strike the Deed from the public record;

6.    On the sixth claim for relief, a judgment, pursuant to DCL § 276-a, for reasonable attorneys' fees in an amount to be determined by the Court in connection with the prosecution of this action;

7.    On the seventh claim for relief, a judgment avoiding and setting aside the Deed;

8.    For such other, further, and different relief as the Court may deem just and proper.

Dated: November 22, 2019
      Wantagh, New York

                             **LAMONICA HERBST & MANISCALCO, LLP**
                             Counsel to Plaintiff Mark S. Tulis, Chapter 7
                             Trustee

By:      ***s/ David A. Blansky***
             David A. Blansky, Esq.
             Salvatore LaMonica, Esq.
             3305 Jerusalem Avenue
             Wantagh, New York 11793
             Telephone: (516) 826-6500

m:\documents\company\cases\paswall, bruce j\adv pro\complaint re logging road.docx



The Office of the Westchester County Clerk: This page is part of the instrument; the County Clerk will rely on the information provided on this page for purposes of indexing this instrument. To the best of submitter's knowledge, the information contained in this Recording and Endorsement Cover Page is consistent with the information contained in the attached document.

*563643600DED004X*

## Westchester County Recording & Endorsement Page

### Submitter Information

| | | | |
|---|---|---|---|
| Name: | Premier Abstract, Ltd. | Phone: | 9142763040 |
| Address 1: | 352 Route 202 | Fax: | 9142763045 |
| Address 2: | | Email: | GMB@PremierAbstractLTD.com |
| City/State/Zip: | Somers NY 10589 | Reference for Submitter: | PASWALL 914-384-1722 |

### Document Details

| | | |
|---|---|---|
| Control Number: 563643600 | Document Type: **Deed (DED)** | |
| Package ID: 2016122900282001002 | Document Page Count: **2** | Total Page Count: **4** |

### Parties

☑ Additional Parties on Continuation page

**1st PARTY**
1: PASWALL BRUCE — Individual
2:

**2nd PARTY**
1: PASWALL BRENDA — Individual
2: PASWALL REID — Individual

### Property

☐ Additional Properties on Continuation page

Street Address: 13 LOGGING RD      Tax Designation: 59.5-2-2
City/Town: SOMERS      Village:

### Cross-References

☐ Additional Cross-Refs on Continuation page

1:      2:      3:      4:

### Supporting Documents

1: RP-5217      2: TP-584

### Recording Fees

| | |
|---|---|
| Statutory Recording Fee: | $40.00 |
| Page Fee: | $15.00 |
| Cross-Reference Fee: | $0.00 |
| Mortgage Affidavit Filing Fee: | $0.00 |
| RP-5217 Filing Fee: | $125.00 |
| TP-584 Filing Fee: | $5.00 |
| Total Recording Fees Paid: | **$185.00** |

### Transfer Taxes

| | |
|---|---|
| Consideration: | $0.00 |
| Transfer Tax: | $0.00 |
| Mansion Tax: | $0.00 |
| Transfer Tax Number: | 8619 |

### Mortgage Taxes

| | |
|---|---|
| Document Date: | |
| Mortgage Amount: | |
| Basic: | $0.00 |
| Westchester: | $0.00 |
| Additional: | $0.00 |
| MTA: | $0.00 |
| Special: | $0.00 |
| Yonkers: | $0.00 |
| Total Mortgage Tax: | **$0.00** |

Dwelling Type: 1-2 Family      Exempt: ☐
Serial #:

### RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK

Recorded: 01/27/2017 at 12:24 PM
Control Number: **563643600**
Witness my hand and official seal

Timothy C. Idoni
Westchester County Clerk

STATE OF NEW YORK, COUNTY OF WESTCHESTER
I, TIMOTHY C. IDONI, COUNTY CLERK AND CLERK OF THE SUPREME AND COUNTY COURTS, WESTCHESTER COUNTY DO HEREBY CERTIFY THAT I HAVE COMPARED THIS COPY WITH THE ORIGINAL THEREOF RECORDED IN MY OFFICE ON _____ AND THAT THE SAME IS A CORRECT TRANSCRIPT THEREFROM AND OF THE WHOLE OF SUCH ORIGINAL.
IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND AND AFFIXED MY OFFICIAL SEAL.

COUNTY CLERK AND CLERK OF THE SUPREME AND COUNTY COURTS, WESTCHESTER COUNTY.
FEE PAID

### Record and Return To

☐ Pick-up at County Clerk's office

**BRUCE PASWALL**
13 LOGGING RD

**KATONAH, NY 10536**

TA000044

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

**THIS INDENTURE,** made the 3rd day of October in the year 2014

**BETWEEN**

BRUCE PASWALL, currently residing at 13 Logging Road, Katonah, New York 10536

party of the first part, and BRENDA PASWALL, currently residing at 13 Logging Road, Katonah, New York 10536, REID PASWALL, residing at 13 Logging Road, Katonah, New York and Grant Paswall, residing at 13 Logging Road, Katonah, New York, as joint tenants with a right of survivorship,

party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of ten dollars and other valuable consideration paid by the party of the second part, does hereby remise, release and quitclaim unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Somers, County of Westchester and State of New York, known and designated as Lot No. 9M-2 on a certain sub-division map entitled "The Wood Lot, Section II", and filed in the Office of the Clerk of Westchester County, Division of Land Records on 11/21/89 as Map No. 23992.

THIS CONVEYANCE IS MADE IN THE ORDINANARY COURSE OF BUSINESS OF THE PARTY OF THE FIRST PART.

TITLE TO THE STREETS, ROADS AND AVENUES SHOWN ON THE AFORESAID MAP IS NOT CONVEYED HEREUNDER, BUT IS RESERVED FOR THE PURPOSES OF DEDICATION TO THE TOWN OF SOMERS. EGRESS AND INGRESS OVER THE SAID STREETS, ROADS, AND AVENUES TO THE NEAREST PUBLIC HIGHWAY IS HEREBY GRANTED.

Said premises are known as Section 59.5- Block 2- Lot 2 on the Tax Assessment Map of the Town of Somers.

Being the same premises conveyed to the Grantor herein by Deed dated October 28, 2014, recorded in the County Clerk's office of Westchester County on 12|9|14 in Liber 542953582 page ____ of Deeds.

SUBJECT to a life estate in and to the subject property granted herein to Bruce Paswall, currently residing at 13 Logging Road, Katonah, New York 10536

**TOGETHER** with all right, title and interest, if any, of the party of the first part of, in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

**AND** the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

IN PRESENCE OF:

BRUCE PASWALL

**TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE IN NEW YORK STATE**

State of New York, County of New York, ss:

On the 30th day of October in the year 2014,
before me, the undersigned, personally appeared
Bruce Paswall,
personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

State of New York, County of                            ss:

On the            day of            in the year
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

LOUIS I. NEWMAN
Notary Public, State of New York
No. 02NE8133935
Qualified in New York County
2018

**TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE OUTSIDE NEW YORK STATE**

State (or District of Columbia, Territory, or Foreign Country) of                            ss:

On the            day of            in the year            before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)  is (are)
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and
that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument, and that such individual made such appearance before the undersigned in the

_____            in  _____
(insert the City or other political subdivision)            (and insert the State or Country or other place the acknowledgment was taken)

_____
(signature and office of individual taking acknowledgment)

## QUITCLAIM DEED

Title No. _____

**BRUCE PASWALL
TO
BRENDA PASWALL**

STANDARD FORM OF NEW YORK BOARD OF TITLE UNDERWRITERS

Distributed by

**New York Title Research Corp
www.nytitle.com**

SECTION: 59.5

BLOCK: 2

LOT: 2

COUNTY OR TOWN: Town of Somers, Westchester County

Recorded at Request of
New York Title Research Corp

RETURN BY MAIL TO:

HIRSHFELD & HIRSHFELD, ESQS
Attorneys At Law
301 North Main Street
Suite #4
New City, New York 10956



TA000046

**LaMONICA HERBST & MANISCALCO, LLP**
3305 Jerusalem Avenue
Wantagh, New York 11793
Telephone: (516) 826-6500
David A. Blansky, Esq.
Salvatore LaMonica, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                                                   Chapter 7

BRUCE J. PASWALL,                                          Case No. 19-23623 (RDD)

                    Debtor.
------------------------------------------------------------x
MARK S. TULIS, as Chapter 7
Trustee of the Estate of Bruce J. Paswall,
                                                                           Adv. Pro. No. 19-08713-RDD
                    Plaintiff,

          -against-

GRANT PASWALL and REID PASWALL,

                    Defendants.
------------------------------------------------------------x

### <u>AFFIDAVIT OF SERVICE</u>

STATE OF NEW YORK          )
                                           ) ss.:
COUNTY OF NASSAU           )

          ROSA R. LELLA, being duly sworn, deposes and says:

          Deponent is not a party to the action, is over 18 years of age and resides in Suffolk County, NY.

          On December 5, 2019, deponent served the following documents by First-Class Mail upon the attorneys/parties listed below at the addresses listed, said addresses designated for that purpose, by depositing a true copy of same enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York:

          (1) ***Summons and Notice of Pretrial Conference in an Adversary Proceeding with Complaint; and***

          (2) ***Notice of Pendency***.

1
TA000047

TO:    Grant Paswall
9 Summit Drive
Mahopac, New York 10541

Grant Paswall
13 Logging Road
Katonah, New York 10536
*Defendant*

Reid Paswall
13 Logging Road
Katonah, New York 10536
*Defendant*

*Courtesy copy to:*    Gary R. Gjertsen Esq
**CLAIR & GJERTSEN, ESQS.**
4 New King Street, Suite 140
West Harrison, NY 10604

*s/Rosa R. Lella*
ROSA R. LELLA

Sworn to before me
this 6th day of December 2019

*s/ Angela Colucci*
Angela Colucci
Notary Public, State of New York
No. 01CO4674875
Qualified in Nassau County
Commission Expires July 31, 2022

m:\documents\company\cases\paswall, bruce j\adv pro\aos - s&c, filed notice of pendency.docx

# Exhibit "2"

- - - - - - - - - - - - - - - x

    In Re:  US Bankruptcy Court

             Southern District of New York


             BRUCE J. PASWALL,

                  Debtor.

Index No:  19-23623-rdd

- - - - - - - - - - - - - - - x


             220 White Plains Road

             Tarrytown, New York

             October 30, 2019

             1:08 p.m.



    DEPOSITION of BRUCE J. PASWALL, Debtor, in
the above-entitled action, held at the
above-stated time and place, taken before
Tamara Snayd, a Shorthand Reporter and Notary
Public within and for the State of New York.

Reporter's Ink, Corp.   Phone : 646.395.2522   Fax : 212.374.1236   www.reporters-ink.com

TA000050



```
 1
 2    A P P E A R A N C E S :
 3
 4        LAMONICA, HERBST & MANISCALCO, LLP
                 Attorneys for Trustee
 5               3305 Jerusalem Avenue
                 Wantagh, New York 11793
 6
          BY:   DAVID A. BLANSKY, ESQ.
 7               dab@lhmlawfirm.com
 8
 9        GARY R. GJERSTEN, ESQ.
                 Attorney for Debtor
10               BRUCE J. PASWALL
                 4 New King Street
11               White Plains, New York 10604
12               gg@clairgjersten.com
13
14        LAW OFFCES OF SCOTT A. LUCAS
                 Attorney for Creditors
15               MARLENA SANTANA, YASMINDA DAVIS and
                 MELISSA RODRIGUEZ
16               250 Park Avenue, Suite 2020
                 New York, New York 10177
17
                 BY:  SCOTT A. LUCAS, ESQ.
18               scott@lucasemploymentlaw.com
19                       -AND-
20               BY:  MITCHELL SACK, ESQ., of Counsel
                 BY:  ANDREW ROSS, ESQ., of Counsel
21
22
23        ALSO PRESENT:
24        MARK S. TULIS, Trustee
25
```

Reporter's Ink, Corp.    Phone : 646.395.2522    Fax : 212.374.1236    www.reporters-ink.com

TA000051



19-08743-rdd Doc 69-2 KN Filed 03/24/20 Entered 03/24/20 23:59:47 Exhibit 2 - Excerpts of Debtors Examination    Pg 4 of 29

3

1

2              MR. TULIS:  My name is Mark

3         Tulis.  I'm a bankruptcy Trustee in

4         this case.  The purpose of this was a

5         contextual 2004 Examination of the

6         Debtor.

7              My counsel is sitting to my

8         left.  At this point we'll take

9         appearances.  I will be available, if

10         necessary, next door reading my

11         briefs.

12   B R U C E    J.    P A S W A L L ,

13   the witness herein, having been first duly

14   sworn by a Notary Public of the State of New

15   York, was examined and testified as follows:

16   EXAMINATION BY

17   MR. BLANSKY:

18      Q.  Good afternoon, Dr. Paswall.  My

19    name is Davis Blansky.  As you know, my firm

20    represents Mr. Tulis, the Bankruptcy Trustee

21    appointed in your case.  I'm going to be

22    asking you some questions today in connection

23    with this investigation of your financial

24    affairs.

25              Before I begin I want to outline

Reporter's Ink, Corp.    Phone: 646.395.2522    Fax: 212.374.1236    www.reporters-ink.com

TA000052



1

2    certain ground rules so that we can

3    communicate effectively and clearly this

4    afternoon during our time together.

5        Okay?

6    **A.   Okay.**

7    Q.   The first is, as you can see, there

8    is a court reporter sitting between us.  She

9    is going to take down everything that I say

10    and everything that you say and anything that

11    anybody else around the table has to say.  I

12    please ask that you wait until I finish my

13    question before you answer.  And I'll try to

14    wait until you finish your answer before I

15    ask my next question so we so we verbally

16    don't step over one another.

17        Okay?

18    **A.   (Nodding.)**

19    Q.   The second thing is as natural as it

20    might be to nod your head yes or no or to

21    scowl or use some other body language, she's

22    not permitted to interpreter your body

23    language; so one of us will prompt you to

24    verbalize your response.

25        All right?

Reporter's Ink, Corp.    Phone : 646.395.2522    Fax : 212.374.1236    www.reporters-ink.com

TA000053


5

1

2      A.  Yes.

3      Q.  Third, to the extent you need a

4  break for any reason, as long as we finish

5  the question and answer we're discussing,

6  I'll be happy to accommodate you.

7          Okay?

8      A.  Thank you.

9      Q.  Do you understand my instructions so

10  far?

11      A.  I do.

12      Q.  Good.

13          If, for some reason, I ask a

14  question and you didn't hear it correctly or

15  you need me to rephrase it, do let me know.

16  I want to make sure you understand the

17  question so you can answer to the best of

18  your ability.

19          All right?

20      A.  All right.

21      Q.  Have you taken any alcohol or drugs

22  in the last twenty-four hours that might

23  impact your ability to testify today?

24      A.  I have not.

25      Q.  Okay.  Other than any discussion you

Reporter's Ink, Corp.    Phone : 646.395.2522    Fax : 212.374.1236    www.reporters-ink.com

TA000054

```
 1
 2    may have had with your counsel, have you
 3    discussed with anyone the testimony you
 4    expected to give today?
 5        A.  No.
 6        Q.  Did you look at any documents to
 7    prepare for today's examination?
 8        A.  I did.
 9        Q.  What kinds of documents did you look
10    at?
11        A.  My divorce decree, and counsel
12    advised me that I was to prepare invoices for
13    the renovation of my home.
14        Q.  At some point in the recent days,
15    did you provide copies of the documents
16    relating to the improvements of the home to
17    your counsel?
18        A.  I have them with me.
19        Q.  Do you know if you provided copies
20    to your counsel previously?
21        A.  I -- electronically.
22        Q.  You have a hard copy set with you?
23        A.  Correct.
24        Q.  I presume that they're for Mr. Tulis?
25        A.  Indeed.
```

Reporter's Ink, Corp.    Phone : 646.395.2522    Fax : 212.374.1236    www.reporters-ink.com

TA000055



```
 1

 2          Q.  I will take them from you.

 3              MR. BLANSKY:  Counsel, I

 4          presume that it's your understanding

 5          that the documents that were shared

 6          electronically by your staff are,

 7          likely, the scanned copies of the

 8          physical documents that Dr. Paswall

 9          has with him today.

10              Is that your understanding?

11              MR. GJERTSEN:  That was my

12          understanding.  When I forwarded the

13          electronic documents to Mr. Tulis, he

14          asked they be printed out.  I asked

15          Bruce to print them out and,

16          apparently, he has them here today.

17              MR. BLANSKY:  I'll take the

18          set, and I can reconcile them against

19          the ones I received electronically to

20          make sure there's no gaps.

21              Given the late time of day,

22          we're going to get as far as we can.

23          I suspect that we may keep today

24          open.  So we'll make ample progress

25          today with the inquiries that I have
```

Reporter's Ink, Corp.    Phone : 646.395.2522    Fax : 212.374.1236    www.reporters-ink.com

TA000056



1
2          and then we'll figure out how to
3          proceed from there, but I want to
4          manage everyone's time appropriately.
5     Q.  Given we're starting at one o'clock,
6  I don't want to create an artificial deadline
7  for me to ask questions and for you to give
8  complete answers to the questions.
9          Okay?
10    **A.  (Nodding.)**
11    Q.  State your highest level of
12  education.
13    **A.  Chiropractic college.**
14    Q.  When did you receive your degree?
15    **A.  1985, January.**
16    Q.  Where did you go to school?
17    **A.  Cleveland Chiropractic College.**
18    Q.  Have you been a practicing physician
19  in the field of chiropractics since then?
20    **A.  Since 1985.**
21    Q.  Are you required to maintain any
22  type of certification in order to keep that
23  license?
24    **A.  Yes.  Continuing education credits.**
25    Q.  Has your continuing education ever



1

2      A.   Since 1992, approximately.

3      Q.   At the time that you first moved to

4   the location, who were the title owners of

5   the property?

6      A.   I think it was joint between my wife

7   and myself.

8      Q.   For purposes of the record.

9           When you say your "wife," who are

10   you referring to?

11      A.   Brenda Paswall.

12      Q.   Are you and Ms. Paswall,

13   Mrs. Paswall, still married today?

14      A.   We're divorced.  She's deceased.

15      Q.   I'm sorry to hear that.

16           When did Mrs. Paswall pass?

17      A.   December of 2018.

18      Q.   Did there come a time when you and

19   she became separated?

20      A.   There was a restraining order I took

21   out on her, because she was an active

22   alcoholic and abusive.  That occurred

23   approximately 2009.

24      Q.   As a product of the restraining

25   order, did she leave the residence?

Reporter's Ink, Corp.   Phone : 646.395.2522   Fax : 212.374.1236   www.reporters-ink.com

TA000058



1

2      A.  She violated the restraining order

3  one Christmas and she was escorted out by

4  state troopers.

5      Q.  Did there come a time when she

6  ceased to regularly reside with you at the

7  Katonah address?

8      A.  It was at that point in time where

9  she exited the home in question and never

10  came back, short of retrieving personal items.

11      Q.  In what year are we talking about,

12  approximately?

13      A.  About 2012.

14      Q.  Did you and Mrs. Paswall have any

15  children together?

16      A.  We did.

17      Q.  What are their genders and names?

18      A.  Two boys.  Grant and Reid, R-E-I-D.

19      Q.  What are the ages of Grant and Reid

20  today?

21      A.  Grant is thirty.  Reid is

22  twenty-five.

23      Q.  Are Grant and Reid engaged in any

24  employment?

25      A.  Employment?



1

2        Q.  I think what you said is at the time

3    it was your understanding that took place

4    after you filed the bankruptcy case?

5        **A.  Correct.**

6        Q.  Okay.  Where do Grant and Reid

7    reside today?

8        **A.  Reid lives at 13 Logging Road.  And**

9    **Grant lives in Mahopac.**

10        Q.  Do you know the address?

11        **A.  9 Summit Drive.**

12        Q.  When is the last time Grant resided

13    at the Katonah address?

14        **A.  2017, '18; somewhere around there.**

15        Q.  Do you know whether Grant or Reid

16    were served with whatever documents were

17    prepared by Mr. Lucas' firm?

18        **A.  Grant was.  He wasn't very happy**

19    **with me.**

20        Q.  Prior to Grant receiving that

21    service, was he aware that he was on the deed

22    for the house?

23        **A.  Yes.**

24        Q.  How did he become aware that he was

25    on the deed?



19-08343-rdd DocDoc69-2 KNFfiled 03/24/20t 45Entefiled 03/24/2023 139:47 64 of 208xh2ibit 2 -
Excerpts of Debtors Examination    Pg 13 of 29

27

1
2          made.

3              MR. GJERTSEN:  I don't believe

4          it was, but we can find it.

5    ***REQUEST NOTED:

6              MR. BLANSKY:  I'd ask for the

7          production of those documents.  If

8          it's within your possession, I ask

9          you provide a copy of the deed.

10        Q.  Dr. Paswall, did there come a time

11   when a matrimonial action was commenced by

12   you or your former spouse?

13        **A.  Yes.**

14        Q.  Do you know where that action was

15   commenced?

16        **A.  I was served by Brenda 2012.**

17        Q.  Do you know in what county that

18   action was brought?

19        **A.  Westchester.**

20        Q.  At some juncture did you and

21   Mrs. Paswall reach a matrimonial settlement?

22        **A.  We did.**

23        Q.  I understand that there were

24   different permutations of the settlement.

25              Is that fair to say?

Reporter's Ink, Corp.    Phone : 646.395.2522    Fax : 212.374.1236    www.reporters-ink.com

TA000061



19-08347-20-cv-D5694-2KNM Filed 03/24/20 45-1 ered 03/24/20 23:59:47 65 of 208 2 -
Excerpts of Debtors Examination    Pg 14 of 29

33

1

2    instrument and provided the fund to her?

3       **A.  So the method of payment to Brenda,**

4    **because there were attorney liens that were**

5    **filed to the Court, had to go through counsel**

6    **to his IOLA account, to which he disbursed**

7    **the funds to her two attorneys and then the**

8    **balance was paid to her.**

9       Q.  Was your understanding whatever

10   charging liens the attorneys had against the

11   funds that those were satisfied from the

12   initial one-fifty?

13      **A.  To the best of my knowledge.**

14      Q.  Okay.  To your recollection, was

15   there a deadline for the payment of the

16   second installment of $150,000?

17      **A.  There was.**

18      Q.  When was that, if you recall?

19      **A.  Six, eight months after the first.**

20      Q.  At the time that the $150,000 second

21   payment became due, was it made?

22      **A.  No.**

23      Q.  Was it made at some subsequent time?

24      **A.  No.**

25      Q.  As of the date you filed your

Reporter's Ink, Corp.    Phone : 646.395.2522    Fax : 212.374.1236    www.reporters-ink.com

TA000062



34

1

2    bankruptcy case, had the balance of the

3    $150,000 ever been paid to Brenda?

4         **A.   The full balance, no.**

5         Q.   Was any part of it paid to her?

6         **A.   Yes.**

7         Q.   How much?

8         **A.   I continued paying her $5,000 a**

9    **month, which is what I was able to afford.**

10   **And she was willing to accept that off of the**

11   **one-fifty.  I could estimate only that -- I**

12   **can't estimate how much I paid of that**

13   **one-fifty in monthly increments to her.**

14        Q.   Did there come a time in

15   approximately 2005 when you made an

16   application to expand the line of credit to

17   draw additional equity from the real property?

18        **A.   To the --**

19             MR. GJERTSEN:  I'm sorry.  Just

20         for clarification.

21             Was that 2015 or 2005?  You

22         said, "2005."

23             MR. BLANSKY:  I'm sorry.

24   Q.   2015.

25        **A.   To the best of my knowledge, yes.**

Reporter's Ink, Corp.   Phone : 646.395.2522   Fax : 212.374.1236   www.reporters-ink.com



1

2      Q.  At some juncture was the maximum

3   amount of the line about $350,000?

4      **A.  Based on my revenue stream and what**

5   **they were willing to leverage on the equity**

6   **of the home and my ability to pay back, yes.**

7      Q.  What did you do with the difference

8   between the initial loan and the additional

9   sums that you took out?

10     **A.  Renovated the house.**

11     Q.  With respect to the renovations to

12  the house that you described, at some earlier

13  point were plans drawn and the process begun

14  to make renovations to the property?

15     **A.  Correct.**

16     Q.  How far back did that plan begin?

17     **A.  2012.**

18     Q.  At the time that you first began to

19  renovate the property, was Brenda still

20  residing with you or was this after she

21  departed the residence?

22     **A.  After she departed.**

23     Q.  Prior to drawing down on the equity

24  of the real estate, what was the source of

25  the funds used to make the renovations to the



1

2    real estate?

3        **A.  A HELOC loan.**

4        Q.  Before the HELOC loan was taken out

5    in either late 2014 or early 2015, had

6    renovations been made to the property?

7        **A.  Yes.**

8        Q.  Between 2012 and sometime in 2014,

9    what was the source of the funds to make --

10       **A.  I was financing that.**

11       Q.  Do you know how much you put into

12   improving the property before taking out the

13   HEL loan?

14       **A.  I can't -- I can't recall that.**

15       Q.  Do you know if it was more than

16   $50,000?

17       **A.  Sounds reasonable.**

18       Q.  Do you know if it was more than a

19   hundred thousand dollars?

20       **A.  I don't think so.**

21       Q.  Okay.  Are improvements still

22   ongoing today?

23       **A.  No.**

24       Q.  When did the renovation conclude?

25       **A.  2016, maybe 2017.**



19-08343-20-cv-D5692-KN Filed 03/24/20 45 Entered 03/24/20 23:59:47 69 Exhibit 2 -
Excerpts of Debtors Examination    Pg 18 of 29

37

1

2          Q.   Do you know how much in total was

3     spent to do the complete renovation?

4          A.   I have the invoices here.   I never

5     added it up.

6          Q.   Okay.   Are we talking about a few

7     hundred thousand dollars worth of

8     improvements?

9          A.   Sure.

10         Q.   Are we talking about a half million

11    dollars worth of improvements?

12         A.   No.

13         Q.   Somewhere between $200- and $400,000?

14         A.   Sounds reasonable.

15         Q.   What were the type of improvements

16    that were made to the property between 2012

17    and 2016 or '17 when you think that it was

18    completed?

19         A.   I know it was demoed; repairing the

20    roof; new boiler; new air handler, A/C unit;

21    flooring; radiant heat; architectural and

22    design services.

23         Q.   Was a kitchen or any bathrooms

24    renovated?

25         A.   Later on.

Reporter's Ink, Corp.    Phone : 646.395.2522    Fax : 212.374.1236    www.reporters-ink.com

TA000066



38

1

2      Q.  Between 2012 and 2017 was there any

3  part of the home that was not renovated in

4  some fashion?

5      A.  Basement.

6      Q.  How many square feet is the house?

7      A.  Including the basement 6,000,

8  approximately.

9      Q.  Besides Reid and yourself, does

10  anyone else reside with you in the house

11  today?

12      A.  My girlfriend.

13      Q.  What's her name?

14      A.  Donna.

15      Q.  What's Donna's last name?

16      A.  Fusht, F-U-S-H-T.

17      Q.  How long has Ms. Fusht resided at

18  the Katonah house with you?

19      A.  Since the renovations were complete;

20  maybe two years.

21      Q.  As part of the consideration for you

22  agreeing to pay the $300,000 or so to Brenda,

23  was part of that agreement that you would

24  take title to the real estate?

25      A.  I had to -- to obtain the HELOC.

Reporter's Ink, Corp.    Phone : 646.395.2522    Fax : 212.374.1236    www.reporters-ink.com

TA000067



1

2          A.   Correct.

3          Q.   Paragraph 2 on page 2 references the

4    $300,000 number we've talked about, right?

5          A.   Yes.

6          Q.   Then at paragraph 2a there's

7    reference to $150,000 being paid within ten

8    days of the initial financing.

9               Do you see the reference?

10         A.   Yes.

11         Q.   I think you mentioned to me earlier

12   that you took title to the real property and

13   then you applied for a line of credit secured

14   against the house; is that correct?

15         A.   Yes.

16         Q.   Setting that aside for a moment.

17              Was there a mortgage in the security

18   against the house before you took out the

19   line of credit?

20         A.   First mortgage.

21         Q.   First mortgage.

22              Do you know who the lender was on

23   the first mortgage?

24         A.   Originally, to the best of my

25   recollection, it was called GE Capital.

Reporter's Ink, Corp.   Phone : 646.395.2522   Fax : 212.374.1236   www.reporters-ink.com

TA000068

19-08347-201-cv-D05692-KNH Filed 03/24/20 45 Entered 03/24/2023 59:47 72 of 208 2 - Excerpts of Debtors Examination    Pg 21 of 29

47

1

2     Q.  At the time that you filed for

3  bankruptcy, was there still a first mortgage

4  ahead of the line of credit?

5     **A.  Yes.**

6     Q.  Was it current as of the date of the

7  filing of the bankruptcy case?

8     **A.  Yes.**

9     Q.  Do you know how much was owed at the

10  time that you filed for bankruptcy?

11     **A.  About a hundred thousand.**

12  **\*\*\*REQUEST NOTED:**

13     Q.  I'd ask you to produce a current

14  mortgage statement for the property, please.

15         Who was on the obligated for the

16  mortgage, if you recall?

17     **A.  My deceased ex-wife and myself.**

18     Q.  Is the mortgage current through

19  today?

20     **A.  Yes.**

21     Q.  Who's been making the payments on

22  the mortgage?

23     **A.  I have.**

24     Q.  Have you been paying continually

25  yourself since your former spouse stopped



1

2    residing at the property?

3        **A.   Yes.**

4        Q.   Turning back to the stipulations,

5    Exhibit 1, paragraph 2b, there's a reference

6    to additional $150,000 being paid to Brenda.

7            Do you see the reference?

8        **A.   Yes.**

9        Q.   I think you told me earlier that you

10   were unable to make that payment; is that

11   correct?

12       **A.   Correct.**

13       Q.   I think you said that she sought

14   certain relief from the matrimonial court due

15   to your failure to make that payment; is that

16   right?

17       **A.   Correct.**

18       Q.   At paragraph 3 there's a reference

19   to you being the defendant executing a deed.

20           Do you see that?

21       **A.   Yes.**

22       Q.   Okay.  It says the, quote, bargain

23   and sale deed with covenants, quote,

24   transferring and conveying his right title

25   and interest in the residence to the

Reporter's Ink, Corp.   Phone: 646.395.2522   Fax : 212.374.1236   www.reporters-ink.com

TA000070



1

2          A.   Yes.

3          Q.   Ultimately, Mr. Lucas and his

4    clients were awarded judgment against you and

5    G.E.B., right?

6          A.   Yes.

7          Q.   As of the date you filed for

8    bankruptcy, that judgment had not yet been

9    satisfied yet, right?

10         A.   Correct.

11         Q.   Your sons, they didn't provide any

12   payment or consideration to you or Brenda to

13   be on the title, did they?

14         A.   Not to my knowledge, no.

15         Q.   To your understanding, it was your

16   intention and Brenda's to protect the real

17   estate so the children could have the benefit

18   of it down the line.

19              That was, sort of, your gift to them

20   down the line?

21         A.   Absolutely.

22         Q.   Do you have a sense today of what

23   the value of the real estate is?

24         A.   I think it was appraised at nine

25   hundred and change.

Reporter's Ink, Corp.    Phone : 646.395.2522    Fax : 212.374.1236    www.reporters-ink.com

TA000071



1

2    accurate copy of the mortgage recorded

3    against the Katonah house by which you

4    secured the initial financing to make that

5    first payment to Brenda?

6       **A.  Yes.**

7       Q.  Is that your signature on the fifth

8    page of this, of the mortgage instrument?

9       **A.  Yes.**

10      Q.  According to the recording page and

11   the mortgage itself, it said the initial loan

12   amount was for a principal sum of $195,000.

13          Do you see the reference?

14      **A.  Yes.**

15      Q.  Okay.  The initial payment to your

16   wife, was that $150,000?

17      **A.  Yes.**

18      Q.  What did you do with the difference

19   between the one-fifty you paid her and the

20   one ninety-five?

21      **A.  It went into the renovations.**

22      Q.  Do you know if any of those funds

23   were given to either of your sons?

24      **A.  I don't.**

25      Q.  You don't know or you don't think

Reporter's Ink, Corp.    Phone : 646.395.2522    Fax : 212.374.1236    www.reporters-ink.com

TA000072



1

2    any of the funds were given to your sons?

3        **A.  I don't think any of it because it**

4    **was paid to counsel who disbursed them,**

5    **because there were charging liens.**

6        Q.  We have the one-fifty that went to

7    counsel --

8        **A.  Oh, okay.**

9        Q.  -- which you described that earlier,

10   the charging liens you think trickled down to

11   her.  Then the other forty-five that did not

12   get paid to Brenda or counsel, you said went

13   to renovations?

14       **A.  Correct.**

15       Q.  Do you know if any of the forty-five

16   or so went to either of your sons?

17       **A.  I don't think so.**

18           MR. BLANSKY:  I'm marking as

19        Exhibit 5, a copy of a mortgage

20        modification document dated December

21        5, 2015, recorded December 30, 2015.

22           (Whereupon, December 2015 mortgage

23        was marked as Trustee's Exhibit 5, for

24        identification, as of this date.)

25       Q.  Please take a look at that document.



1

2          A.  (Witness complied.)

3          Q.  Do you recognize your signature on

4     the line where it says "borrower" on page 2

5     of the exhibit?

6          A.  Yes.

7          Q.  Is it fair to say that is your

8     signature?

9          A.  Yeah.

10         Q.  Did you sign this before a notary on

11    the date it's dated?

12         A.  Yes.

13         Q.  Would it be fair to say in December

14    of 2015 you borrowed an additional $155,000

15    from this bank, bringing the total line of

16    credit to $350,000?

17         A.  Correct.

18         Q.  Okay.  What did you do with the

19    additional $155,000?

20         A.  It had to go to renovations.

21         Q.  Is it fair to say that no part of

22    the money was used to pay the obligation to

23    Brenda?

24         A.  I can't recall that.  I'm -- I'm

25    believing that I took $25,000 from the one

Reporter's Ink, Corp.    Phone : 646.395.2522    Fax : 212.374.1236    www.reporters-ink.com

TA000074

1

2    fifty-five and paid her the 25,000, as memory

3    serves me, and used the balance towards the

4    renovations.

5        Q.  Okay.  Do you know if any part of

6    the additional 155,000 borrowed in December

7    2015 was given to either of your sons?

8        **A.  I don't think so.**

9        Q.  When did you become involved with

10   Donna?

11       **A.  Maybe seven years ago.**

12       Q.  Do you know if any of the proceeds

13   from the line of credit were ever given to

14   Donna?

15       **A.  I do know.**

16       Q.  What's the answer to that?

17       **A.  None.**

18       Q.  None.  Okay.

19           Do you know if any of her personal

20   obligations were paid from funds you derived

21   from the line of credit?

22       **A.  None.**

23       Q.  Earlier you mentioned that

24   Mr. Lucas' law firm had commenced a lawsuit

25   naming you and your sons as defendants.



```
 1
 2                    I N D E X
 3
 4    WITNESS                EXAMINATION BY    PAGE
 5    BRUCE J. PASWALL     MR. BLANSKY        3
 6
 7
 8

                          EXHIBITS
 9
      TRUSTEE'S  DESCRIPTION                 PAGE
10
      Exhibit 1  stipulation                 44
11    Exhibit 2  November 2014 deed          54
      Exhibit 3  October 2014 deed           55
12    Exhibit 4  January 2015 mortgage       64
      Exhibit 5  December 2015 mortgage      66
13    Exhibit 6  summons with notice         69
      Exhibit 7  petition and schedules      75
14    Exhibit 8  interrogatories             108
15
16                   REQUESTS FOR PRODUCTION
17    DESCRIPTION                            PAGE
18    Deed                                   27
      Mortgage statement                     47
19    Life estate documents                 50
      Appraisal                             63
20    Complete applications                 73
      Lawsuit                               87
21    Mortgage and line of credit           97
22
23
24
25
```



1

2                    C E R T I F I C A T E

3

4          I, Tamara Snayd, a shorthand reporter

5    and Notary Public within and for the State of

6    New York, do hereby certify:

7          That the witness(es) whose testimony

8    is hereinbefore set forth was duly sworn by

9    me, and the foregoing transcript is a true

10   record of the testimony given by such

11   witness(es).

12         I further certify that I am not

13   related to any of the parties to this action

14   by blood or marriage, and that I am in no way

15   interested in the outcome of this matter.

16

17

18

19

20                                        

21

22          _____

23                    TAMARA  SNAYD

24

25

Reporter's Ink, Corp.    Phone : 646.395.2522    Fax : 212.374.1236    www.reporters-ink.com

TA000077

# Exhibit "3"

55

```
 1    SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF BRONX:  CIVIL TERM PART IA-5
 2    ----------------------------------------X
      MARLENA SANTANA, YASMINDA DAVIS, AND
 3    MELISSA RODRIGUEZ,

 4                        Plaintiff
                                          Index No.
 5              -against-
                                          305261/08
 6
      G.E.B. MEDICAL MANAGEMENT, INC., BRUCE
 7    PASWALL and PETER AYENDE,
                           Defendants.
 8    ----------------------------------------X
      SUMMATION - CHARGE - VERDICT
 9                           851 Grand Concourse
                             Bronx, New York 10451
10                           September 15, 2015

11    B E F O R E:

12              HON. ALISON Y. TUITT, JSC, and a jury of six plus
      alternates.
13
      A P P E A R A N C E S:
14
      SCOTT A. LUCAS, ESQ.
15    Attorney for Plaintiffs
      250 Park Avenue
16    New York, New York 10177

17
      LAURIE E. MORRISON, ESQ.
18    Attorney for Defendants
      30 Broad Street
19    New York, New York 10004

20
      JANET CAMPOLO, RPR
21    Senior Court Reporter

22

23

24

25
```

19-08343-20-cv-D05693KN-Filed 03/24/20 45-Interim 03/24/2023:59 47 83 Exh 208 3 -
Restraining Order Hearing Transcript    Pg 3 of 9
Verdict

134

1          them.  May I go to the jury room and talk to them?

2                    THE COURT:  No, they're gone now because the jury

3          room is closed.

4                    THE COURT OFFICER:  They have to get the

5          paperwork before they close.

6                    THE COURT:  They're gone, that's why I let you go

7          out.

8                    MS. MORRISON:  I told Scott Lucas you can go out

9          first and tell me when you're done.

10                   THE COURT:  You could speak with them all

11         together.  I'm not going to bring them back.

12                   MS. MORRISON:  Of course, okay.

13                   THE COURT:  Mr. Lucas?

14                   MR. LUCAS:  Yes, your Honor.  If I may hand up a

15         case to Miss Morrison and your Honor in support of the

16         application.

17                   Pursuant to CPLR 5229, plaintiffs move for an

18         order requiring defendants to appear for an examination and

19         for an order restraining them with the same effect as if a

20         restraining notice had been served on them after judgment.

21                   And in support of that application, I would like

22         to read a portion of the case Gallegos versus Elite Model

23         Management Corp., 1 Misc.3d 200 (NY Sup., 2003) into the

24         record.  And there the Court stated as the jury rendered a

25         verdict in favor of the Plaintiff, she is entitled to all

19-08343-120-cv Document 69-43 KN Filed 03/24/20 45 Entered 03/24/2023:59:47 84 Exhibit 3 -
Restraining Order Hearing Transcript    Pg 4 of 9
**Verdict**

135

1      the benefits available to the prevailing party in an action

2      such as the guarantee the award is collectable unless and

3      until the verdict is not entered as a judgment.

4      Defendants' concerns that granting plaintiff's application

5      will render Elite without means to operate successfully and

6      will jeopardize individual parties' financial security and

7      access to funds is unfounded.  The restraints imposed by

8      CPLR 5229 do not affect property that is not otherwise

9      available to satisfy a money judgment, such as payment of

10     salaries and living expenses that are ordinarily incurred.

11             THE COURT:  You have something?

12             MS. MORRISON:  Your Honor --

13             MR. LUCAS:  Just we could presumably have

14     depositions within 60 days, I'm sure we could work out the

15     dates among counsel.

16             MS. MORRISON:  Your Honor, first off, this is the

17     first time just now seconds ago that we have seen this

18     case.  We have to look through it, but we absolutely object

19     to this, your Honor.  And it even says in this case that

20     Plaintiff's counsel handed to us, that research on

21     applications of the statute, itself, reveals that it has

22     been invoked only in a few days cases, so this is rarely

23     invoked.  And from what I'm reading, again, I had seconds

24     to look over this case that plaintiffs' counsel just gave

25     to me now, it hasn't been allowed, unless there would not

19-08343-rdd Doc 56943 Filed 03/24/20 Entered 03/24/20 23:59:47 Exhibit 3 - Restraining Order Hearing Transcript Pg 5 of 9
1:20-cv-06293-KMR Document 45 Filed 02/22/23 Page 85 of 208

Verdict

136

 1          have been in one of the cases -- that it would not have
 2          been granted because the prevailing party had not made a
 3          sufficient showing that the award may be made uncollectible
 4          was the adverse, because the adverse party was either in
 5          financial distress or danger existed that he would
 6          dissipate his assets in order to afford a judgment.
 7          Further, that the relief may not be appropriate where
 8          decision on a post-trial motion vacating the verdict is
 9          reserved, which it was, your Honor, or if the trial judge
10          believes the challenge to the verdict has merit.  A
11          potentially meritorious 4440 motion may lead to the denial
12          of application for the examination and restraints primarily
13          because the utility of obtaining such relief would be
14          questionable if it appears likely the verdict would not
15          proceed to judgment.
16                    So, again, your Honor, I've only had two seconds
17          to review this, but even in the seconds that I've had, it
18          shows that -- it shows that these types of motions that
19          plaintiff is trying to make aren't usually granted, and it
20          says specifically, again, they're not granted when there
21          was -- when there was a motion, post trial motion to vacate
22          the verdict and we reserved that motion, so according to
23          even this case, his motion should be denied.
24                    MR. LUCAS:  If I may read one more thing.
25          Further, as the submission date for counsel's briefs on the

19-08343-120-cv D5629-3KNR Filed 03/24/20 45 tered 03/24/2023:59:47 86 of 208 3 -
Restraining Order Hearing Transcript    Pg 6 of 9
**Verdict**

137

1    4404 motion was set after the 5229 application was

2    submitted and argued before the Court, it is premature to

3    decide whether the verdict will be vacated without first

4    reviewing all the documents submitted by counsel in support

5    of their respective positions.

6              This is meant to freeze the status quo pending

7    that determination so that it's not too late to recover

8    something on the verdict.  Even if the verdict is cut down

9    by a lot, there would still be a threat of not having any

10   means to collect whatever the final verdict ends up being

11   if it is changed at all.

12             THE COURT:  Okay.  What I'm going to do is I'm

13   going to grant your application intermittently for you to

14   submit an order to show cause so that we can decide if it

15   should be actually granted or it should be denied.  So this

16   way that Miss Morrison will be able to research the case

17   and do whatever she needs to do.  So the order to show

18   cause, how many days do you need?

19             MR. LUCAS:  May I have -- I'm running on fumes.

20   May I have one week to present it?

21             THE COURT:  If you do it in one week and then

22   we'll hear it on Monday, Sandy?

23             MR. LUCAS:  On this Monday?

24             THE COURT:  No.  A week would be Tuesday, so it

25   would be the next Monday.  It would be the next Monday

138

1        afterwards.

2                MS. MORRISON:  I'm sorry, your Honor, which date

3        is this?

4                MR. LUCAS:  So that would be Monday the 29th?

5                MS. MORRISON:  The 29th?

6                MR. LUCAS:  A Monday, I'm sorry, the 28?

7                THE COURT:  Is that a good date for you?

8                MS. MORRISON:  I can come.

9                THE COURT:  You should have, sir, you should have

10       your application to her so that she can bring her

11       opposition into the courtroom on the 28th.

12               THE COURT CLERK:  And, your Honor, just so you

13       know, on 9/28 we have 36 cases on.  That's a big calendar,

14       just as long as they know.

15               MS. MORRISON:  And, your Honor, if I may, we

16       respectfully request plaintiffs' counsel submit their order

17       to show cause in plenty of time, at least seven days so we

18       could be able to --

19               MR. LUCAS:  A week from today.

20               MS. MORRISON:  So they'll submit it a week from

21       today so we can have adequate time to respond?

22               MR. LUCAS:  And how shall I submit that you to,

23       your Honor, hard copy to the Court, email, what's the best

24       way?

25               THE COURT:  We need hard copies.  They need to

Verdict

1     submit it in 217?

2                THE COURT CLERK:  If they're filing an order to

3     show cause, it has to be done in 217, not directly here.

4                THE COURT:  And they'll find us.

5                MR. LUCAS:  Okay.  And just for the sake of

6     clarity, until that order to show cause is decided, right

7     now the order is in place?

8                THE COURT:  There's a joint TRO.  He is

9     restrained from selling or distributing any property that

10    he has now.

11               MR. LUCAS:  And that includes G.E.B. Medical

12    management?

13               THE COURT:  Yes, all defendants.

14               MS. MORRISON:  And, your Honor, what time do we

15    appear in court on Monday the 28th?

16               THE COURT:  9:30.

17               MR. LUCAS:  And, your Honor, at the appropriate

18    time, we'll be making a motion to add interest to the lost

19    wages portion, I just didn't know if your Honor wanted that

20    done now or some later date.

21               THE COURT:  You can probably put it with an

22    application for hers, because she's going to do a motion,

23    too.

24               MS. MORRISON:  A motion to set aside the verdict.

25               MR. LUCAS:  We have a deadline for that motion.

140

1          THE COURT:  You can make a cross motion.  You can

2     speak with the clerk about that, and so it would be a cross

3     motion, because you want some affirmation for relief.  And,

4     also, if you're going to make an application for attorney's

5     fees, you need to do it at that point.

6          MR. LUCAS:  Okay.

7          THE COURT:  All right, Sandy will tell you.

8          MS. MORRISON:  All of it is going to be discussed

9     on the 28th or no?

10         MR. LUCAS:  That's just TRO issue.

11         THE COURT:  Yes, okay.

12         Let me say, it was a pleasure presiding over

13    this.  It was a learning experience for me and I'm sure

14    you, also, and despite the fact that we did have some

15    contention for some issues, I understand that everybody is

16    zealously representing their clients, so it's nothing

17    personal between the two, the Court and the attorneys, but

18    I would like to say that I appreciated all of your civility

19    and that I look forward to seeing you in the future.

20         MR. LUCAS:  Thank you, your Honor.

21         MS. MORRISON:  Thanks, your Honor.

22              *    *    *    *    *

23         Certified to be a true and accurate record of the
      within proceedings.  *Janet Campolo*

24    _____
           JANET CAMPOLO, RPR

25         Senior Court Reporter

# Exhibit "4"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

_____ X

Marlena Santana, et. al.

v.

G.E.B. Medical Management, et. al.

_____ X

INDIVIDUAL ASSIGNMENT PART _IAS_

**STIPULATION**

Index No. 305261-08

Mot. Cal.No. 30

Date 1/11/16

**IT IS HEREBY STIPULATED AND AGREED by and between the below-named attorney(s) as follows:**

(1) Until judgment is entered, Defts. G.E.B. and Paswall shall continue to be restrained and enjoined, with the same effect as if a restraining notice had been served on them after judgment, from making or suffering any sale, assignment, transfer or interference with any property in which G.E.B. or Paswall has any interest.

(2) By February 7, 2016, G.E.B. and Paswall shall provide Plaintiffs' counsel with all of the information and documents requested in Plaintiffs' "Post-Verdict Interrogatories & Requests for Documents Used to Calculate Net Worth."

(3) Depositions of G.E.B and Paswall under CPLR 5229 shall take place by 3/7/16.

Date: 1/11/16

So Ordered.

ENTER: _____
                    J.S.C.

**Alison Y. Tuitt, J.S.C.**

SC. NO. 8G Rev. 3/86

_____
**Attorney for Plaintiff**

_____
**Attorney for Defendant**

_____
**Attorney for Defendant**

## CERTIFICATION PURSUANT TO CPLR § 2105

SCOTT A. LUCAS, an attorney duly licensed to practice law in the State of New York, hereby certifies the truth of the following under penalty of perjury:

I hereby certify, pursuant to New York Civil Practice Law and Rules § 2105, that I compared the attached Court-Ordered Stipulation dated January 11, 2016 to the original and found it to be a true and complete copy of the original.

Dated: March 9, 2016

Scott A. Lucas

# Exhibit "5"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
--------------------------------------------------------X

MARLENA SANTANA, YASMINDA DAVIS
and MELISSA RODRIGUEZ,

Index No. 305261-08

                                  *Plaintiff*,

(Tuitt, J.)

        -against-

**NOTICE OF ENTRY OF
ORDER**

G.E.B. MEDICAL MANAGEMENT, INC.,
BRUCE PASWALL and PETER AYENDE,

                                  *Defendants*.
--------------------------------------------------------X

To:    DEFENDANTS

        Please take notice that annexed hereto is a true copy of the decision and order of

Honorable Alison Y. Tuitt dated October 18, 2017 and entered in the office of the Bronx County

Clerk on October 27, 2017 with respect to Plaintiffs' contempt motion.

Dated:  New York, New York
        November 20, 2017

                        LAW OFFICES OF SCOTT A. LUCAS
                        250 Park Avenue, Suite 2020
                        New York, New York 10177
                        (212) 983-6000
                        *Attorneys for Plaintiffs*

                        By _____
                                Scott A. Lucas

To:    Lowell B. Davis, Esq.
        One Old Country Road
        Carle Place, NY 11514
        *Attorneys for Defendants Bruce Paswall and G.E.B. Medical Management, Inc.*

        Peter Ayende
        4720 42nd Street, Apt. # 5A
        Sunnyside, NY 11104
        *Defendant Pro Se*

NEW YORK SUPREME COURT - COUNTY OF BRONX

PART _5M_

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX:

| | | |
|---|---|---|
| Case Disposed | ☐ |
| Settle Order | ☐ |
| Schedule Appearance | ☐ |

Santana, Marlena, et al          Index Nº _305261/08_

-against-                          Hon. _Alison Y. Tuitt_
                                              Justice.

M.E.B. Medical Management, Inc.,
                                        et al

The following papers numbered 1 to _3_ Read on this motion _OTSC Contempt_
Noticed on _____ and duly submitted as No. ____ on the Motion Calendar of _12/12/16_

| | PAPERS NUMBERED | |
|---|---|---|
| Notice of Motion - Order to Show Cause - Exhibits and Affidavits Annexed | | |
| Answering Affidavit and Exhibits | 2 | |
| Replying Affidavit and Exhibits | 3 | |
| _____ Affidavits and Exhibits | | |
| Pleadings - Exhibit | | |
| Stipulation(s) - Referee's Report - Minutes | | |
| Filed Papers | | |
| Memoranda of Law | | |

Upon the foregoing papers this Order to Show Cause is decided in accordance with the annexed memorandum decision. Cross-motion is also decided in accordance with the annexed decision

Motion is Respectfully Referred to:
Justice: _____
Dated: _____

Dated: _10, 18, 17_

Hon. _____
J.S.C.
Alison Y. Tuitt, J.S.C.

TA000092

305261/2008 SFO, & JUDGE'S DECISION , ORDER TO SHOW CAUSE, X-MOTION, AFFIRMATION, OPPOSITION, REPLY & EXHIBITS; DATED 10/18/17

Printed: 10/30/2017

NEW YORK SUPREME COURT----------COUNTY OF BRONX

PART _____ IA - 5

MARLENA SANTANA, YASMINDA DAVIS and        INDEX NUMBER: 305261/2008
MELISSA RODRIGUEZ,

                    Plaintiffs,

        -against-                          Present:
                                           HON. **ALISON Y. TUITT**
G.E.B. MEDICAL MANAGEMENT, INC.,           *Justice*
BRUCE PASWALL and PETER AYENDE,

                    Defendants.

The following papers numbered 1 to 3,

Read on this   Plaintiff's Order to Show Cause for Contempt and Defendants' Cross-Motion

---

On Calendar of 12/12/16

Order to Show Cause/Notice of Cross-Motion - Exhibits, Affirmations____1, 2_____

Reply Affirmation_____3_____

---

        Upon the foregoing papers, plaintiffs' Order to Show Cause for Contempt of Court and defendants' cross-motion for reargument are consolidated for purposes of this decision. For the reasons set forth herein, the Order to Show Cause is granted in part and denied in part and the cross-motion is denied.

        The within action involves plaintiffs' claims that they were subject to discrimination by their employer based on their pregnancies. The jury awarded plaintiffs $4.5 million in compensatory damages for physical injury/emotional distress and $1.5 million award of punitive damages. Immediately following the month-long jury trial, the Court on September 15, 2016 granted plaintiffs' application for a TRO pursuant to CPLR §5229 restraining defendants G.E.B. Medical Management, Inc. (hereinafter 'G.E.B.") and Bruce Paswall (hereinafter "Paswall" ) with the same effect as if a restraining notice had been served on the after judgment. On September 23, 2015, the Court signed an Order to Show Cause by plaintiffs which resulted in a So-Ordered Stipulation dated January 11, 2016 and signed by defendants' and plaintiffs' attorneys providing:

1

TA000093

(1) Until judgment is entered, Deft's G.E.B. and Paswall shall continue to be restrained and enjoined, with the same effect as if a restraining notice had been served on them after judgment, from making or suffering any sale, assignment, transfer or interference with any property in which G.E.B. or Paswall has any interest.

(2) By February 7, 2016, G.E.B. and Paswall shall provide Plaintiffs' counsel with all of the information and documents requested in Plaintiffs' "Post Verdict Interrogatories & Requests for Documents Used to Calculate Net Worth."

(3) Depositions of G.E.B. and Paswall under CPLR 5229 shall take place by 3/7/16.

On January 27, 2016, defendants then-counsel John Luke, Esq. emailed plaintiffs' counsel advising that Paswall was compiling the information set forth in the Stipulation. However, the information was not provided by the February 7, 2016 deadline. On February 9th, plaintiffs' counsel emailed Mr. Luke advising that he had not received "the agreed-upon and ordered post-verdict discovery." Mr. Luke responded that he was withdrawing as counsel effective the following day and noted "[t]hat is about all I can say to you without beaching attorney client privilege." On March 9, 2016, plaintiffs' counsel prepared a letter to Paswall with a copy of the Stipulation, and copied Mr. Luke, warning Paswall and G.E.B. that criminal and civil contempt would be sought against them for failing to comply with the Stipulation. When plaintiffs' counsel attempted to serve Paswall and G.E.B., he learned that Paswall had apparently closed down G.E.B. and opened a new practice at a different location called "Enhanced Chiropractic Solutions, PLLC", a step that plaintiffs claim involved a disposition of assets in violation of the restraining order.

On March 1, 2016, Paswall was personally served at the premises of "Enhanced Chiropractic Solutions, PLLC" with the letter warning him that criminal and civil contempt would be sought against him, together with a certified copy of the So-Ordered Stipulation dated January 11, 2016, and the accompanying Post-Verdict Interrogatories & Request for Documents Used to Calculate Net Worth. Thereafter, defendants' then-counsel Mr. Luke served a motion to be relieved as counsel, and for a 90 day stay of the proceedings to enable Paswall and G.E.B. time to obtain new counsel. That motion was unopposed and was granted on June 10, 2016. Paswall and G.E.B. have since retained new counsel who opposes the instant Order to Show Cause and cross-moves to "reargue" the January 11, 2016 "Order". Defendants' new counsel argues that there is no proof that Paswall ever had actual knowledge and understanding of the Order, that he ever consented to the terms of the Order or had notice any earlier than March 11, 2016 of the Order's existence. Defendants further

2

Printed: 10/30/2017

argue that there is no proof that Paswall and G.E.B. willfully violated the "Order". Thus, defendants argue that plaintiffs have failed to meet their burden of proof for contempt.

In the instant Order of Show Cause, plaintiffs move pursuant to CPLR §5104 and Judiciary Law §§750A(3), 753A(3), (8), and 773 holding Paswall and G.E.B. in criminal and civil contempt for willfully violating the So-Ordered Stipulation and ordering that Paswall be incarcerated on weekends for a period not to exceed six months, until Paswall demonstrates that he had complied with paragraph 2 of the Stipulation by providing plaintiffs' counsel with all of the information and documents requested in plaintiffs Post-Verdict Interrogatories & Requests for Documents Used to Calculate Net Worth"; fining Paswall and G.E.B. in an amount equal to the value of any attorneys' fees incurred in connection with this contempt motion, plus $250 apiece; and, ordering that Paswall, after providing the information requested, appear for a deposition of himself and G.E.B. as required by the So-Ordered Stipulation.

CPLR §5104 provides that any final judgment or order may be enforced by serving a certified copy of the judgment or order upon the party required by law to obey it and, if the party refuses or wilfully neglects to obey it, the party may be punished for a contempt of court. Pursuant to Judiciary Law §750A(3), a court has the power to punish for criminal contempt one guilty of wilful disobedience to its lawful mandate. The punishment may be by fine not exceeding $1,000 or by imprisonment not exceeding 30 days. Pursuant to Judiciary Law §753A(3), a court has the power to punish for civil contempt by fine and/or imprisonment for disobedience to a lawful mandate. To prevail on a motion to punish a party for civil contempt, the movant must demonstrate that the alleged contemnor has violated a clear and unequivocal court order, known to the parties. See, Garcia v. Great Atlantic and Pacific Tea Co., Inc., 647 N.Y.S.2d (1st Dept. 1996); McCain v. Dinkins, 84 N.Y.2d 216 (1994); Puro v. Puro, 333 N.Y.S.2d 560 (1st Dept 1990); McCormick v. Axelrod, 69 N.Y.2d 652 (1983). The actions of the alleged contemnor must have been calculated to, or actually defeated, impaired, impeded or prejudiced the rights or remedies of the other side and the party seeking contempt must show that there are no alternative effective remedies available. Farkas v. Farkas, 618 N.Y.S.2d 787 (1st Dept. 1994). A civil contempt is one where the rights of an individual have been harmed by the contemnor's failure to obey a court order; any penalty imposed is designed not to punish but, rather, to compensate the injured private party or to coerce compliance with the court's mandate or both. In re Peer, 856 N.Y.S.2d 385 (4th Dept. 2008). Contempt is drastic remedy which should not be granted absent clear right to relief. Pinto v. Pinto, 501 N.Y.S.2d 835 (1st Dept.,1986). "A motion to punish a party for civil contempt is addressed to the sound

3

TA000095

discretion of the court, and the movant bears the burden of proving the contempt by clear and convincing evidence". Matter of Hughes v. Kameneva, 946 N.Y.S.2d 211 (2d Dept. 2012).

A more detailed explanation for civil contempt penalties was provided in Ruesch v. Ruesch, 965 N.Y.S.2d 190 (2d Dept. 2013):

> "[U]nlike fines for criminal contempt where deterrence is the aim and the State is the aggrieved party entitled to the award, civil contempt fines must be remedial in nature and effect. The award should be formulated not to punish an offender, but solely to compensate or indemnify private complainants" (State of New York v. Unique Ideas, Inc., 44 N.Y.2d 345, 349, 405 N.Y.S.2d 656, 376 N.E.2d 1301 [citations omitted]).

> In the instant matter, the Supreme Court held the defendant in civil contempt. "Coercive penalties designed to modify the contemnor's behavior, generally speaking, are civil in nature, while penalties meant to punish the contemnor for past acts of disobedience are criminal" (New York City Tr. Auth. v. Transport Workers Union of Am., AFL–CIO, 35 A.D.3d 73, 86, 822 N.Y.S.2d 579).

> Thus, a fine "is considered civil and remedial if it either coerces the recalcitrant party into compliance with a court order, or compensates the claimant for some loss ... If a fine is not compensatory, it is civil only if the contemnor is given an opportunity to purge" (id. at 86, 822 N.Y.S.2d 579, citing International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 829, 114 S.Ct. 2552, 129 L.Ed.2d 642).

> Here, where the plaintiff failed to prove an actual loss, any penalty that punished the defendant for her past acts of disobedience would have been within the rubric of a criminal contempt and thus improper within this civil contempt adjudication (see New York City Tr. Auth. v. Transport Workers Union of Am., AFL–CIO, 35 A.D.3d at 88, 822 N.Y.S.2d 579).

In the instant matter, defendants are in contempt of Court. Defendants' proffered excuses for failing to comply with the So-Ordered Stipulation are without merit. CPLR 2104 "Stipulations" provides that "[a]n agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered." The January 11, 2016 document is a Stipulation that was entered into by the parties through their attorneys. It was then signed by the Court making it a So-Ordered Stipulation. The So-Ordered Stipulation executed by defendants' counsel constitutes a binding contract. See, Toos v. Leggiadro, International Inc., 980 N.Y.S.2d (1st Dept. 2014).

In Hallock v. State, 64 N.Y.2d 224 (1984), the Court of Appeals noted that

A stipulation of settlement made by counsel in open court may bind his clients even where it

Printed: 10/30/2017

exceeds his actual authority. Stipulations of settlement are favored by the courts and not lightly cast aside. This is all the more so in the case of "open court" stipulations within CPLR 2104, where strict enforcement not only serves the interest of efficient dispute resolution but also is essential to the management of court calendars and integrity of the litigation process. Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation.

Contrary to defendants' contention, defendants' prior counsel, Mr. Luke, entered into and consented to the Stipulation and had the authority to do so. Mr. Luke had been defendants' counsel throughout the month long trial on this matter and in the proceedings prior thereto. At no point during the proceedings and/or trial did Paswall or G.E.B complain or assert that their counsel was not authorized to act on their behalf. Thus, the Stipulation is a valid agreement between the parties which was then Ordered by this Court. See, 1420 Concourse Corp. v. Cruz, 573 N.Y.S.2d 669 (1st Dept. 1991)(There is no merit to the untimely-raised contention that the respondents' attorney did not have the authority to enter into the stipulation. Assuming arguendo that they lacked the real authority to do so, as a matter of law, they were certainly clothed with apparent authority and the appellant reasonably relied upon that appearance of authority. Petitioners' counsel had been the legal representative throughout the proceedings); Best v. Best, 754 N.Y.S.2d 542 (1st Dept. 2003)(Contrary to defendant's contention, her attorney had actual authority to enter into the stipulation, and even had actual authority been lacking, the stipulation would still be binding upon defendant by reason of her attorney's apparent authority to enter into it); Yerushalmi v. Abed Realty Corp., 872 N.Y.S.2d 89 (1st Dept. 2009)(In-court stipulation was binding and enforceable against landlord, even if court did not individually question the parties as to their understanding of the proposed terms of the stipulation); Clark v. Bristol–Myers Squibb & Co., 761 N.Y.S.2d 640 (1st Dept.2003)(The parties dispute whether plaintiff's former counsel had actual authority to enter into the stipulation settling the case on behalf of plaintiff. A settlement is considered binding, however, even where a client is not present at the time it is entered, and where the attorney does not have actual authority, if the court concludes that counsel's actions indicate "apparent authority" to act on his or her client's behalf).

This Court finds that defendants Paswall and G.E.B. are in contempt of Court for failing to comply with the So-Ordered Stipulation. Plaintiffs seek to have defendants punished pursuant to Judiciary Law §773 which applies where there is an actual loss or injury caused by defendants' misconduct. If plaintiffs show an actual loss as a result of defendants' failure to comply with the Stipulation, then the Court must impose a fine upon the offender sufficient to indemnify the aggrieved party to recover damages for the loss or injury. Here, however, plaintiffs have not shown any actual loss or injury as a result of their failure to comply. Plaintiffs surmise that defendants intentionally disposed of assets when they closed down G.E.B. and Paswall engaged in

Enhanced Chiropractic Solutions, PLLC. Pursuant to the NYS Department of State, Division of Corporation, Enhanced Chiropractic Solutions, PLLC was formed on December 10, 2009, well before the trial in this matter and the subsequent Stipulation was entered into by the parties. Section 773 also provides that where it is not shown that such an actual loss or injury has been caused, a fine may be imposed, not exceeding the amount of the complainant's costs and expenses, and two hundred and fifty dollars in addition thereto.

Accordingly, plaintiffs' request that defendants be fined pursuant to Judiciary Law §773 is granted and defendants shall incur a fine. Since plaintiffs have not provided the Court with the costs and expenses related to this application, the Court cannot impose the fine at this juncture. Plaintiffs are directed to provide the Court with their costs and expenses within 30 days afer service of this decision and Order with Notice of Entry. In addition to the fine that will be imposed, each defendant will also be assessed an additional $250 each.

With respect to plaintiffs' application for incarceration of defendant Paswall, it is denied. While the Court may punish Paswall for criminal contempt, it must be able to show that his failure to comply with the Stipulation resulted from wilful disobedience. Incarceration is an extreme measure that is not warranted under these facts. The Court will afford defendants one last opportunity to comply with the Stipulation before more severe fines and/or incarceration will be considered. Accordingly, defendants are hereby directed to fully comply with the So-Ordered Stipulation within 30 days afer service of this decision and Order with Notice of Entry or be subject to further civil and criminal contempt.

This constitutes the decision and Order of this Court.

Dated: 10/18/17

_____
Hon. Alison Y. Tuitt

## AFFIRMATION OF SERVICE

ANDREW R. SACK, an attorney duly licensed to practice law in the State of New York, hereby affirms the truth of the following under penalty of perjury:

I have personal knowledge of the facts below.

On November 20, 2017 I served a true copy of the annexed decision and order of Honorable Alison Y. Tuitt dated October 18, 2017 and entered in the office of the Bronx County Clerk on October 27, 2017 with respect to Plaintiffs' contempt motion, together with the annexed Notice of Entry of Order, on Defendants Bruce Paswall and G.E.B. Medical Management, Inc. by placing two copies of same in a postage-paid envelope and depositing them in an official depository of the United States Postal Service in the State of New York to counsel for Defendants Bruce Paswall and G.E.B. Medical Management, Inc. at the following address:

> Lowell B. Davis, Esq.
> One Old Country Road
> Carle Place, NY 11514

On November 20, 2017 I served a true copy of the annexed decision and order of Honorable Alison Y. Tuitt dated October 18, 2017 and entered in the office of the Bronx County Clerk on October 27, 2017 with respect to Plaintiffs' contempt motion, together with the annexed Notice of Entry of Order, on *pro se* Defendant Peter Ayende by placing same in a postage-paid envelope and depositing it in an official depository of the United States Postal Service in the State of New York to Peter Ayende at the following address:

> Peter Ayende
> 720 42nd Street, Apt. # 5A
> Sunnyside, NY 11104

Dated: New York, New York
      November 20, 2017

Andrew R. Sack

# Exhibit "6"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
---------------------------------------------------------X
MARLENA SANTANA, YASMINDA DAVIS
and MELISSA RODRIGUEZ,                                   Index No. 305261-08

                                    *Plaintiff,*           (Tuitt, J.)

            -against-

                                                        **JUDGMENT**

G.E.B. MEDICAL MANAGEMENT, INC.,                        **RECEIVED BY:**
BRUCE PASWALL and PETER AYENDE,

                                    *Defendants.*          **JAN 24 2018**
---------------------------------------------------------X
                                                        **Judgment Department**

    WHEREAS, the jury in the above-captioned action reached a verdict in Plaintiffs' favor

on September 15, 2015: **(A)** awarding each Plaintiff $1.5 million in compensatory/emotional

distress damages; **(B)** collectively awarding Plaintiffs $1.5 million in punitive damages (equal to

$500,000 per Plaintiff); and **(C)** awarding lost wages of $32,000 to Marlena Santana, $120,000

to Yasminda Davis, and $29,000 to Melissa Rodriguez; and

    WHEREAS, the jury found Defendants Bruce Paswall and G.E.B. Medical Management,

Inc. liable for all the above-referenced awards, except that $25,000 of each Plaintiff's $1.5

million award of compensatory/emotional distress damages was allocated to Defendant Peter

Ayende, making Defendants Bruce Paswall and G.E.B. Medical Management, Inc. jointly liable

for $1,475,000 of each Plaintiff's $1.5 million award of compensatory/emotional distress

damages, and Defendant Peter Ayende liable for $25,000 of each Plaintiff's $1.5 million award

of compensatory/emotional distress damages; and

    WHEREAS Defendants Bruce Paswall and G.E.B. Medical Management, Inc.

subsequently moved to vacate or reduce the verdict, and Plaintiffs cross-moved for an award of

prejudgment interest on the lost wages verdict, an increase to each Plaintiff's lost wages award to offset the increased tax burden resulting from the lump-sum lost wages award, attorney's fees, reimbursement of expert witness fees, and reimbursement of specified disbursements; and

WHEREAS in a Decision and Order dated October 20, 2017 (the "Order"), the Court (Justice Tuitt) **(A)** denied Defendants' motion to vacate the verdict and granted their motion to reduce the verdict to the extent of ordering a new trial on the compensatory/emotional distress damages issue unless Plaintiffs consented to the entry of a judgment decreasing the compensatory/emotional distress damages component of the verdict for each Plaintiff from $1.5 million to $500,000; and **(B)** granted Plaintiffs' cross-motion for attorney's fees (which award is set forth in a separate judgment), together with: **(1)** additional sums calculated by Plaintiffs' expert economist and requested by Plaintiffs ($24,719 for Marlena Santana, $92,486 for Yasminda Davis, and $24,000 for Melissa Rodriguez) to offset the increased tax burden that will occur as a result of each Plaintiff being paid her lost wages award in a lump sum; **(2)** prejudgment interest from June 1, 2008 on the lost wages awarded; **(3)** reimbursement of expert witness fees as requested in Plaintiffs' cross-motion ($37,500); and **(4)** reimbursement of disbursements as requested in Plaintiffs' cross-motion (*i.e.*, reimbursement of process server fees, stenographer fees and filing fees totaling $5,377); and

WHEREAS Plaintiffs' counsel, on January 2, 2018, with not more than 30 days having elapsed since Defendants served Plaintiffs' counsel with Notice of Entry, duly served and filed a "Consent to Entry of Judgment that Lowers Compensatory Damages Element of the Verdict from $1.5 Million Per-Plaintiff to $500,000 Per-Plaintiff";

NOW, on motion of the Law Offices of Scott A. Lucas, attorneys for Plaintiffs, it is

TA000102

1.    ADJUDGED **(A)** that Plaintiff Marlena Santana, currently residing at 2727

University Ave., Apt. 6H, Bronx, NY 10468, do recover from Defendants Bruce Paswall, last

known to be residing at 13 Logging Road, Katonah, NY 10536, and G.E.B. Medical

Management, Inc., last known to be residing at 515 Madison Ave. #1720, New York, NY 10022,

a judgment that includes the following:

| | |
|---|---|
| One-third of Bruce Paswall and G.E.B. Medical Management, Inc.'s $1,475,000 share of Marlena Santana's compensatory/emotional distress damages award (consistent with the Court's two-thirds reduction of each Plaintiff's compensatory/emotional distress damages award from $1.5 million to $500,000) | $491,667 |
| Marlena Santana's one-third share of the $1.5 million punitive damages award | $500,000 |
| Marlena Santana's lost wages award | $32,000 |
| Court-awarded offset to for the increased tax burden to Marlena Santana that will occur as a result of her receiving her lost wages award in a lump sum | $24,719 |
| Prejudgment interest from June 1, 2008 to the date of verdict (September 15, 2015) on Marlena Santana's $32,000 award for lost wages | $20,990 |
| Marlena Santana's one-third share of the Court-awarded expert witness fees | $12,500 |
| Marlena Santana's one-third share of the Court-awarded disbursements | $1,792 |
| *Subtotal for Marlena Santana's Judgment against Bruce Paswall and G.E.B. Medical Management, Inc.* | *$1,083,668* |

together with interest from the date of verdict (September 15, 2015) to the date of this judgment,

as calculated by the clerk in the sum of $230,008.56 for a total judgment in favor of

Marlena Santana against Defendants Bruce Paswall and G.E.B. Medical Management, Inc. of

$1,313,676.56 , and that Plaintiff Marlena Santana have execution against Defendants

Bruce Paswall and G.E.B. Medical Management, Inc. therefor; and **(B)** that Plaintiff Marlena

3

Santana do recover from Defendant Peter Ayende, last known to be residing at 4720 42nd Street, Apt. # 5A, Sunnyside, NY 11104, $8,333 (one-third of the $25,000 awarded against Peter Ayende, consistent with the Court's two-thirds reduction of the compensatory/emotional distress damages award), together with interest from the date of verdict (September 15, 2015) to the date of this judgment, as calculated by the clerk in the sum of $ 1768.66 , for a total judgment in favor of Plaintiff Marlena Santana against Defendant Peter Ayende of $ 10,101.66 , and that Plaintiff Marlena Santana have execution against Defendant Peter Ayende therefor.

2.      ADJUDGED **(A)** that Plaintiff Yasminda Davis, currently residing at 529 Valley Road, Roselle Park, NJ 07204, do recover from Defendants Bruce Paswall, last known to be residing at 13 Logging Road, Katonah, NY 10536, and G.E.B. Medical Management, Inc., last known to be residing at 515 Madison Ave. #1720, New York, NY 10022, a judgment that includes the following:

| | |
|---|---|
| One-third of Bruce Paswall and G.E.B. Medical Management, Inc.'s $1,475,000 share of Yasminda Davis's compensatory/emotional distress damages award (consistent with the Court's two-thirds reduction of each Plaintiff's compensatory/emotional distress damages award from $1.5 million to $500,000) | $491,667 |
| Yasminda Davis's one-third share of the $1.5 million punitive damages award | $500,000 |
| Yasminda Davis's lost wages award | $120,000 |
| Court-awarded offset to for the increased tax burden to Yasminda Davis that will occur as a result of her receiving her lost wages award in a lump sum | $92,486 |
| Prejudgment interest from June 1, 2008 to the date of verdict (September 15, 2015) on Yasminda Davis's $120,000 award for lost wages | $78,712 |
| Yasminda Davis's one-third share of the Court-awarded expert witness fees | $12,500 |
| Yasminda Davis's one-third share of the Court-awarded disbursements | $1,792 |

4

| | |
|---|---|
| *Subtotal for Yasminda Davis's Judgment against Bruce Paswall and G.E.B. Medical Management, Inc.* | *$1,297,157* |

together with interest from the date of verdict (September 15, 2015) to the date of this judgment,

as calculated by the clerk in the sum of $ 275,321.59, for a total judgment in favor of Plaintiff

Yasminda Davis against Defendants Bruce Paswall and G.E.B. Medical Management, Inc. of

$ 1,572,478.59, and that Plaintiff Yasminda Davis have execution against Defendants

Bruce Paswall and G.E.B. Medical Management, Inc. therefor; and **(B)** that Plaintiff Yasminda

Davis do recover from Defendant Peter Ayende, last known to be residing at 4720 42nd Street,

Apt. # 5A, Sunnyside, NY 11104, $8,333 (one-third of the $25,000 awarded against Defendant

Peter Ayende, consistent with the Court's two-thirds reduction of the compensatory/emotional

distress damages award), together with interest from the date of verdict (September 15, 2015) to

the date of this judgment, as calculated by the clerk in the sum of $ 1,768.66 , for a

total judgment in favor of Plaintiff Yasminda Davis against Defendant Peter Ayende of

$ 10,101.66 , and that Plaintiff Yasminda Davis have execution against Defendant Peter

Ayende therefor.

       3.     ADJUDGED **(A)** that Plaintiff Melissa Rodriguez, currently residing at 168 Ridge

Ave., Apt. 3, Yonkers, NY 10703, do recover from Defendants Bruce Paswall, last known to be

residing at 13 Logging Road, Katonah, NY 10536, and G.E.B. Medical Management, Inc., last

known to be residing at 515 Madison Ave. #1720, New York, NY 10022, $1,077,558, a

judgment that includes the following:

| | |
|---|---|
| One-third of Bruce Paswall and G.E.B. Medical Management, Inc.'s $1,475,000 share of Melissa Rodriguez's compensatory/emotional distress damages award (consistent with the Court's two-thirds reduction of each Plaintiff's | $491,667 |

5

| | |
|---|---|
| compensatory/emotional distress damages award from $1.5 million to $500,000) | |
| Melissa Rodriguez's one-third share of the $1.5 million punitive damages award | $500,000 |
| Melissa Rodriguez's lost wages award | $29,000 |
| Court-awarded offset to for the increased tax burden to Melissa Rodriguez that will occur as a result of her receiving her lost wages award in a lump sum | $24,000 |
| Prejudgment interest from June 1, 2008 to the date of verdict (September 15, 2015) on Melissa Rodriguez's $32,000 award for lost wages | $19,022 |
| Melissa Rodriguez's one-third share of the Court-awarded expert witness fees | $12,500 |
| Melissa Rodriguez's one-third share of the Court-awarded disbursements | $1,792 |
| *Subtotal for Melissa Rodriguez's Judgment against Bruce Paswall and G.E.B. Medical Management, Inc.* | *$1,077,981* |

together with interest from the date of verdict (September 15, 2015) to the date of this judgment, as calculated by the clerk in the sum of $ 228,801.52 , for a total judgment in favor of Plaintiff Melissa Rodriguez against Defendants Bruce Paswall and G.E.B. Medical Management, Inc. of $ 1,306,982.52 , and that Plaintiff Melissa Rodriguez have execution against Defendants Bruce Paswall and G.E.B. Medical Management, Inc. therefor; and

**(B)** that Plaintiff Melissa Rodriguez do recover from Defendant Peter Ayende, last known to be residing at 4720 42nd Street, Apt. # 5A, Sunnyside, NY 11104, $8,333 (one-third of the $25,000 awarded against Peter Ayende, consistent with the Court's two-thirds reduction of the compensatory/emotional distress damages award), together with interest from the date of verdict (September 15, 2015) to the date of this judgment, as calculated by the clerk in the sum of

6

$ __1759.66__ , for a total judgment in favor of Plaintiff Melissa Rodriguez against

Defendant Peter Ayende of $ __10101.66__ , and that Plaintiff Melissa Rodriguez have

execution against Defendant Peter Ayende therefor.

Judgment signed this __24th__ day of January 2018.

_____
Clerk

7

Supreme Court of the State of New York
County of Bronx

_____ X

MARLENA SANTANA, YASMINDA
DAVIS and MELISSA RODRIGUEZ,

                         Plaintiffs,

INDEX NO.
305261-08

(Tuitt, J.)

           — against —

G.E.B MEDICAL MANAGEMENT, INC.,
BRUCE PASWALL and PETER AYENDE,

                  Defendants.

_____ X

## Affirmation of Waiver of Costs

Plaintiffs waive any costs not already included in this judgment. The Court-awarded attorney's fees are set forth in a separate judgment.

Dated: Bronx, NY
      January 24, 2018

By: _Scott Lucas_ (as)

Scott A. Lucas
250 Park Ave
Suite 2020
New York, NY 10177
Scott@lucasemploymentlaw.com
(212) 983-6000

TA000108


1. Place cover this side up top of first page of document. Staple as indicated.


2. Lift bottom of cover up and over top, folding on top score line.


3. Fold cover down behind paper on remaining score line.

Note: Address area on back middle panel appears in window in a No. 10 envelope

STATE OF NEW YORK, COUNTY OF _____ ss.:

I, the undersigned, an attorney admitted to practice in the courts of New York State,

☐ **Certification By Attorney** — certify that the within _____ has been compared by me with the original and found to be a true and complete copy.

☐ **Attorney's Affirmation** — state that I am _____ the attorney(s) of record for _____ in the within action: I have read the foregoing _____ and know the contents thereof; the same is true to my own knowledge, except as to the matters therein alleged to be on information and belief, and as to those matters I believe it to be true. The reason this verification is made by me and not by

The grounds of my belief as to all matters not stated upon my own knowledge are as follows:

I affirm that the foregoing statements are true, under the penalties of perjury.

Dated: _____ ............................................................
**The name signed must be printed beneath**

STATE OF NEW YORK, COUNTY OF _____ ss.:

I, the undersigned, being duly sworn, depose and say: I am

☐ **Individual Verification** — _____ in the action; I have read the foregoing _____ and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe it to be true.

☐ **Corporate Verification** — the _____ of _____ a _____ corporation and a party in the within action, I have read the foregoing _____ and know the contents thereof; and the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true. This verification is made by me because the above party is a corporation and I am an officer thereof.

The grounds of my belief as to all matters not stated upon my own knowledge are as follows:

Sworn to before me on _____ ............................................................
**The name signed must be printed beneath**

STATE OF NEW YORK, COUNTY OF _____ ss.: (If more than one box is checked—indicate after names type of service used.)

I, the undersigned, being sworn, say: I am not a party to the action, am over 18 years of age and reside at

On _____ I served the within

☐ **Service By Mail** — by mailing a copy of each of the following persons at the last known address set forth after each name below.

☐ **Personal Service on Individual** — by delivering a true copy of each personally to each person named below at the address indicated. I knew each person served to be the person mentioned and described in said papers as *a party therein:*

☐ **Service by Electronic Means** — by transmitting a copy to the following persons by ☐ FAX at the telephone number set forth after each name below ☐ E-MAIL at the E-Mail address set forth after each name below, which was designated by the attorney for such purpose, and by mailing a copy to the address set forth after each name.

☐ **Overnight Delivery Service** — by dispatching a copy by overnight delivery to each of the following persons at the last known address set forth after each name below.

Sworn to before me on _____ ............................................................
**The name signed must be printed beneath**

SUPREME  **COURT**
**STATE OF NEW YORK, COUNTY OF** BRONX     **Index No.** 305261     **Year** 2008

---

MARLENA SANTANA, YASMINDA DAVIS and MELISSA RODRIGUEZ,

*Plaintiff,*

-against-

G.E.B. MEDICAL MANAGEMENT, INC., BRUCE PASWALL and PETER AYENDE,

*Defendants.*

---

**JUDGMENT**

---

LAW OFFICES OF
**SCOTT A. LUCAS**
ATTORNEY AT LAW
*Attorney(s) for*

*Office and Post Office Address, Telephone*

250 Park Avenue
20th Floor
NEW YORK, NEW YORK 10177
TELEPHONE (212) 983-6000

---

**To**

**Signature (Rule 130-1.1-a)**

Print name beneath

*Scott A. Lucas*

**Service of a copy of the within is hereby admitted.**

**Dated:** _____

**Attorney(s) for**

---

**PLEASE TAKE NOTICE:**

☐ **NOTICE OF ENTRY**

that the within is a *(certified) true copy of a*
duly entered in the office of the clerk of the within named court on

☐ **NOTICE OF SETTLEMENT**

that an order                                          of which the within is a true copy
will be presented for settlement to the HON.          one of the judges of the
within named Court, at
on                          at          **M.**

**Dated,**

Yours, etc.         LAW OFFICES OF
**SCOTT A. LUCAS**
ATTORNEY AT LAW
250 Park Avenue, 20th Floor
NEW YORK, NEW YORK 10177

Judgment entered by on JAN 2 2010

# Exhibit "7"

FILED: NEW YORK COUNTY CLERK 02/05/2016 02:13 PM
INDEX NO. 650611/2016
NYSCEF DOC. NO. 1
19-08455-rdd Doc 65-24 Filed 03/24/20 Entered 03/24/20 22:59:47 Exhibit TCF
Summons and Complaint Pg 2 of 15
RECEIVED NYSCEF: 02/05/2016

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

TCF EQUIPMENT FINANCE, a division of TCF
NATIONAL BANK f/k/a TCF EQUIPMENT
FINANCE, INC.,

Index No.

                                        Plaintiff

                                                    **SUMMONS**

vs.

G.E.B. MEDICAL MANAGEMENT, INC. and
BRUCE PASWALL, individually,

                                        Defendants.

Plaintiff designates New York County as the place of trial.

Basis of venue: Business address of the Defendants.

Plaintiff's principal place of business is located at 1111 West San Marnan Drive,

Waterloo, IA 50701.

TO THE ABOVE-NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a
copy of your Answer, or, if the Complaint is not served with this Summons, to serve a notice of
appearance, on the Plaintiff's attorney within twenty (20) days after the service of this Summons,
exclusive of the day of service (or within thirty (30) days after the service is complete if this
Summons is not personally delivered to you within the State of New York); and in case of your
failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the Complaint.

Dated: February 5, 2016

LAW OFFICES OF CHARLES A. GRUEN
Attorneys for Plaintiff
44 Court Street, Suite 1212
Brooklyn, New York 11201
                        and
381 Broadway, Suite 300
Westwood, New Jersey 07675
(201) 342-1212

Defendants Addresses:
G.E.B. Medical Management, Inc
c/o Bruce Paswall, President
20 East 46th Street, 7th Floor
New York, New York 10017

Mr. Bruce Paswall
13 Logging Road
Kotonah, New York 10536

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

TCF EQUIPMENT FINANCE, a division of TCF
NATIONAL BANK f/k/a TCF EQUIPMENT
FINANCE, INC.,

Index No.

                                        Plaintiff

CIVIL ACTION

            vs.

**COMPLAINT**

G.E.B. MEDICAL MANAGEMENT, INC. and
BRUCE PASWALL, individually,

                                        Defendants.

Plaintiff, TCF EQUIPMENT FINANCE, a division of TCF NATIONAL BANK f/k/a

TCF EQUIPMENT FINANCE, INC., with a principal place of business located at 1111 West San

Marnan Drive, Waterloo, IA 50704, by way of Complaint against the Defendants, says:

<u>FIRST CAUSE OF ACTION</u>

FIRST:  At all times set forth herein, Plaintiff, TCF EQUIPMENT FINANCE, a division

of TCF NATIONAL BANK f/k/a TCF EQUIPMENT FINANCE, INC. (hereinafter "TCF"), was

duly authorized and licensed to transact business in the State of New York, and was engaged in

the business of financing and leasing various types of equipment.

SECOND:  On or about June 26, 2014, Plaintiff entered into and executed Equipment

Lease number 008-0659482-100 with the Defendant, G.E.B. MEDICAL MANAGEMENT, INC.

A true copy of the Equipment Lease is attached hereto and made a part hereof as Exhibit "A".

THIRD:  Pursuant to the terms of the aforesaid Equipment Lease, the Defendant, G.E.B.

MEDICAL MANAGEMENT, INC., agreed to lease the equipment which forms the subject

matter of the Equipment Lease from the Plaintiff for a term of forty-eight (48) months, based upon a Variable Payment Schedule.  See page 4 of Exhibit "A".

FOURTH:  In order to induce Plaintiff to enter into Equipment Lease number 008-0659482-100 with the Defendant, G.E.B. MEDICAL MANAGEMENT, INC., the Defendant, BRUCE PASWALL, personally and unconditionally guaranteed all of the obligations of Defendant, G.E.B. MEDICAL MANAGEMENT, INC., to Plaintiff under the Equipment Lease. The Personal Guaranty of the Defendant, BRUCE PASWALL, is at the bottom of page 2 of the Equipment Lease, which is attached hereto as Exhibit "A".

FIFTH:  Thereafter, Plaintiff proceeded to perform, and did duly perform, all of the conditions of the Equipment Lease on its part to be performed, and said performance was duly accepted by the Defendants, G.E.B. MEDICAL MANAGEMENT, INC. and BRUCE PASWALL, individually.

SIXTH:  The Defendants have defaulted under the terms of the said Equipment Lease and Personal Guaranty, by failing and refusing to pay the Plaintiff, TCF, the monthly installments due, and have otherwise failed to perform their obligations pursuant to the Equipment Lease and are indebted to Plaintiff in the principal sum of ONE HUNDRED SIXTY-ONE THOUSAND SIX HUNDRED SEVENTY-THREE and 37/100 DOLLARS ($161,673.37).

SEVENTH:  Pursuant to the terms of the Equipment Lease, and as a result of the Defendants' default thereunder, Plaintiff is entitled to immediate return of the equipment, or payment in its residual value, which is TWENTY-TWO THOUSAND SIX HUNDRED THIRTY-EIGHT and 57/100 DOLLARS ($22,638.57).  Pursuant to the terms of the Equipment Lease, Plaintiff is entitled to late charges and sales tax at 8.875%.  Late charges have accrued to date in the sum of ONE THOUSAND THREE HUNDRED FIFTY-EIGHT and 48/100

DOLLARS ($1,358.48), and continue to accrue.  Sales taxes have accrued in the amount of

THIRTEEN THOUSAND THIRTY-FIVE and 86/100 DOLLARS ($13,035.86).

EIGHTH:  Plaintiff has demanded payment of the outstanding amounts due and owing

from the Defendants, but payment has not been made.

NINTH:  Based upon the foregoing, giving the Defendant credit for all payments made,

the Defendants are indebted to Plaintiff in the sum of ONE HUNDRED NINETY-EIGHT

THOUSAND SEVEN HUNDRED SIX and 28/100 DOLLARS ($198,706.28), together with

lawful interest, costs of suit and reasonable attorneys' fees.

WHEREFORE, Plaintiff, TCF EQUIPMENT FINANCE, a division of TCF NATIONAL

BANK f/k/a TCF EQUIPMENT FINANCE, INC., demands judgment on the FIRST CAUSE OF

ACTION against the Defendants, G.E.B. MEDICAL MANAGEMENT, INC. and BRUCE

PASWALL, individually, for damages, immediate return of the subject equipment, or payment

of its residual value, late charges, taxes, reasonable attorneys' fees, interest from the date of

default, costs of suit and for such other relief as the Court may deem appropriate.


SECOND CAUSE OF ACTION

TENTH:  Plaintiff repeats and realleges each and every allegation contained within the

FIRST CAUSE OF ACTION as if same were set forth at length herein.

ELEVENTH:  The Defendants are indebted to Plaintiff on a certain book account.

TWELFTH:  Payment has been demanded from Defendants by Plaintiff but payment has

not been made.

WHEREFORE, Plaintiff, TCF EQUIPMENT FINANCE, a division of TCF NATIONAL

BANK f/k/a TCF EQUIPMENT FINANCE, INC., demands judgment on the SECOND CAUSE

OF ACTION against the Defendants, G.E.B. MEDICAL MANAGEMENT, INC. and BRUCE

PASWALL, individually, for damages, immediate return of the subject equipment, or payment

of its residual value, late charges, taxes, reasonable attorneys' fees, interest from the date of

default, costs of suit and for such other relief as the Court may deem appropriate.


<u>THIRD CAUSE OF ACTION</u>

THIRTEENTH:  Plaintiff repeats and realleges each and every allegation contained

within the FIRST and SECOND CAUSES OF ACTION as if same were set forth at length

herein.

FOURTEENTH:  Plaintiff sues the Defendants for equipment leased to the Defendants

upon the promise of the Defendants to pay therefor.

FIFTEENTH:  Payment has been demanded and has not been made.

WHEREFORE, Plaintiff, TCF EQUIPMENT FINANCE, a division of TCF NATIONAL

BANK f/k/a TCF EQUIPMENT FINANCE, INC., demands judgment on the THIRD CAUSE

OF ACTION against the Defendants, G.E.B. MEDICAL MANAGEMENT, INC. and BRUCE

PASWALL, individually, for damages, immediate return of the subject equipment, or payment

of its residual value, late charges, taxes, reasonable attorneys' fees, interest from the date of

default, costs of suit and for such other relief as the Court may deem appropriate.


<u>FOURTH CAUSE OF ACTION</u>

SIXTEENTH:  Plaintiff repeats and realleges each and every allegation contained within

the FIRST, SECOND and THIRD CAUSES OF ACTION as if same were set forth at length

herein.

SEVENTEENTH:  By accepting the benefits of the financing supplied by the Plaintiff without remitting payment therefor, the Defendants have been unjustly enriched at the expense of the Plaintiff.

WHEREFORE, Plaintiff, TCF EQUIPMENT FINANCE, a division of TCF NATIONAL BANK f/k/a TCF EQUIPMENT FINANCE, INC., demands judgment on the FOURTH CAUSE OF ACTION against the Defendants, G.E.B. MEDICAL MANAGEMENT, INC. and BRUCE PASWALL, individually, for damages, immediate return of the subject equipment, or payment of its residual value, late charges, taxes, reasonable attorneys' fees, interest from the date of default, costs of suit and for such other relief as the Court may deem appropriate.

<u>FIFTH CAUSE OF ACTION</u>

EIGHTEENTH:  Plaintiff repeats and realleges each and every allegation contained within the FIRST, SECOND, THIRD and FOURTH CAUSES OF ACTION as if same were set forth at length herein.

NINETEENTH:  Pursuant to the specific terms and conditions of the above-referenced Equipment Lease among the parties, Plaintiff, TCF, holds title to the equipment which forms the subject matter of the Equipment Lease, and as a direct and proximate result of the Defendants' default thereunder, Plaintiff is entitled to immediate possession thereof.

TWENTIETH:  At all relevant times, the Defendants have failed and/or refused to release the equipment to Plaintiff.

WHEREFORE, Plaintiff, TCF, demands judgment on the FIFTH CAUSE OF ACTION against the Defendants, G.E.B. MEDICAL MANAGEMENT, INC. and BRUCE PASWALL, individually, for damages for damages for wrongful detention of property, immediate return or

payment of the residual value of the equipment, late charges, taxes, reasonable attorneys' fees, interest from the date of default, costs of suit and for such other relief as the Court may deem appropriate.

LAW OFFICES OF CHARLES A. GRUEN
Attorneys for Plaintiff
44 Court Street, Suite 1212
Brooklyn, New York 11201

By: _____

CHARLES A. GRUEN

Dated:  February 5, 2016

19-08713-rdd Doc 56-4 Filed 03/24/20 Entered 03/24/20 15:59:47 Exhibit TCF
Case 1:20-cv-05924-KMK Document 25-4 Filed 03/24/2023 Page 122 of 208
Summons and Complaint Pg 9 of 15

# EXHIBIT "A"



**Equipment Lease**

| The "Lease": Equipment Lease Number 008-0659482-100 dated June 12, 2014 | | | | |
|---|---|---|---|---|
| "Lessee" | | | | |
| G.E.B. Medical Management, Inc., 20 East 46th Street, 7th Floor, New York, NY 10017 | | | | |
| "Lessor" | | | | |
| TCF Equipment Finance, Inc., 1111 West San Marnan Dr, Suite A2 West, Waterloo, IA 50701-8926 | | | | |

SUMMARY OF TERM AND RENTAL PAYMENTS:

| Commencement Date | Initial Term | Each Rent Payment | Advance Rent Payment(s) | Mandatory Purchase Price |
|---|---|---|---|---|
| 10/9/14 | 48 Months | See Payment Schedule (plus applicable taxes except up-front sales tax if financed by Lessor) | $0.00 For Month(s): First | FMV |

EQUIPMENT, PERSONAL PROPERTY, SERVICES AND/OR SOFTWARE:

| Description (including features):Smith&Nephew - (1) Camera System, 560P, NTSC/Pal, US, (4) Cannula Sys, 6.0 HIFLO, ROT, DIAG as listed on Quotation Number 20341719 dated 02/19/2014 &(1) T-MAX System as listed on Quotation Nubmer 20341765 dated 02/19/2014 together with all attachments and accessories thereto | Location :20 East 46th Street, 7th Floor, New York, NY, 10017 |
|---|---|

1. **LEASE.** Lessee agrees to lease from Lessor and, subject to satisfaction of all Lessor's requirements and no material adverse change in Lessee's condition or business. Lessor agrees to lease to Lessee the personal property, services and/or software described above and/or on any exhibit or schedule hereto (with all replacements, repairs and additions thereto, collectively the "Equipment", and each item, an "Item"), on these terms and conditions.

2. **TERM.** The term of this Lease begins when Lessee accepts any Item and continues for the number of consecutive months from the Commencement Date shown above (the "Initial Term") unless earlier canceled, terminated or extended as provided herein. Upon delivery Lessee shall inspect and, if acceptable, accept the Equipment. At Lessor's option, such acceptance shall be evidenced by either: (a) Lessee's delivery of a signed delivery and acceptance certificate to Lessor; or (b) Lessee's verbal verification to Lessor that the Equipment has been delivered and is acceptable. Lessee authorizes Lessor to fill in the Commencement Date, based on the date Lessee accepts the final Item ("Acceptance Date"). If the Acceptance Date is on or between the 1st and 15th of a month, the Commencement Date is the 15th of such month; if the Acceptance Date is on or between the 16th and the last day of a month, the Commencement Date is the 1st of the following month.

3. **PAYMENTS.** Lessee shall pay to Lessor: (a) any Advance Rent Payment(s) shown above, on the date Lessee signs this Lease; (b) the monthly Rent Payment shown above payable in advance on the Commencement Date and on the same day of each subsequent month for the Initial Term and any renewal term; (c) interim rent from the Acceptance Date to the Commencement Date, at a daily rate equal to 1/30 of the Rent Payment, payable on the Commencement Date. The Rent Payment is based on the specifications for the Equipment when this Lease was prepared and an estimate of the sales tax payable in connection herewith and, if such items change, the Rent Payments will be adjusted so that Lessor's yield is maintained. Lessee agrees adjustments to Rent Payments of 10% or less may be done by written notice from Lessor to Lessee. Lessor may charge a late fee of up to 10% of any amount not paid by Lessee within 10 days of its due date hereunder. Lessor may apply payments to Lessee's obligations in such order as it deems appropriate.

4. **TAXES AND FEES.** Lessee shall pay all governmental fees, assessments and taxes, and any penalties or interest thereon, assessed on or related to the rent, this Lease or the Equipment, when invoiced by Lessor except Lessee shall file and pay directly all personal property taxes due on the Equipment. In addition, Lessee agrees to pay: (a) all costs and charges relating to the delivery, installation, possession, use, lease, return, repossession, storage and transfer of any Item; and (b) a fee, in an amount determined by Lessor, for any check or automatic payment request returned due to insufficient funds or stop payment. If Lessor, in its discretion, pays any such amount, Lessee shall reimburse Lessor therefor, with interest, at 18% per annum, plus Lessor's administrative and other costs of paying and invoicing such amounts. All fees, charges and interest hereunder are payable on demand and will in no event exceed the highest rate or amount allowed by applicable law.

5. **END OF LEASE.** So long as this Lease has not been canceled or terminated early and no Event of Default exists, upon expiration of the Initial Term, Lessee must purchase all, but not less than all, of the Equipment for the Mandatory Purchase Price shown above, plus any taxes arising on the sale of the Equipment. Upon Lessor's receipt of the purchase price and Lessee's request, Lessor will deliver a bill of sale "WHERE IS, AS IS" WITHOUT ANY WARRANTY." If any of the Equipment is licensed software, Lessor does not have title to this software and cannot convey any interest in the software to Lessee or extend the license beyond any stated license term.

6. **USE; REPAIRS.** Lessee shall use the Equipment for its designed purposes, in compliance with all laws, regulations and ordinances. Lessee will maintain the Equipment, at its expense, in good repair and working order and furnish all needed parts and services. In the event that this Lease is terminated early by Lessor, Lessee shall, at its sole expense and risk, return the Equipment to any location in the continental United States designated by Lessor. The Equipment shall be in the same condition as when received by Lessee, reasonable wear and tear excepted, shall be free and clear of any liens, shall comply with all applicable laws and regulations and shall include all manuals, specifications, repair and maintenance records and the like.

7. **DISCLAIMERS.** LESSOR MAKES NO WARRANTIES, EXPRESS OR IMPLIED, AS TO THE CONDITION, MERCHANTABILITY OR FITNESS FOR A

PARTICULAR PURPOSE OF, OR ANY OTHER MATTER CONCERNING, THE EQUIPMENT, AND EXPRESSLY DISCLAIMS ANY SUCH WARRANTIES AND ANY OTHER WARRANTIES IMPLIED BY LAW. LESSEE HEREBY WAIVES ALL CLAIMS AGAINST LESSOR FOR ANY LOSS, DAMAGE OR EXPENSE CAUSED BY THE EQUIPMENT, OR RELATING TO THE DELIVERY, USE, INSTALLATION, MAINTENANCE OR SERVICING THE EQUIPMENT. AS TO LESSOR, LESSEE LEASES THE EQUIPMENT AS-IS, WITH ALL FAULTS, WITHOUT WARRANTY OF ANY KIND. Lessee acknowledges that: Lessor is not a dealer or manufacturer of equipment of any kind; is not the seller of the Equipment; each Item is of a type, size, design and capacity selected solely by Lessee; and this Lease is a "finance lease" under UCC Article 2A or a secured transaction under UCC Article 9. To the extent permitted by law, Lessee unconditionally and irrevocably waives any and all rights and remedies against Lessor at law or in equity (including without limitation any rights and remedies granted a lessee under Article 2A of the UCC and/or the right to reject any Equipment or repudiate this Lease.

8. **INDEMNITY.** Lessee shall indemnify and hold Lessor harmless from all claims, actions, damages, legal expenses (including reasonable attorneys' fees), obligations, liabilities, liens, fines, penalties or other amounts arising out of the manufacture, purchase, lease, use, condition, possession, ownership, operation or return of any Equipment, or in connection with latent or other defects, or any claim for patent, trademark or copyright infringement, including any strict liability claims, whether arising by operation of law, or with or without Lessee's fault or negligence, and as a result of any lien, encumbrance or claim made on the Equipment by anyone, including Lessee's employees and agents, imposed or incurred by or asserted against Lessor, its successors or assigns. At Lessor's option, Lessee shall assume full responsibility for the defense of any indemnified claim.

9. **LOSS.** Lessee shall bear the entire risk of loss, theft, damage or destruction of the Equipment ("Loss"); and no Loss shall relieve Lessee of any rent payment or other obligation hereunder. If Lessor determines that any Item has suffered irreparable Loss, Lessee will pay Lessor the amount determined specified in Section 12(b) below.

10. **INSURANCE.** Lessee shall pay for and maintain, and furnish Lessor a certificate evidencing, insurance with respect to the Equipment, of such types, in such limits and as otherwise set forth in the "Insurance Addendum" that is being executed in connection with this Lease and which forms a part of this Lease.

11. **DEFAULT.** Each of the following is an "Event of Default": (a) Lessee fails to pay any rent or other payment hereunder when due; (b) Lessee fails to comply with any other covenant or agreement hereunder and the failure continues for 10 days after notice by Lessor; (c) Lessee defaults under any other obligation to Lessor; (d) Lessee or any guarantor of this Lease ("Guarantor"), or any partner of Lessee ("Partner") if Lessee is a partnership, ceases doing business as a going concern or makes an assignment for the benefit of creditors; (e) Lessee or any Guarantor or Partner admits in writing an inability to pay debts as they come due, files or has filed against it a petition under the federal Bankruptcy Code or any other present or future federal or state bankruptcy or insolvency law, or a trustee, receiver or liquidator is appointed for it or for all or a substantial part of its assets. (f) any individual Lessee, Guarantor or Partner dies; (g) acceleration or demand for full payment of any material indebtedness of Lessee or any Guarantor; (h) Lessee or any Guarantor consolidates with, merges into or transfers all or substantially all its assets to another entity or person; or (i) Lessee fails to occupy the premises where any Item is located, or the mortgagee or owner of such premises asserts the right to take possession thereof or exercise eviction or other remedies under the mortgage or lease of such premises.

12. **REMEDIES.** Upon or after an Event of Default, Lessor may exercise one or more of the following remedies: (a) on written notice to Lessee, cancel or terminate this Lease; (b) declare immediately due and payable and recover from Lessee, as liquidated damages and not as a penalty, the sum of all rent and other amounts then due, plus all rent and other payments for the remaining Lease term, discounted from their respective due dates at the rate of 3% per annum, plus the greatest of (i) the Mandatory Purchase Price; or (ii) the Equipment's anticipated residual value at the Commencement Date, determined by Lessor's books; (c) enforce performance of, and/or recover damages for the breach of, Lessee's covenants; (d) repossess the Equipment, without notice or legal process; (e) direct any vendor, servicer or licensor to terminate or disable Lessee's use of the Equipment and all software, services and

Healthcare_LeaseAgreement v 03.22.2012   249923 6/25/2014 10:49 AM

Page 1 of 2

TA000120

support related thereto; (f) exercise any other right or remedy available by law or agreement. Upon repossession, Lessor may retain the Equipment in full satisfaction of Lessee's obligations or may use reasonable efforts to sell or lease the Equipment in a manner and on terms it deems appropriate. Lessor will be entitled to any surplus and Lessee will be liable for any deficiency. Lessor may recover legal fees and other expenses incurred due to an Event of Default or the exercise of any remedy, including costs of repossession, repair, storage, transportation and disposition of the Equipment. No remedy shall be exclusive, and each shall be cumulative.

13.    ASSIGNMENT.   Without Lessor's prior written consent, Lessee will not sell, assign, sublet, pledge or otherwise encumber or permit a lien arising through Lessee to exist against any interest in this Lease or the Equipment. Lessor may assign its interest in this Lease and sell or grant a security interest in all or any part of the Equipment without notice to or consent of Lessee. Lessee agrees not to assert against any assignee of Lessor any claim or defense Lessee may have against Lessor.

14.    NON-CANCELABLE, UNCONDITIONAL OBLIGATION.   This Lease cannot be canceled or terminated except as expressly provided herein. This Lease is a net lease; Lessee agrees that its obligation to pay rent and other amounts payable hereunder is absolute and unconditional and shall not be subject to any abatement, reduction, setoff or defense. If this Lease provides for a Mandatory Purchase or is otherwise deemed to be intended as security, (i) Lessee grants Lessor a security interest in the Equipment to secure its obligations under this Lease and all present and future indebtedness to Lessor; (ii) this Lease shall be construed so that interest, the applicable interest rate and other charges shall not exceed that allowed by applicable law, and any payment that otherwise would be deemed unlawful will be applied first to prepay principal and then refunded to Lessee; (iii) if Lessee is an individual and the principal amount hereof is $100,000 or more, this Lease is made under Minn. Stat. Sec. 334.01; and (iv) this Lease is made under Minn. Stat. Sec. 334.022 (if Lessee is an "organization" as defined therein. At its expense, Lessee shall keep the Equipment free of all claims and liens except those arising under this Lease. Lessee authorizes Lessor to file such financing statements, title certificates and instruments as Lessor deems necessary to protect Lessor's interests in the Equipment, without Lessee's signature and, if such signature is needed, Lessee appoints Lessor as Lessee's attorney-in-fact to sign such items in Lessee's name. Lessee authorizes Lessor to make necessary corrections to any serial numbers or other Equipment identification when known. Lessee's legal name is shown above; Lessee will not change its name or state of organization (if a legal entity) or principal residence (if an individual) without prior written notice to Lessor. Lessor may inspect the Equipment and Lessee's records related thereto at any time during business hours. All representations, warranties and indemnities of Lessee related to this Lease shall survive expiration, cancelation or termination of this Lease.

15.    GOVERNING LAW; JURY TRIAL WAIVER.   This Lease shall be governed by the laws of Minnesota (excluding conflicts laws); provided that any interest and finance charges hereunder shall be governed by federal law and, to the extent applicable, substantive laws of Minnesota. Lessee consents to jurisdiction and venue of the federal or state courts in Minnesota for resolution of all disputes regarding this Lease. Lessee agrees that Lessor may select an alternative forum, including arbitration or mediation, to adjudicate any dispute arising out of this Lease.

EACH PARTY, AFTER CONSULTING (OR HAVING HAD AN OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS CHOICE, KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THIS LEASE.

16.    MISCELLANEOUS.   This Lease is the entire agreement between Lessee and Lessor with respect to the subject matter hereof; there is no other oral or written agreement or understanding. This Lease and any related documents may be delivered and/or reproduced by facsimile, optical scanning or other electronic means ('e-copy") and such e-copy or a printed version thereof shall be enforceable as an original and admissible as such in any court or other proceeding, provided that there shall be only one original of this Lease and it shall bear the original signature of Lessor and be marked "Original." To the extent that this Lease constitutes chattel paper (as that term is defined by the Uniform Commercial Code), a security or ownership interest intended to be created through the transfer and possession of this Lease can be done only by the transfer of such "Original." If Lessor permits Lessee to deliver this Lease or other document to Lessor via facsimile or other electronic means, Lessee shall deliver to Lessor, promptly on request, such document bearing Lessee's original signature; provided that neither delivery nor failure to deliver the document bearing Lessee's original signature shall limit or modify the representations and agreements above. Except as set forth herein, this Lease may not be amended or modified except by a writing manually signed by the parties. Lessee shall pay Lessor's fees and expenses incurred in connection with any amendment, waiver, cancellation or termination of this Lease or any related document, financing statement, or instrument, including but not limited to filing and recording fees. Lessee may from time to time make telephonic requests for, and hereby authorizes, Lessor or its agents to make and draw checks or drafts on an account to be designated by Lessee, payable to Lessor or order, to pay rent and other amounts due hereunder, plus Lessor's standard per item fee for making and drawing such item. Lessor may rely on such request by any person it believes has authority to make such request on Lessee's behalf. This Lease is binding on and inures to the benefit of the parties hereto, their permitted successors and assigns. Any written notice hereunder shall be deemed given when delivered personally, sent via facsimile (transmission confirmed) or deposited in the U. S. mail, addressed to recipient at its address shown above or such other address as may be substituted therefor by written notice. If more than one Lessee is named herein, the obligations of each shall be joint and several. Without limiting Lessor's right to make legally permitted disclosures, Lessee agrees that Lessor may disclose to equipment suppliers and manufacturers, and prospective assignees of Lessor, financial, credit, account and other information about Lessee. Lessee hereby authorizes any person to release to Lessor credit, financial and account information relating to Lessee. Lessee authorizes, and represents that all Lessee's principals have authorized, Lessor to obtain such credit bureau reports and make such other credit inquiries with respect to Lessee or such principals as Lessor deems appropriate throughout the term of this Agreement; on written request, Lessor will identify any reporting agency used for such reports. Lessee warrants and agrees that the Equipment will be used for business purposes only, and not for personal, family or household purposes.  Our institution complies with Section 326 of the USA PATRIOT Act.  This law mandates that we verify certain information about you while processing your account application.

**EVERY TERM IS AGREED TO AND ACCEPTED BY**

Lessor:  TCF Equipment Finance, Inc.

Lessee:  G.E.B. Medical Management, Inc.        By: _Megan Bell_          Operations - T.C.

                                                By: _____        Bruce Paswall, President

PERSONAL GUARANTY.  To induce Lessor to enter into the Lease, the undersigned ('you'), jointly and severally, unconditionally personally guarantees full and prompt payment and performance of all Lessee's present and future obligations under the Lease and any supplements, addenda or other agreements given in connection with the Lease, and all extensions, renewals, refinances, amendments, modifications, restatements thereto. You agree that Lessor may make other arrangements including compromise or settlement with Lessee and you waive all defenses and notice of any changes and will remain responsible for the payment and performance of all obligations under the Lease. Lessor does not have to notify you of any Lessee default or any other matter that may affect your guaranty. If Lessee defaults, you will immediately pay and perform all obligations under the Lease, in accordance with the remedies provision of the Lease. You waive any right to revoke or terminate this guaranty. This guaranty shall continue in effect or be reinstated if any payment received by Lessor is set aside, recovered or returned for any reason (whether or not in a bankruptcy proceeding), and the guaranteed obligation shall be deemed to have continued in existence notwithstanding any application of such payment, as though payment had not been made or received. If Lessor must proceed legally to enforce this guaranty, you expressly consent to the jurisdiction of the courts set out in the Lease and agree to pay all costs, including attorneys' fees, incurred to enforce this guaranty. AFTER CONSULTING (OR HAVING HAD AN OPPORTUNITY TO CONSULT) WITH COUNSEL OF YOUR CHOICE, YOU KNOWINGLY AND VOLUNTARILY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THIS GUARANTY, INCLUDING ANY ACTION TO ENFORCE THIS GUARANTY OR ANY RELATED AGREEMENTS. Lessor need not proceed first against Lessee, the Equipment or any other obligor before enforcing this guaranty. You waive all defenses which may be available by virtue of any valuation, stay, moratorium law or other similar law now or hereafter in effect, any right to require the marshaling of assets, and all defenses available to a surety, guarantor or accommodation co-obligor. By signing this guaranty, you authorize Lessor to obtain your personal credit bureau reports for credit and collection purposes. This guaranty shall be binding on you, and your heirs and representatives, and shall inure to the benefit of Lessor and its successors and assigns.

Personal Guarantor (no title) Bruce Paswall  X _____         An Individual  Dated X ___ 6-26-14

Healthcare_LeaseAgreement v 08.23.2012 249923 6/25/2014 10:49 AM                                                       Page 2 of 2



**Correction Notification**

| The "Contract": Lease Number 008-0659482-100 dated June 12, 2014 |
|---|
| "Lessee" |
| G.E.B. Medical Management, Inc., 20 East 46th Street, 7th Floor, New York, NY 10017 |
| "Lessor" |
| TCF Equipment Finance, a division of TCF National Bank, 1111 West San Marnan Dr, Suite A2 West, Waterloo, IA 50701-8926 |

This letter will serve as Lessor's Notification to Lessee that the following correction(s) have been made to the above-referenced Contract, and all Schedules and Addenda thereto and all related documents (collectively the "Contract Documents"):

Pursuant to the authority granted by Lessee to Lessor in the Lease, Lessor hereby gives Lessee written notification that the following adjustments have been made to the Lease: The "Variable Payment Schedule" is amended in its entirety and revised to read the following because the final invoices came in higher.

5 at $0.00
1 at $4,528.25
2 at $0.00
1 at $4,528.25
2 at $0.00
1 at $4,528.25
2 at $0.00
1 at $9,056.51
2 at $0.00
1 at $9,056.51
2 at $0.00
1 at $9,056.51
2 at $0.00
1 at $9,056.51
2 at $0.00
1 at $13,584.76
2 at $0.00
1 at $13,584.76
2 at $0.00
1 at $13,584.76
2 at $0.00
1 at $13,584.76
2 at $0.00
1 at $18,113.02
2 at $0.00
1 at $18,113.02
2 at $0.00
1 at $18,113.02
2 at $0.00
1 at $18,113.02

If you have any objections to the foregoing corrections or are aware of any other nonmaterial errors that exist in your Contract Documents, please notify us immediately.

All capitalized terms used herein and not defined shall have the meanings set forth or referred to in the Contract or any Schedule thereto. Except for the correction(s) specifically set forth herein, all of the terms and conditions of the Contract Documents shall remain in full force and effect. To the extent that the provisions of this notification conflict with any provisions contained in any Contract Document, the provisions of this notification shall control.

Thank You,

Meghan Bell

Meghan Bell
TCF Equipment Finance, a division of TCF National Bank

CorrectionNotification ver. 06.19.2014 249923 b 10/9/2014 10:01 AM



# VARIABLE PAYMENT SCHEDULE

| The "Lease": Equipment Lease Number 008-0659482-100 Dated June 12, 2014 |
| --- |
| "Lessee" |
| G.E.B. Medical Management, Inc., 20 East 46th Street, 7th Floor, New York, NY 10017 |
| "Lessor" |
| TCF Equipment Finance, Inc., 1111 West San Marnan Dr, Suite A2 West, Waterloo, IA 50701-8926 |

This Variable Payment Schedule is attached to and made a part of the Lease referenced above, between the above-referenced Lessor and the above-referenced Lessee. All capitalized terms not otherwise defined in this Variable Payment Schedule shall have the meanings assigned in the Lease.

5 at $0.00
1 at $4,521.36
2 at $0.00
1 at $4,521.36
2 at $0.00
1 at $4,521.36
2 at $0.00
1 at $9,042.72
2 at $0.00
1 at $9,042.72
2 at $0.00
1 at $9,042.72
2 at $0.00
1 at $9,042.72
2 at $0.00
1 at $13,564.08
2 at $0.00
1 at $13,564.08
2 at $0.00
1 at $13,564.08
2 at $0.00
1 at $13,564.08
2 at $0.00
1 at $18,085.43
2 at $0.00
1 at $18,085.43
2 at $0.00
1 at $18,085.43
2 at $0.00
1 at $18,085.43
2 at $0.00
1 at $18,085.43

This variable payment schedule is hereby verified as correct by the undersigned Lessee who acknowledges receipt thereof. The undersigned Lessee agrees that Lessor may accept a facsimile copy of this document bearing facsimile signatures, which shall be deemed an original for all purposes.

Lessee:   G.E.B. Medical Management, Inc.      By:                                        Bruce Paswall, President

From:                                                                        10/07/2014 13:47    #383 P:001/001



**Delivery and Acceptance**

| "Lessee" | |
|---|---|
| G.E.B. Medical Management, Inc., 20 East 46th Street, 7th Floor, New York, NY 10017 | |
| "Lessor" | |
| TCF Equipment Finance, Inc., 1111 West San Marnan Dr, Suite A2 West, Waterloo, IA 50701-8926 | |

Delivery and Acceptance agreement attached to and made a part of Lease 008-0659482-100 dated June 12, 2014 (the "Lease").

This Certificate relates to the Equipment (the "Equipment") that is described in the Lease.

Pursuant to the Lease, Lessee acknowledges that Lessor has acquired the Equipment in connection with the Lease and Lessee has either received a copy of the purchase agreement with the vendor of the Equipment on or before signing the Lease or has approved such purchase. Lessee hereby represents, warrants and certifies that (i) all of the Equipment has been delivered to Lessee at the Equipment Location set forth in the Lease and has been installed, tested and inspected by Lessee or duly authorized representatives of Lessee, (ii) the Equipment Description set forth in the Lease is complete and correct, (iii) the Equipment, together with any supporting documentation, is exactly what Lessee ordered, is in good working order, is satisfactory in all respects and has been accepted by Lessee under the Lease as of the Acceptance Date set forth below, and (iv) there has been no adverse change in the business or financial condition of Lessee or any guarantor of the Lease since the day the most recent financial statement of Lessee or any guarantor was submitted to Lessor. If Lessee has made a deposit to the Equipment vendor(s), by signing this Certificate, Lessee hereby transfers all of Lessee's right, title and interest in and to the Equipment to Lessor, except to the extent set forth in the Lease, whether or not Lessee has been reimbursed for the deposit(s).

IMPORTANT: LESSEE SHOULD SIGN THIS CERTIFICATE ONLY AFTER LESSEE HAS RECEIVED AND IS COMPLETELY SATISFIED WITH THE EQUIPMENT. BY SIGNING THIS CERTIFICATE, LESSEE (1) IS IRREVOCABLY ACCEPTING THE EQUIPMENT, (2) BECOMES ABSOLUTELY AND IRREVOCABLY OBLIGATED TO LESSOR UNDER THE LEASE, AND (3) MAY NOT THEREAFTER REJECT THE EQUIPMENT, CANCEL OR TERMINATE THE LEASE OR DENY ANY STATEMENT MADE IN THIS CERTIFICATE, FOR ANY REASON WHATSOEVER

Acceptance Date: 10/7/2014

Lessee:   G.E.B. Medical Management, Inc.     By: _____     Title: CEO/PRES

Printed Name: Bruce Paswall

**Please Complete and return this document by Fax to 800-741-8079 upon delivery and acceptance of the financed Equipment.**

Delivery_Acceptance ver. 03/04/2011 249923 S 6/12/2014 8:49 AM



**Fair Market Value Purchase Option Addendum**

| | |
|---|---|
| The "Lease": Equipment Lease Number 008-0659482-100 Dated June 12, 2014 | |
| "Lessee" | |
| G.E.B. Medical Management, Inc., 20 East 46th Street, 7th Floor, New York, NY 10017 | |
| "Lessor" | |
| TCF Equipment Finance, Inc., 1111 West San Marnan Dr, Suite A2 West, Waterloo, IA 50701-8926 | |

This Fair Market Value Purchase Option Addendum (this "Addendum"), dated as of June 25, 2014, is by and between the above-named Lessor and the above-named Lessee, and is attached to and made a part of the above-referenced Lease between Lessor and Lessee. Pursuant to this Addendum, the Mandatory Purchase Price shown on the face of the lease and Section 5 of the Lease are hereby deleted and the following is substituted in place of such provisions:

1. So long as this Lease has not been canceled or terminated early and no Event of Default exists, upon expiration of the Initial Term ("Lease End"), Lessee may purchase all, but not less than all, of the Equipment for the fair market value of the Equipment, as mutually determined by Lessor and Lessee, plus all sales and use taxes arising on the sale of the Equipment. To exercise the foregoing purchase option, Lessee must give written notice thereof to Lessor at least 90 days and no more than 120 days prior to Lease End. If Lessee fails to give such notice, or if the parties cannot agree on the Fair Market Value of the Equipment by 60 days before Lease End, then the purchase option shall lapse. If the purchase option lapses, then at least 30 days before Lease End or the end of any renewal term, Lessee must give Lessor notice of its intent to return the Equipment and request return location instructions and all Equipment shall be returned in accordance with the provisions of section 4 below. If Lessee fails to give such notice, or gives notice but fails to return the Equipment in accordance with Section 4 below, this Lease will automatically renew, at the same rental and other terms set forth in this Lease, for additional successive noncancelable 30-day terms after the Initial Term until timely written notice of return and proper return of the Equipment is made.

2. If Lessee gives timely notice of election to purchase the Equipment as provided in paragraph 1 and fails to timely pay the purchase price, then Lessor may, in its sole discretion, by written notice to Lessee (a) treat the Equipment as purchased and enforce payment of the purchase price, or (b) declare a failure to meet the purchase conditions whereupon Lessee's interest in the Lease and Equipment shall be canceled automatically and Lessee shall return the Equipment in accordance with Section 4 below.

3. Upon Lessee's exercise of the purchase option and Lessor's receipt of the purchase price plus applicable sales and use tax and any rent or other amount owing under this Lease, the Equipment will be deemed transferred to Lessee at its then location and, on Lessee's request at such time, Lessor will deliver to Lessee a bill of sale for the Equipment, "WHERE IS, AS IS" WITHOUT ANY WARRANTY AS TO TITLE OR WITH RESPECT TO THE EQUIPMENT, EXPRESS OR IMPLIED. If any of the Equipment is licensed software, Lessor does not have title to this software and cannot convey any interest in the software to Lessee or extend the license beyond any stated license term.

4. In the event that Lessee is required to return the Equipment, then Lessee shall, at its sole expense and risk, in accordance with applicable industry standards, de-install, disassemble, pack, crate, insure and return the Equipment to any location in the continental United States designated by Lessor. The Equipment shall be in the same condition as when received by Lessee, reasonable wear and tear from normal, proper use excepted, shall be free and clear of any liens, shall comply with all applicable laws and regulations and shall include all manuals, specifications, repair and maintenance records and similar documents. Until properly returned, all Lease terms shall apply, including without limitation all Lessee's rent, insurance and maintenance obligations.

5. Section 4 of the Lease is hereby amended so as to provide that Lessor shall file all personal property tax returns and pay all such taxes when due and Lessee shall reimburse Lessor therefore pursuant to the terms set forth in Section 4.

**EVERY TERM IS AGREED TO AND ACCEPTED BY**

Lessor:   TCF Equipment Finance, Inc.              By: _____  Operations - T.C.

Lessee:   G.E.B. Medical Management, Inc.          By: _____  Bruce Paswall, President

(NOTE: Signature must be the same as on the Lease)

Waterloo/TCF_FMV/Addendum ver.03.12.12 249923  S  6/25/2014 9:59 AM

# Exhibit "8"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PRESENT: HONORABLE TANYA R. KENNEDY, J.S.C.

TCF EQUIPMENT FINANCE, a division of
TCF NATIONAL BANK f/k/a TCF
EQUIPMENT FINANCE, INC.,

Index No. 650611/2016

Plaintiff,

*CIVIL ACTION*

-*against*-

~~ORDER FOR~~ JUDGMENT

G.E.B. MEDICAL MANAGEMENT, INC. and
BRUCE PASWALL, Individually,

Defendants.

THIS MATTER having come before the Court by the Law Offices of Charles A. Gruen,

attorneys for the Plaintiff, TCF EQUIPMENT FINANCE, a division of TCF NATIONAL

BANK f/k/a TCF EQUIPMENT FINANCE, INC., by way of Motion for Summary Judgment

dated May 8, 2018, and the Court having entered a Decision and Order granting Summary

Judgment on October 31, 2018, and for good cause shown;

IT IS HEREBY ~~ORDERED AND~~ ADJUDGED that Plaintiff, TCF EQUIPMENT

FINANCE, a division of TCF NATIONAL BANK f/k/a TCF EQUIPMENT FINANCE, INC.,

with offices located at 1111 West San Marnan Drive, Suite A2 West, Waterloo, IA 50701,

recover of Defendants, G.E.B. MEDICAL MANAGEMENT, INC. and BRUCE PASWALL,

with offices located at 20 East 46th Street, 7th Floor, New York, New York 10017, jointly and

severally, the sum of $231,040.95, with interest from August 15, 2015, *in the amount of $69,900.96* and costs and

disbursements in the sum of $~~510.00~~ *805.00*, for a total sum of $~~231,550.95~~ *301,746.91*, and Plaintiff shall have

execution therefor.

**FILED**

Dated: ~~December~~ **DEC 2 4 2018**, 2018

**COUNTY CLERK'S OFFICE
NEW YORK**

ENTER:

_____

, CLERK

TA000127
1 of 3

SUPREME COURT OF THE STATE OF NEW YORK    Index No.: 650611/2016
COUNTY OF NEW YORK

TCF EQUIPMENT FINANCE, a Division of TCF National Bank f/k/a
TCF Equipment Finance, Inc.,

                                        *Plaintiff*                **Costs of Plaintiff**

                    *against*  ,

G.E.B. MEDICAL MANAGEMENT, INC. and BRUCE PASWALL,
individually,

                                  *Defendant(s)*

| COSTS | $ | | DISBURSEMENTS | $ | |
|---|---|---|---|---|---|
| Costs before note of issue CPLR §8201 subd. 1 | 200 | 00 | Fee for Index number CPLR §8018(a) | 210 | 00 |
| Costs after note of issue CPLR §8201 subd. 2 | 200 | 00 | Referee's fees CPLR §8301(a)(1), 8003(a) | | |
| Trial of issue CPLR §8201 subd. 3 | | | Commissioner's compensation CPLR §8301(a)(2) Clerk's fee, filing notice of pend. or attach CPLR §8021(a)(10) Entering and docketing Judgment CPLR §8301(a)(7), 8016 (a)(2) | | |
| Allowance by statute CPLR §8302 (a), (b) | | | Paid for searches CPLR §8301(a)(10) Affidavits and acknowledgments CPLR §8009 | | |
| Additional allowance CPLR §8302 (d) | | | Serving copy summons & complaint CPLR §8011(1)(7), 8301(d) Request for judicial intervention | 50 95 | 00 00 |
| Motion costs CPLR §8202 | | | Note of issue CPLR §8020(a) Paid referee's report CPLR §8301(a)(12) | | |
| Appeal to Appellate Term CPLR §8203 (b) | | | Certified copies of papers CPLR §8301(a)(4) Satisfaction piece CPLR §5020(a), 8021 | | |
| Appeal to Appellate Division CPLR §8203 (a) | | | Transcripts and filing CPLR §8021 Certified copy of judgment CPLR §8021 | | |
| Appeal to Court of Appeals CPLR §8204 | | | Postage CPLR §8301(a)(12) Jury fee CPLR §8020(c) | | |
| Costs upon frivolous claims and counterclaims CPLR §8203 (a) | | | Stenographers' fees CPLR §8002, 8301 Sheriff's fees on execution CPLR §8011, 8012 | 50 | 00 |
| | | | Sheriff's fees, attachment, arrest, etc. CPLR §8011 Paid printing cases CPLR §8301(a)(6) | | |
| | | | Clerk's fees Court of Appeals CPLR §8301(a)(12) Paid copies of papers CPLR §8016(a)(4) | | |
| | | | Motion expenses CPLR §8301(b) Fees for publication CPLR §8301(a)(3) | | |
| | | | Serving subpoena CPLR §8011(h)1, 8301(d) Paid for Search CPLR §8301(a)(10) | | |
| | | | Referee's report Attendance of witnesses CPLR §8001(a)(b)(c) §8301(a)(1) | | |
| COSTS | $ | ~~400~~ ~~200~~ 00 | | | |
| DISBURSEMENTS | | 405 00 | | | |
| TOTAL | $ | ~~605~~ 00 | | $ | ~~605~~ 00 |

805 00                                                          405

I HEREBY CERTIFY THAT I HAVE
ADJUSTED THIS BILL OF COSTS AT
$  805.00

DEC 24 2018

CLERK

2 of 3

Index No.: 650611/2016
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

TCF EQUIPMENT FINANCE, a Division of TCF National Bank
f/k/a TCF Equipment Finance, Inc.

*Plaintiff*

*against*

G.E.B. MEDICAL MANAGEMENT, INC. and BRUCE PASWALL, individually

*Defendant(s)*

**Judgment** *with* **Bill of Costs**
**and Notice of      Taxation**

Please Take Notice that the within is a true copy of the items of costs and disbursements in the within action *taxed\** *and the same will be taxed\** by the Clerk of this Court, as his/her office in the courthouse thereof on          at          M. of that day – and the amount inserted in the judgment.

Yours, etc.
Law Offices of Charles A. Gruen
44 Court Street
Suite 1212
Brooklyn, New York  11201
Attorneys for Plaintiff

STATE OF NEW YORK, COUNTY OF KINGS

ss.                    ATTORNEY'S AFFIRMATION

The undersigned, an attorney admitted to practice in the courts of this state, affirms that I am Charles A. Gruen, Esq., the attorney(s) of record for the Plaintiff in the above entitled action; that the foregoing disbursements have been or will necessarily be made or incurred in this action and are reasonable in amount and that each of the persons named as witnesses attended as such witnesses on the trial, hearing or examination before trial herein the number of days set opposite their names, that each of said persons resided the number of miles set opposite their names from the place of said trial, hearing or examination; and each of said persons, as such witness as aforesaid, necessarily traveled the number of miles so set opposite their names in traveling to, and the same distance in returning from, the same place of trial, hearing or examination; and; and that copies of documents or papers as charged herein were actually and necessarily obtained for use.

Dated:  December 22, 2016

*1 — 2*

**FILED AND DOCKETED**

DEC 2 4 2018

AT  9:46  A M
N.Y., CO. CLK'S OFFICE

_____
CHARLES A. GRUEN

TA000129

3 of 3

# Exhibit "9"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
--------------------------------------------------------------------x
BRENDA PASWALL,

                                          Plaintiff,                Index No. 2345/2010

             -against-                                             **NOTICE OF
                                                                   SETTLEMENT**
BRUCE PASWALL,

                                          Defendant.
--------------------------------------------------------------------x

        PLEASE TAKE NOTICE that the within is a true copy of the Judgment of Divorce

which will be presented to the Honorable Robert M. Berliner, Justice of the Supreme Court,

located at 111 Dr. Martin Luther King Blvd, for signature on the 16th day of February, 2012.

Dated: New York, New York
        February 1, 2012


                              NEWMAN & DENNEY P.C.

                              By:_____
                                 Briana Denney
                                 Attorneys for the Defendant
                                 570 Lexington Ave. Ste. 1600
                                 New York, NY 10022
                                 (212) 486-3200        RECEIVED

                                                      MAR 2 6 2012

                                                   CHIEF CLERK
                                              WESTCHESTER SUPREME
                                               AND COUNTY COURTS

TO:    Brenda Paswall
       Plaintiff, *Pro Se*
       1089 Cedar Rd. Apt. A3
       Katonah, NY 10536

$\text{\textcircled{O}}$

At a Matrimonial Part of the Supreme Court
of the State of New York, held in and for the
County of Westchester, at the Courthouse
thereof located at 111 Dr. Martin Luther
King Jr. Blvd., on the _8_ day of February,
2012.   *June*

# HON. CHARLES D. WOOD, J.S.C.

PRESENT: ~~ROBERT M. BERLINER, Justice~~

-------------------------------X

BRENDA PASWALL,

                     Plaintiff,           Index No. 2345/2010

      - against -           **JUDGMENT OF DIVORCE**

BRUCE PASWWALL,

                     Defendant.

-------------------------------X

**EACH PARTY HAS A RIGHT TO SEEK A MODIFICATION OF THE CHILD
SUPPORT ORDER UPON A SHOWING OF: (I) A SUBSTANTIAL CHANGE IN
CIRCUMSTANCES; OR (II) THAT THREE YEARS HAVE PASSED SINCE THE
ORDER WAS ENTERED, LAST MODIFIED OR ADJUSTED; OR (III) THERE HAS
BEEN A CHANGE IN EITHER PARTY'S GROSS INCOME BY FIFTEEN PERCENT
OR MORE SINCE THE ORDER WAS ENTERED, LAST MODIFIED, OR ADJUSTED;
HOWEVER, IF THE PARTIES HAVE SPECIFICALLY OPTED OUT SUBPARAGRAPH
(II) or (III) OF THIS PARAGRAPH IN A VALIDLY EXECUTED AGREEMENT OR
STIPULATION, THEN THAT BASIS TO SEEK MODIFICATION DOES NOT APPLY.**

The Plaintiff, BRENDA PASWALL, residing at 1089 Cedar Rd. Apt. A3, Katonah, NY

10536, and whose Social Security Number is ▮▮▮▮▮, having brought this action for a

judgment of absolute divorce from the Defendant, BRUCE PASWALL, residing at 13 Logging

**FILED**

JUN 12 2012

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

TA000132

Rd., Katonah, NY 10536, and whose Social Security Number is ████████ on the grounds of

the Defendant's constructive abandonment of the Plaintiff pursuant to Domestic Relations Law

("DRL") §170(2), and service of the Summons and Verified Complaint bearing the notation

"ACTION FOR DIVORCE" having been personally served upon the Defendant within the State

of New York, and the Defendant having served a Verified Answer with Counterclaims upon the

Plaintiff on or about March 2, 2010, and an inquest having been held on December 12, 2011, a

transcript of which is annexed hereto and made a part hereof as EXHIBIT A, and the Plaintiff

having presented at such inquest oral and written proof of the central allegations of the Verified

Complaint on the grounds of constructive abandonment, and such proof having been duly

considered by me, and Defendant having withdrawn his counterclaim, and the pleadings having

been conformed to the proof; and the parties having resolved all issues relating to custody and

support of the parties' one minor child of the marriage , ████████ Paswall (d.o.b ████ by

entering into a Settlement Agreement spread across the record in open court on December 12, 2011,

which also resolved all remaining financial and ancillary issues between them, , and the parties

having entered into the Settlement Agreement with the intent that such Settlement Agreement fully

and completely settle all issues relating to the dissolution of the marriage between the parties;

NOW, on motion of Newman & Denney P.C., attorneys for the Defendant, it is

ORDERED, ADJUDGED AND DECREED, that the marriage between BRENDA PASWALL,

Plaintiff, and BRUCE PASWALL, Defendant, is hereby dissolved by reason of the constructive

abandonment of the Plaintiff by the Defendant, for a period of one (1) or more years, pursuant to

Domestic Relations Law Section 170(2); and it is further

2

ORDERED AND ADJUDGED, that the parties' Settlement Agreement, spread upon the record in open court on December 12, 2011, a transcript of which is annexed hereto and made a part hereof as EXHIBIT A, shall survive and not be merged into this Judgment, and the parties are hereby directed to comply with all legally enforceable terms and provisions of said Settlement Agreement as though such terms and conditions were set forth in their entirety herein; and it is further

ORDERED AND ADJUDGED, that pursuant to the Settlement Agreement, this Court retains exclusive jurisdiction of this matter for the purposes of specifically enforcing such of the provisions of the Settlement Agreement as are capable of specific enforcement to the extent permitted by law with regard to issues of child support, custody, and visitation, and of making such further judgment as it finds appropriate under the circumstances existing at the time application for that purpose is made to it, or both; and it is further

ORDERED AND ADJUDGED, that pursuant to the Settlement Agreement, the Defendant shall have sole legal custody of the minor child of the marriage, to wit:     Paswall (d.o.b.     ); and it is further

ORDERED AND ADJUDGED, that the Defendant shall have liberal rights of visitation with the Child; and it is further

ORDERED AND ADJUDGED, that the Defendant, in accordance with the Settlement Agreement, shall be solely financially responsible for the support of the Child, including add-on expenses, until an emancipation event occurs; and it is further

ORDERED AND ADJUDGED, that the Child is presently insured under the Defendant's medical insurance plan, to wit:  Empire BlueCross & BlueShield-Empire Prism EPO (ID No.

3

██████████ ); and the Plaintiff shall maintain health insurance coverage (hospitalization and major medical insurance) for the Child until emancipation; and it is further

ORDERED AND ADJUDGED, that, pursuant to the parties' Settlement Agreement, the Defendant shall pay to Plaintiff as and for her maintenance the amount of $6,000 per month for 12 months commencing January 2012, $5,000 per month for 12 months commencing January 2013, $4,000 per month commencing January 2014, and $3,000 per month for 24 months commencing January 2015, which monthly payment shall be paid on or before the 15th of each month; and it is further

ORDERED AND ADJUDGED, that the real and personal property of the parties shall be equitably distributed in accordance with the provisions of the parties' Settlement Agreement; and it is further

ORDERED AND ADJUDGED, that the parties waive any rights they may have pursuant to the Child Support Standards Act; and it is further

ORDERED AND ADJUDGED, that: (a)    the parties acknowledge that they have been advised of the provisions of the Child Support Standards Act ("CSSA") as set forth in Domestic Relations Law §240(1-b) and Family Court Act §413(1), and that they have each received a copy of the Child Support Standard Chart promulgated by the Commissioner of Social Services, and that they have considered said Act in coming to an agreement and understand its application; (b) the parties further represent that the basic child support obligation, as defined in Domestic Relations Law §240(1-b) would presumptively result in the correct amount of child support to be awarded, and the parties acknowledge that under the CSSA, the basic child support obligation for the one

4

unemancipated child may have been as high as seventeen percent (17%) of the first $130,000.00 of the parties' combined gross income, shared by the parties *pro rata* and in the discretion of the Court, and a percentage of any additional combined parental income in addition to the *pro rata* share of childcare expenses, healthcare expenses, and educational expenses for the child, and that the minimum amount of child support that the Court can award is $25 per month; (c) the parties are aware that the application of the CSSA guidelines might result in a child support payment different from those set forth in the Settlement Agreement, and in this regard, the parties recognize that the basic child support obligation provided for by the CSSA guidelines would have been $25 per month on the Plaintiff's gross total income of $0, which income does not account for the interim maintenance paid by Defendant to Plaintiff; (d) the amount of child support agreed to in the Settlement Agreement deviates from the amount attributable under the CSSA guidelines, and the Court has approved such agreed-upon amounts based upon the reasons set forth herein, and the parties' have affirmed that they wish to have the child support provisions contained in the Settlement Agreement rather than the provisions contained in said subdivisions of the CSSA apply with respect to the Child because (i) the Defendant is being deemed the primary residential parent for child support purposes, (ii) the amount of $25 does not provide an appreciable amount of support for the Child, (iii) the parties have arrived at an agreement which will enable the Child to be adequately supported; and it is further

ORDERED AND ADJUDGED, that in accordance with DRL §236, Part B (7-d), each party has a right to seek a modification of the child support order upon a showing of: (i) a substantial change in circumstances; or (ii) that three years have passed since the order was entered, last

5

modified or adjusted; or (iii) there has been a change in either party's gross income by fifteen

percent or more since the order was entered, last modified, or adjusted; however, if, as here, the

parties have specifically opted out subparagraph (ii) or (iii) of this paragraph in the validly

executed Settlement Agreement, then that basis to seek modification does not apply, and each

party has specifically waived any and all rights to seek modification(s) under DRL §236, Part

B(7-d) in the Settlement Agreement; and it is further

ORDERED AND ADJUDGED, that Plaintiff is authorized to resume the use of her maiden

name or former surname, to wit: Smith; and it is further

ORDERED AND ADJUDGED, that Plaintiff shall be served a copy of this Judgment of

Divorce with Notice of Entry within 30 days of such entry.

ENTER:

*HON. CHARLES D. WOOD J.S.C.*

**HON. CHARLES D. WOOD, J.S.C.**

**Pursuant to Chapter 595 of the Laws of 2008, the Court has searched the required databases and has notified parties and counsel of said results and has considered the results of that search in making this determination.**

6



Exhibit A

```
 1   SUPREME COURT OF THE STATE OF NEW YORK

 2   COUNTY OF WESTCHESTER: CIVIL TERM: PART RMB

 3   ------------------------------------------X

 4   BRUCE PASWALL,

 5                              Plaintiff,

 6          - against -       Index No. 2345-10

 7   BRENDA PASWALL          Stipulation & Inquest

 8                              Defendant,

 9   ------------------------------------------X
                     New York State Supreme Court
10                   Westchester County Courthouse
                     111 Dr. Martin Luther King Jr. Blvd.
11                   White Plains, New York  10601
                     December 12, 2011
12   B E F O R E:

13        HON. ROBERT M. BERLINER,
          JUSTICE, SUPREME COURT
14

15

16   A P P E A R A N C E S:

17   For the Plaintiff:
     NEWMAN & DENNEY, P.C.
18   570 Lexington Avenue, Suite 1600
     New York, New York 10022
19   BY:  LOUIS I. NEWMAN, ESQ.

20   For the Defendant:
     Defendant Pro-Se
21

22

23

24

25                              BARBARA A. HIGHTOWER, RPR, CSR
                                SENIOR COURT REPORTER
```

1          THE CLERK:  Your Honor, this is case Number 2 on

2   our appearance calendar this morning.  It is in the matter

3   of Paswall; Index Number 2345 of 2010.  And the matter is

4   scheduled for trial.

5          And ma'am, I will need your name and address for

6   the record, please.

7          MS. PASWALL:  Brenda Paswall, 1089 Cedar Road, 8

8   three, Katonah, New York 10536.

9          THE COURT:  Thank you, Counsel.

10          MS. PASWALL:  For the defendant, Bruce Paswall,

11   Newman & Denney, P.C., 570 Lexington Avenue, New York, New

12   York, by Louis I. Newman.

13          Good morning, your Honor.  And my client is to

14   my immediate right.

15          THE COURT:  Good morning to all of you; and you

16   may be seated.

17          MS. PASWALL:  Your Honor, may I just inquire?

18   There is someone who is in the courtroom, and who

19   apparently --

20          THE COURT:  I noticed that also.  Who are you,

21   ma'am?

22          MS. PASWALL.

23          FRIEND:  A friend of Brenda's.

24          THE COURT:  Yes.

25          MR. NEWMAN:  And may I inquire, if we're

1    proceeding with the trial, is she going to be a witness.

2             FRIEND:  I am here for moral support.

3             THE COURT:  Is she going to be a witness?

4             MS. PASWALL:  No..

5             THE COURT:  All right.

6             MR. NEWMAN:  Thank you, your Honor.

7             THE COURT:  All right.  And I am ready to try

8    this case.  And do you have retaining counsel?

9             MS. PASWALL:  I tried, and that is difficult

10   because I cannot get files from Mitch Lieberman.  And it

11   was to close to trial and money is used; so I have

12   interviewed several.

13            THE COURT:  I thought this case was -- I know

14   that you were trying to settle the case; correct?

15            MR. NEWMAN:  Yes, your Honor.  And, in fact, on

16   December first, when I deposed Mrs. Paswall, and I told

17   her I was prepared to sit down and meet with her, or an

18   attorney or representative on her behalf, to try to

19   resolve that.  And I am prepared to go outside and try to

20   resolve it.  And we're prepared to go forwards if there is

21   a trial.

22            I have a trial notebook.

23            THE COURT:  And you better try and settle it;

24   and I will second call it; understood?  And I am ready to

25   try it.

1    MS. PASWALL: Okay.

2    THE COURT: Go ahead. And why don't you talk.

3    MS. PASWALL: Thank you, your Honor.

4    MR. NEWMAN: Thank you, your Honor.

5    THE COURT: And let me know if it settles; and I

6    will start it. I cannot let this case go.

7    (Whereupon, the case is laid aside to be later

8    recalled).

9                   *        *        *

10   THE CLERK: Your Honor, this is second call on

11   case Number 2 on our calendar today, in the matter of

12   Paswall.

13   THE COURT: Thank you. John.

14   All right. People, where are we.

15   MR. NEWMAN: Your Honor, if I may, with the

16   permission of Mrs. Paswall?

17   THE. COURT: Go right ahead.

18   MR. NEWMAN: We used the morning to negotiate,

19   and we used over lunch to negotiate, and after lunch to

20   negotiate; and we have reached a settlement, which we

21   would like to place on the record.

22   THE COURT: Very good.

23   And is that the case, ma'am?

24   MS. PASWALL: Yes.

25   THE COURT: All right. Are you ready to put a

1   stipulation on the record?

2           MR. NEWMAN: Yes, your Honor.  And if I may, I

3   have also explained to Mrs. Paswall procedurally the

4   purpose of the stipulation.  And secondarily, there was a

5   stipulation placed on the record before Justice Tolbert in

6   March of 2010, where we agreed that Mrs. Paswall would

7   take the inquest for the grounds for divorce.  So since

8   she is without counsel, I have explained to her what the

9   questions would be, and if it is easier for the Court, I

10  will ask the questions of her just so that she can take

11  the inquest, and have the divorce granted in her favor.

12          And if I may, your Honor, if I may just ask Mrs.

13  Paswall, do you recall I explained that to you when we

14  were seated downstairs.

15          MS. PASWALL:  Yes.

16          THE COURT:  Then I will allow you to ask the

17  plaintiff the necessary questions.

18          MR. NEWMAN:  Very good, your Honor.

19          THE COURT:  Thank you, Counsel.

20          And you can be seated.  And Counsel, whenever

21  you are ready.

22          If you would like to place the terms on the

23  record; go right ahead.

24          MR. NEWMAN: May I, without usurping the Court's

25  function, I would ask that Ms. Paswall listen very

1  carefully.

2          And I will represent to the Court that I went

3  over my notes with Mrs. Paswall about a half hour ago, so

4  that she understood what the terms were, and she

5  acknowledged that they were acceptable.

6          MS. PASWALL:  Yes.

7          THE COURT:  Very good.

8          MR. NEWMAN:  And I also ask that my client

9  listen to the terms.

10          THE COURT:  That is also a good idea.

11          MR. NEWMAN:  And Mr. Sulich.

12          May it please your Honor.

13          This matrimonial action between Brenda Paswall

14  as plaintiff, and Bruce Paswall, as defendant, commenced

15  on January 6, 2010. The parties were married on December

16  6, 1995, and have two children.  Grant, who was born on

17  December 13, 1988; and Reid, who was born March 9, 1994.

18          And the parties understand that this stipulation

19  that we are placing on the record today is in full

20  settlement of all issues arising out of the marriage, and

21  this divorce action, pursuant to the laws of the State of

22  New York.

23          And it is therefore stipulated and agreed, by

24  and between the parties, as follows:  And neither party

25  will seek to molest, harass, or interfere with the lives

1    of the other.  And neither shall seek, by way of court

2    order, or any other means, to compel the other to cohabit

3    with him or her.

4            And with regards to the personalty:  The parties

5    have already divided their personalty and have agreed that

6    they will reserve onto themseves any further discussions

7    with regards to that.  But subject to that, all property,

8    bank accounts, and asset presently in the name of the

9    plaintiff, Brenda Paswall, shall remain as -- shall remain

10   as her separate property.

11           All property and bank accounts in the name of

12   the defendant, Bruce Paswall, shall remain in his name and

13   be his separate property.

14           And with regard to equitable distribution:  The

15   parties have given consideration to the assets and the

16   liabilities of the marriage, including certain outstanding

17   medical bills, about which Mrs. Paswall has brought to my

18   attention this morning, aggregating approximately $2,000

19   credit cards bills, and in the name of Mrs. Paswall, as

20   well as a stipulation that was placed on the record before

21   Justice Tolbert, in March of 2010, pursuant to which the

22   defendant, Bruce Paswall, paid $2,500 per month as an

23   advance of equitable distribution, for which he was

24   entitled to a credit upon the trial or settlement of that

25   action.

1          And we have also, in reaching the equitable

2    distribution to be set forth herein, given consideration

3    to the value of very specific entities of which

4    Mr. Paswall -- Dr. Dr. Paswall is an owner and operator,

5    and have utilized the appraisals as presented by Amber,

6    through Martin Blaustein.  No final report has been

7    issued.  We did take them into consideration in reaching

8    the numbers that are arrived at.  We have also taken into

9    consideration various tax issues that exist.  And pursuant

10   to the terms of the equitable distribution, the defendant,

11   husband, shall pay to the plaintiff, wife, the sum of

12   $70,000, payable $22,000 within 45 days of today's date,

13   and $48,000 in 24 equal monthly payments, commencing

14   February 1, 2012.

15          Title to the marital residence shall be

16   transferred to the defendant, Bruce Paswall; and documents

17   will be prepared by my office and presented to the

18   plaintiff for her signature.  And terms of a bargain and

19   sale deeds with covenance and the requisite sales forms.

20          In the event that the documents are not executed

21   by Mrs. Paswall within 20 days after them being presented

22   to her, leave is granted to the defendant to make

23   application to the Court to request that the sheriff of.

24   the County of Westchester execute the documents, conveying

25   title.

1    And by taking title to the home, the defendant,

2  Bruce Paswall, will assume the mortgage on the property

3  and will indemnify and save Mrs. Paswall harmless from any

4  claim in connection with any default on that mortgage.

5    And Mrs. Paswall waives any claims, right, title

6  or interest that she might have, and to my client's

7  business entities, and known as GEB Management or his

8  chiropractic, or any other business entities of which he

9  is an owner.  He will indemnify and save Mrs. Paswall

10  harmless from any claims that might arise as a result of

11  his sole and exclusive ownership of those business

12  entities.

13    And with regards to the tax issues, Mrs. Paswall

14  acknowledged during her deposition that there is

15  potentially a 600 to 650 thousand dollars tax liability

16  which Mr -- Dr. Dr. Paswall is assuming; and he will

17  indemnify and save her harmless from any claim eminating

18  out of that practice liability provided; however that any

19  actions taken by the Internal Revenue Service in

20  collection of that liability, are not triggered by the

21  conduct of Mrs. Paswall.  In the event that any action by

22  the tax collecting services is triggered by action taken

23  by Mrs. Paswall, then the indeminification becomes null

24  and void.

25    In essence your Honor, I have explained to Mrs.

1  Paswall that if she does something out of, for want of a

2  better term, anger or revenge, that triggers a tax

3  liability, while my client is dealing with these services,

4  then she loses the indemnification that he is providing

5  under this agreement.

6          And there is a dog that Mrs. Paswall has agreed

7  that title to, or ownership of the dog is to be

8  transferred to the defendant.

9          And neither party shall be responsible for

10 maintaining life insurance on his or her life for the

11 benefit of the other.

12         With regards to maintenance, the parties have

13 agreed to the following maintenance schedule, commencing

14 January 1st of 2012, for 12 months.  Maintenance shall be

15 at the sum of $72,000 per year, or $6,000 per month,

16 payable on or before the 15th day of each month.

17         And for the second year, maintenance shall be at

18 the rate of $60,000 per year, payable monthly, at the rate

19 of $5,000 per month.

20         For the third year, maintenance shall be at the

21 rate of $48,000, and payable at the rate of $4,000 per

22 month.

23         And for years four and five, maintenance shall

24 be at the rate of $36,000 for each year, and payable

25 monthly at the rate of $3,000 per month.

1          And in addition, as additional maintenance, the
2   defendant, Bruce Paswall, shall continue to make the lease
3   payments on the BMW automobile that is utilized by Mrs.
4   Paswall, until the expiration of the lease on that BMW,
5   which we understand to be on or about October of 2012.
6   And Dr. Dr. Paswall shall also maintain the automobile
7   insurance on the car, to the BMW used by Mrs. Paswall,
8   with his obligation to pay the term -- coterminous with
9   the expiration of the lease.
10          And, in addition, Dr. Paswall shall provide
11   medical insurance for Mrs. Paswall for a period of 18
12   months.  And both parties prior to today, for Mrs.
13   Paswall, but including today for Dr. Paswall have been
14   represented by counsel.  And each will indemnify and save
15   the other harmless from counsel fees, and professional
16   fees in connection with this representation.
17          Each of the parties waives their rights in each
18   other's estate, to take by way of election, or make any
19   claim against each other's estate or acts as a fiduciary
20   in each other's estate.
21          Each of the parties releases each and every
22   claim that they have against the other except their right
23   to enforce any of the terms, conditions, or provisions of
24   this stipulation.
25          With regards to the children:  There is one

1    minor child, Reid. And he was born, as stated above, on

2    March 9, 1994.  And he presently reside in California.

3    And the parties are aware that the Child Support

4    Standard's Act creates a presumptive correct amount of

5    child support, which for the one child is 17 percent of

6    the first $130,000 of income.  And any income in excess of

7    $130,000 is discretionary with the Court, as as far as how

8    to address that issue.

9         The parties are deviating from the Child Support

10   Standard's Act, in that the defendant, Dr. Paswall, will

11   be deemed the primary residential parent for child support

12   purposes, and is undertaking the full responsibility for

13   all of the support for Reid, and is waiving any claim

14   against Mrs. Paswall to contribute any form of child

15   support towards the support and add-ons for Reid.

16        It is further provided, your Honor, that the

17   terms of this stipulation shall be incorporated with the

18   Court's permission, in a Judgment of Divorce, to be

19   entered herein, but shall not prejudice therein, in terms

20   of the interpretation of any of the terms, conditions, or

21   provisions of this stipulation.  It shall be governed by

22   the laws of the State of New York, and that the Supreme

23   Court venue, in Westchester County, shall retain exclusive

24   jurisdiction to enforce the terms and provisions of this

25   stipulation, not concurrent with the Family Court.

19-3857-cv Case 7:20-cv-05649-KMK File 03/24/20 45 Entered 03/24/20 23:59:47 154 of 208 -
Judgment of Divorce (redacted)  Pg 22 of 34
13
Proceedings

1　　　　And the parties further understand, your Honor,

2　that by entering into this stipulation, they are waiving

3　their right to a trial, and for the Court to make a

4　determination with regards to spousal support,

5　maintenance, equitable distribution, and child support;

6　and are accepting the terms of this stipulation, in full

7　and final settlement of all of their rights, and any

8　claims that they might have eminating out of a trial, that

9　might happen but for this stipulation.

10　　　　And there was a pendente lite order made by

11　Justice Tolbert of this court, for which there has been

12　full compliance in terms of payment obligation by the

13　defendant; and that the pendente lite order is subsummed

14　in this settlement; and that the terms of the settlement

15　become effective, and that the pendente lite Order is no

16　further force and effect.

17　　　　And, in addition, upon the entry of a Judgment

18　of divorce, should your Honor direct that such a Judgment

19　be entered, the defendant will cooperate with the

20　plaintiff with regard to an attempt by the plaintiff to

21　remove the Order of Protection that was issued by the

22　Somers Justice Court.

23　　　　That essentially, your Honor, sets forth the

24　terms of the settlement that the parties have agreed to

25　that was negotiated all day:  This morning, and this

1   afternoon.  And in addition, I think I am obligated to

2   tell your Honor, as you may recall, that Mrs. Paswall had

3   a friend in court this morning, and who also participated

4   in aiding Mrs. Paswall in the settlement, so that she was

5   not here totally by herself.

6          And I will tell the Court, with all -- with

7   respect that, I conferred with both Mrs. Paswall and her

8   friend. And I think her name was Jennifer Tocus

9   (phonetic), all of the terms.  And I wrote out the terms,

10  the essential monetary terms for her, so that they can

11  confer about it over lunch.  and there is another friend

12  of Mrs. Paswall's in the courtroom now, who we met with

13  downstairs, and went over some of the terms with her also.

14  And I tell this to the Court so that the Court understands

15  fully and completely that Mrs. Paswall, representing

16  herself at the moment, was not here without the benefit of

17  some as her friends this morning.  Described it moral

18  support an individuals with whom she could seek and take

19  Counsel.

20          Thank you, your Honor.

21          THE COURT:  Thank you very much, Counselor.

22          And all right; I am going to ask defendant's

23  counsel to allocute his client as to these terms; and then

24  I will allocute the plaintiff.  And I am going to ask the

25  defendant to please raise his right hand.

1    B R U C E    P A S W A L L, the herein named Plaintiff, a

2        resident of Westchester County and State of New York,

3        after having been duly sworn by the Court Clerk, testified

4        as follows, under oath:

5                    THE COURT:  Thank you.

6                    Go right ahead.

7    VOIR DIRE

8    BY MR. NEWMAN:

9        Q    Dr. Paswall, you participated in the negotiations

10    with regards to the terms of the stipulation that I just placed

11    on the record.  Is that correct?

12        A    That is correct.

13        Q    And do you understand all of its terms?

14        A    I do.

15        Q    And do you agree to be bound by all of its terms?

16        A    I do.

17        Q    Are you entering into this stipulation voluntarily

18    and of your own free will?

19        A    I am.

20        Q    Are you under the influence of any drugs or

21    medication or alcohol that would impair your ability to enter

22    into this stipulation?

23        A    I am not.

24        Q    And did you have an opportunity to discuss the terms

25    of this stipulation with me?

```
 1        A    I did.
 2        Q    And did I answer all of your questions to your
 3  satisfaction?
 4        A    You did.
 5        Q    And are you requesting of the Court that this
 6  stipulation be incorporated but not merged in the Judgment of
 7  Divorce?
 8        A    I do.
 9        Q    And is it your intention to fully comply with the
10  terms of this stipulation?
11        A    It is.
12        Q    Has anyone, by any force or coercion or duress, or
13  exercised anything upon you which would impede you from
14  entering into this stipulation voluntarily?
15        A    No.
16                 MR. NEWMAN:  I have nothing further, your
17        Honor.
18                 THE COURT:  Thank you very much, Counselor.
19                 All right.  Mrs. Paswall, I will ask you to
20        please raise your right hand.
21  B R E N D A    P A S W A L L, the herein named Defendant, a
22        resident of Westchester County, and State of New York, and
23        after having been duly sworn by the Court Clerk, testified
24        as follows, under oath:
25  VOIR DIRE EXAMINATION
```

19-08513-20-cv-D56249-KMF File 03/24/20 45 Entered 03/24/2012 3 59 47 15 Exh 208 -
Judgment of Divorce (redacted)    Pg 26 of 34

Proceedings                                                    17

1  BY MR. NEWMAN:

2       Q    Please state your name and address?

3       A    Brenda Paswall, 109 Cedar Road, Apartment 83,

4  Katonah, New York, 10536.

5       Q    Thank you.  Did you hear the agreement as dictated on

6  the record by your husband's attorney?

7       A    Yes.

8       Q    And did you have an opportunity to discuss the terms,

9  or at least to discuss the terms that were placed on the

10  record, with defendant's counsel?

11       A    Yes.

12       Q    All right.  And do you understand fully your rights

13  and obligations pursuant to that agreement?

14       A    Yes.

15       Q    And do understand that this agreement is a final

16  resolution of the issues pending in this court?

17       A    Yes.

18       Q    And do you understand that by entering into this

19  agreement, there will be no trial of any of those issues that

20  you have agreed to?

21       A    Yes.

22       Q    All right.  And has anyone forced you, threatened

23  you, or coerced you into entering into this agreement?

24       A    No.

25       Q    And you are doing it of your own free will?

1       A    Yes.

2       Q    And have you taken any drugs or alcohol that would in

3    any way, impair your ability to understand the terms of the

4    agreement that were placed on the record this afternoon?

5       A    No.

6       Q    Thank you.

7            THE COURT:  Thank you.

8            And Counselor, I am going to ask you, even

9       though you represent the defendant, to ask the proper, the

10      necessary questions, to conduct an inquest on plaintiff's

11      request for a divorce.

12           MS. PASWALL:  Thank you, your Honor.  I do it

13      almost in the nature of advicus-curry (phonetic).

14           THE COURT:  Thank you.

15   VOIR DIRE EXAMINATION (CONTINUED)

16   BY MR. NEWMAN:

17      Q    Good afternoon, Mrs. Paswall.

18      A    Good afternoon.

19      Q    And at the time of the commencement of this action,

20   in January of 2010, were you over the age of 18 years?

21      A    Yes.

22      Q    And had you been a resident of the State of New York

23   for a period in excess of two years, prior to the commencement

24   of this action?

25      A    Yes.

1       Q     And did you and the defendant marry in the State of

2   New York, on December 6, 1985?

3       A     Yes.

4       Q     And as a result of that marriage, do you have two

5   children:  Grant Edward Paswall, born ███████████████; and

6   Lawrence Paswall, born ████████████?

7       A     Reid Lawrence.

8       Q     I am sorry.  Reid Lawrence Paswall?

9       A     Yes.

10      Q     And did there come a point and time, in or about

11  August of 2006, when the defendant refused to engage in sexual

12  relations with you?

13      A     Yes.

14      Q     And was that refusal notwithstanding your repeated

15  request that he engage in relations with you?

16      A     Repeat the question?

17      Q     And was the refusal on the defendant's part,

18  notwithstanding the fact that you had continuously requested

19  that he engage in relations with you?

20      A     Yes.

21      Q     And has that refusal continued to the present time?

22      A     Yes.

23      Q     And had you always been a good and dutiful wife?

24      A     Yes.

25      Q     And are there any other actions pending in the State

1   of New York, or any other court of competent jurisdiction,

2   seeking the same relief that you are asking of this Court?

3        A    No.

4        Q    And will you take all necessary steps to remove any

5   barriers to the remarriage of the defendant, prior to the entry

6   of the Judgment of Divorce?

7        A    Yes.

8        Q    And are you asking that the stipulation that was

9   placed on the record, be incorporated into the Judgment of

10  Divorce, but not to merge therein, but to survive?

11       A    Yes.

12            MS. PASWALL:  I have nothing further, your

13  Honor.

14            THE COURT:  Thank you very much, Counsel.

15            All right.  And I -- And I am going to grant

16  plaintiff's application for a divorce, based upon the

17  ground of constructive abandonment.

18            MR. NEWMAN: And just so the record is absolutely

19  clear, your Honor.  On behalf of the defendant, we

20  withdraw the Answer and the Counterclaims, and stand

21  silent with regards to the testimony of the plaintiff.

22            THE COURT:  Okay, thank you.

23            So the application is granted.  And I will grant

24  the application to incorporate, but not merge the terms of

25  the oral stipulation and that were placed on the record

1   this afternoon.

2              And I Assume, Counsel, you are going to

3   preparedness paperwork?

4              MR. NEWMAN:  Yes, your Honor.  We will prepare

5   the necessary paperwork and provide copies to Mrs.

6   Paswall, pursuant to the copies of the CPLR, and file the

7   originals with the Court.

8              THE COURT:  And I assume you will be ordering a

9   copy of the transcript today?

10             MR. NEWMAN:  Yes, I will.

11             THE COURT:  And thank you very much.

12             MR. NEWMAN: May I inquire?

13             THE COURT:  Sure.

14             MR. NEWMAN:  As to whether the Court has the

15  separate affidavits form, which incorporates the oral

16  stipulation as a written document?  And I -- and if I may,

17  your Honor, just so Mrs. Paswall understands what I have

18  just asked for.

19             THE COURT:  Go right ahead.

20             MR. NEWMAN: I will send to you Ms. Paswall, with

21  the Court's permission, a very simple document that

22  basically says you incorporate in a written form, the

23  stipulation that was placed on the record.  So that it is

24  very clear that it is a written document.  And I do that

25  because there is some dispute between the Appellate

```
 1        Divisions with regards to that.
 2                Thank you very much, your Honor.
 3                THE COURT:  I just need a timeframe and just a
 4        reasonable time; whatever you need?
 5                MR. NEWMAN:  Well, once I get the transcripts,
 6        within two weeks after receiving the transcripts, we will
 7        file the appropriate papers.
 8                THE COURT:  All right.  So I will expect the
 9        necessary paperwork in approximately 30 days.
10                MR. NEWMAN:  Correct, your Honor.
11                And your Honor, if I may, on behalf of my client
12        and Mrs. Paswall, if she will permit me to speak for her,
13        we thank your Honor for the efforts you put into this
14        case, and you have lived with this case for a period of
15        time, and for giving us the time today to reach the
16        settlement; and we thank you.
17                THE COURT:  Thank you.  And you are very
18        welcome. And I appreciate the fact that you worked very
19        hard to reach a settlement; and I am not just talking to
20        you, Counsel, but to your client, and the plaintiff as
21        well.
22                All right.  And I want to wish both of you the
23        best of luck; all right.  Happy holidays too.
24                (Whereupon, the case is completed).
25                        *       *       *
```

19-08513-20-cv-D56249-KMF-Filed 03/24/20 45 Entered 03/24/2012 3 59 47 164 Exhibit 089 -
Judgment of Divorce (redacted)    Pg 32 of 34

Proceedings

23

1   Certified to be a true and accurate copy of the court

2   proceedings.

3

4   BARBARA A. HIGHTOWER, CSR, RPR
    Senior Court Reporter

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------------------------------------------X

BRENDA PASWALL,

                    Plaintiff,

           -against-

BRUCE PASWALL,

                    Defendant.

------------------------------------------------------------------------X

**AFFIDAVIT OF SERVICE**

Index No. 2345/10

STATE OF NEW YORK       )
                             ) ss.:
COUNTY OF NEW YORK   )

      MORGANE CHANG, being duly sworn, deposes and says:

      I am not a party to the above action, and I am over 18 years of age and reside at Sunnyside, New York.  On February 1, 2012, I served a copy of the **Judgment of Divorce with Notice of Settlement** in the above-captioned proceeding by mailing in a properly sealed, postpaid envelope, and depositing same in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York and addressed to the following individuals:

                        **Brenda Paswall**
                        **Plaintiff, *pro se***
                        **1089 Cedar Rd. Apt. A3**
                        **Katonah, NY 10536**

                                    MORGANE CHANG

Sworn to before me this
1st day of February, 2012

Notary Public

BRIANA DENNEY
Notary Public, State of New York
No 02DE6195435
Qualified in New York County
Commission Expires Nov. 17, 2012

TA000162

Index No. 2345                                     Year 2010

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

---

BRENDA PASWALL,

                              Plaintiff,

              –against–

BRUCE PASWALL,

                              Defendant.

---

### JUDGMENT OF DIVORCE WITH
### NOTICE OF SETTLEMENT

Signature (Rule 130-1.1)

_____

Briana Denney, Esq.
NEWMAN & DENNEY P.C.
Attorneys for Defendant
570 Lexington Avenue, Suite 1600
New York, NY 10022
(212) 486-3200

---

Service of a Copy of the Within is Hereby Admitted:

Dated: _____

_____

Attorneys for _____

# Exhibit "10"

2124862137

RECEIVED

DEC 2 3 2013

CHIEF CLERK
WESTCHESTER SUPREME
AND COUNTY COURTS

At a Part __ of the Supreme Court of the
State of New York, held in and for the
County of Westchester, at the courthouse
located at 111 Dr. Martin Luther King, Jr.
Blvd., White Plains, New York, on the ___
day of December, 2013.

**FILED**

**FILED
AND
ENTERED**

ON 01/06 2014

JAN - 6 2014
TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

P R E S E N T:

    Hon.  Colleen D. Duffy,

                               Justice

-----------------------------------------------------------------x

BRENDA PASWALL,

                                Plaintiff,

          -against-

BRUCE PASWALL,

                                Defendant.

-----------------------------------------------------------------x

Index No:  3999 /2012

**ORDER**

By Decision and Order, dated June 14, 2013, this Court dismissed Plaintiff's cause of action predicated on fraud in the inducement and directed that Hearing be held with regard to the remaining causes of action in Plaintiff's verified complaint; and the Hearing having been held before this Court on October 21, 2013 at which both Plaintiff and Defendant presented their evidence in support of their respective claims and in opposition to the claims of the other party; after considering all of the relevant evidence and after due deliberation thereon, this Court rendered a decision from the Bench vacating so much of the parties' Stipulation of Settlement as was placed on the Record on December 12, 2011, before the Hon. Robert M. Berliner (the "Stipulation of Settlement"), as resolved the equitable distribution of the parties' marital assets.

    NOW ON MOTION of Newman & Denney, P.C. attorneys for Defendant, it is

    ORDERED, that the equitable distribution provisions of the parties Stipulation of Settlement, be and the same are hereby vacated, and it is further

1

ORDERED, that the Judgment of Divorce, entered on June 12, 2012, be and the same is

hereby amended so as to confirm with the provisions of this Order.

ENTER

1/6/14

_____
J.S.C.

The undersigned hereby consent
To the entry of the above Order:

_____
William Hirshfeld, Esq.
Attorney for Plaintiff

_____
Louis I. Newman, Esq.
Attorney for Defendant

2

Index Nos. 3999                                    Year 2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

---

BRENDA PASWALL,

                                         Plaintiff,

                    –against–

BRUCE PASWALL,

                                         Defendant.

---

### ORDER

Signature (Rule 130–1.1)

_____

Louis I. Newman, Esq.
**NEWMAN & DENNEY P.C.**
Attorneys for Defendant
570 Lexington Avenue, Suite 1600
New York, NY 10022
(212) 486–3200

---

Service of a Copy of the Within is Hereby Admitted:

Dated: _____

_____

Attorneys for _____

---

# Exhibit "11"



EXHIBIT
Trustee's
1
10/30/19

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
--------------------------------------------------------x
BRENDA PASWALL,                                    Index No.: 3999/2012

                                  Plaintiff,       **STIPULATION OF**
          -against-                                **SETTLEMENT**

BRUCE PASWALL,

                                  Defendant.
--------------------------------------------------------x

THIS STIPULATION OF SETTLEMENT, made and entered into this 30th day of October,

2014, by and between Brenda Paswall, residing at                  (the "Plaintiff") and Bruce

Paswall, residing at 13 Logging Road, Somers, New York (the "Defendant").

WHEREAS, a Judgment of Divorce was entered in the above captioned action on June

12, 2012 (the "Judgment") which incorporated by reference a Stipulation placed on the Record

before the Hon. Robert M. Berliner, on December 12, 2011, and which Stipulation did not

merge therein, but survived the Judgment; and

WHEREAS, an Order (Duffy, J.), entered January 6, 2014 (the "Order"), vacated the

equitable distribution provisions of the Stipulation and modified the Judgment accordingly; and

WHEREAS, both the Plaintiff and the Defendant filed their respective Notice and Cross-

Notice of Appeal from the Order (collectively the "Appeal") and which Appeal is pending

before the Appellate Division, Second Department, and

WHEREAS, three charging liens have been granted by the Court with regard to fees

claimed to have been earned by plaintiff's former and current counsel; and

1

WHEREAS, the parties desire to memorialize the terms of the settlement resolving all

of the issues emanating from the underlying divorce action, the Judgment, the Order and the

Appeal.

IT IS HEREBY STIPULATED AND AGREED by and among the parties to the above

captioned action and their respective attorneys as follows:

    1.    Simultaneous with the execution hereof,  Plaintiff shall execute and deliver to

Defendant a Bargain and Sale Deed with Covenants transferring and conveying all of her right,

title and interest in and to the former marital residence located at  13 Logging Road, Somers,

New York (the "Residence"), to the Defendant.

    2.    The Defendant shall pay to the Plaintiff the sum of Three Hundred Thousand

(300,000) Dollars payable as follows:

        a.    The Defendant has made  application for interim financing, to be secured

by a lien against the Residence as collateral, for an amount of not less than $150,000 (the "Initial

Financing") from which financing the sum of $150,000 shall be paid to Plaintiff within ten (10)

days of the closing of the Initial Financing;

        b.    On or before July 1, 2015 an additional $150,000 shall be paid to Plaintiff.

        c.    Defendant shall be responsible for the costs associated with the financing

contemplated herein.

    3.    As security for the performance by the Defendant of his obligations hereunder,

simultaneous with the execution hereof, Defendant shall execute a Bargain and Sale Deed with

Covenants, transferring and conveying his right, title and interest in the Residence to the Plaintiff

(the "Return Deed"), which shall be held in escrow by Newman & Denney P.C. subject to the

terms hereof. A copy of the original Return Deed shall be delivered to Plaintiff's counsel.

2

4.      The Defendant shall be in default of the terms of this Stipulation upon the first to occur of the following which remains uncured after fifteen (15) days written notice (an "Event of Default"):

a.      Failure to pay the Plaintiff $150,000 within the time set forth in paragraph 2 (a) hereof;

b.      Failure to pay the Plaintiff $150,000 within six (6) months from the date of the closing of the Initial Financing, or

c.      Failure to pay any Court Order counsel fee within thirty (30) days of the date of a Court Order pursuant to paragraph 8 hereof.

5.      Upon the occurrence of an Event of Default the Residence shall be immediately placed on the market for sale with any unpaid funds owing to the Plaintiff pursuant to the terms hereof to be paid to Plaintiff from the net proceeds generated by the sale together with an additional sum of $25,000 representing Plaintiff's legal fees, costs and expenses in connection with the default. The remaining balance of the net sale proceeds shall be paid to the Defendant and upon presentation of Plaintiff's affidavit confirming said default, the Return Deed shall be delivered to Plaintiff's counsel provided, however, that if the $150,000 payment required in paragraph 2 (a) has been made, as a condition precedent to the release of the Return Deed from escrow is either (a) Plaintiff's repayment to Defendant the sum the $150,000 or (b) Plaintiff's delivery to Defendant proof of satisfaction of the Defendant's obligations emanating from the Initial Financing.

6.      The Plaintiff expressly acknowledges the existence of three charging liens; two in favor of her present counsel Hirshfeld & Hirshfeld and one in favor of her former counsel Mitchell Lieberman, Esq. (collectively the "Liens"). As the payments required by the terms of

3

this Stipulation are subject to the Liens, absent an Order of the above named Court or written agreement between Plaintiff and the holders of the Liens to the contrary, the Defendant shall first make payment against the Liens in the sequence in which they were served on Defendant or his counsel. Payment of the Liens shall constitute compliance with the payment obligations of the Defendant.

7.      Simultaneous with the execution hereof, the parties shall each withdraw his/her Appeal with prejudice.

8.      Plaintiff's pending motion, which has been fully submitted to the above named Court, shall be determinative as to Defendant's obligation, if any, to make any contribution to Plaintiff's counsel fees.  Any counsel fees Ordered by the Court pursuant to a Decision on the pending motion, or as otherwise agreed to by the parties, shall be paid within thirty (30) days of the Order or agreement of the parties.

9.      The parties accept the terms of this Stipulation as being in full and final settlement and satisfaction of each parties' rights and obligation to the other for equitable distribution pursuant to DRL § 239 Part B.

10.     The parties acknowledge that they have agreed to divide and settle their rights to real and personal property in full satisfaction of their respective marital rights, including the right to an equitable distribution of marital property as defined by DRL § 236B, or a distributive award in lieu thereof, as required by DRL § 236B, and in full satisfaction of the laws in any other jurisdiction that may claim to have an interest in the marital property, as fully set forth in this Article.

11.     This Agreement constitutes an agreement pursuant to DRL § 236(B)(3).

4

15.     The parties intend that their real, mixed and personal property division, tangible and intangible, as provided in this Agreement, shall be full, final and irrevocable. Except as otherwise expressly provided for in this Agreement, the Husband's property, now or hereafter acquired, shall forever remain his, and the Wife's property, now or hereafter acquired, shall forever remain hers, notwithstanding the reconciliation of the parties or the remarriage of the parties to each other.

16.     The parties acknowledge that they have had the opportunity to secure additional financial disclosure from each other and have been advised by their respective attorneys of their rights to (i) compel discovery and inspection of the other's books and records, business and personal, and (ii) have accountants, appraisers or others investigate, appraise or evaluate the other's personal and business property. The parties acknowledge that any further discovery has and is hereby waived. The parties further acknowledge that they have been advised of their rights to trial before the Court and waive the same.

17.     Except as otherwise provided herein, subsequent to the execution of this Agreement, each party shall be solely responsible for all obligations of ownership of her or his property. The parties agree to cooperate with each other in providing any documents or other information that may be necessary in order to ascertain, address, or resolve any tax liability or other obligation associated with the property distributed hereunder.

18.     The Husband had a full opportunity to consult and has consulted at length with his attorneys regarding all aspects of the negotiation and execution of this Agreement. The Husband represents that this Agreement was not the result of any fraud, duress or undue influence exercised by the Wife or any other person or persons upon him. The Husband represents that this Agreement has been achieved with competent legal representation and honest

6

negotiations. The Husband represents that he read and understands each and every term and provision of this Agreement. The Husband further represents that the terms and provisions of this Agreement are fair and reasonable.

19.    The Wife had a full opportunity to consult and has consulted at length with her attorneys regarding all aspects of the negotiation and execution of this Agreement. The Wife represents that this Agreement was not the result of any fraud, duress or undue influence exercised by the Husband or any other person or persons upon her. The Wife represents that this Agreement has been achieved with competent legal representation and honest negotiations. The Wife represents that she read and understands each and every term and provision of this Agreement. The Wife further represents that the terms and provisions of this Agreement are fair and reasonable.

20.    Notices required by this Agreement to be sent by the Husband shall be sufficient if in writing and sent by the Husband (or on his behalf) to the Wife by either (a) overnight delivery service (such as Federal Express) to her present address, (b) by hand delivery, or (c) by email to _____. *If notice is made by email a copy shall also be sent by first class mail.*

21.    Notices required by this Agreement to be sent by the Wife shall be sufficient if sent by the Wife (or on her behalf) to the Husband by (a) overnight delivery service (such as Federal Express) to the Husband's present address, (b) by hand delivery, or (c) by email to _____. *If notice is made by email a copy shall also be sent by first class mail.* Notices shall be deemed given the next business day after the delivery to the overnight carrier, and the same day if sent by email or hand delivery.

7

22.    Article Headings:  The paragraph or Article headings in this Agreement are for convenience and definitional purpose only, and do not reflect any intent or agreement of the parties.

23.    Merger:  This Agreement and its provisions merge any prior agreements, if any, of the parties and is the complete and entire agreement of the parties.

24.    Governing Law/Jurisdiction:  This Agreement shall be governed by the laws of the State of New York, without regard to its choice of law rules and without regard to where either party hereafter resides.  The parties agree to submit themselves to the continuing and exclusive jurisdiction of the New York State Courts, for all issues arising out of this Agreement, or a judgment of divorce between the parties, without regard to where the parties may hereafter reside, provided one party is a resident of this State.

25.    Implementation:  Each of the parties hereto agrees upon behalf of themselves and their respective estates, without cost to each other, to hereafter execute and deliver any and all further instruments and assurances, and perform any acts that the other party may reasonably request for the purpose of giving full force and effect to the provisions of this Agreement.

26.    Modification, Amendment and Waiver:  Except as provided herein, no provision of this Agreement shall be amended or modified unless by agreement in writing duly subscribed and acknowledged with the same formality as this Agreement.  Any waiver by either party of any provision of this Agreement or any right hereunder shall not be deemed a continuing waiver and shall not prevent or stop such party from thereafter enforcing such right, and the failure of either party to insist in any one or more instance upon the strict performance of any of the provisions of this Agreement by the other party shall not be construed as a waiver or relinquishment for the future of such provision, and the same shall continue in full force and

8

documents shall be binding upon the parties' respective estates in the event of their death prior to full performance.

32. **No Third Party Rights:** The parties may at any time amend, modify or annul this Agreement without the consent of any third person and no third person shall be deemed to have been given any interest or right hereunder.

33. **Drafting:** This Agreement is entered into after negotiation and comments by each party. The fact that the initial draft of this Agreement has been completed by Newman & Denney P.C. shall not be a consideration in the interpretation of this Agreement and no adverse inference may be drawn from such fact.

3. **WHEREAS Clauses:** The WHEREAS clauses contained in this Agreement shall be deemed to be a part of this Agreement.

35. **EACH PARTY ACKNOWLEDGES THAT HE OR SHE HAS READ THIS AGREEMENT; THAT HE OR SHE UNDERSTANDS THE TERMS OF THIS AGREEMENT; THAT HE OR SHE UNDERSTANDS THAT THIS AGREEMENT WILL BE BINDING ON HIM OR HER IN ALL CIRCUMSTANCES INCLUDING A DIVORCE OR THE DEATH OF THE PARTIES; AND THAT HE OR SHE ACKNOWLEDGES THAT HE OR SHE HAS HAD A FULL OPPORTUNITY TO CONSULT WITH COUNSEL OF HIS OR HER OWN SELECTION BEFORE EXECUTING THIS AGREEMENT.**

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and date first above written.

10

BRENDA PASWALL                    BRUCE PASWALL

## ACKNOWLEDGMENT

STATE OF _Missouri_ )
                    ) SS.:
COUNTY OF _Clay_    )

On this 28th day of October, 2014 before me, the undersigned a Notary Public in and for the State of New York personally came BRENDA PASWALL personally known to me or proved to me on the basis of satisfactory evidence to be the individual described whose name is subscribed to the within instrument, and he duly acknowledged to me that he executed the same in his own capacity and that by his signature on the instrument, the individual executed the instrument.

11

MICHAEL W BOORD
Notary Public - Notary Seal
State of Missouri
Commissioned for Clay County
My Commission Expires: Jan. 09, 2018
14412397

Notary Public

STATE OF NEW YORK      )
                       ) SS.:
COUNTY OF NEW YORK  )

On this 31 day of October , 2014 before me, the undersigned a Notary Public in and for the State of New York personally came BRUCE PASWALL personally known to me or proved to me on the basis of satisfactory evidence to be the individual described whose name is subscribed to the within instrument, and she duly acknowledged to me that she executed the same in her own capacity and that by her signature on the instrument, the individual executed the instrument.

_____
Notary Public

LOUIS L NEWMAN
Notary Public, State of New York
No. 02NE8133935
Qualified in New York County
Commission Expires April 30, 20__

12

"Exhibit 12"

TA000179



*542953582DED0017*

## Westchester County Recording & Endorsement Page

The Office of the Westchester County Clerk: This page is part of the instrument; the County Clerk will rely on the information provided on this page for purposes of indexing this instrument. To the best of submitter's knowledge, the information contained on this Recording and Endorsement Cover Page is consistent with the information contained in the attached document.

### Submitter Information

| | | | |
|---|---|---|---|
| Name: | HIRSHFELD & HIRSHFELD | Phone: | 8456386761 |
| Address 1: | 301 North Main Street | Fax: | 8456386725 |
| Address 2: | #4 | Email: | goshrim@aol.com |
| City/State/Zip: | New City NY 10956 | Reference for Submitter: | PASWALL |

### Document Details

| | | |
|---|---|---|
| Control Number: 542953582 | Document Type: **Deed (DED)** | |
| Package ID: 2014102200316001001 | Document Page Count: **2** | Total Page Count: **3** |

### Parties

☐ Additional Parties on Continuation page

**1st PARTY** / **2nd PARTY**

1: PASWALL BRENDA — Individual   1: PASWALL BRUCE — Individual
2:   2:

### Property

☐ Additional Properties on Continuation page

Street Address: 13 LOGGING ROAD   Tax Designation: 59.5-2-2
City/Town: SOMERS   Village:

### Cross- References

☐ Additional Cross-Refs on Continuation page

1:   2:   3:   4:

### Supporting Documents

1: RP-5217   2: TP-584

| Recording Fees | | Mortgage Taxes | |
|---|---|---|---|
| Statutory Recording Fee: | $40.00 | Document Date: | |
| Page Fee: | $15.00 | Mortgage Amount: | |
| Cross-Reference Fee: | $0.00 | | |
| Mortgage Affidavit Filing Fee: | $0.00 | Basic: | $0.00 |
| RP-5217 Filing Fee: | $125.00 | Westchester: | $0.00 |
| TP-584 Filing Fee: | $5.00 | Additional: | $0.00 |
| Total Recording Fees Paid: | **$185.00** | MTA: | $0.00 |
| **Transfer Taxes** | | Special: | $0.00 |
| Consideration: | $0.00 | Yonkers: | $0.00 |
| Transfer Tax: | $0.00 | Total Mortgage Tax: | **$0.00** |
| Mansion Tax: | $0.00 | Dwelling Type: | Exempt: ☐ |
| Transfer Tax Number: | 6137 | Serial #: | |

### Record and Return To

☐ Pick-up at County Clerk's office

RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK

Recorded: 12/19/2014 at 09:57 AM
Control Number: **542953582**
Witness my hand and official seal

Westchester County Clerk

**HIRSHFELD & HIRSHFELD**
**301 North Main Street**
**#4**
**New City, NY 10956**
**Attn: FELICIA HIRSHFELD**

COUNTY CLERK
FEE PAID

4-13-18

TA000180

— Quitclaim Deed – Individual or Corporation (single sheet)

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

THIS INDENTURE, made November 3ʳᵈ in the year 2014

BETWEEN
BRENDA PASWALL, currently residing at 13 Logging Road, Katonah, New York 10536

party of the first part, and BRUCE PASWALL, currently residing at 13 Logging Road, Katonah, New York 10536

party of the second part,

WITNESSETH, that the party of the first part, in consideration of Ten Dollars and other valuable consideration paid by the party of the second part, does hereby remise, release and quitclaim unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Somers, County of Westchester and State of New York, known and designated as Lot No. 9M-2 on a certain sub-division map entitled "The Wood Lot, Section II", and filed in the Office of the Clerk of Westchester County, Division of Land Records on 11/21/89 as Map No. 23992.

THIS CONVEYANCE IS MADE IN THE ORDINARY COURSE OF BUSINESS OF THE PARTY OF THE FIRST PART.

TITLE TO THE STREETS, ROADS AND AVENUES SHOWN ON THE AFORESAID MAP IS NOT CONVEYED HEREUNDER, BUT IS RESERVED FOR PURPOSES OF DEDICATION TO THE TOWN OF SOMERS.   EGRESS AND INGRESS OVER THE SAID STREETS, ROADS, AND AVENUES TO THE NEAREST PUBLIC HIGHWAY IS HEREBY GRANTED.

Said premises are known as Section 59.5- Block 2- Lot 2 on the Tax Assessment Map of the Town of Somers.

Being the same premises conveyed to the Grantor herein by Deed dated January 29, 1996, recorded in the County Clerk's office of Westchester County on April 4, 1996 in Liber 11394, page 25 of Deeds.

TOGETHER with all right, title and interest, if any, of the party of the first part of, in and to any streets and roads abutting the above-described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

BRENDA PASWALL

MICHAEL W BOORD
Notary Public - Notary Seal
State of Missouri
Commissioned for Clay County
My Commission Expires: Jan. 09, 2018
14412397

| ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE | ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE |
|---|---|
| State of New York, County of   , ss: | State of New York, County of   , ss: |
| On the   day of   in the year  , before me, the undersigned, personally appeared | On the   day of   in the year  , before me, the undersigned, personally appeared |
|  , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument |  , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument |

| ACKNOWLEDGEMENT BY SUBSCRIBING WITNESS TAKEN IN NEW YORK STATE | ACKNOWLEDGEMENT TAKEN OUTSIDE NEW YORK STATE |
|---|---|
| State of New York, County of   , ss: | *State of MISSOURI, County of CLAY  , ss: |
| On the   day of   in the year  , before me, the undersigned, a Notary Public in and for said State, personally appeared  , the | *(Or insert District of Columbia, Territory, Possession or Foreign County) |
| subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that he/she/they reside(s) in | On the 8th day of October in the year 2014, before me BRENDA PASWALL the undersigned personally appeared |
| (if the place of residence is in a city, include the street and street number if any, thereof): that he/she/they know(s) | Personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies),  that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual make such appearance before the undersigned in the |
| to be the individual described in and who executed the foregoing instrument; that said subscribing witness was present and saw said | |
| execute the same; and that said witness at the same time subscribed his/her/name(s) as a witness thereto | (add the city or political subdivision and the state or country or other place the acknowledgement was taken). |

## Quitclaim Deed

SECTION: 59.5
BLOCK: 2
LOT: 2
COUNTY OR TOWN: Town of Somers, Westchester County

*Michael W Boord*
MICHAEL W. BOORD
Notary Public - Notary Seal
State of Missouri
Commissioned for Clay County
My commission expires:
Jan. 09, 2018
14412397

Title No.

BRENDA PASWALL
TO
BRUCE PASWALL

RETURN BY MAIL TO:

DISTRIBUTED BY
YOUR TITLE EXPERTS
The Judicial Title Insurance Agency LLC
800-281-TITLE (8485)  FAX: 800-FAX-9396

HIRSHFELD & HIRSHFELD, ESQS.
Attorneys At Law
301 North Main Street
Suite #4
New City, New York 10956

# Exhibit "13"



*550483252MTG001Y*

## Westchester County Recording & Endorsement Page

### Submitter Information

| | | | |
|---|---|---|---|
| Name: | American Title - Title | Phone: | (402) 774-4208 |
| Address 1: | 11010 Burdette Street | Fax: | (800) 589-7329 |
| Address 2: | | Email: | ben.kator@americantitleinc.com |
| City/State/Zip: | Omaha NE 68164 | Reference for Submitter: | 6017405-American Title - Title |

### Document Details

| | | |
|---|---|---|
| Control Number: **550483252** | Document Type: **Mortgage (MTG)** | |
| Package ID: 2015021700144001000 | Document Page Count: **6** | Total Page Count: **7** |

### Parties

☐ Additional Parties on Continuation page

**1st PARTY** | **2nd PARTY**

1: PASWALL BRUCE - Individual | 1: FIRST NIAGARA BANK NA - Other
2: | 2:

### Property

☐ Additional Properties on Continuation page

| | |
|---|---|
| Street Address: 13 LOGGING ROAD | Tax Designation: 59.05-2-2 |
| City/Town: SOMERS | Village: |

### Cross- References

☐ Additional Cross-Refs on Continuation page

1: | 2: | 3: | 4:

### Supporting Documents

| Recording Fees | | Mortgage Taxes | |
|---|---|---|---|
| Statutory Recording Fee: | $40.00 | Document Date: | 1/16/2015 |
| Page Fee: | $35.00 | Mortgage Amount: | $195,000.00 |
| Cross-Reference Fee: | $0.00 | | |
| Mortgage Affidavit Filing Fee: | $0.00 | Basic: | $975.00 |
| RP-5217 Filing Fee: | $0.00 | Westchester: | $487.50 |
| TP-584 Filing Fee: | $0.00 | Additional: | $555.00 |
| Total Recording Fees Paid: | **$75.00** | MTA: | $487.50 |
| **Transfer Taxes** | | Special: | $0.00 |
| Consideration: | $0.00 | Yonkers: | $0.00 |
| Transfer Tax: | $0.00 | Total Mortgage Tax: | **$2,505.00** |
| Mansion Tax: | $0.00 | | |
| Transfer Tax Number: | | Dwelling Type: 1-2 Family | Exempt: ☑ |
| | | Serial #: DF19829 | |

RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK

Recorded: 02/17/2015 at 02:51 PM

Control Number: **550483252**

Witness my hand and official seal

Timothy C.Idoni

STATE OF NEW YORK, COUNTY OF WESTCHESTER SS.:
I, TIMOTHY C. IDONI, COUNTY CLERK AND CLERK OF THE SUPREME AND COUNTY COURTS, WESTCHESTER COUNTY DO HEREBY CERTIFY THAT I HAVE COMPARED THIS COPY WITH THE ORIGINAL,

THEREOF RECORDED IN MY OFFICE ON 2/17/15 AND THAT THE SAME IS A CORRECT TRANSCRIPT THEREFROM AND OF THE WHOLE OF SUCH ORIGINAL,
IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND AND AFFIXED MY OFFICIAL SEAL.

COUNTY CLERK
FEE PAID   4-13-18

### Record and Return To

☐ Pick-up at County Clerk's office

**AMERICAN TITLE INC**
**PO BOX 641010**

**OMAHA, NE 68164**

TA000184

AFTER RECORDING, RETURN TO:
AMERICAN TITLE, INC.
P.O. BOX 641010
OMAHA, NE 68164-1010
ATI# LO160106010

APN: 59.05.2-2

This premise is improved by a 1-2 family dwelling

ULTRA FLEX HOME EQUITYᔆᴹ LINE OF CREDIT ACCOUNT MORTGAGE     686171
First Niagara Bank, N.A.

Date 01/16/2015

Borrower's name and address: Bruce Paswall, 13 Logging Road, Somers, NY 10536

Borrower 2's name and address: _____

Other owner's name: _____

Other owner's address: _____

Mortgaged real property: 13 Logging Road, Somers, Westchester, NY 10536

Maximum principal amount: $ $195,000.00

Maximum Rate: 15.90

Number of Family Units: 1

1. Meaning of some words. In this mortgage
a. "You" and "your" mean anyone signing this mortgage, whether as a borrower or other owner;
b. "We," "us," "our" and "ours" mean First Niagara Bank, N.A. 6950 South Transit Road, P.O. Box 514 Lockport, NY 14095-0514;
c. "The loan agreement" means an Ultra Flex Home EquitySM line of credit account agreement dated the date of this mortgage and signed by everyone signing this mortgage as a borrower and us, as the agreement exists now or is changed in the future, or any replacement of the agreement, as the replacement exists when signed or is changed after that;
d. "The indebtedness" means, taken together, all amounts payable now or becoming payable in the future under the loan agreement and this mortgage;
e. "The property" means the real property, rights and rental payments described in Section 2;
f. "Prior mortgage" means any document giving a presently existing mortgage lien covering any of the property, as the document exists now or is changed in the future, or any replacement of the document, as the replacement exists when signed or is changed after that;
g. "The Real Property Law" means the Real Property Law of New York State; and
h. "The Lien Law" means the Lien Law of New York State.
2. Mortgage lien. To secure the payment of the indebtedness, you give us a mortgage lien covering.
a. The real property commonly described by the address shown at the beginning of this mortgage as the mortgaged real property and described more fully by the legal description set forth in Schedule A, including all buildings and other improvements located now or placed in the future on the real property and all fixtures that are now or become in the future part of the real property by being installed in or on or affixed to the real property;
b. All rights you have now or acquire in the future in the real property or other real property because you own

the real property, including, if the real property is part of a condominium project, rights in the common areas and facilities of the condominium project; and
c. All rental payments from any of the real property. In other words, to secure the payment of the indebtedness, you give us a mortgage lien covering the real property together with all appurtenances to it and all your estate and rights in it. A portion of the preceding sentence has the meaning Section 255 of the Real Property Law gives to similar language. If the real property is part of a condominium project or planned unit development, the name of the condominium project or planned unit development is set forth in Schedule A. Examples of fixtures are furnaces, hot water heaters, bathtubs, sinks and kitchen cabinets installed in a building. An example of a right in real property that arises because of the ownership of the real property is the right to money payable because of the taking of any of the real property by a governmental body or because of any transfer of ownership of any of the real property instead of its taking by governmental body. An example of a right in other real property that arises because of the ownership of real property is the right to cross the other real property to get to a street.

3. Credit line mortgage. This mortgage is a "credit line mortgage" as the term is defined in Section 281(1) of the Real Property Law. The mortgage lien you are giving us in this mortgage secures the payment of indebtedness arising under the loan agreement, which reflects the fact that you and we reasonably contemplate entering into a series of advances or advances, payments and re-advances, limits the total principal amount at any time outstanding to the maximum principal amount shown at the beginning of this mortgage and is not a "building loan contract" as the term is defined in Section 2 (13) of the Lien Law. That indebtedness includes not only the original indebtedness arising

Page 1 of 6

under the loan agreement as a result of the first variable rate advance made under the loan agreement but also other indebtedness arising under the loan agreement as a result of any other variable rate advance or any fixed rate loan made under the loan agreement during the period during which variable rate advances and fixed rate loans may be obtained under the loan agreement, which will not be longer than 20 years after the date this mortgage is recorded.

4.   Maximum amount secured.   The maximum principal amount the payment of which is or under any contingency may be secured by the mortgage lien you are giving us in this mortgage on the date you sign this mortgage or at any later time is the maximum principal amount shown at the beginning of this mortgage. The maximum amount the payment of which may be secured by the mortgage lien at any time is the total of:

a.   The maximum principal amount;

b.   Finance charges on that maximum principal amount as provided in the loan agreement;

c.   All payments made by us to protect our interest in the property; and

d.   Interest on the unreimbursed portion of any payment made by us to protect our interest in the property as though the unreimbursed portion were an outstanding variable rate advance under the loan agreement.

5.   Loan agreement.   The loan agreement provides for the making of variable rate advances and fixed rate loans under the loan agreement. The loan agreement provides for a corresponding annual percentage rate and minimum payments in connection with outstanding variable rate advances under the loan agreement that may vary. The maximum rate that can apply is shown at the beginning of this mortgage.

6.   Dwelling.   You assure us that the principal building that is now part of the property is an owner occupied dwelling having the number of family units shown at the beginning of this mortgage.

7.   Prior mortgage.   You assure us that you have notified us in writing of any prior mortgage, that there is no default under any prior mortgage and that no prior mortgage prohibits you from giving us the mortgage lien you are giving us in this mortgage.

8.   Ownership and claims.   You assure us that you own the property. In other words, you warrant title to the property. The preceding sentence has the meaning Section 254(5) of the Real Property Law gives to similar language.  Also, you assure us that the property is free from any claim, except for any claim, of record on the date of this mortgage.

9.   Payment of indebtedness.   You must pay all indebtedness arising under the loan agreement for amounts borrowed from us as variable rate advances and fixed rate loans and finance charges on the outstanding portions of those amounts.  You must pay that indebtedness as hereinbefore provided. The preceding sentence has the meaning section 254(3) of the Real Property Law gives to similar language.

10.  Taxes, assessments, rents and charges.   You must pay any tax, assessment, ground rent, sewer rent or water charge on any of the property and any other tax or other charge that, if unpaid , could become a claim on any of the property superior to the mortgage lien you are giving us in this mortgage, and, if you do not pay it within the time within which it can be paid without penalty, we may, but we will not have to, pay it. When we ask you to do so, you must reimburse us for it.

Also, when we ask you to do so, you must pay us interest on its unreimbursed portion as though the unreimbursed portion were an outstanding variable rate advance under the loan agreement.   The first sentence of this section has the meaning Section 254(6) of the Real Property Law would give to similar language if it referred to the ground rents, sewer rents and other taxes and other charges as well as to the taxes, assessments and water charges.

11.  Repairs and rebuilding.  You must promptly repair or rebuild any building that is now or becomes in the future part of the property if it is damaged or destroyed, and, if you do not do so, we may, but we will not have to, repair or rebuild it.  When we ask you to do so, you must reimburse us for any amount we pay to repair or rebuild it.  Also, when we ask you to do so, you must pay us interest on the unreimbursed portion of that amount as though the unreimbursed portion were an outstanding variable rate advance under the loan agreement.

12. Restrictions on use.  You must not use any of the property, or allow any of it to be used, in any way that violates any legal restriction affecting its use, and, if you do so, we may, but we will not have to, correct the violation.   When we ask you to do so, you must reimburse us for any amount we pay to correct the violation.  Also, when we ask you to do so, you must pay us interest on the unreimbursed portion of that amount as though the unreimbursed were an outstanding variable rate advance under the loan agreement.

13.  Fire and other insurance.  You must keep any building that is now or by fire, any risk covered by extended coverage or any other risk against which we want it insured other than flood, and you must assign and deliver any policy providing the insurance to us. When we ask you to do so, you must reimburse us for any premium for the insurance we pay because you do not keep the building covered by the insurance or because you do not assign and deliver the policy to us. Also, when we ask you to do so, you must pay us interest on the unreimbursed portion of the premium as though the unreimbursed portion were an outstanding variable rate advance under the loan agreement.   The first two sentences of this section have the meaning Section 254(4)(a) of the Real Property Law would give to similar language if it referred to risks covered by extended coverage and all other risks against which we want the property insured other than flood as well as to fire, except that despite anything in Section 254(4)(a), we may apply any money paid under the insurance to any of the indebtedness not yet paid in any order we choose rather than giving it to you to repair or rebuild the building.   The application of the money will not relieve you of any obligation to pay any future payment required under the loan agreement.

14.  Flood insurance.  You must keep any building that is now or becomes in the future part of the property insured for our benefit against loss by flood if the property is located in an area that has been identified by the Secretary of Housing and Urban Development as an area having special flood hazards and for which flood insurance has been made available under the National Flood Insurance Act of 1968, and you must assign and deliver any policy providing the insurance to us. When we ask you to do so, you must reimburse us for any premium for the insurance we pay because you do not keep the building covered by the insurance or because you do not assign and deliver the policy to us.

TA000186

Also, when we ask you to so, you must pay us interest on the unreimbursed portion of the premium as though the unreimbursed portion were an outstanding variable rate advance under the loan agreement. The first two sentences of this section have the meaning Section 254(4)(b) of the Real Property Law gives to similar language, except that, despite anything in Section 254(4)(b), we may apply any money paid under the insurance to any of the indebtedness not yet paid in any order we choose rather than giving it to you to repair or rebuild the building. The application of the money will not relieve you of any obligation to pay any future payment required under the loan agreement.

15. Payment of taxes, assessments, rents, charges and premiums. To make sure that taxes, assessments, ground rents, sewer rents and water charges on any of the property and premiums for insurance on any of the property are paid, we may require that, subject to any limitation imposed by applicable law, you pay us all amounts necessary to pay those items except to the extent that you pay the money for those items to any institutional lender that is the owner of any prior mortgage. We will hold any money you pay us for those items in an escrow account, and we will pay interest on the money to the extent required by applicable law. To the extent that we are holding money in the escrow account to pay any of those items, we will pay it within the time within which it can be paid without any penalty. If the amount of money in the escrow account is less than the amount we pay for those items, you must when we ask you to do so, pay us the difference, and you must, when we ask you to do so, pay us interest on the unpaid portion of the difference as though the unpaid portion were an outstanding variable rate advance under the loan agreement.

16. Money paid for taking. We may direct any governmental body or other organization taking any of the property or receiving a transfer of ownership of any of the property instead of taking it to pay directly to us all money you are entitled to for the taking or transfer, and we may apply the money to any of the indebtedness not yet paid in any order we choose. The application of the money will not relieve you of any obligation to pay any future payment required under the loan agreement.

17. Money paid under insurance on condominium project of planned unit development. If the property includes a unit in a condominium project or planned unit development, you must pay to us any money paid to you under any insurance on the whole condominium project or planned unit development. We may apply the money to any of the indebtedness not yet paid in any order we choose rather than giving it to you to repair the unit. The application of the money will not relieve you of any obligation to pay any future payment required under the loan agreement.

18. Some other promises. You must:
a.  Maintain the principal building that is now part of the property as an owner occupied dwelling having no more than six family units;
b.  Keep the property in good condition;
c.  Allow us to inspect the property at any time;
d.  Immediately notify us in writing if any building that is now or becomes in the future part of the property is damaged or destroyed;
e.  Not use any of the property, or allow any of it to be used, illegally or in any way not allowed by all policies providing any insurance on it;
f.  Not abandon any of the property or allow any of it to be abandoned;

g.  Without first obtaining our permission in writing, not transfer ownership of any of the property or any interest in any of it;
h.  Without first obtaining our permission in writing, not remove, tear down, structurally alter or change the use of any building or other improvement that is now or becomes in the future part of the property or allow the removal, tearing down, structural alteration or change in the use of the building or other improvement;
i.  Without first obtaining our permission in writing, not transfer any right to receive any rental payment from any of the property to anyone other than us;
j.  Without first obtaining our permission in writing, not change or cancel any lease covering any of the property;
k.  Without first obtaining our permission in writing, not accept any rental payment from any of the property more than one month in advance;
l.  Not place any restriction on the sale or use of any of the property based on any characteristic prohibited by applicable law;
m.  If we ask you to do so, promptly provide a complete copy of any prior mortgage to us;
n.  Pay or assure the payment of any amount the payment of which is now or in the future secured by the mortgage lien given in any prior mortgage by the date it becomes due;
o.  Perform or assure the performance of all other obligations under any prior mortgage or any note or other agreement to which it relates now or in the future;
p.  Promptly notify us in writing of any default under any prior mortgage;
q.  If we ask you to do so, pay or assure the payment of any amount the payment of which is now or in the future secured by the mortgage lien given in any prior mortgage no later than five days before the date it is to become due;
r.  If we ask you to do so, provide to us no later than three days before the date any amount the payment of which is now or in the future secured by the mortgage lien given in any prior mortgage is to become due evidence satisfactory to us that the amount has been paid;
s.  Not enter into any agreement changing any prior mortgage;
t.  Not obtain or allow the obtaining of any additional advance the repayment of which is secured by the mortgage lien given in any prior mortgage;
u.  Use your best efforts to have the owner of any prior mortgage send us a copy of any notice the owner is required to send you;
v.  Promptly provide to us a copy of any notice you receive from the owner of any prior mortgage; and
w.  Promptly sign any document we want signed to help us to protect our interest in any of the property

19.  Additional promises if property includes unit in condominium project or planned unit development. If the property includes a unit in a condominium project or planned unit development, you must:
a.  Pay any assessment imposed by the owners
b.  If we ask you to do so, promptly deliver to us a copy of any declaration, by-laws or other document that governs the condominium project or planned unit development or any financial report or other material provided in the future to you by the owners association or other organization that governs the condominium project or planned unit development;

TA000187

c. Perform all of your other obligations under any declaration, by laws or other document that creates or governs the condominium project or planned unit development

d. Promptly notify us in writing if any policy providing any insurance on the whole condominium project or planned unit development is suspended or terminated;

e. Without first obtaining our permission in writing, not consent to the abandonment or termination of the condominium project or planned unit development unless the abandonment or termination is required by applicable law;

f. Without first obtaining our permission in writing, not consent to any significant change in any declaration, by laws or other document that creates or governs the condominium project or planned unit development;

g. Without first obtaining our permission in writing, not consent to any decision by the owners association or other organization that governs the condominium project or planned unit development to terminate professional management, and begin self management, of the condominium project or planned unit development; and

h. Without first obtaining our permission in writing, not consent to any transfer, release, partition or subdivision of, or the creation of any lien on, any of the common areas and facilities of the condominium project or planned unit development other than for utilities and similar uses.

20. Statement of amount due. Within five days after we make a request in person or within ten days after we mail a request, you must give us a written statement acknowledged before a notary public or commissioner of deeds notifying us of the total amount of the indebtedness not yet paid and whether there is any offset or defense against the total amount. In other words, within that period of time, you must notify us of that total amount and whether there is any reason you should not have to pay it. The first sentence of this section has the meaning Section 254(7) of the Real Property Law gives to similar language.

21. Trust fund provisions. This mortgage is subject to the trust fund provisions of Section 13 of the Lien Law. Before you use any money received by you under the loan agreement for any purpose, you must use it to pay for any work done or material used in connection with any improvement started on the property before the date of this mortgage that is not yet paid for.

22. Correcting default under prior mortgage. We may, but we will not have to, make any payment we consider necessary to correct any default under any prior mortgage. When we ask you to do so, you must reimburse us for the payment. Also, when we ask you to do so, you must pay us interest on the unreimbursed portion of the payment as though the unreimbursed portion were an outstanding variable rate advance under the loan agreement.

23. Rent after all amounts immediately due. If you continue to occupy the property after all amounts payable under the loan agreement but not yet paid become immediately due, whether because we declare them immediately due or in any other way, you must pay us whatever rent we require you to pay. Each month's rent will be at least as much as the total of:

a. All finance charges payable under the loan agreement for the preceding month.

b. 1/12 of all estimated taxes, assessments, ground rents, sewer rents and water charges on the property for the tax year in which the month falls; and

c. 1/12 of all estimated premiums for insurance on the property for the year in which the month falls. If you fail to pay the rent, we can have you evicted from the property just as though you were an ordinary tenant who failed to pay rent.

24. Management of property. If all amounts payable under the loan agreement but not yet paid become immediately due, whether because we declare them immediately due or in any other way, we may, but we will not have to , manage the property.

Without limiting any authority given us by applicable law, in managing the property, we may take possession of any of the property, enter into, change or cancel any lease covering any of the property and collect any rental payment from any of the property. We will apply the money we receive from managing the property first to expenses we pay as a result of managing the property (including attorney's fees as provided in Section 28) and then to any of the indebtedness not yet paid in any order we choose.

25. Foreclosure. If all amounts payable under the loan agreement but not yet paid become immediately due, whether because we declare them immediately due or in any other way, we may bring a lawsuit to foreclose our interest in the property by having it sold at a public sale. The property can be sold in one parcel or more than one parcel. We will apply the money we receive from the property first to expenses we pay for advertising, arranging or conducting the sale (including attorney's fees as provided in Section 27) and then to any of the indebtedness not yet paid in any order we choose. You must immediately pay us all of the indebtedness remaining unpaid after we apply money we receive from the sale.

26. Receiver. If we bring a lawsuit to foreclose our interest in the property, we will be entitled to have a receiver appointed by a court. The preceding sentence has the meaning Section 254(10) of the Real Property Law gives to similar language.

27. Foreclosure and collection costs. If we hire an attorney who is not a salaried employee of ours to bring a lawsuit to foreclose our interest in the property or to collect in any other way any of the indebtedness not yet paid, you must, when we ask you to do so, pay us a reasonable attorney's fee not exceeding 15% or the portion of the indebtedness sought to be recovered in the lawsuit and all fees we pay in connection with the foreclosure for any examination, report or other evidence of title to any of the property.

28. Other legal expenses. If we hire an attorney who is not a salaried employee of ours to protect any of our rights in any of the property, whether because of any lawsuit brought by you or anyone else (such as a bankruptcy, probate, condemnation or forfeiture proceeding) or for any other reason, you must when we ask you to do so, reimburse us for the attorney's fee and all other expenses we pay in connection with the lawsuit or defense. Also, when we ask you to do so, you must pay us interest on the unreimbursed portion of the attorney's fee and other expenses we pay in connection with the lawsuit or defense.

TA000188

Also, when we ask you to do so, you must pay us interest on the unreimbursed portion of the attorney's fee and other expenses as though the unreimbursed portion were an outstanding variable rate advance under the loan agreement.

29. Other owner. Anyone signing this mortgage as an other owner gives us the mortgage lien described in Section 2 and will be bound by all provisions of this mortgage, except that he or she will not have to pay any amount payable now or becoming payable in the future under the loan agreement.

30. Notices. If we want to notify you , or you want to notify us, about something concerning this mortgage, the notice may be in writing and may be delivered in person or sent by mail. In other words, notice and demand or request may be made in writing and may be served in person or by mail. The preceding sentence has the meaning Section 254(8) of the Real Property Law gives to similar language.

31. Separate lien. The mortgage lien you are giving us in this mortgage is and will remain separate from, and will not be merged into, the mortgage lien given in any prior mortgage or any other mortgage lien covering any of the property.

32. Rights as owner of mortgage. As the owner of this mortgage we will have all rights given us by this mortgage and also all rights given to the owner of a mortgage by applicable law. Thus, we will have all rights given us by this mortgage in addition to, and not in place of, all rights given to the owner of a mortgage by the Real Property Law.

33. Giving up of rights by you. You give up any right to require that we demand that you pay any of the indebtedness, notify you if any of the indebtedness is not paid by the date it becomes due or obtain a certificate stating that any of the indebtedness was not paid by the date it became due.

34. No notice or loss of rights. We may do any of the following without notifying you or losing any right against you, any of the property or any other property belonging to you now or acquired by you in the future:
a. Accept any check or other order marked "paid in full" or with similar language as a payment of any of the indebtedness;
b. Give additional time for the payment of any of the indebtedness, regardless of the number of times we previously did so and regardless of the length of any additional time we previously gave; or
c. Fail to protect any interest in any property, whether by failing to maintain any insurance, by failing to file or record any mortgage, financing statement, notice of lien or other document that must be filed or recorded in a public office or in any other way. We may exercise, give up, fail to exercise or delay exercising any of the rights without any notice to you. By exercising, failing to exercise or delaying the exercise of any of the rights, we will not lose that right or any other of the rights.

For example, we may sue you under this mortgage whether or not we sue anyone else, bring a lawsuit to foreclose our interest in the property or use any money that has been or is deposited with us by you or anyone else to pay any of the indebtedness not yet paid. By giving up any of the rights on any occasion, we will not lose that right on any other occasion or lose any other of the rights.

35. Changes and giving up of rights by us. No change in this mortgage can me made except in a writing signed by you and us. None of our rights against you, any of the property or any other property belonging to you now or acquired by you in the future can be given up by us except in a writing signed by us.

36. No transfer of rights and obligations. You may not transfer any of your rights and obligations under this mortgage to anyone else. Any transfer of any of the rights and obligations will be void.

37. If two of more persons sign mortgage. If two or more persons sign this mortgage, all of them will be, individually and together, liable under it. Except to the extent required by applicable law, we may send or deliver any notice concerning this mortgage to any of the property to any of them alone, and it will be effective for all of them.

38. Conflicts. If any part of this mortgage conflicts with applicable law, that law will control, and this mortgage will be considered changed to the extent necessary to comply with that law.

39. Continued effectiveness. If any part of this mortgage is determined by a court to be invalid, the rest of this mortgage will remain in effect.

40. Early release of mortgage. This mortgage and the mortgage lien you are giving us in this mortgage will not end merely because the indebtedness is paid in full at any time during the period during which variable rate advances and fixed rate loans may be obtained under the loan agreement. They will end during that period only if we release them. We will release them during that period upon a request made by you as long as at the time we do so the indebtedness is paid in full.

41. What law applies. Any legal question concerning this mortgage will be decided in accordance with New York State law without regard to the law of any other state and in accordance with, to the extent applicable, federal law.

42. Entire agreement. This mortgage is the final and complete agreement between you and us concerning the mortgage lien you are giving us in this mortgage. Any statement concerning the mortgage lien made by any of our employees or anyone else is not part of this mortgage.

43. Agreement and acknowledgment of receipt. You agree to be bound by all provisions of this mortgage and acknowledge that you have received a completed copy of the loan agreement.

| | |
|---|---|
| BORROWER 1 SIGNATURE | _Bruce Paswell_ (signature) |
| | BRUCE PASWELL |
| BORROWER 2 SIGNATURE | |
| BORROWER 3 SIGNATURE | |
| BORROWER 4 SIGNATURE | |
| OTHER OWNERS SIGNATURE | |

ACKNOWLEDGEMENT

STATE OF NEW YORK
COUNTY OF   Westchester

ON THE 16th DAY OF __January__ IN THE YEAR 20 15  BEFORE ME, THE UNDERSIGNED, A
NOTARY PUBLIC IN AND FOR THE STATE, PERSONALLY APPEARED _____

Bruce Paswall

PERSONALLY KNOWN TO ME OR PROVED TO ME ON THE BASIS OF A SATISFACTORY EVIDENCE
TO BE THE INVIDIVUAL(S) WHOSE NAME(S) IS (ARE) SUBSCRIBED TO THE WITHIN INSTRUMENT
AND ACKNOWLEDGED TO ME THAT HE/SHE/THEY EXECUTED THE SAME IN HIS/HER/THEIR
CAPACITY(IES), AND THAT BY HIS/HER/THEIR SIGNATURE(S) ON THE INSTRUMENT, THE
INDIVIDUAL(S), OR THE PERSON UPON BEHALF OF WHICH THE INDIVIDUAL(S) ACTED,
EXECUTED THE INSTRUMENT.

Sharyne Giacalone
NOTARY PUBLIC

SHARYNE GIACALONE
No. 01GI6177637
Notary Public, State of New York
Qualified in Putnam County
My Commission Expires 11/19/20 15

SCHEDULE A

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE TOWN OF
SOMERS, COUNTY OF WESTCHESTER AND STATE OF NEW YORK, KNOWN AND
DESIGNATED AS LOT NO. 9M-2 ON A CERTAIN SUB-DIVISION MAP ENTITLED "THE WOOD
LOT, SECTION II", AND FILED IN THE OFFICE OF THE CLERK OF WESTCHESTER COUNTY,
DIVISION OF LAND RECORDS ON 11/21/89 AS MAP NO. 23992.
BEING THE SAME PREMISES CONVEYED TO THE GRANTOR HEREIN BY DEED DATED
JANUARY 29, 1996, RECORDED IN THE COUNTY CLERK'S OFFICE OF WESTCHESTER
COUNTY ON APRIL 4, 1996 IN LIBER 11394, PAGE 25 OF DEEDS.
SUBJECT TO RESTRICTIONS, RESERVATIONS, EASEMENTS, COVENANTS, OIL, GAS OR
MINERAL RIGHTS OF RECORD, IF ANY.
BEING THE SAME PREMISES CONVEYED TO BRUCE PASWALL FROM BRENDA PASWALL BY
QUITCLAIM DEED DATED 11/30/2014, AND RECORDED ON 12/19/2014, DOCUMENT # 542953582,
IN WESTCHESTER COUNTY, NY.

This mortgage covers premises on which the principal improvement is a single family
dwelling.

Loan Origination: First Niagara Bank, N.A.
NMLS ID: 413059
Loan Originator: Sally Cambareri
NMLS ID: 1170717

59.05-2-2

TA000190

# Exhibit "14"

The Office of the Westchester County Clerk: This page is part of the instrument; the County Clerk will rely on the information provided on this page for purposes of indexing this instrument. To the best of submitter's knowledge, the information contained on this Recording and Endorsement Cover Page is consistent with the information contained in the attached document.



*553643219RAG0012*

# Westchester County Recording & Endorsement Page

## Submitter Information

| | | | |
|---|---|---|---|
| Name: | American Title - Title | Phone: | (402) 774-4208 |
| Address 1: | 11010 Burdette Street | Fax: | (800) 589-7329 |
| Address 2: | | Email: | ben.kator@americantitleinc.com |
| City/State/Zip: | Omaha NE 68164 | Reference for Submitter: | 6030720-American Title - Title |

## Document Details

| | | | |
|---|---|---|---|
| Control Number: | **553643219** | Document Type: | **Registered Agreement (RAG)** |
| Package ID: | 2015123000101001000 | Document Page Count: **3** | Total Page Count: **4** |

## Parties

☐ Additional Parties on Continuation page

| 1st PARTY | | 2nd PARTY | |
|---|---|---|---|
| 1: PASWALL BRUCE | - Individual | 1: FIRST NIAGARA BANK NA | - Other |
| 2: | | 2: | |

## Property

☐ Additional Properties on Continuation page

| | | | |
|---|---|---|---|
| Street Address: | 13 LOGGING ROAD | Tax Designation: | 59.05-2-2 |
| City/Town: | SOMERS | Village: | |

## Cross- References

☐ Additional Cross-Refs on Continuation page

| | | | |
|---|---|---|---|
| 1: 550483252 | 2: | 3: | 4: |

## Supporting Documents

1: §255 Affidavit

| Recording Fees | | Mortgage Taxes | |
|---|---|---|---|
| Statutory Recording Fee: | $40.00 | Document Date: | 12/5/2015 |
| Page Fee: | $20.00 | Mortgage Amount: | $155,000.00 |
| Cross-Reference Fee: | $0.50 | | |
| Mortgage Affidavit Filing Fee: | $5.00 | Basic: | $775.00 |
| RP-5217 Filing Fee: | $0.00 | Westchester: | $387.50 |
| TP-584 Filing Fee: | $0.00 | Additional: | $465.00 |
| | | MTA: | $387.50 |
| Total Recording Fees Paid: | **$65.50** | Special: | $0.00 |
| Transfer Taxes | | Yonkers: | $0.00 |
| Consideration: | $0.00 | Total Mortgage Tax: | **$2,015.00** |
| Transfer Tax: | $0.00 | | |
| Mansion Tax: | $0.00 | Dwelling Type: | 1-6 Family    Exempt: ☐ |
| Transfer Tax Number: | | Serial #: | DG90089 |

| RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK | Record and Return To |
|---|---|
| Recorded: 12/30/2015 at 01:12 PM | ☐ Pick-up at County Clerk's office |
| Control Number: **553643219** | |
| Witness my hand and official seal | |

Timothy C Idoni
Westchester County Clerk

AMERICAN TITLE INC
PO BOX 641010

OMAHA, NE 68164

STATE OF NEW YORK, COUNTY OF WESTCHESTER
TIMOTHY C. IDONI, COUNTY CLERK AND CLERK OF THE SUPREME AND COUNTY COURTS, WESTCHESTER COUNTY DO HEREBY CERTIFY THAT I HAVE COMPARED THIS COPY WITH THE ORIGINAL
THEREOF RECORDED IN MY OFFICE ON 12-30-15 AND THAT THE SAME IS A CORRECT TRANSCRIPT THEREFROM AND OF THE WHOLE OF SUCH ORIGINAL.
IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND AND AFFIXED MY OFFICIAL SEAL.

COUNTY CLERK AND CLERK OF THE SUPREME AND COUNTY COURTS, WESTCHESTER COUNTY.
FEE PAID    4-13-18

TA000192

## Mortgage Modification Agreement
### First Niagara Bank, N.A.
(FKA First Niagara Bank)

AFTER RECORDING, RETURN TO:
AMERICAN TITLE, INC.
P.O. BOX 641010
OMAHA, NE 68164-1010

ATH# 2015 11030408

App ID: 760860
Date:: 12/05/2015

Borrower 1's name and address BRUCE PASWALL , 13 LOGGING ROAD , KATONAH, NY 10536

Borrower 2's name and address

Other owner's name and address
PIN 59.05-2-2

This premise is improved by a 1-2 family dwelling

Mortgaged real estate 13 Logging Road, Somers, NY 10536, Westchester

1. **Meaning of some words.** In this mortgage modification agreement, (a) "we" and "us" mean First Niagara Bank, N.A., 6950 South Transit Road, Lockport, New York 14094, (b) the "mortgage" means a home equity line of credit account mortgage dated 01/16/2015 signed by everyone signing this mortgage modification agreement as a borrower or other owner, recorded in Westchester County, NY , Clerk's Office on 02/17/2015 in Liber/Inst# 550483252 Mortgages at page     and covering the real estate described by the legal description set forth in Exhibit A, and (c) the "line of credit account agreement" means a home equity line of credit account agreement dated the date of the mortgage and signed by everyone signing this mortgage modification agreement as a borrower and us.

2. **Amendment of line of credit account agreement.** Everyone signing this mortgage modification agreement as a borrower and we are entering into a home equity line of credit account amendment agreement dated the date of this mortgage modification agreement that changed the line of credit account agreement to (a)     N/A     the margin shown at the beginning of the line of credit account agreement from 0.74 % to   0.74 %, a     N/A     of     % , and (b) increase the credit limit shown at the beginning of the line of credit account agreement from $ 195,000.00    to  $ 350,000.00  an increase of $ 155,000.00 .

3. **Modification of mortgage.** In consideration of the     N/A     of the margin shown at the beginning of the line of credit account agreement, the margin shown at the beginning of the mortgage is     from 0.74 % to  0.74 %, a     N/A     of     %. In consideration of the increase of the credit limit shown at the beginning of the line of credit account agreement, the maximum principal amount shown at the beginning of the mortgage is increased from $ 195,000.00   to  $ 350,000.00  an increase of $ 155,000.00 .

4. **Continued effectiveness of mortgage.** The mortgage is changed only as provided in this mortgage modification agreement and, except as changed by this mortgage modification agreement, all provisions of the mortgage will remain in effect. In the future, references in the mortgage to "this mortgage" will be references to the mortgage as modified by this mortgage modification agreement.

5. **Agreement.** You and we agree to be bound by all provisions of this mortgage modification agreement.

Borrower 1's signature _____     Bruce Paswall

Borrower 2's signature _____

Other owner's signature _____

FIRST NIAGARA BANK, N.A.
By _____          Customer Care Representative,
        Fadi Khader                            Title
                                              Customer Care Representative

**SIGNATURE ACKNOWLEDGMENTS**

STATE OF NY
COUNTY OF Westchester

On the ___5___ day of _December_ in the year 20 _15_ _____ before me, the undersigned, a Notary Public in and for said State,
personally appeared _Bruce Pasvall_ _____ , personally known to me or proved to me on the basis of satisfactory evidence to
be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which
individual(s) acted, executed the instrument.

SHARYNE GIACALONE
No. 01GI6177637
Notary Public, State of New York
Qualified in Putnam County
My Commission Expires 11/19/20 _19_

_____
Notary Public    Sharyne    Giacalone


STATE OF NY
COUNTY OF Westchester

On the _5_ day of _December_ in the year 20 _15_ _____ before me, the undersigned, a Notary Public in and for said State, personally
appeared _Fadi Khader Customer Care Representative, First Niagara Bank_ personally known to me or proved to me on the basis
of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the
person upon behalf of which individual(s) acted, executed the instrument.

SHARYNE GIACALONE
No. 01GI6177637
Notary Public, State of New York
Qualified in Putnam County
My Commission Expires 11/19/20 _19_

_____
Notary Public    Sharyne    Giacalone

**NEW YORK**

Exhibit
SCHEDULE A

NAME(S): BRUCE PASWALL

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE TOWN OF
SOMERS, COUNTY OF WESTCHESTER AND STATE OF NEW YORK, KNOWN AND
DESIGNATED AS LOT NO. 9M-2 ON A CERTAIN SUB-DIVISION MAP ENTITLED "THE WOOD
LOT, SECTION II" AND FILED IN THE OFFICE OF THE CLERK OF WESTCHESTER COUNTY,
DIVISION OF LAND RECORDS ON 11/21/89 AS MAP NO.23992.
BEING THE SAME PREMISES CONVEYED BY DEED DATED JANUARY 29, 1996, RECORDED IN
THE COUNTY CLERK'S OFFICE OF WESTCHESTER COUNTY ON APRIL 4, 1996 IN LIBER 11394,
PAGE 25 OF DEEDS.SUBJECT TO RESTRICTIONS, RESERVATIONS, EASEMENTS,
COVENANTS, OIL, GAS OR MINERAL RIGHTS OF RECORD, IF ANY.
BEING THE SAME PREMISES CONVEYED TO BRUCE PASWALL FROM BRENDA PASWALL BY
QUITCLAIM DEED DATED 11/3/2014, AND RECORDED ON 12/19/2014, DOCUMENT # 542953582,
IN WESTCHESTER COUNTY, NY.

THIS MORTGAGE COVERS PREMISES ON WHICH THE PRINCIPAL IMPROVEMENT IS A SINGLE
FAMILY DWELLING.

APN: 59.05-2-2

# Exhibit "15"



# Brenda J. (Smith) Paswall

✏ Add a Memory    Share This Page ⌄

**RESOURCES**

■ More Obituaries for Brenda Paswall

■ Looking for an obituary for a different person with this name?

Brenda J. (Smith) Paswall age 56, passed away peacefully on April 17th, 2019. She was born on November 16, 1962 to Don & Joan Smith and was a 1981 graduate of Bonner Springs HS. Brenda is survived by her two sons, Grant & Reid Paswall (NY); her parents, Don & Joan Smith of Edwardsville, KS; a sister, Amy (Chris, Jenna & Dylan) Donnelly of Basehor, KS. Condolences may be sent to Amy Donnelly, 21882 155th St, Basehor, KS 66007.

Published in Kansas City Star on Apr. 26, 2019

Print | Listen to Obituary

## REMEMBER

Share memories or express condolences below.

View All

Add a memory or condolence to the guest book

*"Brenda miss your notes and high school memories! Love, Diana"*
**-Diana Tyler**

*"My dear sweet sister and angel in Heaven, No words can..."*
**-Cathy Rose**

**ADD MESSAGE**

View All Messages  7

ADD PHOTOS    ADD VIDEOS

**Funeral Etiquette**
Expert advice: what to do and say when someone dies.

- ADVERTISEMENT -

## SHARE THIS PAGE
Inform family & friends of Brenda's passing.

# Exhibit "16"

TA000198

# RE: **Proposal to save attorney's fees and money**

From: **Bruce Paswall** (Bruce_Paswall@gebmedical.com)
Sent:   Tue 9/29/15 5:17 PM
To:     'Brenda Paswall' (arubabeachbum@hotmail.com)

Brenda-

What will be will be...I want to do the right thing pay you and protect what only asset there is to leave for the children...

I just need to be able to trust you and you're making it difficult by not be transparent with me with your intentions...

Time is of the essence and this house with what equity is in it now will be lost...I am trying to give you what you want and what I can afford but at this point as I said before I leaning towards walking away as is...I know it's hard for you to believe, but if I have to maintain it and not know it is safe I am not going to throw any more money into it...

You can ease all of this by communicating with me your ideas.

Thank you....

TA000199

Exhibit 17

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re:                                                   Chapter 7

BRUCE J. PASWALL,                                        Case No. 19-23623 (RDD)

        Debtor.

---------------------------------------------------------------x

MARK S. TULIS, as Chapter 7
Trustee of the Estate of Bruce J. Paswall,
                                      Adv. Pro. No. 19-08713-RDD

        Plaintiff,

    -against-

GRANT PASWALL and REID PASWALL,

        Defendants.

---------------------------------------------------------------x

## ORDER FOR DEFAULT JUDGMENT

Mark S. Tulis, as Chapter 7 Trustee ("Plaintiff") of the Estate of Bruce J. Paswall (the "Debtor"), having moved this Court pursuant to a Notice of Hearing and Motion dated March 24, 2020 seeking an order for default judgment and default judgment against Defendants Grant Paswall and Reid Paswall ("Defendants"); and upon the Declaration of David A. Blansky, Esq., dated March 24, 2020 and the exhibits attached thereto (collectively, the notice of hearing, declaration and exhibits are referred to as the "Motion"); and upon the Affidavit of Service of the Motion, which is on file with the Court; and no objection to the Motion having been interposed; and Plaintiff being entitled to judgment against Defendants; and the Motion having been heard by the Honorable Robert D. Drain, United States Bankruptcy Judge at the United States Bankruptcy Court for the Southern District of New York on June 19, 2020; and no opposition having been filed; and further notice being neither necessary nor required; and after due

deliberation and consideration of all of the facts and circumstances herein; and Plaintiff having

demonstrated his prima facie entitlement to a default judgment, it is hereby

**ORDERED**, that Plaintiff have judgment against Defendants Grant Paswall and Reid

Paswall avoiding and setting aside the deed dated October 3, 2014 and recorded on January 27,

2017, under control no. 563643600, in the land records of the Office of the Westchester County

Clerk by which the Debtor transferred his interest in the real property known as, and located at,

13 Logging Road, Katonah, New York 10536, Section 59.5 Block 2 Lot 2 on the Tax Map of the

Town of Somers, County of Westchester to the Defendants (the "Deed") as both constructively

and actually fraudulent conveyances; and, it is further

**ORDERED**, that Plaintiff shall have judgment against Defendants directing the Clerk of

the County of Westchester to record this Court's judgment and strike the Deed from the public

record; and

**ORDERED,** that Plaintiff serve a copy of this Order for Default Judgment upon

Defendant Grant Paswall by mail at 9 Summit Drive, Mahopac, New York 10541and 13 Logging

Road, Katonah, New York 10536, and Defendant Reid Paswall by mail at 13 Logging Road,

Katonah, New York 10536, their last known addresses, and file proof of such service with the

Court; and, it is further

**ORDERED,** that the relief granted to Plaintiff herein is without prejudice to his right to

make application to the Court for an award of attorneys' fees under Section 276-a of the New

York Debtor and Creditor Law; and, it is further

**ORDERED,** that Plaintiff is authorized to do such things, expend such funds and execute

those documents necessary to implement the terms of this Order.

Exhibit 18

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:                                                          Chapter 7

BRUCE J. PASWALL,                                              Case No. 19-23623 (RDD)

          Debtor.

------------------------------------------------------------x

MARK S. TULIS, as Chapter 7
Trustee of the Estate of Bruce J. Paswall,
                                           Adv. Pro. No. 19-08713-RDD

          Plaintiff,

    -against-

GRANT PASWALL and REID PASWALL,

          Defendants.

------------------------------------------------------------x

## **JUDGMENT BY DEFAULT**

      Default was granted against defendants Grant Paswall and Reid Paswall on June __ 2020.

Therefore, on motion of plaintiff, Mark S. Tulis, as Chapter 7 Trustee of the Estate of Bruce J.

Paswall ("Plaintiff"), judgment is entered against those defendants in favor of Plaintiff as

follows.

      **IT IS ORDERED THAT:**

      Plaintiff have judgment against defendants Grant Paswall and Reid Paswall, having last

known addresses of 13 Logging Road, Katonah, New York 10536, and 9 Summit Drive,

Mahopac, New York 10541, respectively, avoiding and setting aside the deed dated October 3,

2014 and recorded on January 27, 2017, under control no. 563643600, in the land records of the

Office of the Westchester County Clerk by which the Debtor transferred his interest in the real

property known as, and located at, 13 Logging Road, Katonah, New York 10536, Section 59.5

Block 2 Lot 2 on the Tax Map of the Town of Somers, County of Westchester, to the Defendants (the "Deed") as both constructively and actually fraudulent conveyances; and

The Clerk of the County of Westchester is hereby directed record this judgment and strike the Deed from the public record; and

Plaintiff shall have execution thereon; and

Plaintiff shall have all of their rights and remedies afforded to a judgment creditor by law; and

Plaintiff may enforce this judgment against defendants Grant Paswall and Reid Paswall as allowed by applicable law.